# Exhibit A



7:10

48

+1 (707) 386-2390 ›

Wonderful, once I get the documents, I'll send them over

4:08 PM

Thank you so much!

4:26 PM

Tue, Apr 1 at 8:16 AM

Hey Jidae just wanted to let you know I'm here and walking to the lobby now

8:16 AM

Great, I'm printing everything right now. Should be there soon

8:35 AM

Okay cool I will see you soon

8:36 AM

Are you the only one there?

8:37 AM

Yeah so far there's no one I'm just standing in the hallway outside of suite 300

8:38 AM

Looking for parking

8:49 AM

Okay cool I'm still just waiting outside of the suite 300

8:49 AM

Tue, Apr 1 at 12:23 PM

Just called but once you have a moment please give me back 😄

12:23 PM

Tue, Apr 1 at 3:48 PM

iMessage

# <u>Exhibit B</u>

# TRUSTEE CERTIFICATE OF SALE / RECEIPT

**General Information:**
Sale Date: 2025-04-01          Sale Time: 09:14:00 AM   Trustee Sale Number: RUN 1 - 9462-6555 Trustee: Bonial & Associates, P.C.

**Property Address:**
Address: 1933 GRASS MOUNTAIN CRT          City: ANTIOCH          State: CA          Zip: 94531          County: Contra Costa

**Form 8300:**                    Yes                    No

**Owner Information**
Buyer/Owner 1: Good Neighbor Homes, LLC
Email: checks@wedgewood-inc.com          Cell Phone: 4242693450
Address: 2015 Manhattan Beach Boulevard Suite 100          City: Redondo Beach          State: CA          Zip: 90278
Deed Mailing Address:          Same as Owner          Same as Representative          Other: _____
Buyer Type:          Owner Occupied          Investor          Second Home

**Representative Information**
Name: Jared Delgadillo          Cell Phone: 4242693450
Email: checks@wedgewood-inc.com
Relationship to Buyer:          Agent          Director/Officer          Manager/Member          Power of Attorney          Other

**Vesting - Record Title As Shown:** Good Neighbor Homes, LLC

**Receipt of Funds:**

| Check No. | Financial Institution | | Amount | |
|---|---|---|---|---|
| **Total Check Amount Received** | | $.00 | | |
| **No.** - | **Financial Institution** | | **Amount** | $499,799.40 |
| **Total Wire Amount Received** | | $499,799.40 | | |
| **Cash Received** | | $.00 | **Recording Fee** | $.00 |
| **Other Received** | | $.00 | | |
| | | | **Amount Required** | $499,799.40 |
| **Total Received** | | $499,799.40 | **Refund Amount** | $.00 |

**Refund Payable To:**
Name: Good Neighbor Homes, LLC          Phone: 4242693450
Address: 2015 Manhattan Beach Boulevard Suite 100          City: Redondo Beach
State: CA          Zip: 90278

The sale may be rescinded due to requirements set out in both state and federal laws or regulations, including anti-money laundering, anti-terrorism, anti-drug trafficking and economic sanctions laws and regulations. Federal law requires all financial institutions to obtain, verify, and record information that identifies parties to transactions. This means that when your bid is provisionally accepted, you may be asked for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents to comply with such rules and regulations. Your bid is subject to verification of your identity and confirmation of compliance with all applicable laws and regulations. By singing below, Buyer's or Buyer's Representative's signature agree and confirm that (i) all of the above information is true and correct, (ii) the sale was conducted in accordance with all the terms, conditions, and disclaimers applicable to the sale, and (iii) a copy of this disclosure and the sale terms and conditions was received and reviewed. IMPORTANT NOTE: Buyer or Buyer's Representative understands and agrees the sale of this property is on an "AS IS, WHERE IS" basis, with no warranties express or implied. At the time and date set forth above, the above-referenced property was sold to the above-named Buyer for the amount shown above being the highest bid for cash or cash equivalent. Buyer is required to tender payment as required in satisfaction of the amount necessary to purchase.

Signature of Buyer/Representative: _____ Date: _____

Auctioneer Printed Name: _Michele Lee_  Signature: _____          Date: _2025-04-01_
Auditor Printed Name: _Miranda Tarry_  Signature: _____ Date: _2025-04-01_

| | | | | |
|---|---|---|---|---|
| Auction Event | E-28184 | Address | 1933 GRASS MOUNTAIN CRT | |
| Auction Id | GD6 | Date | 04/01/2025 | |
| State | CA | County | Contra Costa | |

| BID | TOKEN_BIDDER | DATE AND TIME |
|---|---|---|
| $499,799.40 | GGL383 | 04/01/2025 09:13:31 |
| $499,699.40 | Opening Bid | 04/01/2025 09:12:29 |

# <u>Exhibit C</u>

TS No.: **9462-6555**  Property Address: **1933 GRASS MOUNTAIN CT.**

The undersigned hereby represents and declares under the penalty of perjury under the laws of the State of California that:

[☒] **I am a "prospective owner occupant" as defined in Civ. Code § 2924m(a)(1). As such, all of the following are true:**
I am a natural person. I will occupy the above referenced property as my primary residence within 60 days of the trustee's deed being recorded. I will maintain my occupancy for at least one year. I am not the mortgagor or trustor. I am not the child, spouse or parent of the mortgagor or trustor. I am not the grantor of a living trust that was named in the title to the property when the notice of default was recorded. I am not an employee, officer, or member of the mortgagor or trustor. I am not a person with an ownership interest in the mortgagor, unless the mortgagor is a publicly traded company. I am not acting as the agent of any other person or entity in purchasing the real property.

[ ] **I am an "eligible tenant buyer" as defined in Civ. Code § 2924m(a)(2). As such, all of the following were true at the time of the trustee's sale:**
I am a natural person. At the time of the trustee's sale, I occupied the real property as my primary residence. At the time of the trustee's sale, I was occupying the real property under a rental or lease agreement entered into as the result of an arm's length transaction with the mortgagor or trustor, or with the mortgagor or trustor's predecessor in interest, on a date prior to the recording of the notice of default against the property. I have attached evidence demonstrating the existence of this tenancy, including: a copy of the dated and signed rental or lease agreement or, if a copy of the dated and signed rental or lease agreement is not available, then one of the following: Evidence of rent payments made for the property by the person asserting that they are an eligible tenant buyer for the six months prior to the recording of the notice of default, or copies of utility bills for the property payable by the person asserting that they are an eligible tenant buyer for the six months prior to the recording of the notice of default. At the time of the trustee's sale, I was not the mortgagor or trustor, or the child, spouse or parent of the mortgagor or trustor. At the time of the trustee's sale, I was not acting as the agent of any other person or entity in purchasing the real property. I have not filed a petition under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code from the date of the trustee's sale of the property and will not file a petition under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code through the 45th day after the trustee's sale, or the next business day following the 45th day if the 45th day is a weekend or holiday.

[ ] **The undersigned is the representative of all of the "eligible tenant buyers" in accordance with Civ. Code § 2924m(c)(3). As such, all of the following are true:**
All of the eligible tenant buyers are natural persons. At the time of the trustee's sale, all of the eligible tenant buyers occupied the real property as their primary residence. At the time of the trustee's sale, all of the eligible tenant buyers were occupying the real property under a rental or lease agreement entered into as the result of an arm's length transaction with the mortgagor or trustor, or with the mortgagor or trustor's predecessor in interest, on a date prior to the recording of the notice of default against the property. As the representative of all of the eligible tenant buyers, I have attached evidence demonstrating the existence of this tenancy, including: a copy of the dated and signed rental or lease agreement or, if a copy of the dated and signed rental or lease agreement is not available, then one of the following: evidence of rent payments made for the property by the persons asserting that they are all of the eligible tenant buyers for the six months prior to the recording of the notice of default, or copies of utility bills for the property payable by the persons asserting that they are all of the eligible tenant buyers for the six months prior to the recording of the notice of default. At the time of the trustee's sale, none of the eligible tenant buyers were the mortgagor or trustor, or the child, spouse or parent of the mortgagor or trustor. At the time of the trustee's sale, none of the eligible tenant buyers were acting as the agent of any other person or entity in purchasing the real property. None of the eligible tenant buyers have filed a petition under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code from the date of the trustee's sale of the property and none of the eligible tenant buyers will file a petition under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code through the 45th day after the trustee's sale, or the next business day following the 45th day if the 45th day is a weekend or holiday.

[ ] The undersigned is a nonprofit association, nonprofit corporation, or cooperative corporation in which an "eligible tenant buyer" is a voting member or director. Affiant hereby affirms the duty to comply with subdivision (a) of California Civil Code Section 2924o for the benefit of tenants occupying the property.

[ ] The undersigned is an eligible nonprofit corporation with all of the following attributes: It has a determination letter from the Internal Revenue Service affirming its tax-exempt status pursuant to Section 501(c)(3) of the Internal Revenue Code and is not a private foundation as that term is defined in Section 509 of the Internal Revenue Code. It has its principal place of business in California. The primary residences of all board members are located in California. One of its primary activities is the development and preservation of affordable rental or homeownership housing in California. It is registered and in good standing with the Attorney General's Registry of Charitable Trusts, pursuant to the Supervision of Trustees and Fundraisers for Charitable Purposes Act (Article 7 (commencing with Section 12580) of Chapter 6 of Part 2 of Division 3 of Title 2 of the Government Code). Affiant hereby affirms the duty to comply with subdivision (a) of California Civil Code Section 2924o for the benefit of tenants occupying the property.

[ ] The undersigned is a limited liability company wholly owned by either a nonprofit association, nonprofit corporation, or cooperative corporation in which an eligible tenant buyer is a voting member or director, or an eligible nonprofit corporation with all of the following attributes:
It has a determination letter from the Internal Revenue Service affirming its tax-exempt status pursuant to Section 501(c)(3) of the Internal Revenue Code and is not a private foundation as that term is defined in Section 509 of the Internal Revenue Code. It has its principal place of business in California. The primary residences of all board members are located in California. One of its primary activities is the development and preservation of affordable rental or homeownership housing in California. It is registered and in good standing with the Attorney General's Registry of Charitable Trusts, pursuant to the Supervision of Trustees and Fundraisers for Charitable Purposes Act (Article 7 (commencing with Section 12580) of Chapter 6 of Part 2 of Division 3 of Title 2 of the Government Code). Affiant hereby affirms the duty to comply with subdivision (a) of California Civil Code Section 2924o for the benefit of tenants occupying the property.

[ ] The undersigned is a community land trust, as defined in clause (ii) of subparagraph (C) or paragraph (11) of subdivision (a) of Section 402.1 of the Revenue and Taxation Code. Affiant hereby affirms the duty to comply with subdivision (a) of California Civil Code Section 2924o for the benefit of tenants occupying the property.

[ ] The undersigned is a limited-equity housing cooperative, as defined in Civ. Code Section 817. Affiant hereby affirms the duty to comply with subdivision (a) of California Civil Code Section 2924o for the benefit of tenants occupying the property.

[ ] The undersigned is the state, the Regents of the University of California, a county, city district, public authority, or public agency, or any other political subdivision or public corporation in the state. Affiant hereby affirms the duty to comply with subdivision (a) of California Civil Code Section 2924o for the benefit of tenants occupying the property.

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated and signed this **04** day of **APRIL** 20**25** at **SACRAMENTO** California.

| | |
|---|---|
| Signature: | |
| Name and title of signer: | CARL DEXTER |
| Name of entity (if applicable): | |
| Address of signer: | P.O. Box 15371 SACRAMENTO, CA 95851 |
| Telephone number of signer: | 916.272.3420 |

# <u>Exhibit D</u>



# SHEPHERD & WOOD LLP

### ATTORNEYS AT LAW

2950 Buskirk Ave Suite 300, Walnut Creek, CA 94597
Phone 925.278-6680 | Fax 925.955.1655 | https://www.shepwoodlaw.com

# FAX

April 11, 2025

| | | | |
|---|---|---|---|
| **TO:** | NBS Default Services, LLC<br>Bonial and Associates<br>Shellpoint Mortgage Servicing | **FROM:** | Nicole Zorrilla |
| **FAX:** | 972-643-6698<br>972-643-6699<br>866-467-1184 | **PHONE:** | |
| **RE:** | BK Case #25-40564 – Wilkerson – NTS 9462-6555 | | |

XXX☐ Urgent      XXX☐ For Review      ☐ Please Reply

COMMENTS:

To Whom it May Concern:

Please see the attached for your immediate attention.

Thank you,

**Nicole Zorrilla**
Shepherd & Wood LLP
2950 Buskirk Ave #300, Walnut Creek, CA 94597
Main: (925) 278-6680
Direct/MMS/Text/iMessage: (925) 542-8020**
Fax: (925) 955-1655
Email: nicole@shepwoodlaw.com



SHEPHERD & WOOD LLP
ATTORNEYS AT LAW

2950 Buskirk Ave., Suite 300, Walnut Creek, CA 94597
Phone 925.278-6680 | Fax 925.955.1655 | www.shepwoodlaw.com

April 11, 2025

National Bankruptcy Services, LLC
Attn: Legal Department
14841 Dallas Parkway, Suite 300
Dallas, TX 75254

Bonial and Associates
Attn: Bankruptcy Department
3160 Crow Canyon Place, Suite 215
San Ramon, CA 94583

Agent for Service for Process
(for National Bankruptcy Services, LLC)
1505 Corporation
CT Corporation System
Amanda Garcia
330 N Brand Blvd,
Glendale, CA 91203

Newrez LLC dba Shellpoint Mortgage Servicing
Attn: Legal Department
PO Box 10826
Greenville, SC 29603-0826

Re:    Notice of Bankruptcy Case Filing
       Trustee Sale No: 9462-6555
       1933 Grass Mountain Court Antioch, CA 94531
       Borrower(s): Steven Wilkerson and Lisa Wilkerson
       Owner: Melissa Wilkerson

This is to notify NBS Default Services, LLC and Shellpoint Mortgage Servicing that
Melissa Marie Wilkerson filed Bankruptcy in the Northern District of California on
April 1, 2025, at 9:19 am case number 25-40564. The foreclosure sale must be
stopped and cannot continue on account of the bankruptcy case and C.C.C. §2924m.
The notice of bankruptcy case filing is attached.

**Trustee Sale Number:**  9462-6555

**Property Address:** 1933 Grass Mountain Court Antioch, CA 94531

The initial auction was held on April 1, 2025. The bankruptcy was filed on April 1, 2025, Pursuant to the California Civil Code §2924m the foreclosure sale is not deemed final until 15 days later on April 16, 2025, at 5:00 pm, and now it cannot be made final because of the bankruptcy case filing and the automatic stay. Attempts to complete the sale transaction will be void automatically for violating the automatic stay because the bankruptcy case was filed before the foreclosure sale could be deemed final under the law. *In re Hager 651 B.R. 873 (2023).* A copy of this case law is attached here.

Please respond to this letter at your earliest convenience to confirm that you will not complete the sale. If you take any steps to complete the sale we will seek sanctions for violation of the stay.

If a trustee's deed upon sale has been issued it must be rescinded and the sale must be undone.

Sincerely,

*E. Vincent Wood*

*E. Vincent Wood*
Shepherd & Wood LLP

Encl. Notice of Bankruptcy Case Filing
In re Hager 651 B.R. 873 (2023)
Grant Deed

United States Bankruptcy Court
California Northern Bankruptcy Court

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 13 of the United States Bankruptcy Code, entered on 04/01/2025 at 09:36 AM and filed on 04/01/2025.

**Melissa Marie Wilkerson**
1933 Grass Mountain Ct
Antioch, CA 94531
SSN / ITIN: xxx-xx-9068

| The debtor's attorney is: | The bankruptcy trustee is: |
|---|---|
| **E. Vincent Wood** | **Martha G. Bronitsky** |
| Shepherd & Wood LLP | P.O. Box 5004 |
| 2950 Buskirk Ave. | Hayward, CA 94540 |
| Ste 300 | (510) 266-5580 |
| Walnut Creek, CA 94597 | |
| 925-278-6680 | |

The case was assigned case number 25-40564 to Judge Charles Novack.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our *Internet* home page https://ecf.canb.uscourts.gov/ or at the Clerk's Office, 1300 Clay Street, Suite 300, Oakland, CA 94612.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

**Edward J. Emmons**
**Clerk, U.S. Bankruptcy Court**

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/11/2025 11:51:16 | | | |
| **PACER Login:** | evshepwood | **Client Code:** | |
| **Description:** | Notice of Filing | **Search Criteria:** | 25-40564 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**Ⓐ Neutral**

As of: April 9, 2025 10:47 PM Z

## *In re Hager*

United States Bankruptcy Court for the Eastern District of California, Fresno Division

May 25, 2023, Decided

Case No. 22-12056-B-13

**Reporter**

651 B.R. 873 *; 2023 Bankr. LEXIS 1385 **; 121 Fed. R. Evid. Serv. (Callaghan) 2067; 2023 WL 4174065

In re SHANNON HAGER, Debtor.

**Subsequent History:** As Amended June 26, 2023.

**Prior History:** DCN PK-2.

## Case Summary

### Overview

HOLDINGS: [1]-The movant's motion to annul the automatic stay under *11 U.S.C.S. § 362(d)(1)* to validate his purchase of real property at a foreclosure sale and to allow him to proceed with his unlawful detainer action was denied because the sale became final when the automatic stay was in effect and *Cal. Civ. Code § 2924h(c)* could not be invoked to finalize the sale to the pre-petition date of the sale because the Trustee's Deed was recorded before the expiration of the 45-day bid period.

### Outcome
Motion denied.

**Counsel: [**1]** Patrick Kavanagh, LAW OFFICES OF PATRICK KAVANAGH, Bakersfield, CA, for Ian McGilvray, Movant.

Andrew J. Christensen, LAW OFFICES OF ANDREW J. CHRISTENSEN, P.C., Oakland, CA, & Robert S. Williams, WILLIAMS & WILLIAMS, INC., Bakersfield CA, for Shannon Hager, Debtor.

**Judges:** René Lastreto II, United States Bankruptcy Judge.

**Opinion by:** René Lastreto II

## Opinion

### [*877]  AMENDED MEMORANDUM RULING ON MOTION TO ANNUL STAY

RENÉ LASTRETO II, Bankruptcy Judge:

California's nonjudicial foreclosure system is designed to provide the lender-beneficiary with an ine **[*878]** xpensive and efficient remedy against a defaulting borrower, while protecting the borrower from wrongful loss of the property and ensuring that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser. *Moeller v. Lien, 25 Cal. App. 4th 822, 830, 30 Cal. Rptr. 2d 777 (1994)*.

651 B.R. 873, *878; 2023 Bankr. LEXIS 1385, **1

My, how things change.

Ian McGilvray ("McGilvray") moved to annul the automatic stay under *11 U.S.C. § 362(d)(1)* to validate his purchase of real property located at 2313 Sycamore Lane, Pine Mountain Club, CA 93222 ("Property") at a foreclosure sale, and to allow him to proceed with his unlawful detainer action in Kern County Superior Court, entitled *Giuliana Vista GP v. Shannon Hager, et al.*, case no. BCL-23-010025 ("Unlawful Detainer Action").[1] Dckt. 44. McGilvray also **[**2]** requested waiver of the 14-day stay of *Fed. R. Bankr. P. ("Rule") 4001(a)(3)*. *Id.*

Shannon Hager ("Debtor") timely opposed and McGilvray replied. Dckt. 58-59, 61-64.

At the hearing on May 17, 2023, the parties presented oral argument and the court took the matter under submission. Dckt. 65. Under *11 U.S.C. § 362(e)* and for good cause, the court ordered continuation of the automatic stay through July 14, 2023, unless terminated by further order of the court. *Id.*

Applying the amended California foreclosure statutes and weighing the factors at play when considering a request to annul the stay, the court finds annulment inappropriate and DENIES the motion.

I. <u>FACTS</u>

In early November 2022, Property was Debtor Shannon Hager's residence. She lived there for 24 years. Dckt. 62. Her sister and her 75-year-old mother with declining health also reside there. *Id.* Property, which is in one of the mountain communities in Tejon Pass in southwestern Kern County, was encumbered by a Deed of Trust in favor of Flagstar Bank ("Flagstar"). Due to the COVID-19 outbreak, Ms. Hager's employment and that of her sister and daughter, were interrupted. *Id.* Earlier, she had difficulty making payments to Flagstar. *Id.* So, Flagstar agreed to forbear collection of some payments. **[**3]** But due to Ms. Hager's employment situation, she could not qualify for a loan modification. *Id.* Flagstar rejected Ms. Hager's tender of $10,000 six months earlier and was foreclosing.

McGilvray has been in the real estate business for years and has purchased properties at foreclosure sales before. Dckt. 48. He is also familiar with the "multiple steps" foreclosing parties have to take to foreclose on certain properties including allowing for sales to "non-profits." *Id.*

McGilvray purchased Property at the nonjudicial foreclosure sale for $164,512.71 on November 7, 2022. Dckt 48. Multiple parties submitted notices of intent to bid on the Property from November 10 to 21, 2022, but it is undisputed that no bids were received. *Ex. A*, Dckt. 63. The foreclosure trustee, Prober & Rafael ("Prober"), executed the *Trustee's Deed Upon Sale* ("Trustee's Deed") on November 23, 2022 and sent it to McGilvray. *Ex. A*, Dckt. 49.

On December 1, 2022, 21 days after the foreclosure sale, Debtor filed chapter 13 bankruptcy. Dckt. 1. She says she did not know of the foreclosure sale until someone claiming to be the owner of Property called her the day after Thanksgiving, **[*879]** 2022. Dckt. 62. The day after Debtor filed **[**4]** her bankruptcy case, McGilvray submitted the Trustee's Deed to the Kern County recorder's office who recorded it that day. *Ex. A*, Dckt. 49. McGilvray claims he had no knowledge of the bankruptcy at that time. Dckt. 48. McGilvray initiated the Unlawful Detainer Action about one month later. *Ex. B*, Dckt. 29. According to McGilvray's attorney, the Unlawful Detainer Action has been dismissed.

Debtor valued Property in her schedules at $426,600 and listed Flagstar as the mortgagee with a secured claim of $177,863.79. Dckt. 18. Flagstar's treatment under the proposed plan is to be paid as though the foreclosure sale did not occur. Dckt. 17. Notably, neither McGilvray nor Giuliana Vista were listed as creditors in the schedules or the master address list. Dckt. 1, 3, 18.

On March 1, 2023, McGilvray filed a motion for relief from the automatic stay under *11 U.S.C. § 362(d)(1)* and *(d)(2)*. Dckt. 27; PK-1. The court granted the motion without retroactive relief because it was not requested. Dckt.

---

[1] McGilvray is one of the partners in Giuliana Vista ("Giuliana Vista"). Dckt. 32.

651 B.R. 873, *879; 2023 Bankr. LEXIS 1385, **4

37. The court directed McGilvray to prepare the order, which was to be approved by Debtor's counsel, but an order is not yet submitted.

McGilvray now seeks to annul the stay on two grounds. Dckt. 44. First, he contends California **[**5]** law allows the post-petition recording of the Trustee's Deed to relate back to the date of the sale. Since notices of intent to bid were submitted, McGilvray contends the Trustee's Deed will be deemed perfected as of the date of the sale under *Cal. Civ. Code § 2924h(c)* if it is recorded within 60 days of the sale, as it was here. Dckt. 46. Second, McGilvray contends the *Fjeldsted* balancing test supports annulling the automatic stay. *Id.*; *see* *Fjeldsted v. Lien (In re Fjeldsted), 293 B.R. 12, 23 (B.A.P. 9th Cir. 2003)*.

Debtor opposes, first, because the foreclosure sale was void as a matter of law for violating the automatic stay. Under California law, Debtor argues the trustee's sale was not final before the bankruptcy was filed. Dckt. 61. Second, Debtor contends the *Fjeldsted* factors do not support annulling the stay. *Id.* Neither party requested discovery. Both parties consented on the record to the court taking this matter under submission and ruling based on the existing record.

## II. JURISDICTION

The United States District Court for the Eastern District of California has jurisdiction of this civil proceeding by virtue of *28 U.S.C. § 1334(b)* because it arises under title 11 and in a case under title 11 of the United States Code. The District Court has referred this matter to this court under *28 U.S.C. § 157(a)*. This is a "core" proceeding **[**6]** under *28 U.S.C. § 157(b)(2)(G)*.

## III. ISSUES

1. Whether the post-petition finalizing of a pre-petition foreclosure sale subject to overbid under *Cal. Civ. Code ("CC") § 2924m(c)* violated the automatic stay of *11 U.S.C. § 362(a)*.

2. If the automatic stay does apply, whether to annul the automatic stay under applicable law.

## IV. DISCUSSION

### A. Important General Concepts

A bankruptcy petition operates as a stay applicable to all parties and prevents, among other things, any act to obtain possession of property of the estate. *11 U.S.C. § 362(a)(3)*. The stay does not apply to any act to perfect an interest in property to the extent that the trustee's rights are subject to perfection under *11 U.S.C. § 546(b)*. That section permits an entity who acquires **[*880]** rights to property pre-petition to perfect its interest in property post-petition. *In re Stork, 212 B.R. 970, 971 (Bankr. N.D. Cal. 1997)*.

The Debtor bears the ultimate burden of proving that the request for retroactive relief from the stay should be denied. *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.), 129 F.3d 1052, 1055 (9th Cir. 1997)*.

State law determines the property rights of the parties, and whether those rights are obtained pre-or post-petition. *Butner v. United States, 440 U.S. 48, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979)*. We must "look to state law to determine property interests of the debtor." *Eden Place LLC v. Perl (In re Perl), 811 F.3d 1120, 1127 (9th Cir. 2016)*. That said, filing bankruptcy cannot give a debtor a greater interest in an asset than that which she owned pre-bankruptcy. *Gendreau v. Gendreau (In re Gendreau), 122 F.3d 815, 819 (9th Cir. 1997)*.

In interpreting California law, *CC § 4* requires **[**7]** the Civil Code "to be liberally construed with view to effect its objects and to promote justice." *Blevins v. Palmer, 172 Cal. App. 2d 324, 327, 342 P.2d 356, 358 (1959)* ("[P]rovisions of the Civil Code dealing with transfers of real property are, as required by *section 4*, to be 'liberally construed with a view to effect its objects.'") (citations omitted). In the case of substantially similar existing statutes, the Civil Code shall be construed as a continuation, rather than as a new enactment. *CC § 5*.

651 B.R. 873, *880; 2023 Bankr. LEXIS 1385, **7

Words and phrases are construed according to their context and the approved usage, but technical words and phrases are to be construed according to peculiar and appropriate meaning or definition. *CC § 13*. *Los Angeles Cnty. v. Frisbie, 19 Cal. 2d 634, 639, 122 P.2d 526, 529 (1942)* ("While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious design of the law should not be sacrificed to a literal interpretation of such language."), citing *In re Haines, 195 Cal. 605, 612, 234 P. 883, 885-86 (1925).*

B. Prior California law

California substantially modified its foreclosure scheme in 2020, effective January 1, 2021 through January 1, 2026.[2] Since then, it has been further amended and the sunset has been extended to January 1, 2031.[3]

Under former California law in effect through the end of 2020, the analysis here would have been relatively **[**8]** straightforward. A foreclosure sale occurred before the bankruptcy was filed. The sale was deemed final on the date of the foreclosure sale. *CC § 2924h(c) (2020).*[4] A timely recorded trustee's deed post-petition would have related back to the date of the sale. *Id.* Debtor would have possessed only bare legal title to the Property on the petition date and Debtor's equitable title would have been extinguished whether or not a trustee's deed had been recorded before the bankruptcy. Stay relief would not have been required to record the trustee's deed under *§ 362(b)(3)* as a post-petition perfection **[*881]** of the pre-petition interest in Property. The sale would not be avoidable because the trustee's rights to avoid the transfer under *11 U.S.C. §§ 544(a)* or *549* are subordinate to perfection of pre-petition interests under *11 U.S.C. § 546(b).*[5]

Prior to January 1, 2021, *CC § 2924h(c)* controlled finality of the sale and perfection. That provision provided that a trustee's sale "shall be deemed final upon the acceptance of the last and highest bid and shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 15 calendar days after the sale . . ." *CC § 2924h(c)* (2020).

Bankruptcy courts quickly established the "ground rules" for invoking the **[**9]** previous version of *CC § 2924h(c)*. A foreclosure sale commenced after a bankruptcy filing was void notwithstanding former *CC § 2924h(c)*. *Blatnick v. Sanders (In re Sanders), 198 B.R. 326, 327-28 (Bankr. S.D. Cal. 1996)* ("*[CC] § 2924h(c)* properly may only be invoked, if at all, where there is a valid foreclosure sale which occurs pre-petition.").[6] If "the gavel falls" at the foreclosure sale against the debtors pre-petition, the sale is finalized and the debtors possess only bare legal title, which "is of no value to the estate." *Davisson v. Engles (In re Engles), 193 B.R. 23, 25, 27-28 (Bankr. S.D. Cal. 1996)* (citations omitted). If the trustee's deed resulting from a pre-petition foreclosure sale was recorded within the then-applicable 15-days after the sale, the recordation of the trustee's deed did not violate the automatic stay under *11 U.S.C. § 362 (b)(3)*. *In re Garner, 208 B.R. 698, 701 (Bankr. N.D. Cal. 1997)*;[7] *Bebensee-Wong v. Fannie Mae, 248 B.R. 820, 823 (B.A.P. 9th Cir. 2000)* (holding the automatic stay is not violated with a timely post-petition recording of a trustee's deed upon a pre-petition sale); *cf. In re Stork, 212 B.R. at 972* (although the post-petition

---

[2] Senate Bill ("SB") 1079, Cal. 2019-20 Reg. Sess. (eff. Jan. 1, 2021)

[3] Assembly Bill ("AB") 175, Cal. 2021-22 Reg. Sess. (eff. Jan. 1, 2022); AB 1837, Cal. 2022-23 Reg. Sess. (eff. Jan. 1, 2023). At the time this case was filed and the salient facts here occurred, the relevant California Civil Code in effect from Jan. 1, 2022 through Dec. 31, 2022 was applicable (AB 175). Unless otherwise indicated, references to the Civil Code are to this 2022 version.

[4] SB 1277, Cal. 2003-04 Reg. Sess. (eff. Jan. 1 2005—Dec. 31, 2020).

[5] This is a chapter 13 case. The debtor's lingering "rights" post-petition would be defined by *§§ 1302, 1303,* and *1306(b).*

[6] The *Sanders* court annulled the automatic stay because of the debtor's bad faith. *Sanders, 198 B.R. at 329-30.*

[7] The *Garner* court noted if the recording of the trustee's deed occurred more than 15 days after the foreclosure sale, the automatic stay would be violated. *Garner, 208 B.R. at 701.*

651 B.R. 873, *881; 2023 Bankr. LEXIS 1385, **9

recording of pre-petition trustee's deed outside of then-15-day relation back window violated the stay, annulment was appropriate because purchaser qualified for protection under *11 U.S.C. § 549(c)*).

This approach has been applied on numerous occasions. *Turturici v. Nat'l Mortg. Servicing, LP, No. CIV-S-10-2853 KJM, 2011 U.S. Dist. LEXIS 109242, 2011 WL 4480169 (E.D. Cal. Sep. 24, 2011)*; *Edwards v. Wells Fargo Bank, N.A. (In re Edwards), 454 B.R. 100 (B.A.P. 9th Cir. 2011)*; *In re Lucore, No. SC-12-1604-JuBaPa, 2013 Bankr. LEXIS 2498, 2013 WL 2367800 (B.A.P. 9th Cir. May 30, 2013)*; *In re Shirazi, 2013 U.S. Dist. LEXIS 85654, 2013 WL 3070996 (Bankr. C.D. Cal. June 18, 2013)*; *In re Richter, 525 B.R. 735 (Bankr. C.D. Cal. 2015)*; *In re Svacina, 618 B.R. 852 (Bankr. C.D. Cal. 2020)*.

This relative stasis was significantly upset in 2020.

C. Current California law

When California amended its foreclosure scheme in 2020, effective **[**10]** January 1, 2021, certain contingent overbid rights were given to any "prospective owner-occupant," "eligible tenant buyer," and "eligible bidder."[8] The statutory scheme for determining sale finality and overbid procedure, if applicable, was expanded by enacting *CC § 2924m(c)*. **[*882]** *CC § 2924h(c)* was also amended to extend the relation back period, first to 18 days, and then to 21 days beginning in 2022.[9] This relation back period can be further extended under certain circumstances.

Under *CC § 2924m(c)*, if a foreclosure sale of a real property containing 1-4 residential units is completed and the prevailing bidder is a prospective owner-occupant as defined in *CC § 2924m(a)(1)*, then the sale is final, and that person will immediately take title to the property. *CC § 2924m(c)(1)*. If the prospective owner-occupant records their trustee's deed within 21 days of the sale, then the sale will be deemed final on the foreclosure sale date, and the trustee's deed perfected as of 8 a.m. on the actual date of the sale. *CC § 2924h(c)*.

If the prevailing bidder is not a prospective owner-occupant, then a 15-day window opens after the sale. While the window is open, eligible third parties may submit bids or notices of intent to bid, and the sale will not be deemed final until the earliest **[**11]** of one of the conditions specified in *CC § 2924m(c)(1) through (c)(4)* are satisfied.

Within 48 hours of the sale, the foreclosing trustee is required to post facts on the internet website set forth in the notice of sale: (1) the date on which the foreclosure sale took place; (2) the amount of the last and highest bid at the sale; and (3) an address at which the trustee can receive documents sent via U.S. mail and overnight delivery. *CC § 2924m(d)(1)*.[10] The purpose of this posting is to inform prospective eligible bidders of the sale and to provide them with an opportunity to bid or submit a notice of intent to bid.[11]

If no bids or notices of intent to bid are received by the foreclosing trustee by the 15th day, then the window closes. The sale is final on the 15th day after the foreclosure sale. *CC § 2924m(c)(2)*. If the trustee's deed is recorded by the 21st day after the sale, then the sale will be deemed final and perfected as of 8:00 a.m. on the date of the sale. *CC § 2924h(c)*.

If, however, a representative of all eligible tenant buyers submits a bid that (i) matches the foreclosure sale price, (ii) is sent to the trustee by certified mail, overnight delivery, or another method allowing confirmation of the delivery

---

[8] SB 1079 (2020).

[9] AB 175 (2021).

[10] This provision has been re-lettered to *CC § 2924m(e)(1)* as of Jan. 1, 2023. AB 1837 (2022).

[11] An "eligible bidder" is broadly defined to include eligible tenant buyers, prospective owner-occupants, and certain types of nonprofit associations, nonprofit corporations, cooperative corporations, limited partnerships, limited liability companies, community land trusts, and limited-equity housing cooperatives, as well as the state, the Regents of the University of California, a county, city, district, public authority, or public agency, and any other political subdivision or public corporation in the state. *CC § 2924m(a)(3)*.

651 B.R. 873, *882; 2023 Bankr. LEXIS 1385, **11

date, and (iii) such bid is received by the **[**12]** trustee before 5:00 p.m. on the 15th day after the foreclosure sale (while the window is open), then the sale is immediately deemed final and the eligible tenant buyers will take title to the property. *CC § 2924m(c)(3)*. This provision essentially operates as a right of first refusal for tenants. Under this scenario, if the eligible tenant buyers' trustee's deed is recorded within 60 days, then the sale will be deemed final on the date the bid is submitted and deemed perfected as of 8:00 a.m. on the date of the foreclosure sale. *CC § 2924h(c)*.

Alternatively, during the same 15-day window, any current tenant in the property and all other eligible bidders can submit a higher offer than the foreclosure sale **[*883]** price or a non-binding notice of intent to bid. *CC § 2924m(c)(2)*. Should either of these occur, an additional window of time opens lasting until the 45th day after the foreclosure sale. *Id*.

While this 45-day window is open, a representative of all current tenants can match the sale price to have it immediately deemed final. *CC § 2924m(c)(3)(A)*. The tenant will immediately take title to the property. If the deed is recorded within 60 days of the foreclosure sale, then the sale will be deemed perfected as of 8:00 a.m. on the date of the foreclosure **[**13]** sale. *CC §§ 2924m(c)(3)(B), 2924h(c)*.

On the other hand, if an eligible bidder who timely provided a notice of intent to bid to the trustee in the first 15-day window submits a bid that exceeds the foreclosure sale price within the 45-day window, the sale is deemed final at the conclusion of the 45-day window. *CC § 2924m(c)(4)(B)*. The eligible bidder with the highest offer will take title to the property. Relation back under *CC § 2924h(c)* is not in the statute and is not applicable. More on this later.

Lastly, if, by the 45th day at 5:00 p.m., no eligible bidders or eligible tenant buyers have submitted bids pursuant to their timely notices of intent to bid, then the sale will be final at the end of the 45th day, and the last, highest bidder at the initial foreclosure sale auction will take title to the property. *CC § 2924m(c)(4)(A)*.

D. The Sale Finalized Post-Petition and Violated the Stay

The last scenario describes this dispute. The foreclosure sale occurred on November 7, 2022. *Ex. A*, Dckt. 49. Since McGilvray is an investor and not a prospective owner-occupant, a 15-day period to overbid opened from the date of the sale.

Several eligible bidders submitted notices of intent to bid during the 15-day window. *Ex. A*, Dckt. 63. These notices of intent to bid **[**14]** opened a 45-day window running from the date of the sale in which these eligible bidders could submit a bid exceeding the foreclosure sale price and comply with other requirements. No bids were received.[12] Thus, the sale became final on the 45th day at 5 p.m.: December 22, 2022. By then, Debtor had already filed bankruptcy. The automatic stay was in effect. Finalizing the sale on or after that date violates the stay. Any violation of the stay is void and without effect. *Sanders, 198 B.R. at 328* (citing *In re Stringer, 847 F.2d 549 (9th Cir. 1988)*; *In re Schwartz, 954 F.2d 569 (9th Cir. 1992)*; *In re Krueger, 88 B.R. 238, 241 (B.A.P. 9th Cir. 1988)*). Therefore, the sale is void for violating the automatic stay.

McGilvray recorded the Trustee's Deed on December 2, 2022, which is 20 days before the expiration of the 45-day window.[13] At that time, such perfection could not be accomplished because the sale had not yet been "deemed final." *CC § 2924m(c), (c)(4)*.

Notwithstanding *CC § 2924m(c)(4)*, McGilvray argues he qualifies under *CC § 2924h(c)* to have the sale deemed final upon the foreclosing trustee's acceptance of McGilvray's last and highest bid, and to have his interest deemed perfected as of 8 a.m. **[*884]** on the actual date of the sale because the Trustee's Deed was recorded within 60 days. Dckt. 46.

_____

[12] Debtor's counsel argues that bids may have been received if McGilvray had not prematurely recorded the Trustee's Deed 25 days after the sale, and instead allowed the full 45-day period to run its course. That is speculative on this record.

[13] It is also 25 days after the foreclosure sale, which is outside the default 21-day "relation back" period under *CC § 2924h(c)*.

651 B.R. 873, *884; 2023 Bankr. LEXIS 1385, **14

In response, Debtor emphasizes the distinction between a sale being "deemed final" and "deemed perfected." [**15] Dckt. 61. Debtor contends that *CC § 2924m(c)* prevails over *§ 2924h(c)* as to when the sale is deemed final. Debtor also asserts that the 60-day relation back period for perfection applies only if there is a notice of intent to bid submitted by an eligible tenant buyer. Since the 60-day relation back period did not apply, Debtor maintains that McGilvray only had a 21-day period under *CC § 2924h(c)* to have the perfection relate back to the date of the sale.

McGilvray replies that Debtor's interpretation is a radical departure from the pre-existing law and a departure from the cases that have interpreted the law. Dckt. 59. Although the court agrees that *CC § 2924m* is a radical departure from the prior precedent, the legislature has changed when a foreclosure sale is deemed final for affected properties.

The distinction between finality and perfection is important. "Deemed final" means the point in time in which the foreclosure sale is considered completed and equitable title transfers from the mortgagor/homeowner to the buyer, and when a sale is "deemed final" is controlled by *CC §§ 2924m(c)* and *2924h(c)*. Prior to the enactment of *§ 2924m(c)*, foreclosure sales were "deemed final" at the time of the sale under *CC § 2924h(c)*. *Engles, 193 B.R. at 26*; *Sanders, 198 B.R. at 327*; *Garner, 208 B.R. at 700*; *Bebensee-Wong, 248 B.R. at 822*. But that is no longer the rule. Now, [**16] *CC § 2924m(c)* controls finality except in certain circumstances where *CC § 2924h(c)* is applicable. *See, e.g., Students v. Clear Recon Corp.*, No. 56202200566272CUORVT, 2022 WL 17541903 (Cal.Super. Nov. 4, 2022) ("[T]he general rule about when a trustee's sale is deemed final is not applicable in the present case, which instead is governed by *Civ. Code § 2924m* due to Plaintiffs attempt to make an overbid pursuant to *§ 2924m*.")

Meanwhile, the point in time in which a sale is "deemed perfected" is controlled by CC *§ 2924h(c)*. The difference is that the 60-day relation back period for having a sale both "deemed final" and "deemed perfected" is only applicable if notices of intent to bid are received from eligible tenant buyers for properties with 1-4 residential units. In all other cases, the finality and perfection of a sale will occur under *§ 2924h(c)* if the deed is recorded within 21 days. Since CC *§ 2924h(c)* specifically references *CC § 2924m(c)(3)*, and not *(c)*, *(c)(2)*, or *(c)(4)*, Debtor contends, and the court agrees, that when a sale is subject to the 45-day overbid window, the 60-day relation back period of CC *§ 2924h(c)* only applies to eligible tenant buyers, rather than eligible bidders and prospective owner occupants. It is undisputed that McGilvray is not a tenant buyer.

*CC § 2924h(c)* states, in relevant part:

> For the purposes of this subdivision, the trustee's sale shall be deemed final upon the acceptance of the last and highest bid and [**17] shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 21 calendar days after the sale, or the next business day following the 21st day if the county recorder in which the property is located is closed on the 21st day. If an eligible bidder submits a written notice of intent to bid **pursuant to *paragraph (3) of subdivision (c) of Section 2924m***, the trustee's sale shall be **deemed perfected** as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 60 calendar days after the sale or the next business day following the 60th day if the county recorder [*885] in which the property is located is closed on the 60th day . . .

*CC § 2924h(c)* (emphasis added).

First, the relation back period expired after the after 21st day. The 60-day window is only applicable for bids or notices of intent to bid that were submitted pursuant to *CC § 2924m(c)(3)*, which is specific to eligible tenant buyers only. *CC § 2924h(c)* appears to be ambiguous at first glance because it refers to an "eligible bidder" while citing to *CC § 2924m(c)(3)*, rather than *(c)*, *(c)(2)* or *(c)(4)*.

If a general statute states that its provisions govern except as otherwise expressly provided by statute, a specific statute governing the same matter in a particular context will be treated [**18] as an express exception to the general statute. *Williams v. Chino Valley Indep. Fire Dist., 61 Cal. 4th 97, 104-109, 186 Cal. Rptr. 3d 826, 347 P.3d 976 (2015)*. When a statute with reference to one subject contains a given term or provision, the omission of that

651 B.R. 873, *885; 2023 Bankr. LEXIS 1385, **18

term or provision from another part of the same statute, or from a similar statute concerning the related subject, is significant to show that a different legislative intent existed. *Dep't Homeland Sec. v. MacLean, 574 U.S. 383, 391, 135 S. Ct. 913, 190 L. Ed. 2d 771 (2015)*; *Kabran v. Sharp Mem'l Hosp., 2 Cal. 5th 330, 344, 212 Cal. Rptr. 3d 361, 386 P.3d 1159 (2017)*. If the legislature intended to allow all eligible bidders to take advantage of the 60-day relation back period, then it could have referenced the bidding procedure in *(c)*, *(c)(2)*, or *(c)(4)*, rather than specifically to *(c)(3)*.

The Assembly Judiciary Committee Report[14] on SB 1079 indicates that the legislative purpose of SB 1079, predecessor to AB 175, was to "curb further purchases of single-family homes at foreclosure auctions by companies that then operate them as rental properties." SB 1079 (Skinner), Cal. Assemb. Judiciary Comm. Report (Aug. 12, 2020).[15] This report's description of the bidding procedure under *CC § 2924m(c)(3)* and *(c)(4)* when notices of intent to bid or bids are submitted and a 45-day window opens makes clear that the relation back provision was intended to only apply to eligible tenant buyers:

> g) During the 45-day window, **a representative of all of the current tenant[s] in the house again has a right [**19] of first refusal to match the foreclosure sale price. If, at any time during the 45 days, this representative matches the foreclosure sale price, the sale is immediately deemed final and the tenant will take title to the property**.
> h) During the same 45-day window, any current tenant in the property and all other eligible bidders can submit higher offers than the foreclosure sale price.
> i) If, during the 45 days, one or more of the eligible bidders submits a bid that exceeds the foreclosure sale price, the sale is deemed final at the conclusion of the 45 days, and the eligible bidder that made the highest offer will take title to the property.
>
> **[*886]** j) **Otherwise, the sale is deemed final at the conclusion of the 45 days, and the party that made the last and highest offer at the initial foreclosure auction will take title to the property**.

*Id.* at 3-4 (emphasis added).

Second, *CC § 2924m(f)*[16] states that "[t]his section shall prevail over any conflicting provision of *Section 2924h*." Contemporaneously, CC *§ 2924m(f)*[16] provides, "[e]xcept as specifically provided in *Section 2924m*, in the event that this section conflicts with any other statute, then this section shall prevail." In the absence of these sections, CC *§ 2924h(c)* could reasonably be construed as applying **[**20]** the 60-day relation back period to all eligible bidders. But in the context of *CC § 2924m(c)*, which is controlling, eligible bidders include eligible tenant buyers and others, and the sale "shall not be deemed final until the earliest of the following: . . . [*(c)(1)-(c)(4)*]" *CC §§ 2924h(c)* and *2924m(c)*, therefore, appear to contain conflicting periods as to when the sale shall be deemed final for non-eligible tenant buyers attempting to use *CC § 2924h(c)* to invoke the relation back procedure. *CC §§ 2924m(f)* and *2924h(f)* resolve this conflict in favor of *CC § 2924m*. Therefore, the 60-day relation back period is reserved for eligible tenant buyers under *CC § 2924m(c)(3)*.

McGilvray argues that the focus on December 22, 2022—the 45th day after the foreclosure sale—is misplaced because McGilvray had equitable title subject to divestment by all three classes of persons who qualified under *§ 2924m(c)* at the time the last bid was taken. Dckt. 59.

---

[14] The court may consider statements in legislative committee reports concerning the statutory objects and purposes that are in accord with a reasonable interpretation of the statute as an aid in determining legislative intent. *S. Cal. Gas Co. v. Pub. Utils. Com., 24 Cal. 3d 653, 659, 156 Cal. Rptr. 733, 736, 596 P.2d 1149, 1152 (1979)*.

[15] The legislative committee documents for SB 1079 are available at https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201 920200SB1079 (visited May 23, 2023).

[16] This provision has been re-lettered to *CC § 2924m(h)* as of Jan. 1, 2023. AB 1837 (2022).

651 B.R. 873, *886; 2023 Bankr. LEXIS 1385, **20

This overstates his interest. Under CC *§ 2924h(c)* (even before the amendments), the foreclosure sale is not deemed perfected on the original sale date until the deed is recorded. Before the deed is recorded, the sale is neither "perfected" nor "deemed perfected" - it is just a sale. *Dr. Leevil, LLC v. Westlake Health Care Ctr., 6 Cal. 5th 474, 482, 241 Cal. Rptr. 3d 12, 431 P.3d 151, 155 (2018)*. Under the new statutes, McGilvray's purchase of Property at the foreclosure sale **[**21]** was not final until the 45th day after the sale.

In *Ford*, a bankruptcy court in the Central District of California dealt with the new version of *CC §§ 2924h* and ***2924m*** in a similar situation involving a pre-petition foreclosure sale with a post-petition recording. *In re Ford, No. 2:22-bk-13649-WB, 2022 Bankr. LEXIS 3545, 2022 WL 17742285 (Bankr. C.D. Cal. Dec. 15, 2022)*. There, two eligible bidders submitted notices of intent to bid within 15 days of the foreclosure sale. *2022 Bankr. LEXIS 3545, [WL] at *7*. As a result, the court found that CC *§ 2924h(c)* extended the time for relation back of the recordation to 60 days, and the sale was deemed final and set at 8:00 a.m. on the date of the sale. *Id.* Notably, neither of these eligible bidders were "eligible tenant buyers," so the court, in effect, applied *§ 2924h(c)* to all eligible bidders. *2022 Bankr. LEXIS 3545, [WL] at *6*; *see also*, *Exs.* 1-2, Dckt. 20-2, 20-3, Case No. 2:22-bk-13649-WB (Bankr. C.D. Cal.).

But *Ford* differs from the facts here for at least two reasons. There, the debtor did not raise the issue of when the sale became final under the new amendments to the foreclosure procedure. Also, the trustee's deed was recorded forty-nine (49) days after the foreclosure sale. *2022 Bankr. LEXIS 3545, [WL] at *1*. So, there was no question concerning finality of the sale.

 **[*887]** When the sale here became final on December 22, 2022, the automatic stay was in full force and effect. *§ 362(a)(3)*. **[**22]** Although the facts of this case mirror those in *Garner*, *Bebensee-Wong*, and related progeny, the legislature changed the date that the sale is deemed final by enacting *CC § **2924m**(c)*. Thus, instead, this case mirrors *Sanders* in that the sale became final post-petition:

> On the facts of this case, the Court holds that the foreclosure sale conducted postpetition is void, and recordation of the trustee's deed . . . cannot resuscitate the void sale by reliance on a state statute that would relate back the act to a time when it would not have been prohibited.

*Sanders, 198 B.R. at 329*.

Therefore, the sale became final under *CC § **2924m**(c)(4)* post-petition and is void. CC *§ 2924h(c)* cannot be used to finalize an incomplete sale to a time before the petition was filed. McGilvray does not qualify for the relation back effects of CC *§ 2924h(c)* as the statute was written in 2022.[17]

D. The *Fjeldsted* Factors Do Not Support Annulling the Stay

The court now turns to McGilvray's request to annul the automatic stay.

*11 U.S.C. § 362(d)(1)* allows the court to grant relief from the stay for cause, including the lack of adequate protection. "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case-by-case basis." *In re Mac Donald, 755 F.2d 715, 717 (9th Cir. 1985)*.

*11 U.S.C. § 362(d)(2)* allows the court **[**23]** to grant relief from the stay if the debtor does not have an equity in such property and such property is not necessary to an effective reorganization.

The Ninth Circuit Court of Appeals has warned that retroactive relief should only be "applied in extreme circumstances." *Mataya v. Kissinger (In re Kissinger), 72 F.3d 107, 109 (9th Cir. 1995)*, quoting *In re Shamblin, 890*

---

[17] Debtor's counsel has argued that two provisions of **CC § 2924m** establish Debtor's title to Property during these "open window" periods. That is incorrect. Both provisions, **subdivisions (f)** dealing with a trustor's title until the sale is deemed final, and **(l)** dealing with continued hazard insurance coverage until the sale is final became effective in 2023 and were not part of *§ **2924m*** in 2022 when the salient facts here occurred. *See CC § **2924m**(o)* (2023).

651 B.R. 873, *887; 2023 Bankr. LEXIS 1385, **23

*F.2d 123, 126 (9th Cir. 1989)*; *see also In re Aheong, 276 B.R. 233, 250 (B.A.P. 9th Cir. 2002)*. When deciding a motion to annul the automatic stay, the court may consider the *"Fjeldsted"* factors:

1. Number of filings;
2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
4. The Debtor's overall good faith (totality of circumstances test;
5. Whether creditors knew of the stay but nonetheless took action, thus compounding the problem;
6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
7. The relative ease of restoring parties to the status quo ante;
8. The costs of annulment to debtors and creditors;

 **[*888]**  9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative contract;

10. Whether, **[**24]**  after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
11. Whether annulment of the stay will cause irreparable injury to the debtor;
12. Whether stay relief will promote judicial economy or other efficiencies.

*Fjeldsted, 293 B.R. at 24-25*. One factor alone may be dispositive. *Id*. The two main factors focused on by courts are "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *In re Merriman, 616 B.R. 381, 387 (B.A.P. 9th Cir. 2020)*, quoting *Nat'l Envtl. Waste Corp., 129 F.3d at 1055*.

Weighing the *Fjeldsted* factors follows:

1. Number of filings: This appears to be Debtor's first bankruptcy filing in this district. This factor is inapplicable.

2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors: This factor is inapplicable since this is Debtor's first bankruptcy filing.

3. Extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser: McGilvray claims to be a bona fide, pre-petition purchaser of Property. At the time the Trustee's Deed was recorded, McGilvray **[**25]**  claims he did not have actual or constructive notice of the bankruptcy. Dckt. 46, 47. McGilvray contends he will be prejudiced if the stay is not annulled.

Meanwhile, Debtor contends that McGilvray will not be prejudiced if the stay is not annulled because he can get his money back from the sale and not enough time has passed for there to be any serious prejudice. Dckt. 58, 61. Additionally, the automatic stay was violated, so Debtor argues the sale is void as a matter of law. Since annulment is an extraordinary remedy in repeat-filing cases with legitimate harm to innocent third parties, this factor should support denying this motion. Further, Debtor claims that if the stay is annulled, she will suffer catastrophic financial ruin and lose over $250,000 in equity.

There are no facts suggesting McGilvray has transferred Property, or that any third party is affected if the stay is not annulled.

The focus of this factor is on harm or prejudice to third parties and creditors, including bona fide purchasers. It is unclear whether McGilvray can recover the money already paid. From McGilvray's previous motion, it appeared that the mortgagee has already been paid from the foreclosure sale proceeds. **[**26]**  It seems a claim for unjust enrichment in the proper forum may be an option. McGilvray may have claims to recover his funds from third parties on various tort or contract theories.

This factor weighs against annulment.

651 B.R. 873, *888; 2023 Bankr. LEXIS 1385, **26

4. Debtor's overall good faith (totality of the circumstances): McGilvray does not contend that Debtor or counsel misrepresented facts or engaged in egregious behavior. Dckt. 46. Debtor filed bankruptcy more than 15 days post-foreclosure, but less than 60 days after the sale. McGilvray contends that timing alone makes this factor support annulment.

The court disagrees. Debtor's largely uncontroverted declaration states she was made aware of the sale weeks after the foreclosure. Dckt. 62. No evidence was **[*889]** presented that she was aware of the sale date. It seems likely she received notice of the sale, but there is no proof of that on this motion. Nevertheless, given the delay before many sales are final under the new law, this factor does not support annulment.

5. Whether creditors knew of the stay but nonetheless acted, thus compounding the problem: McGilvray contends that he did not have knowledge of the bankruptcy at the time this case was filed. Dckt. 47. McGilvray's bankruptcy **[**27]** attorney declares that there was no record notice or constructive notice in the form of a recorded notice of bankruptcy. Dckt. 48. Movant was not listed as a creditor in Debtor's schedules. Although McGilvray recorded the Trustee's Deed and initiated the Unlawful Detainer Action post-petition, after learning of the bankruptcy, McGilvray filed a motion for relief from the automatic stay (PK-1), and then subsequently filed this motion to annul the stay.

In contrast, Debtor contends that McGilvray knew of the stay at the time the Trustee's Deed was recorded and at the time he filed the Unlawful Detainer Action. Dckt. 58, 61. Debtor suggests that the evidence proves he knew of the bankruptcy on the date it was filed and compounded the problem by recording the Trustee's Deed, giving a three-day notice to quit, initiating the Unlawful Detainer Action, and then waiting three months to file the first stay relief motion and four and one-half months to file this motion.

The court disagrees with Debtor here. There is nothing except speculation that McGilvray knew of the bankruptcy filing before he brought the Trustee's Deed to the Recorder's Office. He obviously subsequently learned of the bankruptcy, **[**28]** but he did not affirmatively act to seek stay relief for some months thereafter.[18]

As noted above, McGilvray was not listed in the bankruptcy schedules or master address list. The only evidence provided by Debtor is a declaration "on information and belief" that McGilvray knew about the bankruptcy before the Trustee's Deed was recorded and before the Unlawful Detainer Action was filed. Dckt. 62. However, non-expert witness testimony must be based on the personal knowledge of the witness. Fed. R. Evid. 602. Debtor's declaration fails to provide any credible evidence that McGilvray had knowledge of the bankruptcy.

This factor favors annulment on this record.

6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules: McGilvray contends that it is impossible to confirm a plan because no adversary proceeding has been filed. Dckt. 46. However, Debtor claims to be complying with the plan and is current on payments. Although the objection to plan confirmation was sustained earlier, the plan can be reconsidered or modified if this motion is denied.

Notwithstanding failure to list McGilvray as a creditor in this bankruptcy case, Debtor appears to have complied with the Bankruptcy **[**29]** Code and Rules. This factor weighs slightly against annulment.

7. The relative ease of restoring the parties to the status quo ante: McGilvray contends that that he cannot be compelled to give up his interest in Property without a repayment. Dckt. 46. The original lender has been paid, so an adversary **[*890]** proceeding would be necessary. In response, Debtor claims that it is easy to restore the parties to the status quo ante because McGilvray can be repaid because the sale is void. Dckt. 61.

---

[18] The court acknowledges McGilvray's counsel's representations supported by bankruptcy counsel's statements that there were ongoing settlement discussions for a time before motions were filed in this court.

651 B.R. 873, *890; 2023 Bankr. LEXIS 1385, **29

The *status quo ante* appears to be the period after the foreclosure sale but before the Trustee's Deed was recorded and the Unlawful Detainer Action initiated. The Unlawful Detainer Action is dismissed. However, under *CC § 2924m(c)(4)*, restoring Debtor to the *status quo ante* would result in Debtor possessing legal and equitable title in Property because the foreclosure sale was not final at the time of the bankruptcy.

True enough, it is likely some litigation between McGilvray and other parties may ensue. But when weighed here against Debtor's losses if annulment is granted, the court sees this factor slightly favoring denial of annulment.

8. The costs of annulment to the debtor and creditors: McGilvray claims the cost of **[**30]** annulment is the cost of an adversary proceeding. Dckt. 46. McGilvray contends this factor supports annulment but insists that it should be limited due to the extensive facts of this case.

In contrast, Debtor's asserted cost of annulment is $250,000 plus attorney's fees, which is the equity lost as result of the foreclosure sale. Dckt. 61-62. Debtor also says that there is no cost for McGilvray. Instead, she asserts, McGilvray would receive a $250,000 windfall from Debtor's equity in Property if the sale were to be finalized and perfected.

Debtor has other creditors in this case. The successful confirmation of a plan and repayment of creditors is enhanced if annulment is denied. Otherwise, Debtor, her mother, and sister will no longer have a residence and the possible payment to creditors will be diminished.

Even if she prevails on this motion, Debtor must pay off Flagstar to keep her residence. Any right Debtor had to reinstate the loan with Flagstar vanished five days before the sale. *CC § 2924c(a)(1)*, *(e)*. She has no windfall.

This factor weighs against annulment.

9. How quickly creditors moved for annulment, or how quickly the debtor moved to set aside the sale or contract: In the beginning of this **[**31]** case, there were some settlement negotiations and neither party took any action. McGilvray initially moved for relief from stay on March 1, 2023, which is four months post-petition. PK-1.

Debtor claims that this delay is inexcusable; however, Debtor also acknowledges that the unfamiliarity with the new statutory scheme likely delayed the filing of the stay relief motion. Debtor claims she did not know about the foreclosure sale until late November 2022. She filed this case on December 1, 2022. Debtor moved expeditiously.

This factor weighs slightly against annulment.

10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved to expeditiously gain relief: McGilvray claims he did not have notice of the bankruptcy. Dckt. 46-47. True enough, he was not listed in the schedules or the master address list. Although McGilvray did initiate the Unlawful Detainer Action, he has not prosecuted that case and it has been dismissed. *Id.*

In response, Debtor speculates McGilvray was likely informed of the bankruptcy by the foreclosure trustee on the petition date, thus prompting him to record the Trustee's Deed the next day. **[**32]** That recording also occurred before the 45-day period **[*891]** alleged to be applicable under *CC § 2924h(c)*. Also, McGilvray's declaration was silent as to when he learned of the bankruptcy. The declaration says McGilvray had no knowledge of the bankruptcy at the time of recording but makes no mention of whether he knew about it at the time he filed the Unlawful Detainer Action. Given the 4-month delay in filing the first stay relief motion, this factor weighs against annulling the stay.

11. Whether annulment of the stay will cause irreparable injury to the debtor: McGilvray says this factor supports annulment because Debtor's right to reorganize was greatly diminished at 8:01 a.m. on November 7, 2022 because the foreclosure sale took place later that day. Dckt. 46. McGilvray's position implies that Debtor could not have filed bankruptcy before the sale but after 8:01 a.m. on that same day, causing it to occur post-petition, and then use *CC*

651 B.R. 873, *891; 2023 Bankr. LEXIS 1385, **32

§ 2924h(c) to relate the sale back to before the petition date. However, this approach is expressly rejected in _Sanders. 198 B.R. at 329_

Debtor will undoubtedly suffer irreparable injury if the stay is annulled as discussed above. This factor weighs against annulment.

12. Whether stay relief will promote **[**33]** judicial economy: Annulling the stay would promote judicial economy by avoiding litigation in the bankruptcy case. But, as mentioned, McGilvray has rights to prosecute if he so chooses. This factor supports annulling the stay.

The court concludes that the _Fjeldsted_ factors do not support annulling the automatic stay. The result may be different if the sale had finalized before the petition date.

V. CONCLUSION

The foreclosure sale was finalized post-petition and is thus void as a violation of the automatic stay. _CC § 2924h(c)_ cannot be invoked to finalize or perfect the sale to the pre-petition date of the sale. Since notices of intent to bid were submitted, finality is controlled by CC § **2924m**(c). McGilvray is not an eligible tenant buyer that bid on Property pursuant to CC § **2924m**(c)(3), so he does not qualify for the 60-day relation back provision for perfection under CC § 2924h(c). Additionally, the Trustee's Deed was recorded before the expiration of the 45-day bid period under CC § **2924m**(c)(4). The automatic stay was therefore applicable when the sale became final. McGilvray violated the stay when he recorded the Trustee's Deed. The _Fjeldsted_ factors when properly weighed and considered do not justify annulment of the stay. Accordingly, the motion to annul the automatic stay is DENIED.

A separate order shall issue.

Dated: 06/26/2023

By the Court

/s/ René Lastreto II

René Lastreto II, Judge

United States Bankruptcy Court

DCN PK-2


**ORDER ON MOTION TO ANNUL STAY**

On May 17, 2023, a hearing was held on Movant Ian McGilvray's motion to annul the automatic stay. Appearances **[**34]** were noted in the record. Following oral argument, the parties submitted the matter for decision. After careful consideration of the parties' oral arguments, pleadings, and evidence submitted in support of and opposition to the motion, the court issued its ruling on the motion to annul stay on May 25, 2023.

In accordance with the ruling and for cause appearing,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Ian McGilvray's motion to annul the automatic stay is **DENIED**.

Dated: May 25, 2023

By the Court

/s/ René Lastreto II

651 B.R. 873, *891; 2023 Bankr. LEXIS 1385, **34

René Lastreto II, Judge

United States Bankruptcy Court

---

**End of Document**

**RECORDING REQUESTED BY**
Jerald N. Marrs

**AND WHEN RECORDED MAIL TO**
Jerald N. Marrs
Claassen Marrs, P.C.
111 Deerwood Road, Suite 200
San Ramon, California 94583

APN: 055-350-011

CONTRA COSTA Co Recorder Office
DEBORAH COOPER, Clerk-Recorder
**DOC - 2020-0259947**
Monday, Nov 2, 2020 15:00:00

**Total Paid: $20.00**        Receipt#: 202003917324

0000 - Public                                    210 / CPPC / 1-3

Space above line for Recorder's Use
NO TAX DUE

### GRANT DEED

The undersigned Grantor declares under the penalty of perjury that the following is true and correct.

Documentary transfer tax is NONE. Not pursuant to a sale. No consideration. A transfer into a revocable trust. Rev. & Tax Code Section 11930.

_____ Unincorporated area   X   City of Antioch

This transfer is exempt from the fee imposed by Gov. Code. Section 27388.1 because the property is a residential dwelling transferred to an owner-occupier.

This is a transfer into a revocable trust excludable from reassessment under Rev. & Tax Code Section 62(d).

FOR NO CONSIDERATION, GRANTOR MELISSA WILKERSON, a single person, as her sole and separate property, hereby GRANTS TO MELISSA WILKERSON, trustee of the MELISSA WILKERSON REVOCABLE TRUST dated June 19, 2020, that real property in the City of Antioch, County of Contra Costa, State of California, described in Exhibit "A" attached hereto and incorporated herein.

Commonly known as 1933 Grass Mountain Court, Antioch, CA 94509

APN: 055-350-011

Dated:  October 7, 2020

_____
MELISSA WILKERSON

Mail tax statement to 1933 Grass Mountain Court, Antioch, CA 94509

# ACKNOWLEDGMENT

*A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.*

State of California                    )
                                       )
County of Contra Costa                 )

On October 7, 2020, before me, C. A. Stafford, notary public, personally appeared

MELISSA WILKERSON, who proved to me on the basis of satisfactory evidence to be the

person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that

he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their

signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)

acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that

the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

C. A. STAFFORD
Notary Public – California
Contra Costa County
Commission # 2186749
My Comm. Expires Mar 17, 2021

_____
C. A. Stafford                                    (Seal)

Exhibit "A"

The land referred to is situated in the State of California, County of Contra Costa, City of Antioch, and is described as follows:

Lot 341 . as shown on the Map of Subdivision 7500, filed June 10, 1997 in Book 392, Page 49, Contra Costa County Records.

EXCEPTING THEREFROM:

All oil, gas, casinghead gasoline and other hydrocarbon and mineral substances below a point 500 feet below the surface of said land together with the right to take, remove , mine, pass through and dispose of all oil, gas, casinghead gasoline and other hydrocarbon and mineral substances, but without any right whatsoever to enter upon the surface of said land, as reserved in the Deed from Mary M. Hines, et al , recorded October 5, 1977, Book 8536, page 172, Official Records.

(Being APN 055-350-011)

This deed is made and accepted upon the Covenants, Conditions and Restrictions and other matters set forth in that certain Declaration of Restrictions recorded December 16, 1997, as Instrument No. 97-244267, Official Records of said county, all of which Covenants, Conditions and Restrictions and other matters are incorporated herein by reference to said Declaration of Restrictions with the same force and effect as though fully set forth herein.

# Exhibit E


### Fwd: 252-20242335 Wilkerson Bankruptcy Case No. 25-40564 CN

1 message

**General Email** <general@shepwoodlaw.com>                                                         Thu, May 8, 2025 at 10:27 AM
To: Andrew Christensen <andrew@californiahomelawyer.com>
Cc: Vincent Wood <vince@shepwoodlaw.com>

Andrew,
Please see the below. Vince asked that I send you a copy.

---------- Forwarded message ---------
From: **Michelle A. Mierzwa** <mmierzwa@wrightlegal.net>
Date: Wed, May 7, 2025 at 4:12 PM
Subject: 252-20242335 Wilkerson Bankruptcy Case No. 25-40564 CN
To: general@shepwoodlaw.com <general@shepwoodlaw.com>
Cc: SaveIt <SaveIt@wrightlegal.net>


Mr. Wood,

As we discussed, the foreclosure sale of the property was conducted at 9:14 am PT on April 1, 2025, prior to the filing of the above-mentioned bankruptcy case at 9:36 am PT on April 1, 2025. As a result of the delivery of a notice of intent to bid affidavit pursuant to Civil Code section 2924(c)(2), the 45-day period for post-sale bids was triggered, so the identity of the high bidder is not yet known. The identity of the high bidder will be determined at or after 5:00 pm on the 45th following April 1, which is May 16, 2025. The high bidder will either be Good Neighbor Homes LLC (the high bidder at the live auction on April 1, 2025) or Carl Dexter (the post-auction eligible bidder if he submits a bid in excess of the high bid by Good Neighbor Homes LLC on or before 5:00 pm on May 16, 2025). Pursuant to Civil Code section 2924m(c)(4) and Civil Code section 2924h(c), NBS Default Services LLC will issue the trustee's deed regarding the April 1, 2025 foreclosure sale once the identity of the high bidder has been determined as dictated by statute.


Based on the above circumstances, and the fact that the high bidder's identity is not yet known, NBS Default Services LLC can only provide the information and documents related to the current status of the completed foreclosure sale but cannot yet respond with respect to the identity of the final high bidder under Civil Code section 2924m. Attached please find informal production of the documents currently in the possession of NBS Default Services, LLC that are currently responsive to the Order for Production of Documents in the above-mentioned matter. The attached production is necessarily incomplete because the identity of the highest bidder cannot be determined under applicable statutes. However, NBS Default Services LLC will be able to provide a formal response with Declaration of Custodian following May 16, 2025. Documents subject to the attorney client privilege and/or work product privilege are subject to objection and will not be produced.


Please note that the list of properties that were scheduled for foreclosure sale on April 1, 2025 in Contra Costa County that is provided below is a list of the scheduled sales for the auction vendor, auction.com, but the only foreclosure sale that was scheduled and cried by auction.com on behalf of NBS Default Services LLC that day in Contra Costa was the first sale on the list regarding the subject property. The other sales at Contra Costa County that day were not related to NBS Default Services LLC, and the company has no other information about those other sales. In addition, the bid funds for the subject property were submitted by Good Neighbor Homes LLC by wire to the auction company, so there are no copies of cashier's checks to provide. The submission of funds via wire is identified on the Trustee Certificate of Sale/Receipt produced herewith. Auction.com is a separate company than NBS Default Services, LLC, and NBS does not have information about wires received by the company or the employees or auctioneers of the company aside from what is provided on the sale result spreadsheet and the Trustee Certificate of Sale/Receipt. It appears from the Trustee Certificate of Sale/Receipt that there were no other bidders aside from Good Neighbor Homes LLC for the live sale after the announcement of the minimum statutory bid for residential 1-4 property pursuant to Civil Code section 2924f(f).


Auction.com said the below is what they can provide us for Contra Costa sales that day:

| Listing Status | County | Street Address | City | State | Zip | Listing Sale Date | Listing Sale Time | Postponement to |
|---|---|---|---|---|---|---|---|---|
| **3rd Party Sale** | Contra Costa | 1933 GRASS MOUNTAIN CRT | ANTIOCH | CA | 94531 | 4/1/2025 | 9:00 AM | |
| **Revert** | Contra Costa | 181 BAYSIDE CT | RICHMOND | CA | 94804 | 4/1/2025 | 9:00 AM | |
| **Postponed** | Contra Costa | 1097 TEAL COURT | BRENTWOOD | CA | 94513 | 4/1/2025 | 9:00 AM | 5/13/2025 |
| **Postponed** | Contra Costa | 68 INLET DR | BAY POINT | CA | 94565 | 4/1/2025 | 9:00 AM | 5/13/2025 |
| **Postponed** | Contra Costa | 295 GLASGOW CIRCLE | DANVILLE | CA | 94526 | 4/1/2025 | 9:00 AM | 5/13/2025 |
| **Postponed** | Contra Costa | 121 AMADOR CT | OAKLEY | CA | 94561 | 4/1/2025 | 9:00 AM | 5/13/2025 |
| **Postponed** | Contra Costa | 5601 DOREMUS AVE | RICHMOND | CA | 94805 | 4/1/2025 | 9:00 AM | 6/10/2025 |
| **Postponed** | Contra Costa | 3201 MUIR CT | ANTIOCH | CA | 94509 | 4/1/2025 | 9:00 AM | 5/13/2025 |
| **Postponed** | Contra Costa | 168 GLENWOOD | HERCULES | CA | 94547 | 4/1/2025 | 9:00 AM | 5/13/2025 |

| Postponed | Contra Costa | 5548 PLUMBRIDGE WAY | ANTIOCH | CA | 94531 | 4/1/2025 | 9:00 AM | 5/13/2025 |
|-----------|--------------|---------------------|---------|----|-------|----------|----------|-----------|
| Canceled | Contra Costa | 1009 VICTORIA PARK | HERCULES | CA | 94547 | 4/1/2025 | 9:00 AM | |
| Canceled | Contra Costa | 482 CRIMSON CLOVER COURT | BRENTWOOD | CA | 94513 | 4/1/2025 | 9:00 AM | |
| Canceled | Contra Costa | 3252 CUB COURT | ANTIOCH | CA | 94531 | 4/1/2025 | 9:00 AM | |

After review, please let me know if you have any questions regarding this preliminary initial production pending the determination of the identity of the high bidder pursuant to statute.

**Michelle A. Mierzwa, Esq.**
Partner, Compliance Division



4665 MacArthur Court, Suite 280
Newport Beach CA 92660
(949) 438-1265 Direct

(949) 608-9142 Fax
(949) 477-5050 Main Ext. 1042

**Wright, Finlay & Zak: Your Western Regional Counsel for California, Nevada, Arizona, Washington, Oregon, Utah, New Mexico, Montana, Hawaii, Idaho, and South Dakota**



PLEASE BE ADVISED THAT THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**IF YOU ARE A CONSUMER AND WISH TO OPT OUT OF EMAIL COMMUNICATIONS REGARDING YOUR DEBT, PLEASE REPLY TO THIS EMAIL WITH "OPT OUT."**

Confidentiality Note: The information contained in this email is privileged and confidential and is intended only for the use of the individual or entity named if the reader of this email is not the intended recipient, you are hereby notified that any distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify the sender by telephone immediately at (949) 477-5052 and arrangements will be made for the return of this material. Thank You.

---------- Forwarded message ----------
From: Carl Dexter <arbitragellc@yahoo.com>
To: FRCLinquiries <FRCLInquiries@bonialpc.com>
Cc:
Bcc:
Date: Fri, 4 Apr 2025 13:42:17 +0000
Subject: Re: 1933 Grass Mountain Ct SB1079 Intent To Bid
To whom it may concern:

Please see attachment below.

Carl Dexter

---------- Forwarded message ----------
From: FRCLinquiries <FRCLInquiries@bonialpc.com>
To: '"Carl Dexter'" <arbitragellc@yahoo.com>, FRCLinquiries <FRCLInquiries@bonialpc.com>
Cc:
Bcc:
Date: Fri, 4 Apr 2025 14:38:46 +0000
Subject: RE: 1933 Grass Mountain Ct SB1079 Intent To Bid

Hello,

Received. Thanks!

FRCLInquires

Bonial & Associates, P.C.

14841 Dallas Parkway, Suite 350 | Dallas, TX 75254

D: 972.643.6600 F: 972.643.6699

FRCLInquiries@BonialPC.com



Serving the states of California, Kansas, Missouri, Nebraska, Oklahoma & Texas

*Not licensed to practice law

***Bonial & Associates, P.C. is certified as a Women's Business Enterprise (WBE) and LGBT Business Enterprise (LGBTBE)***



This communication contains information that is intended only for the recipient named and may be privileged, confidential, subject to the attorney-client privilege, and/or exempt from disclosure under applicable law. If you are not the intended recipient or agent responsible for delivering this communication to the intended recipient, you are hereby notified that you have received this communication in error, and that any review, disclosure, dissemination, distribution, use, or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify us immediately by telephone at 1-800-766-7751 or 1-972-643-6600 and destroy the material in its entirety, whether in electronic or hard copy format.

This firm is a debt collector and any information we obtain from you will be used for that purpose.

You may opt out of receiving further email communications to this address by replying with the word "STOP" in the subject line.

---

**From:** Carl Dexter
**Sent:** Friday, April 4, 2025 8:42 AM
**To:** FRCLinquiries
**Subject:** Re: 1933 Grass Mountain Ct SB1079 Intent To Bid

To whom it may concern:

Please see attachment below.

Carl Dexter


---------- Forwarded message ----------
From: Paul DeJesus <pdejesus@auction.com>
To: "Kahler, Jessica" <Jessica.Kahler@nationalbankruptcy.com>, Jonathan Chau <jchau@auction.com>, John Hund <jhund@auction.com>, Joseph Steinhaus <jsteinhaus@auction.com>, Shawn Smart <SSmart@auction.com>, FRCLinquiries <FRCLinquiries@bonialpc.com>, Future Sales <FutureSales@auction.com>, "Williams, DeEdra" <Deedra.Williams@nationalbankruptcy.com>, "Rogers, Leigh" <Leigh.Rogers@nationalbankruptcy.com>, "Adams, Marissa" <Marissa.Adams@nationalbankruptcy.com>
Cc:
Bcc:
Date: Mon, 31 Mar 2025 21:42:48 +0000
Subject: RE: [EXT] Bidding Instructions: File: 9462-6555; Case: NT-2147041247-FC; Step Bid Reviewed (End) 03/31/2025

Morning,

Confirmed;

**Fair Market Value: 745,820.00**

**Credit bid: 155,400.82**

**Starting Bid: 499,699.40**

**Total Debt Value: 155,400.82**

**If any interested parties minimum bid must be at least: $499,699.40. If no interested parties, please postpone to: 04/15/2025 due to failure to meet minimum bid.**

Thank you!


**Paul DeJesus Sr. Foreclosure Asset Manager**

(949) 672-3667 | pdejesus@auction.com
1 Mauchly, Irvine, CA 92618 | © 2022 Auction.com, LLC, All Rights Reserved

**Attorneys can find out more about our new product at:**
**Attorney Interact**

---

**From:** Kahler, Jessica
**Sent:** Monday, March 31, 2025 2:23 PM
**To:** Jonathan Chau ; John Hund ; Joseph Steinhaus ; Shawn Smart ; Paul DeJesus ; FRCLInquiries@BonialPC.com; Future Sales ; Jessica.Kahler@NationalBankruptcy.com; Deedra.Williams@NationalBankruptcy.com; Leigh.Rogers@NationalBankruptcy.com; Marissa.Adams@NationalBankruptcy.com
**Subject:** [EXT] Bidding Instructions: File: 9462-6555; Case: NT-2147041247-FC; Step Bid Reviewed (End) 03/31/2025

Below is the Bidding Instructions required for:

**CAUTION:** This email came from outside of the company. Always use caution when opening attachments or clicking links from unknown senders or unexpected emails.

File Number: 9462-6555
Property Address: 1933 GRASS MOUNTAIN CRT, ANTIOCH, CA 94531
Scheduled Sale Date of: 1st day of April, 2025
Estimated Total Debt: 155,400.82

Bid Instructions: â€¢ Fair Market Value: $745,820.00
â€¢ Credit Bid: $155,400.82 (Total Debt/Specified Bid)
â€¢ Starting Bid: $499,699.40 (67% of FMV)
â€¢ If no bid exceeds $499,699.40 postpone to 4/15/2025 (67% of FMV and next sale)

Total Debt amount (155,400.82) represents $153,152.27 Client Total Debt plus $2,248.55 in attorney fees and costs.

NOTE: PRIVATE AND PRIVILEGED INFORMATION: THIS TRANSMISSION MAY CONTAIN INFORMATION OR MATERIAL WHICH IS CONFIDENTIAL AND NOT TO BE DISCLOSED TO ANYONE OTHER THAN THE PERSON TO WHOM THIS TRANSMISSION IS DIRECTED. ANY DISCLOSURE, DISTRIBUTION, COPYING OR USE OF THIS COMMUNICATION BY ANY OTHER PERSON IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE CONTACT US BY TELEPHONE IMMEDIATELY AND RETURN THE ORIGINAL COMMUNICATION TO US AT THE ABOVE ADDRESS VIA FIRST CLASS MAIL. THANK YOU VERY MUCH FOR YOUR COOPERATION AND UNDERSTANDING.

---

**17 attachments**

📄 **Agent-Posting_Affidavit.pdf**
145K

📄 **30_day_letters.pdf**
4409K

📄 **10_day_letters.pdf**
4582K

📄 **recorded_NOS.pdf**
170K

📄 **5_day_letters.pdf**
126K

📄 **Rec NOD.pdf**
282K

📄 **Rec SOT.pdf**
83K

📄 **Publication-Affidavit.pdf**
160K

📄 **Copy_of_04.01.25_Bonial_and_Associates_P.C._Final_Sale_Results_CA.xlsx**
14K

📄 **1933 GRASS MOUNTAIN CRT.pdf**
20K

📄 **1933 Grass Mountain Ct SB1079 Intent To Bid.pdf**
2283K

📄 **Re: 1933 Grass Mountain Ct SB1079 Intent To Bid.eml**
3134K

📄 **9462-6555_NOI_CARL_DEXTER_04.04.2025.pdf**
2283K

📄 **RE: 1933 Grass Mountain Ct SB1079 Intent To Bid.eml**
96K

📄 **Wilkerson Auction.com_ Real Estate Auctions for Foreclosures and Bank Owned Properties.pdf**
110K

📄 **6927508.pdf**
429K

📄 **RE: [EXT] Bidding Instructions: File: 9462-6555; Case: NT-2147041247-FC; Step Bid Reviewed (End) 03/31/2025.eml**
119K

# <u>Exhibit F</u>



**Andrew Christensen <andrew@californiahomelawyer.com>**

## Fwd: 252-20242335 Wilkerson Bankruptcy Case No. 25-40564 CN

**Vincent Wood** <vince@shepwoodlaw.com>          Thu, May 8, 2025 at 1:38 PM
To: andrew@californiahomelawyer.com



---------- Forwarded message ---------
From: **Michelle A. Mierzwa** <mmierzwa@wrightlegal.net>
Date: Thu, May 8, 2025 at 12:59 PM
Subject: 252-20242335 Wilkerson Bankruptcy Case No. 25-40564 CN
To: Vincent Wood <vince@shepwoodlaw.com>
Cc: SaveIt <SaveIt@wrightlegal.net>


Hi Vince,


The trustee also provided copies of the Trustee Sale Guarantee and the datedowns, which I can forward as well.  These are also fairly large attachments.  I can send them now or with the Bates Stamped final version after May 16th.  Let me know which you prefer.


If the post-auction bidder submits a bid, we will provide copies of those communications and any bid checks at that time.  I also asked the trustee if they have the ability to search their historical records for the name of the high bidder once it is determined, so there may be additional documents to produce regarding request numbers 15-17.  If there are particular documents you were expecting to see that you want me to ask for, please let me know and I will inquire.  With the short timeframe, we were rushing to get a production together for you.


**Michelle A. Mierzwa, Esq.**
Partner, Compliance Division



4665 MacArthur Court, Suite 200
Newport Beach CA 92660
(949) 438-1265 Direct

(949) 608-9142 Fax
(949) 477-5050 Main Ext. 1042

**Wright, Finlay & Zak: Your Western Regional Counsel for California, Nevada, Arizona, Washington, Oregon, Utah, New Mexico, Montana, Hawaii, Idaho, South Dakota and Colorado**

# <u>Exhibit G</u>



CALIFORNIA

HOME LAWYER

The Law Offices of
Andrew J. Christensen

### Andrew J. Christensen Billable Hours

| Date | Who | Matter | Project | Description | Time | Rate | Total |
|------|-----|--------|---------|-------------|------|------|-------|
| 5/15/2025 | AJC | Wilkerson | Stay Violation | draft motion for violation of the stay against Shellpoint | 6.5 | $650 | $4,225 |
| 5/19/2025 | AJC | Wilkerson | Stay Violation | draft motion for violation of the stay against Shellpoint, compare new amended versions of statutes with 2023 versions to addres arguments of creditors counsel | 5.3 | $650 | $3,445 |
| 5/19/2025 | AJC | Wilkerson | Stay Violation | Review docuemnts produced pursuant to Rule 2004 Examination by foreclosure trustee | 0.8 | $650 | $520 |
| 5/20/2025 | AJC | Wilkerson | Stay Violation | Call with client re facts | 0.7 | $650 | $455 |
| 5/20/2025 | AJC | Wilkerson | Stay Violation | draft motion for violation of the automatic stay | 2.8 | $650 | $1,820 |
| 5/20/2025 | KS | Wilkerson | Stay Violation | draft and edit motion for violation of the stay | 0.7 | $100 | $70 |
| 5/21/2025 | AJC | Wilkerson | Stay Violation | finalize drafting declarations in support of motion for stay violation | 2.3 | $650 | $1,495 |
| 5/21/2025 | AJC | Wilkerson | Stay Violation | phone calls with client re facts and declarations | 0.3 | $650 | $195 |

| Timekeeper Subtotals | | |
|----------------------|------|---------|
| AJC | 18.7 | $12,155 |
| KS | 0.7 | $70 |

| Project Subtotals | | |
|-------------------|------|---------|
| Stay Violation | 19.4 | $12,225 |

| Total | | |
|-------|--|---------|
| **Total** | | **$12,225** |