| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | **WRIGHT, FINLAY & ZAK, LLP**<br>Arnold L. Graff, Esq. (SBN 269170)<br>Michelle A. Mierzwa, Esq. (SBN 196175)<br>4665 MacArthur Court, Suite 200<br>Newport Beach, CA 92660<br>Telephone: (949) 477-5050<br>Fax: (949) 608-9142<br>Email: agraff@wrightlegal.net<br><br>Attorney for Interested Party,<br>NBS DEFAULT SERVICES, LLC |

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>MELISSA MARIE WILKERSON,<br><br>Debtor. | BK Case No. 25-40564 CN<br><br>Chapter: 13<br><br>**NBS DEFAULT SERVICES, LLC'S OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY**<br><br><u>Hearing</u>:<br>Date: July 18, 2025<br>Time: 11:00 am<br>Location: United States Bankruptcy Court<br>          1300 Clay Street<br>          Oakland, CA 94612<br>          **Courtroom 215** |

### NBS DEFAULT SERVICES, LLC'S OPPOSITION TO MOTION FOR <u>DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY</u>

NBS Default Services, LLC (collectively, "NBS", "Foreclosure Trustee" or "Respondent") hereby files this Opposition to Debtor's Motion for Damages for Violation of the Automatic Stay ("Motion"), concurrently filed Declaration of Attorney Michelle A. Mierzwa ("Declaration") and related exhibits ("Exhibits") in support of its opposition (collectively, the "Opposition").

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

1

**NBS DEFAULT SERVICES, LLC'S OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY**

Case: 25-40564    Doc# 51    Filed: 07/03/25    Entered: 07/03/25 23:41:34    Page 1 of 18

# I. INTRODUCTORY STATEMENT

The Court should deny Debtor's Motion in its entirety because NBS did not violate the automatic stay when it conducted the foreclosure sale of the subject Property on April 1, 2025. Debtor's Motion seeks to hold NBS in contempt for (1) willfully violating the stay by not canceling the already-completed auction upon receiving notice of the later-filed bankruptcy petition and by continuing to accept post-sale bids under the required statutory scheme; (2) willfully violating the stay by accepting a high bid and deeming the foreclosure sale final; (3) willfully violating the stay by issuing a trustee's deed upon sale. However, the undisputed facts will demonstrate that NBS did not have knowledge of the bankruptcy filing at the time of the foreclosure sale because the bankruptcy was filed after the foreclosure sale was completed by acceptance of bid funds from the high auction bidder. Thereafter, NBS appropriately held off on preparation and issuance of the trustee's deed to wait for the applicable post-auction statutory period to expire in compliance with the requirements of Civil Code section 2924m. Although the foreclosure sale was valid based on the judicially-noticeable records of this Court, in light of completely new factual allegations by the Debtor received only days before the deadline to issue the trustee's deed, NBS arranged for the cancellation of the completed sale and never perfected the sale via a recorded Trustee's Deed Upon Sale. As such, there was no willful violation of the automatic stay nor any damages that resulted, and this Court should deny the Motion in its entirety.

# II. STATEMENT OF FACTS

On April 24, 2013, Steven Wilkerson and Lisa Wilkerson ("Borrowers"), borrowed $203,400.00 from Wells Fargo Bank, N.A. ("Loan") To secure the debt, Borrowers signed a Note and Deed of Trust in favor of Wells Fargo Bank, N.A. ("Wells Fargo") encumbering the real property located at 1933 Grass Mountain Court, Antioch, CA 94531 (APN: 055-350-011-7) (the

"Property").[1]  Title to the Property was transferred to Melissa Wilkerson, a single person, as her sole and separate property and then to Melissa Wilkerson, trustee of the Melissa Wilkerson Revocable Trust dated June 19, 2020.[2]  On February 3, 2023, Wells Fargo assigned its interest in the Deed of Trust to Specialized Loan Servicing, LLC ("SLS").[3] On July 30, 2024, a Substitution of Trustee was recorded in the Official Records of Contra Costa County, appointing NBS as the substituted trustee under the Deed of Trust.[4]

Payments under the Loan were in default, and on July 31, 2024, NBS, as foreclosure trustee, recorded a Notice of Default and Election to Sell Under Deed of Trust in the Contra Costa County Recorder's Office as Instrument No. 2021-0073796, indicating the Loan was due for the 10/1/22 payment and all subsequent payments, for a total delinquent amount of $39,897.78.[5] When the default under the Loan was not cured, on February 18, 2025, NBS, as foreclosure trustee, recorded a Notice of Trustee's Sale that set the date for the foreclosure auction for April 1, 2025, in Pleasant Hill, California.[6]  Prior to the foreclosure auction a Sale Datedown was ordered by NBS and prepared by a title company, which included confirmation that as of 9:03 a.m. on April 1, 2025, bankruptcy PACER records indicated that no bankruptcy petition had been filed by the Borrowers or Melissa Wilkerson.[7]  Thereafter on April 1, 2025, the NBS conducted and completed a foreclosure sale through a local auction company at 9:14 a.m. where the Property sold to a third-

---

[1] A true and correct copy of the Deed of Trust recorded as Instrument No. 2013-00113662-00 in the Recorder Office, Contra Costa County, is attached as Exhibit . A to NBS' Request for Judicial Notice ("RJN") filed concurrently herewith.
[2] A true and correct copy of the last Grant Deed, recorded on November 2, 2020 as Document No. 2020-0259947 is attached to the RJN as Exhibit B.
[3] A true and correct copy of the Assignment Deed of Trust recorded as Instrument No. 2023-0009997 in the Recorder Office, Contra Costa County, is attached as Exhibit B to the RJN.
[4] A true and correct copy is attached as Exhibit D to the RJN.
[5] A true and correct copy is attached as Exhibit E to the RJN.
[6] A true and correct copy of the Notice of Trustee's Sale recorded as Instrument No. 2025-0014901 in the Recorder Office, Contra Costa County, is attached as Exhibit F to the RJN.
[7] *See* Declaration of Jessica Kahler in Support of NBS' Opposition to the Motion ("NBS Declaration") at ¶5, Ex. A.

party, Good Neighbor Homes, LLC.[8] Good Neighbor Homes, LLC delivered its bid funds to the local auction company via wire, and the bid funds were accepted as the high bid at the foreclosure sale effective 9:14 a.m. on April 1, 2025. *Id.* NBS received sale result information and a copy of the Trustee Certificate of Sale/Receipt confirming that the foreclosure auction was cried and completed as of 9:14 a.m. on April 1, 2025 with Good Neighbor Homes, LLC as the high bidder.[9]

Later the same morning as the foreclosure sale, Debtor filed a Voluntary Petition under Chapter 13 of the bankruptcy code. At 11:57 a.m. on April 1, 2025, NBS received a phone call from a male caller indicating that a Chapter 13 bankruptcy petition was filed by the Borrowers as Case No. 25-40564 in the Northern District of California, but no documentation was provided. Performing due diligence, NBS retrieved a copy of the petition *filed by a Debtor other than the Borrowers* available on the court's PACER Docket, which bears a time stamp of 9:36:41 a.m., which was after completion of the foreclosure sale to Good Neighbor Homes, LLC.[10] On April 11, 2025, NBS received an email attaching a letter from Shepard & Wood, LLP, identifying E. Vincent Wood as the attorney for the Debtor and providing written notice that the Debtor's Bankruptcy was filed at 9:19 a.m. The letter enclosed a copy of a Notice of Bankruptcy Case filing stating "A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 13 of the United States Bankruptcy Code, entered on 04/01/2025 at 09:36 AM and filed on 04/01/2025" and the Notice indicated a filing time of 9:19 a.m. on April 1, 2025, which was after completion of the foreclosure sale to Good Neighbor Homes, LLC.[11] On April 14, 2025, NBS responded to the April 11, 2025 letter to confirm to Debtor's counsel that the foreclosure sale was completed at 9:14 am on April 1, 2025, and there was no violation of the stay.[12]

---

[8] *See* NBS Declaration at ¶5, Ex. B.
[9] *See* Declaration of NBS at ¶5, Ex. B
[10] NBS Declaration at ¶6, Ex. C; RJN, Ex G.
[11] NBS Declaration at Paragraph 7, Exhibit D; RJN at Exhibit G.
[12] NBS Declaration, paragraph 7, Ex. D.

1     Since the Property contained a single family residence, NBS was required to wait for 15 days after the completion of the foreclosure sale before issuing the Trustee's Deed Upon Sale to see if any eligible bidders would deliver a notice of intent to bid pursuant to Civil Code section 2924m(c)(2).[13] On April 4, 2025, NBS received a notice of intent to bid from Carl Dexter pursuant to Civil Code section m(c)(2), who provided an Affidavit pursuant to Civil Code section 2924m under penalty of perjury indicating that he qualified as an eligible bidder in the category of prospective owner occupant under Civil Code section 2924m(a)(1).[14] The notice under Civil Code sections 2924m(c)(2) [Notice of Intent] and 2924m(a)(1) [Prospective Owner Occupant Affidavit] triggered the 45-day waiting period for post-auction bids to be submitted to the trustee pursuant to Civil Code section 2924m(c)(4) so that NBS as trustee could confirm the identity of the high bidder to include in the Trustee's Deed Upon Sale. As of July 18, 2024, clarifying language in Civil Code section 2924h(c) was enacted to confirm that if an eligible bidder submits a written notice of intent to bid pursuant to Civil Code section 2924m(c)(2), the trustee's deed shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 60 calendar days after the sale or the next business day if the county recorder is closed on the 45th day.[15] As a result, when the 45-day period is triggered by submission of a notice of intent under Civil Code section 2924m(c)(2), no action is taken by the trustee until the end of the 45-day period, which maintains the status quo to allow the required statutory period to play out. The end of the 45-day period was May 16, 2025.[16]

    On April 25, 2025, NBS received a subpoena from Vincent Wood, the attorney for Debtor and on May 2, 2025 NBS retained Wright, Finlay & Zak. LLP ("WFZ") as its counsel to assist

---

[13] NBS Declaration at Paragraph 8.
[14] NBS Declaration at Paragraph 8, Ex. E.
[15] RJN, Ex H.
[16] NBS Declaration, ¶8.

with response to the subpoena.[17] On May 5, 2025, WFZ Partner Michelle Mierzwa spoke with Mr. Wood regarding the timing of the foreclosure sale prior to the BK filing and the receipt of a notice of intent to bid from a prospective owner occupant under Civil Code section 2924m(c)(2), delaying the identity of the high bidder at the completed sale.[18] On May 7, 2025, WFZ sent its initial document production to Mr. Wood with an explanatory email regarding the status of the completed sale auction prior to the filing of the Debtor's bankruptcy petition and the need to wait to the end of the 45-day period to determine the identity of the high bidder. [19] On May 8, 2025, WFZ sent an email to Mr. Wood advising that additional documents could be sent if a different high bidder is identified. *Id.* On May 19, 2025, NBS confirmed no other bid funds had been received and that the high bidder at auction, Good Neighbor Home, LLC, was still the high bidder.[20]

In light of the aggressive position of Mr. Wood in subpoenaing the trustee documents and the apparent equity in the property, WFZ inquired with Good Neighbor Homes, LLC on May 20, 2025, about a potential cancellation of the foreclosure sale after WFZ let them know that no post-sale bids had been received and the Trustee's Deed Upon Sale was eligible for issuance. On May 21, 2025, Good Neighbor confirmed its willingness to rescind and accept a return of its bid funds with payment of interest on its funds, and NBS asked the foreclosing lender for approval of the voluntary rescission.[21] On May 22, 2024, before any Trustee's Deed had been issued, new co-counsel for Debtor, Andrew J. Christensen, filed the Motion for Damages, alleging for the first time that the bankruptcy petition was purportedly filed earlier than 9:19 a.m. on April, 1, 2025. However, since Mr. Andersen mailed the Motion via USPS Ground Services and failed to

---

[17] NBS Declaration, ¶9.
[18] Mierzwa Declaration, Par. 5; NBS Declaration, ¶9
[19] Mierzwa Declaration, Par 6, Ex A; NBS Declaration, ¶9
[20] NBS Declaration, ¶10
[21] Mierzwa Declaration, ¶7, Ex. B; NBS Declaration, ¶10

communicate with NBS or its counsel about the new allegations, NBS and its counsel did not receive the Motion containing these new allegations until May 27, 2028 after the Memorial Day holiday weekend.[22] Immediately following review of the Motion for Damages, NBS' counsel called Mr. Andersen on May 28, 2025 and requested that Debtor withdraw the Motion as no Trustee's Deed Upon Sale had been issued, and NBS would confirm cancellation of the foreclosure sale as soon as possible.[23] On May 30, 2025, NewRez/Shellpoint confirmed approval of the cancellation of the foreclosure, authorizing return of the bid funds.[24] Thereafter, NBS' counsel sent an email to Mr. Christensen and Mr. Wood as co-counsel for Debtor on May 30, 2025, confirming the sale was being canceled and again requesting withdrawal of the Motion. On the same date, Christensen sent a demand for payment of $25,000.00 to withdraw the Motion for Damages.[25] NBS returned the bid funds to Good Neighbor on June 4, 2025, deeming the sale cancelled, and a Trustee's Deed Upon Sale was never prepared or recorded.[26] On June 5, 2025, NBS' counsel sent a copy of the bid fund return correspondence and check to Debtor's counsel, confirming no trustee's deed was or would be issued, but the Debtor has failed and refused to withdraw the Motion.[27]

### III. LEGAL STANDARD

The Ninth Circuit has held that violations of the automatic stay are to be initiated by motion and not an adversary proceeding. *See*, *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190 (9th Cir. 2011) ("Contempt proceedings are not listed under Bankruptcy Rule 7001, see Fed. R. Bankr. P. 7001, and are therefore contested matters not qualifying as adversary proceedings."). 11

---

[22] NBS Declaration, ¶11; Mierzwa Declaration, ¶8, Ex. C
[23] Mierzwa Declaration, ¶9.
[24] NBS Declaration, ¶11, Ex. E.
[25] Mierzwa Declaration, ¶10, Ex. D.
[26] NBS Declaration, ¶12, Ex F.
[27] Mierzwa Declaration, ¶11, Ex D

U.S.C. § 362(k) provides for recovery of actual damages to the debtors for violation of the automatic stay as well as attorney's fees and costs and punitive damages for willful violations. Such proceedings are treated as civil contempt proceedings because a violation of a court order, the automatic stay, is alleged. *See*, *Knupfer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1189 (9th Cir. 2003). In the Ninth Circuit, "[t]he standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply. *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002) (citing to *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)).

## IV. ARGUMENT

### A. NBS Did Not Violate the Automatic Stay

#### 1. The Foreclosure Sale Was Completed Before the Petition Was Filed.

The Property is not subject to the automatic stay as the Property was not property of the estate at the time of the filing of the bankruptcy, since it had been sold at the foreclosure sale. Any property that is not property of the estate is not subject to the automatic stay in this bankruptcy case. *See, e.g., In re Stadler*, No. 04-91944-jem, 2005 WL 6487189, at *1 (Bankr. N.D. Ga. Mar. 31, 2005) (Massey, B.J.) ("The automatic stay imposed by section 362(a) of the Bankruptcy Code applies only to property of the debtor and the estate. It does not apply to property owned by a nondebtor …."); *In re Anderson*, No. 10-72072-MGD, 2010 WL 3941638, at *3 (Bankr. N.D. Ga. July 23, 2010) (Diehl, B.J.) ("[B]ecause Debtor failed to establish a legal interest in the Freightliner, it is not property of the estate and is not subject to protection by Debtor's automatic stay.").

If the foreclosure sale is completed before the bankruptcy filing, the debtor's legal and equitable interests in the property may terminate under state law, and the property may no longer

be part of the bankruptcy estate. In such cases, the automatic stay would not apply to the foreclosed property. For instance, in *McAdam v. Lorden*, the court found that the debtor's interests in the property terminated upon the completion of a valid foreclosure sale, and thus the property was not protected by the automatic stay. No. 04-CV-472-PB, 2005 U.S. Dist. LEXIS 21900, at *10 (D.N.H. Sep. 26, 2005).

In this instance, Debtor does not dispute that the Property sold at 9:14 a.m. on April 1, 2025.[28] While Debtor claims that she filed the Bankruptcy Petition at 9:06 a.m. on the same date, the file stamped copy of the Petition shows a filing time of 9:36:41 a.m. [ECF No. 1] and the Notice of Bankruptcy Filing identifies a filing time of 9:19 a.m. on April 1, 2025. Debtor has provided no explanation for this discrepancy other than to claim that she filed the Petition in person with the clerk of the court thirteen minutes before it was entered by the clerk. Instead, she points to cases law that states a timestamp presents a rebuttal presumption under certain circumstances.

In one of the cases Debtor cites, *In re Schleier*, the Court found that in order to rebut the time-stamp presumption, "evidence must show that when the petition was presented to the office of the clerk, it was in acceptable filing form, and was received by a representative of that office." 290 B.R. 45, 50 (Bankr. S.D.N.Y. 2003). Debtor has provided no such evidence in this case to rebut the presumption that the Petition she allegedly presented at 9:06 a.m. was in acceptable form for filing.

The other cases she cites to are likewise inapposite. In *In re Manzueta*, 620 B.R. 195, 198 (Bankr. D. Mass. 2020), the Petition was deemed filed earlier because of circumstances regarding the COVID pandemic and that the Petition had been presented earlier via email. Debtor has not alleged similar circumstances. Nor does Debtor allege circumstances similar to *Beal Bank SSB v. Brown* (*In re Brown*), 311 B.R. 721, 728 (Bankr. W.D. Pa. 2004) where the Court held that the

---

[28] *See* ECF No. 38 at ¶2.

filing presumption was rebutted because "[t]he need for counsel to take back the petition so that he could scan it into the court's electronic filing system" did not affect the time of the filing. Finally, the issue in the last case Debtor cites, *Nat'l Westminster Bank v. Markings Assocs.*, Civil No. 92-3079 (CSF), 1992 U.S. Dist. LEXIS 15534, at *5 (D.N.J. Sep. 21, 1992), was whether not presenting the appropriate filing fee delayed the filing of the petitioner. Again, Debtor does not allege this as a fact purportedly impacting the filing time of her petition.

Based on the facts presented and judicially-noticeable records of this Court, the sale was completed five minutes before the record filing of the Petition and twenty minutes before the entry of the Petition, and Debtor has failed to refute that presumption. As a result, the Property was no longer part of the estate at the time of the filing of the Petition and thus not subject to the automatic stay. Thus, this Court should deny the Motion.

**2. California Civil Code 2924m Only Delayed Identity of High Bidder, Not Completion of Sale.**

Debtor's interpretation of California Civil Code 2924m applies to when a sale is deemed final to perfect transfer of title, not when the sale is completed, and the automatic stay does not prohibit post-sale actions to perfect title. For context, California Civil Code 2924m provides that a foreclosure sale is not deemed "final" until after 45-days after a foreclosure **sale so as to allow eligible bidders to bid for the Property after the completion of the sale auction to the high bidder** at the live sale auction. This does not mean that the sale is not final as to the Debtor as of the date of the sale, if the sale is properly perfected as contemplated by Civil Code section 2924h(c). In *In re Stephens*, the United States Bankruptcy Court for the Central District of California addressed the precise issue of interest in this case and held that a sale is considered completed at the time of foreclosure sale auction, not when title was later perfected through the recording of a trustee's deed. 661 B.R. 948, 950 (Bankr. C.D. Cal. 2024). Specifically, the Court

held that "In sum, the automatic stay was not violated by any of the three foregoing events — the sale becoming final, the transfer of title to Purchaser, or Purchaser's recordation of the Trustee's Deed." *Id.* Further, the Court noted, "Debtor cites no authority that whatever title he continued to possess after the live auction gave him any interest that he could still use, sell, or lease (apart from his mere occupancy of the Property pending finality of the sale)." *Id.* at 953. Likewise, Debtor no longer had any ownership interest upon completion of the sale. As the Court in *In re Stephens* concluded, "Purchaser's prepetition bid simply turned out, postpetition, to be the last and highest bid." *Id.* at 950. In other words, finality of a sale does not delay the transfer of title out of the Debtor, only the **identity** of the new title holder. Because the foreclosure sale was completed prior to the filing of the Debtor's bankruptcy petition in the present case, NBS did not violate the automatic stay by complying with the provisions of California Civil Code 2924m because the sale was completed as to the Debtor under bankruptcy law, even though NBS was required to wait until the expiration of the 45-day statutory period under Civil Code section 2924m(c)(4) before it could confirm the identity of the high bidder to complete and record a trustee's deed inside the 60-day relation back period provided in Civil Code section 2924h(c).

Instead of addressing the well-reasoned 2024 decision in *In re Stephens,* Debtor relies on the outdated decision, *In re Hager*, 651 B.R. 873 (Bankr. E.D. Cal. 2023). This is a red herring. Debtor claims that *Hager* stands for the proposition that a sale is not completed as to the Debtor until it is deemed final, and that the finality of the sale cannot relate back to the sale date if a bankruptcy is filed during the 45-day statutory period. However, *In re Hager* case is inapposite for two reasons. First, the pivotal factual issue in *Hager* was that the eligible bidder who submitted a notice of intent was not the representative of all eligible tenant buyers, as required by the

**11**
NBS DEFAULT SERVICES, LLC'S OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY

Case: 25-40564    Doc# 51    Filed: 07/03/25    Entered: 07/03/25 23:41:34    Page 11 of 18

previously-existing language of California Civil Code 2924h (c).[29] However, the language forming the basis for the court's ruling in *Hager* regarding the 60-day relation back period was revised by California Assembly Bill 295, which became effective as of June 18, 2024.[30] Under the revised language, the Legislature clarified that the trustee's sale is deemed perfected as of 8 a.m. of the date of the actual sale as to all categories of eligible bidder if a notice of intent is submitted within the 15-day period following the sale under Civil code section 2924m(c)(2). *See* California Civil Code 2924h(c). Thus, the relation back language that the Court in *Hager* relied upon is no longer applicable as the present sale occurred after the enactment of AB 295. Second, the violation in *Hager* occurred because the Trustee did in fact record a Trustee's Deed Upon Sale, which the court set aside based on the narrow factual issue regarding the failure of the eligible bidder to satisfy the limited scope of the relation back statute in Civil Code section 2924h(c) in 2022. Relying on the analysis in *Hager* would render the revised language in AB 295 surplusage and allow a borrower to invalidate a pre-petition foreclosure sale by filing bankruptcy every time a notice of intent is delivered to the trustee under Civil Code section 2924m(c)(2). This is an absurd result that the Legislature clearly did not intend. Clearly, the intention of AB 295 was to ensure that the 60-day relation back period for the post-auction bid process would operate in the same manner as the previously-existing 15-day relation back period in section 2924h(c) before the enactment of Civil Code section 2924m. This relation back process has been validated for many years as discussed in the *In re Stephens* case, *supra,*. Moreover, in the present case, no trustee's deed was prepared or recorded. For these reasons, *Hager* is inapplicable, and the Court should not rely upon this

---

[29] Hager held that because the eligible bidder who received the trustee's deed was not the representative of all eligible tenant buyers, it was not entitled to the relation back provision in Civil Code section 2924h(c) that was limited to notices of intent submitted under Civil Code section 2924m(c)(3).
[30] See highlighted copy of AB 295 in Exhibit H to the RJN.

outdated and inapplicable authority in ruling on the Motion for Damages for Violation of Automatic Stay.

**3. In Any Event, Sale Was Voluntarily Not Finalized; No TDUS Was Issued or Recorded.**

Notwithstanding the above, NBS did not take any action to perfect the prepetition completed sale through issuance or recording of a Trustee's Deed Upon Sale post petition. As noted in *In re Stephens*, § 362(a)(3) only prohibits an affirmative "act" to take possession of or exercise control over property of the bankruptcy estate. *Id.* at 950. Here, Debtor does not provide any evidence that NBS took any affirmative acts (although she did **inaccurately** allege that a Trustee's Deed Upon Sale was issued and recorded) after the foreclosure sale to perfect its title as to the Property. As demonstrated by the admissible evidence presented by NBS in support of the Opposition to this Motion, NBS rescinded the sale and never prepared or recorded the Trustee's Deed Upon Sale. However, as discussed above, even if NBS had issued the trustee's deed, the Court in *Stephens* indicated such action would not violate the automatic stay due to the application of the current version of the relation back statute in Civil Code section 2924h(c) where a notice of intent is submitted by any category of eligible bidder. As noted above, NBS cannot be held responsible for not knowing about a bankruptcy filing that was time- stamped after the foreclosure sale was completed. Moreover, to the extent it found out about the bankruptcy filing after the fact, it took the steps to accurately evaluate the legal status of the sale and then voluntarily cancel the valid foreclosure sale.

**B. Even if the Court Deems the Stay to have been Inadvertently Violated, Sanctions are Not Warranted.**

11 U.S.C. § 362(k) provides a full scope damage award options (actual, punitive, attorneys' fees and costs) to **willful** violations and limits an award to actual damages if the action comprising the stay violation was made based on a good-faith belief that subsection (h) of § 362 applies to

Debtor. Courts in the Ninth Circuit determine whether there has been a willful violation of the automatic stay in bankruptcy proceedings by applying a two-pronged test. First, the court examines whether the party accused of the violation had knowledge of the automatic stay. Second, the court considers whether the actions that violated the stay were intentional. *Dingley v. Yellow Express, LLC* (*In re Dingley*), 514 B.R. 591, 596 (B.A.P. 9th Cir. 2014).

Here there are three factors that warrant the Court not finding a willful violation of the stay to support an award of damages. *First*, Debtor does not identify any specific damages as a result of the foreclosure sale being held within the same hour that the bankruptcy petition was filed. The evidence shows that a Trustee's Deed Upon Sale was never recorded and that NBS worked with the foreclosing lender and the foreclosure sale purchaser to rescind the sale. Any actual damages are thus non-existent.

*Second*, Debtor cannot show how NBS conducted the foreclosure sale with knowledge of the bankruptcy as the Petition was not in fact filed until at worst (if Debtor is to be believed) ten minutes prior to the foreclosure sale. And even if it was filed as Debtor claims, the filing was not entered by the Court until twenty minutes after the foreclosure sale. At any rate, it would have been impossible to deliver a file-stamped copy of the Petition to NBS prior to the sale, which means by definition NBS's actions could not have been done with knowledge of the filed bankruptcy. Indeed, the Debtor presented no evidence that it notified NBS of a filing time earlier than the 9:19 am filing time on the Notice of Bankruptcy Filing provided to NBS by Debtor's counsel on April 11, 2025. Instead, the Debtor failed to notify NBS of the new allegations regarding a 9:06 am purported filing time until her counsel included the allegations for the first time in the filed Motion. This dilatory conduct deprived NBS from the opportunity to unilaterally rescind the foreclosure sale before Debtor's counsel incurred the unnecessary attorney fees to

prepare and file the Motion. Thus, the fees incurred were completely avoidable and should not be recoverable against NBS.

*Third*, NBS has mitigated its damages so as to at least be partially if not completely absolved of liability even if the Court were to find a willful violation. In *Wilmington Sav. Fund Soc'y, Wilmington Sav. Fund Soc'y, FSB v. Fairbanks* (*In re Fairbanks*), the Ninth Circuit Bankruptcy Appellate Panel court noted that rescinding a foreclosure trustee's deed is relatively straightforward and may mitigate the harm caused by the violation, but it does not necessarily absolve the creditor of liability for the initial breach of the automatic stay. No. WW-21-1019-FBS, 2021 Bankr. LEXIS 2209, at *18 (B.A.P. 9th Cir. Aug. 12, 2021). Here, NBS did not even record a Trustee's Deed Upon Sale or take any action in furtherance of the foreclosure. In fact, NBS took steps to rescind foreclosure sale, and it successfully did so. Rescinding the foreclosure sale is evidence that NBS did not act in a willful manner. Nonetheless, this Court should it find there was a willful violation should hold that SBS acted in a manner to cure any willful violations.

## V. CONCLUSION

Based on the foregoing, NBS respectfully requests that this Court deny Debtor's Motion for Damages for Violation of the Automatic Stay and grant any other relief it deems appropriate.

Dated: July 3, 2025   **WRIGHT, FINLAY & ZAK LLP**

By: /s/ *Arnold L. Graff*
Arnold L. Graff, Esq. (SBN 269170)
Michelle A. Mierzwa, Esq. (SBN 196175)
Attorneys for Respondent,
NBS DEFAULT SERVICES, LLC

**WRIGHT, FINLAY & ZAK, LLP**
Arnold L. Graff, Esq. (SBN 269170)
Michelle A. Mierzwa, Esq. (SBN 196175)
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Telephone: (949) 477-5050
Fax: (949) 608-9142
Email: agraff@wrightlegal.net

Attorney for Respondent,
NBS DEFAULT SERVICES, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>MELISSA MARIE WILKERSON,<br><br>Debtor. | BK Case No.: 25-40564 CN<br><br>Chapter: 13<br><br>**CERTIFICATE OF SERVICE**<br><br><u>Hearing</u>:<br>Date: July 18, 2025<br>Time: 11:00 am<br>Location: United States Bankruptcy Court<br>   1300 Clay Street<br>   Oakland, CA 94612<br>   **Courtroom 215** |

### CERTIFICATE OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660.

On 7/7/2025, I served the foregoing document described as **OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY; REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF NBS DEFAULT SERVICES, LLC'S OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY ;**

CERTIFICATE OF SERVICE

**DECLARATION OF JESSICA KAHLER IN SUPPORT OF NBS DEFAULT SERVICES, LLC'S OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY; DECALARATION OF MICHELLE A. MIERZWA IN SUPPORT OF NBS DEFAULT SERVICES, LLC'S OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY AND CERTIFICATE OF SERVICE** on the interested parties in this action as follows:

[X] (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Las Vegas, Nevada. I am readily familiar with the firm's business practice for collection and processing of correspondence for mailing with the U.S. Postal Service pursuant to which practice the correspondence is deposited with the U.S. Postal Service the same day in the ordinary course of business. **See attached service list.**

[X] (BY ELCTRONIC SERVICE) Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF systems sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system. **See attached service list.**

[X] (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on 7/3/2025, at Newport Beach, California.

*/s/ Jackie Powell*
JACKIE POWELL

**ADDITIONAL SERVICE INFORMATION**
TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONICA FILING ("NEF"):

Martha G. Bronitsky    13trustee@oak13.com
Andrew Christensen    andrew@californiahomelawyer.com, R61919@notify.bestcase.com
Dane Wyatt Exnowski    dane.exnowski@mccalla.com, mccallaecf@ecf.courtdrive.com
Arnold L. Graff    agraff@wrightlegal.net, jpowell@wrightlegal.net
Office of the U.S. Trustee/Oak    USTPRegion17.OA.ECF@usdoj.gov
Elaine Soong    esoong@wedgewood-inc.com, aguisinger@wedgewood-inc.com
E. Vincent Wood    general@shepwoodlaw.com, Wood.E.V.B@notify.bestcase.com

TO BE SERVED BY UNITED STATES MAIL:

DEBTOR:
Melissa Marie Wilkerson
1933 Grass Mountain Ct
Antioch, CA 94531

DEBTOR'S COUNSEL:
Andrew Christensen
Law Office of Andrew J. Christensen, P.C.
2063 Mountain Blvd., Suite 2
Oakland, CA 94611

DEBTOR'S CO-COUNSEL:
E. Vincent Wood
Shepherd & Wood LLP
2950 Buskirk Ave.,Ste 300
Walnut Creek, CA 94597

CHAPTER 13 TRUSTEE:
Martha G. Bronitsky
P.O. Box 5004
Hayward, CA 94540

U.S. TRUSTEE:
Office of the United States Trustee
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102

INTERESTED PARTY:
Good Neighbor Homes, LLC
Wedgewood Office of the General Counsel
2015 Manhattan Beach Blvd., Ste. 100
Redondo Beach, CA 90278