**WRIGHT, FINLAY & ZAK, LLP**
Arnold L. Graff, Esq. (SBN 269170)
Michelle A. Mierzwa, Esq. (SBN 196175)
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Telephone: (949) 477-5050
Fax: (949) 608-9142
Email: agraff@wrightlegal.net

Attorney for Respondent,
NBS DEFAULT SERVICES, LLC

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In re: | BK Case No. 25-40564 CN |
| MELISSA MARIE WILKERSON, | Chapter: 13 |
| Debtor. | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF NBS DEFAULT SERVICES, LLC'S OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY** |
| | Hearing:<br>Date: July 18, 2025<br>Time: 11:00 am<br>Location: United States Bankruptcy Court<br>1300 Clay Street<br>Oakland, CA 94612<br>**Courtroom 215** |
| | *[Filed Concurrently with Opposition to Debtor's Motion for Damages for Violation of the Automatic Stay]* |

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

1

REUEST FOR JUDICIAL NOTICE IN SUPPORT OF NBS DEFAULT SERVICES, LLC'S OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY

**PLEASE TAKE NOTICE** that Respondent, NBS DEFAULT SERVICES, LLC ("NBS"), hereby requests pursuant to Federal Rules of Evidence ("FRE"), Rule 201 that the Court take judicial notice of the following documents that are put at issue by Debtor MELISSA MARIE WILKERSON ("Debtor").

| Exhibit | Description |
|---------|-------------|
| A | Deed of Trust encumbering the real property located at 1933 Grass Mountain Court, Antioch, CA 94531, recorded in the Official Records of Contra Costa County as Document No. 2013-0113662-00 |
| B | Assignment of Deed of Trust recorded in the Official Records of Contra Costa County as Document No. 2023-0009977 |
| C | Grant Deed regarding the real property located at 1933 Grass Mountain Court, Antioch, CA 94531, recorded in the Official Records of Contra Costa County as Document No. 2020-0259947 |
| D | Substitution of Trustee regarding the real property located at 1933 Grass Mountain Court, Antioch, CA 94531, recorded in the Official Records of Contra Costa County as Document No. 2024-0073318 |
| E | Notice of Default Grant regarding the real property located at 1933 Grass Mountain Court, Antioch, CA 94531, recorded in the Official Records of Contra Costa County as Document No. 2024-0073796 |
| F | Notice of Trustee's Sale regarding the real property located at 1933 Grass Mountain Court, Antioch, CA 94531, recorded in the Official Records of Contra Costa County as Document No. 2025-0014901 |
| G | Northern District of California Case No 25-40564 Voluntary Petition by Debtor Melissa Marie Wilkerson for Chapter 13 Bankruptcy filed April 1, 2025 and entered at 9:36:41 |

REUEST FOR JUDICIAL NOTICE IN SUPPORT OF NBS DEFAULT SERVICES, LLC'S OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY

Case: 23-40564   Doc# 52   Filed: 07/03/25   Entered: 07/03/25 23:43:52   Page 2 of 72

| H | California Assembly Bill No. 295 – Chaptered version [Approved by Governor July 18, 2024. Filed with Secretary of State July 18, 2024.] |

## BASIS FOR REQUESTING JUDICIAL NOTICE

Exhibits A through H are documents which are a matter of public record. The contents contained therein are not reasonably subject to dispute and capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy. Fed. R. Evid. 201. Therefore, they are appropriate for judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (holding that courts may take judicial notice of "undisputed matters of public record").

Accordingly, Respondent respectfully request the Court take judicial notice of Exhibits A through H, attached hereto.

Respectfully submitted,

**WRIGHT, FINLAY & ZAK, LLP**

Dated: July 3, 2025        By: */s/ Arnold L. Graff*
                                       Arnold L. Graff, Esq. (SBN 269170)
                                       Michelle A. Mierzwa, Esq. (SBN 196175)
                                       Attorneys for Respondent,
                                       NBS DEFAULT SERVICES, LLC

# EXHIBIT  A

16

Recording Requested By:
**WELLS FARGO BANK, N.A.**

Return To:
**FINAL DOCS T7408-01F**

**4101 WISEMAN BLVD BLDG 108
SAN ANTONIO, TX  78251-4200**

Prepared By:
**WELLS FARGO BANK, N.A.**

**800 WALNUT ST, 7TH FLOOR, DES
MOINES, IA  503093605**

CONTRA COSTA Co Recorder Office
JOSEPH CANCIAMILLA, Clerk-Recorder
**DOC- 2013-0113662-00**
Check Number
Tuesday, MAY 07, 2013 10:56:04
MOD    $16.00:REC    $26.00:FTC    $15.00
DAF     $2.70:REF    $0.30:RED    $1.00
ERD     $1.00:
Ttl Pd    $62.00    Rcpt # 0001655419
lrc/RR/1-16

————————[Space Above This Line For Recording Data]————————

# DEED OF TRUST

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated**APRIL  24, 2013**      ,
together with all Riders to this document.
**(B) "Borrower"**is STEVEN WILKERSON AND LISA WILKERSON, HUSBAND AND WIFE
          as Joint XXXXXX XXXXXXXX Tenants

Borrower's address is **1933 GRASS MOUNTAIN CRT**
**ANTIOCH ,**                **CA   94531**   . Borrower is the trustor under this Security Instrument.
**(C) "Lender"**is **WELLS FARGO BANK, N.A.**

Lender is a **NATIONAL ASSOCIATION**
organized and existing under the laws of **THE UNITED STATES**

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          **Form 3005  1/01**
Wolters Kluwer Financial Services
VMP ®-6(CA) (0711)

**NMFL 3005 (CACD)  Rev 3/2009**
Page 1 of 15          Initials: SW
                            [signature]

Case: 25-40564   Doc# 52   Filed: 07/03/25   Entered: 07/03/25 23:43:52   Page 5 of 72

Lender's address is **101 NORTH PHILLIPS AVENUE, SIOUX FALLS, SD 57104**

Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is **FIDELITY NATIONAL TITLE INS CO**

**(E) "Note"** means the promissory note signed by Borrower and dated **APRIL 24, 2013**

The Note states that Borrower owes Lender **TWO HUNDRED THREE THOUSAND FOUR HUNDRED AND 00/100** Dollars

(U.S. $ **\*\*\*\*\*\*\*203,400.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **MAY 01, 2033**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider  ☐ Biweekly Payment Rider  ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

Exhibit "A"

Case: 25-40564   Doc# 52   Filed: 07/03/25   Entered: 07/03/25 23:43:52   Page 6 of 72

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **CONTRA COSTA** :

[Type of Recording Jurisdiction]  [Name of Recording Jurisdiction]
**SEE ATTACHED LEGAL DESCRIPTION**

**TAX STATEMENTS SHOULD BE SENT TO:   WELLS FARGO HOME MORTGAGE, P.O. BOX 11758, NEWARK, NJ  071014758**

Parcel ID Number:   which currently has the address of
**1933 GRASS MOUNTAIN CRT**   [Street]
**ANTIOCH**   [City], California **94531**   [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005  1/01
VMP ®-6(CA) (0711)   Page 3 of 15   Initials

Exhibit "A"

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Exhibit "A"

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Case: 25-40564   Doc# 52   Filed: 07/03/25   Entered: 07/03/25 23:43:52   Page 9 of 72

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Exhibit "A"

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3005 1/01
VMP ®-6(CA) (0711)                    Page 8 of 15            Initials: _S W_

Exhibit "A"

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Exhibit "A"

Case: 25-40564   Doc# 52   Filed: 07/03/25   Entered: 07/03/25 23:43:52   Page 13 of
72

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Exhibit "A"

Case: 25-40564   Doc# 52   Filed: 07/03/25   Entered: 07/03/25 23:43:52   Page 14 of 72

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Exhibit "A"

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Exhibit "A"

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      *Form* 3005 1/01
VMP ®-6(CA) (0711)      Page 13 of 15      Initials: _SW_

Exhibit "A"

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                            STEVEN WILKERSON                 -Borrower

_____          _____ (Seal)
                                            LISA WILKERSON                   -Borrower

_____ (Seal)   _____ (Seal)
                            -Borrower                                        -Borrower

_____ (Seal)   _____ (Seal)
                            -Borrower                                        -Borrower

_____ (Seal)   _____ (Seal)
                            -Borrower                                        -Borrower

Exhibit "A"

Case: 25-40564   Doc# 52   Filed: 07/03/25   Entered: 07/03/25 23:43:52   Page 18 of 72

State of California

County of _Contra Costa_ } ss.

On _4/30/13_ before me, _Peggy Younger, Notary Public_

, personally appeared

**STEVEN WILKERSON AND LISA WILKERSON**

, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (Seal)

PEGGY YOUNGER
Commission # 1848708
Notary Public - California
Contra Costa County
My Comm. Expires May 11, 2013

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP ®-6(CA) (0711)　　　　Page 15 of 15　　　Initials: _____　Form 3005　1/01

Exhibit "A"

## EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF ANTIOCH, COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 341, IN THE CITY OF ANTIOCH, COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA, AS SHOWN ON THE MAP OF SUBDIVISION 7590, FILED JUNE 19, 1997 IN BOOK 392, PAGE 49, CONTRA COSTA COUNTY RECORDS.

APN: **055-350-011**



Case: 25-40564   Doc# 52   Filed: 07/03/25   Entered: 07/03/25 23:43:52   Page 20 of
72

# EXHIBIT B

**Not for Official Use : This copy has not been QUALITY ASSURED.**

*\*\*\*Send All Notices to Assignee\*\*\**

RECORDING REQUESTED BY:
**WELLS FARGO BANK, N.A.**
**2701 WELLS FARGO WAY**
**N9408-05C**
**MINNEAPOLIS, MN 55440-1629**

AND WHEN RECORDED MAIL TO
**WELLS FARGO BANK, N.A.**
**MAC: N9408-05C**
**PO BOX 1629**
**MINNEAPOLIS, MN 55440-1269**
**ATTN: ASSIGNMENT TEAM**

**\* $ R 0 0 0 0 9 0 3 0 0 9 $ \***

Electronically Recorded
**CONTRA COSTA Co Recorder Office**
**KRISTIN B. CONNELLY, Clerk-Recorder**
**DOC - 2023-0009977**
Friday, Feb 3, 2023 13:41
SB2 Fee: $75.00

Total Paid: $92.00          Receipt #: 202300009428

9 - Ingeo                                     199 / CARRIEPC / 1-1

## ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **WELLS FARGO BANK, N.A. , I HOME CAMPUS , DES MOINES, IA 50328** . For VALUE RECEIVED, the undersigned hereby does convey, assign, transfer and set over to: **SPECIALIZED LOAN SERVICING LLC , 6200 S. QUEBEC ST. , GREENWOOD VILLAGE, CO 80111** , assignee, the described deed of trust, with all interest, all liens, and any rights due or to become due thereon. Said Deed of Trust for **$203400.00** is recorded in the State of **CA** , County of **Contra Costa** Official Records, dated **04/24/2013** and recorded **05/07/2013** , as Instrument No. **2013-0113662-00**

Executed by **STEVEN WILKERSON AND LISA WILKERSON, HUSBAND AND WIFE AS JOINT TENANTS** , as Trustors and **WELLS FARGO BANK, N.A.** as the original beneficiary. Legal Description: **As more fully described in said Deed of Trust.**

Dated: **02/03/2023**
WELLS FARGO BANK, N.A.



By: JENNIFER RAE ANDERSON Vice President Loan Documentation

STATE OF MN
COUNTY OF Hennepin } s.s.

This instrument was acknowledged before me on **02/03/2023** by **JENNIFER RAE ANDERSON** as **Vice President Loan Documentation** of **WELLS FARGO BANK, N.A.**

*anne M. Schreiber*

ANNE M SCHREIBER, Notary Public
Expires: 01/31/2025

> ANNE M SCHREIBER
> NOTARY PUBLIC - MINNESOTA
> MY COMMISSION EXPIRES 01/31/2025

e2d7dfb2

Exhibit "B"

# EXHIBIT C

Case: 25-40564    Doc# 52    Filed: 07/03/25    Entered: 07/03/25 23:43:52    Page 23 of
72

3



**RECORDING REQUESTED BY**
Jerald N. Marrs

**AND WHEN RECORDED MAIL TO**
Jerald N. Marrs
Claassen Marrs, P.C.
111 Deerwood Road, Suite 200
San Ramon, California 94583

APN: 055-350-011

CONTRA COSTA Co Recorder Office
DEBORAH COOPER, Clerk-Recorder
**DOC - 2020-0259947**
Monday, Nov 2, 2020 15:00:00

**Total Paid: $20.00**          Receipt #: 202003917324

**0000 - Public**                                    210 / CPPC / 1-3

Space above line for Recorder's Use
NO TAX DUE

## GRANT DEED

The undersigned Grantor declares under the penalty of perjury that the following is true and correct.

Documentary transfer tax is NONE. Not pursuant to a sale. No consideration. A transfer into a revocable trust. Rev. & Tax Code Section 11930.

_____ Unincorporated area    X    City of Antioch

This transfer is exempt from the fee imposed by Gov. Code. Section 27388.1 because the property is a residential dwelling transferred to an owner-occupier.

This is a transfer into a revocable trust excludable from reassessment under Rev. & Tax Code Section 62(d).

FOR NO CONSIDERATION, GRANTOR MELISSA WILKERSON, a single person, as her sole and separate property, hereby GRANTS TO MELISSA WILKERSON, trustee of the MELISSA WILKERSON REVOCABLE TRUST dated June 19, 2020, that real property in the City of Antioch, County of Contra Costa, State of California, described in Exhibit "A" attached hereto and incorporated herein.

Commonly known as 1933 Grass Mountain Court, Antioch, CA 94509

APN: 055-350-011

Dated:   October 7, 2020 _____          _____
                                                                          MELISSA WILKERSON

Mail tax statement to 1933 Grass Mountain Court, Antioch, CA 94509

Exhibit "C"

## ACKNOWLEDGMENT

*A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.*

State of California )
)
County of Contra Costa )

On October 7, 2020, before me, C. A. Stafford, notary public, personally appeared

MELISSA WILKERSON, who proved to me on the basis of satisfactory evidence to be the

person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that

he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their

signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)

acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that

the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

C. A. Stafford
Notary Public – California
Contra Costa County
Commission # 2166749
My Comm. Expires Mar 17, 2021

C. A. Stafford                                    (Seal)

Exhibit "C"

Exhibit "A"

The land referred to is situated in the State of California, County of Contra Costa, City of Antioch, and is described as follows:

Lot 341 . as shown on the Map of Subdivision 7500, filed June 10, 1997 in Book 392, Page 49, Contra Costa County Records.

EXCEPTING THEREFROM:

All oil, gas, casinghead gasoline and other hydrocarbon and mineral substances below a point 500 feet below the surface of said land together with the right to take, remove , mine, pass through and dispose of all oil, gas, casinghead gasoline and other hydrocarbon and mineral substances, but without any right whatsoever to enter upon the surface of said land, as reserved in the Deed from Mary M. Hines, et al , recorded October 5, 1977, Book 8536, page 172, Official Records.

(Being APN 055-350-011)

This deed is made and accepted upon the Covenants, Conditions and Restrictions and other matters set forth in that certain Declaration of Restrictions recorded December 16, 1997, as Instrument No. 97-244267, Official Records of said county, all of which Covenants, Conditions and Restrictions and other matters are incorporated herein by reference to said Declaration of Restrictions with the same force and effect as though fully set forth herein.

NOT FOR FILING USE

Exhibit "C"

# EXHIBIT D

Case: 25-40564   Doc# 52   Filed: 07/03/25   Entered: 07/03/25 23:43:52   Page 27 of
72



Electronically Recorded
CONTRA COSTA Co Recorder Office
KRISTIN B. CONNELLY, Clerk-Recorder
**DOC - 2024-0073318**
Tuesday, Jul 30, 2024 16:02:00
SB2 Fee: $75.00

Total Paid: $98.00        Receipt #: 202400069670

10 - SimpliFile                              210 / CPPC / 1-3

RECORDING REQUESTED BY:
**NBS Default Services, LLC**
AND WHEN RECORDED MAIL TO:
**NBS Default Services, LLC**
**14841 Dallas Parkway, Suite 300**
**Dallas, TX 75254**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: **055-350-011-7**   TS No.:        TSG Order No.:

# SUBSTITUTION OF TRUSTEE

Pursuant to the provisions of that certain Deed of Trust dated 04/24/2013, by STEVEN WILKERSON AND LISA WILKERSON, HUSBAND AND WIFE AS JOINT TENANTS, as Trustor, to FIDELITY NATIONAL TITLE INS CO, as Trustee, for the benefit of WELLS FARGO BANK, N.A. as Beneficiary, recorded on 05/07/2013 as Document No.: 2013-0113662-00 ,    in the office of the registrar of Contra Costa County, California; and to secure an obligation under a Promissory Note.

The undersigned, as the current beneficiary or authorized agent of the beneficiary, does hereby remove FIDELITY NATIONAL TITLE INS CO, as Trustee and does, pursuant to the terms of the Deed of Trust, hereby remove any Substitute Trustee or Trustees who may have been previously appointed in place of the original Trustee, and does hereby appoint and substitute NBS DEFAULT SERVICES LLC, to serve, effective immediately, as Substitute Trustee in the Deed of Trust, and to replace  FIDELITY NATIONAL TITLE INS CO. Said Substitute Trustee is qualified to serve as Trustee under the laws of the states of California and Texas.

The undersigned hereby revokes all other substitutions of trustee which it may have executed, appointed or filed in the past, giving and granting to said Substitute Trustee all the powers, duties and authority of the discharged Trustee, and hereby ratifying all acts of said Substitute Trustee heretofore or hereafter performed.  Said Substitute Trustee shall, in accordance with the provisions of the deed of trust, succeed to all the title, powers and duties conferred upon the Original Trustee(s) by the terms of said deed of trust and by applicable law.

Exhibit "D"
SUBSTITUTION OF TRUSTEE

Case: 25-40564     Doc# 52    Filed: 07/03/25    Entered: 07/03/25 23:43:52     Page 28 of 72

Dated: July 12, 2024

**NEWREZ, LLC D/B/A SHELLPOINT MORTGAGE SERVICING**

_Dorian S Cook_

Name: Dorian S Cook

Title: Document Verification Specialist

Page **2** of **3**

SUBSTITUTION OF TRUSTEE
Exhibit "D"

**ACKNOWLEDGMENT**

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of _South Carolina_

County of _Greenville_

On _July 12, 2024_ before me, _Mariah Royce_ personally appeared, (insert name and title of the officer)

_Dorian S Cook_ _Document Verification Specialist_ who proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they

executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the

person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and

correct.

WITNESS my hand and official seal.

Signature _Mariah Royce_ (Seal)

Page **3** of **3**

SUBSTITUTION OF TRUSTEE

Exhibit "D"

# EXHIBIT  E

Case: 25-40564    Doc# 52    Filed: 07/03/25    Entered: 07/03/25 23:43:52    Page 31 of
72



Electronically Recorded
CONTRA COSTA Co Recorder Office
KRISTIN B. CONNELLY, Clerk-Recorder
**DOC - 2024-0073796**
Wednesday, Jul 31, 2024 15:24:00
SB2 Fee: $75.00

Total Paid: $104.00          Receipt #: 202400070091

10 - SimpliFile                                    209 / AGPC2 / 1-5

RECORDING REQUESTED BY:
**Title 365**
**Nobleserve, LLC - Title365**
**2 Penn Center West, Suite 425**
**Pittsburgh, PA 15276**

WHEN RECORDED MAIL TO:
**NBS Default Services, LLC**
**14841 Dallas Parkway, Suite 300**
**Dallas, TX 75254**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN:          TS No.:          **TSG ORDER No.:**

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
## IMPORTANT NOTICE
NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

### 違約通知
### 注：本文件包含一个信息摘要

### 채무 불이행 통지서
참고사항: 본 첨부 문서에 정보 요약서가 있습니다

### AVISO DE INCUMPLIMIENTO
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO

### PABATID NG HINDI PAGKAKABAYAD
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

### THÔNG BÁO VỀ VIỆC QUÁ HẠN TRẢ NỢ
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)**

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

Exhibit "E"

This amount is **$39,897.78** as of **06/18/2024**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and Deed of Trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and Deed of Trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Shellpoint Mortgage Servicing**
**c/o NBS Default Services, LLC**
**14841 Dallas Parkway, Suite 300**
**Dallas, TX 75254**
**Attn: Foreclosure Dept.**
**Phone: 800-766-7751**
**Fax: 213-863-6065**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

# REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That NBS Default Services, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 04/24/2013, executed by STEVEN WILKERSON AND LISA WILKERSON, HUSBAND AND WIFE AS JOINT TENANTS, as Trustor(s), to secure certain obligations in favor of WELLS FARGO BANK, N.A., as beneficiary, recorded on 05/07/2013 as Document No.: 2013-0113662-00, of Official Records in the Office of the Recorder of Contra Costa County, California describing land therein as: As more fully described on said Deed of Trust.

Included among these obligations is one Note(s) for the original sum of **$203,400.00** that that beneficial

Exhibit "E"

interest under such Deed of Trust and the obligations secured thereby presently held by the beneficiary or its agent; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

**Installment of Principal and Interest which became due on 10/01/2022, plus impounds and/or advances together with late charges, and all subsequent installments of principal, interest, plus impounds and/or advances and late charges and any reoccurring obligation that become due, including trustee's fees and expenses.**

That by reason therefore, the present beneficiary under such Deed of Trust has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**<u>NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS WAIVER OF ANY OTHER FEES OWING TO THE BENEFICIARY, OR OTHER DEFAULT BY THE TRUSTOR, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.</u>**

**The beneficiary, mortgage servicer, or agent of beneficiary or mortgage servicer declares that it has complied with California Civil Code Section 2923.55, wherever applicable. The Declaration is attached.**

**Dated: July 19, 2024**

NBS Default Services, LLC, as Trustee for the Beneficiary

By: *Marissa Adams*

Marissa Adams, Foreclosure Associate

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of the debt referenced herein in a bankruptcy proceeding, this is not an attempt to impose personal liability upon you for payment of that debt. In the event you have received a bankruptcy discharge, any action to enforce the debt will be taken against the property only.

Exhibit "E"

**CALIFORNIA DECLARATION OF COMPLIANCE**
**(CAL. CIV. CODE § 2923.55)**

Borrower(s): THE ESTATE OF LISA WILKERSON, IF ANY, THE ESTATE OF STEVEN WILKERSON, IF ANY, LISA WILKERSON, STEVEN WILKERSON
Property Address: 1933 GRASS MOUNTAIN CRT, ANTIOCH, CA 94531
Trustee's Sale No.: 9462-6555

The undersigned, as an authorized agent or employee of the below mortgage servicer, declares as follows:

1. ☐ The mortgage servicer has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55(b)(2). Thirty days have passed since the initial contact was made.

2. ☑ The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code § 2923.55(f) but has not made contact despite such due diligence. Thirty days have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required because the individual did not meet the definition of "borrower" under California Civil Code § 2920.5(c).

4. ☐ The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on "owner-occupied" or qualifying tenant-occupied residential real property as defined by California Civil Code § 2924.15.

Additionally, pursuant to California Civil Code § 3273.10:

1. ☑ The mortgage servicer has not denied the borrower a forbearance request made between 8/31/2020 and 12/1/2021.

2. ☐ The mortgage servicer was unable to approve the borrower's request for a forbearance request made between 8/31/2020 and 12/1/2021, and a forbearance was not subsequently provided.

3. ☐ The mortgage servicer was unable to approve the borrower's request for a forbearance made between 8/31/2020 and 12/1/2021, however, a forbearance was subsequently provided.

4. ☐ The requirements of California Civil Code § 3273.10 do not apply because the borrower was not current on payments as of 2/1/2020 in connection with a mortgage or deed of trust secured by residential property containing four dwelling units or less.

5. ☐ The mortgage servicer is in compliance with California Civil Code § 3273.10 because the mortgage servicer has complied with the relevant provisions regarding forbearance in Section 4022 of the federal Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) (Public Law 116-136), including any amendments or revisions to those provisions, pursuant to California Civil Code § 3273.10(d).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Dated: __July 15, 2024__

NEWREZ, LLC D/B/A SHELLPOINT MORTGAGE
SERVICING AS SERVICER FOR Shellpoint Mortgage
Servicing

*Valtan Joe*

By: __Valtan Joe__
Its: __Loss Mitigation Specialist__

Version Dated 12.8.21

Exhibit "E"

ATTACHMENT TO NOTICE OF DEFAULT

Version Dated 12.8.21

Exhibit "E"

# EXHIBIT  F

Case: 25-40564    Doc# 52    Filed: 07/03/25    Entered: 07/03/25 23:43:52    Page 37 of
72



RECORDING REQUESTED BY
**Title 365**
**Nobleserve, LLC - Title365**
**2 Penn Center West, Suite 425**
**Pittsburgh, PA 15276**

AND WHEN RECORDED MAIL TO:
**NBS Default Services, LLC**
**14841 Dallas Parkway, Suite 300**
**Dallas, TX 75254**

**Electronically Recorded**
**CONTRA COSTA Co Recorder Office**
**KRISTIN B. CONNELLY, Clerk-Recorder**
**DOC - 2025-0014901**
Tuesday, Feb 18, 2025 15:02:00
SB2 Fee: $75.00

Total Paid: **$98.00**     Receipt #: 202500015370

10 - SimpliFile     220 / ABPC / 1-3

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.:          TSG Order No.:          A.P.N.: 055-350-011-7

# NOTICE OF TRUSTEE'S SALE
NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

## 出售通知

## 注：本文件包含一个信息摘要

매각 공고
참고사항: 본 첨부 문서에 정보 요약서가 있습니다

## AVISO DE VENTA
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO

## PABATID NG PAGBEBENTA
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

## THÔNG BÁO BÁN
BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN CHÍNH

(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 04/24/2013. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NBS Default Services, LLC, as the duly appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust Recorded 05/07/2013 as Document No.: 2013-0113662-00, of Official Records in the office of the Recorder of Contra Costa County, California, executed by: STEVEN WILKERSON AND LISA WILKERSON, HUSBAND AND WIFE AS JOINT TENANTS, as Trustor, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable in full at time of sale by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state).   All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and state, and as more fully described in the above
Exhibit "F"

referenced Deed of Trust.

**Sale Date & Time: 04/01/2025 at 9:00 AM**
**Sale Location: Auction.com Room Pleasant Hill Community Center, 320 Civic Drive, Pleasant Hill, CA 94523**

The street address and other common designation, if any, of the real property described above is purported to be: 1933 GRASS MOUNTAIN CRT, ANTIOCH, CA 94531

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made in an "AS IS" condition, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: **$150,088.50** (Estimated). Accrued interest and additional advances, if any, will increase this figure prior to sale. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 1-800-280-2832 or visit this internet website, www.auction.com, using the file number assigned to this case T.S.# . Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the internet website. The best way to verify postponement information is to attend the scheduled sale.

NOTICE TO TENANT: You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call 1-800-280-2832, or visit this internet website www.auction.com, using the file number assigned to this case T.S.# to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant

Exhibit 5

buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

NBS Default Services, LLC
14841 Dallas Parkway, Suite 300
Dallas, TX 75254
800-766-7751
For Trustee Sale Information Log On To: www.auction.com or Call: 1-800-280-2832.

*Marissa Adams*

**NBS Default Services, LLC, Marissa Adams, Foreclosure Associate**

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of the debt referenced herein in a bankruptcy proceeding, this is not an attempt to impose personal liability upon you for payment of that debt. In the event you have received a bankruptcy discharge, any action to enforce the debt will be taken against the property only.

Exhibit "F"

# EXHIBIT G

| Fill in this information to identify your case: |
|---|

United States Bankruptcy Court for the:

_____ District of _____

Case number *(if known)*: _____

Chapter you are filing under:
- ☐ Chapter 7
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13



**FILED**

APR 01 2025

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

☐ Check if this is an amended filing

## Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy    12/15

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:  Identify Yourself

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name**<br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | Melissa<br>First name<br>Marie<br>Middle name<br>Wilkerson<br>Last name<br><br>Suffix (Sr., Jr., II, III) | First name<br><br>Middle name<br><br>Last name<br><br>Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years**<br>Include your married or maiden names. | First name<br>Middle name<br>Last name<br><br>First name<br>Middle name<br>Last name | First name<br>Middle name<br>Last name<br><br>First name<br>Middle name<br>Last name |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx – xx – 9 0 6 8<br>OR<br>9 xx – xx – ___ ___ ___   Exhibit "G" | xxx – xx – ___ ___ ___ ___<br>OR<br>9 xx – xx – ___ ___ ___ ___ |

Case: 25-40564   Doc# 52   Filed: 04/01/25   Entered: 04/01/25 02:34:52   Page 42 of
72

| Debtor 1 | _Melissa M Wilkerson_ | | Case number (if known) _____ |
|---|---|---|---|
| | First Name    Middle Name    Last Name | | |

| | | About Debtor 1: | About Debtor 2 (Spouse Only In a Joint Case): |
|---|---|---|---|

**4. Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**

Include trade names and *doing business as* names

| About Debtor 1: | About Debtor 2 (Spouse Only In a Joint Case): |
|---|---|
| ☒ I have not used any business names or EINs. | ☐ I have not used any business names or EINs. |
| _____ Business name | _____ Business name |
| _____ Business name | _____ Business name |
| EIN ___ ___ – ___ ___ ___ ___ ___ ___ ___ | EIN ___ ___ – ___ ___ ___ ___ ___ ___ ___ |
| EIN ___ ___ – ___ ___ ___ ___ ___ ___ ___ | EIN ___ ___ – ___ ___ ___ ___ ___ ___ ___ |

**5. Where you live**

| | If Debtor 2 lives at a different address: |
|---|---|
| 1933 Grass Mountain Ct<br>Number    Street | _____<br>Number    Street |
| Antioch          CA   94531<br>City          State   ZIP Code | _____<br>City          State   ZIP Code |
| Contra Costa<br>County | _____<br>County |
| If your mailing address is different from the one above, fill it in here. Note that the court will send any notices to you at this mailing address. | If Debtor 2's mailing address is different from yours, fill it in here. Note that the court will send any notices to this mailing address. |
| _____<br>Number    Street | _____<br>Number    Street |
| _____<br>P.O. Box | _____<br>P.O. Box |
| _____<br>City          State   ZIP Code | _____<br>City          State   ZIP Code |

**6. Why you are choosing *this district* to file for bankruptcy**

| Check one: | Check one: |
|---|---|
| ☒ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district. | ☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district. |
| ☐ I have another reason. Explain. (See 28 U.S.C. § 1408.) | ☐ I have another reason. Explain. (See 28 U.S.C. § 1408.) |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

Exhibit "G"

Debtor 1 ___Melissa M Wilkerson___    Case number *(if known)*_____
       First Name    Middle Name    Last Name

## Part 2:    Tell the Court About Your Bankruptcy Case

**7. The chapter of the Bankruptcy Code you are choosing to file under**

*Check one. (For a brief description of each, see Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)). Also, go to the top of page 1 and check the appropriate box.*

❑ Chapter 7

❑ Chapter 11

❑ Chapter 12

☒ Chapter 13

**8. How you will pay the fee**

❑ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☒ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

❑ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9. Have you filed for bankruptcy within the last 8 years?**

☒ No

❑ Yes.  District _____ When _____ Case number _____
                                    MM / DD / YYYY

         District _____ When _____ Case number _____
                                    MM / DD / YYYY

         District _____ When _____ Case number _____
                                    MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

☒ No

❑ Yes.  Debtor _____ Relationship to you _____
         District _____ When _____ Case number, if known _____
                                    MM / DD / YYYY

         Debtor _____ Relationship to you _____
         District _____ When _____ Case number, if known _____
                                    MM / DD / YYYY

**11. Do you rent your residence?**

☒ No.  Go to line 12.

❑ Yes.  Has your landlord obtained an eviction judgment against you and do you want to stay in your residence?

         ❑ No. Go to line 12.

         ❑ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it with this bankruptcy petition.

Exhibit "G"

---

| Part 3: | Report About Any Businesses You Own as a Sole Proprietor |
|---|---|

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

☒ No. Go to Part 4.

☐ Yes. Name and location of business

_____
Name of business, if any

_____
Number        Street

_____

_____
City                                State    ZIP Code

*Check the appropriate box to describe your business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines. If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).*

☒ No. I am not filing under Chapter 11.

☐ No. I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes. I am filing under Chapter 11 and I am a small business debtor according to the definition in the Bankruptcy Code.

---

| Part 4: | Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention |
|---|---|

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

☒ No

☐ Yes. What is the hazard? _____

_____

If immediate attention is needed, why is it needed? _____

_____

_____

Where is the property? _____
                        Number        Street

_____

_____
City                                State    ZIP Code

Exhibit "G"

Debtor 1 _Melissa M Wilkerson_

First Name    Middle Name    Last Name

Case number (if known) _____

---

**Part 5:** **Explain Your Efforts to Receive a Briefing About Credit Counseling**

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**
Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**
Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☑ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**
Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**
Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

Exhibit "G"

Case: 25-40564    Doc# 52    Filed: 04/01/25    Entered: 04/01/25 20:43:52    Page 46 of
72

| Debtor 1 | Melissa M Wilkerson | Case number (if known) |
|---|---|---|
| | First Name  Middle Name  Last Name | |

**16. What kind of debts do you have?**

**16a. Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ No. Go to line 16b.
☒ Yes. Go to line 17.

**16b. Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☒ No. Go to line 16c.
☐ Yes. Go to line 17.

16c. State the type of debts you owe that are not consumer debts or business debts.

**17. Are you filing under Chapter 7?**

☒ No. I am not filing under Chapter 7. Go to line 18.

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

☐ Yes. I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No
☐ Yes

**18. How many creditors do you estimate that you owe?**

| | | |
|---|---|---|
| ☒ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**19. How much do you estimate your assets to be worth?**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☒ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

**20. How much do you estimate your liabilities to be?**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☒ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

| ✗ _____ | ✗ _____ |
|---|---|
| Signature of Debtor 1 | Signature of Debtor 2 |
| Executed on  4 / 1 / 2025 | Executed on _____ |
| MM / DD / YYYY  **Exhibit "G"** | MM / DD / YYYY |

| Debtor 1 | Melissa M Wilkerson | | Case number *(if known)* _____ |
|---|---|---|---|
| | First Name      Middle Name      Last Name | | |

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

**✗** _____     Date   04 / 01 / 2025

Signature of Attorney for Debtor                      MM  /  DD  / YYYY

Printed name _____

Firm name _____

Number     Street _____

_____

City _____     State _____   ZIP Code _____

Contact phone _____     Email address _____

Bar number _____     State _____

Exhibit "G"

Debtor 1   Melissa M   Wilkerson
           First Name   Middle Name   Last Name

Case number (if known) _____

**For you if you are filing this bankruptcy without an attorney**

**If you are represented by an attorney, you do not need to file this page.**

The law allows you, as an individual, to represent yourself in bankruptcy court, but **you should understand that many people find it extremely difficult to represent themselves successfully. Because bankruptcy has long-term financial and legal consequences, you are strongly urged to hire a qualified attorney.**

To be successful, you must correctly file and handle your bankruptcy case. The rules are very technical, and a mistake or inaction may affect your rights. For example, your case may be dismissed because you did not file a required document, pay a fee on time, attend a meeting or hearing, or cooperate with the court, case trustee, U.S. trustee, bankruptcy administrator, or audit firm if your case is selected for audit. If that happens, you could lose your right to file another case, or you may lose protections, including the benefit of the automatic stay.

You must list all your property and debts in the schedules that you are required to file with the court. Even if you plan to pay a particular debt outside of your bankruptcy, you must list that debt in your schedules. If you do not list a debt, the debt may not be discharged. If you do not list property or properly claim it as exempt, you may not be able to keep the property. The judge can also deny you a discharge of all your debts if you do something dishonest in your bankruptcy case, such as destroying or hiding property, falsifying records, or lying. Individual bankruptcy cases are randomly audited to determine if debtors have been accurate, truthful, and complete. **Bankruptcy fraud is a serious crime; you could be fined and imprisoned.**

If you decide to file without an attorney, the court expects you to follow the rules as if you had hired an attorney. The court will not treat you differently because you are filing for yourself. To be successful, you must be familiar with the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules of the court in which your case is filed. You must also be familiar with any state exemption laws that apply.

Are you aware that filing for bankruptcy is a serious action with long-term financial and legal consequences?

☐ No
☑ Yes

Are you aware that bankruptcy fraud is a serious crime and that if your bankruptcy forms are inaccurate or incomplete, you could be fined or imprisoned?

☐ No
☑ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out your bankruptcy forms?

☑ No
☐ Yes. Name of Person_____
        Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

By signing here, I acknowledge that I understand the risks involved in filing without an attorney. I have read and understood this notice, and I am aware that filing a bankruptcy case without an attorney may cause me to lose my rights or property if I do not properly handle the case.

X _____          X _____
Signature of Debtor 1          Signature of Debtor 2

Date   4 / 1 / 2025              Date   _____
       MM / DD / YYYY                   MM / DD / YYYY

Contact phone   925-783-1693      Contact phone _____

Cell phone   925-783-1693         Cell phone _____

Email address   Exhibit "G"        Email address _____

Official Form 101   Case: 25-40564   Doc# 72   Filed: 07/02/25   Voluntary Petition for Individuals Filing for Bankruptcy   Entered: 07/02/25 02:34:52   Page 49 of 8

72

# EXHIBIT H

Case: 25-40564    Doc# 52    Filed: 07/03/25    Entered: 07/03/25 23:43:52    Page 50 of
72


STATE OF CALIFORNIA
AUTHENTICATED
ELECTRONIC LEGAL MATERIAL

## Assembly Bill No. 295

### CHAPTER 142

An act to amend Sections 2924, 2924c, 2924h, 2924m, and 3273.10 of, and to add Section 2924.21 to, the Civil Code, relating to real property, and declaring the urgency thereof, to take effect immediately.

[Approved by Governor July 18, 2024. Filed with Secretary of State July 18, 2024.]

LEGISLATIVE COUNSEL'S DIGEST

AB 295, Lowenthal. Residential real property: foreclosure.

Existing law prescribes various requirements to be satisfied before the exercise of a power of sale under a mortgage or deed of trust and prescribes a procedure for the exercise of that power.

This bill would prohibit a person from contacting, soliciting, or initiating communication with an owner to claim the surplus funds from a foreclosure sale of the owner's residence before 90 days after the trustee's deed has been required.

In performing acts required by the provisions pertaining to the exercise of a power of sale under a mortgage or deed of trust, existing law provides that the trustee does not incur liability for specified errors and that the trustee is not subject to specified law.

This bill would add that a trustee does not incur liability and is not subject to that specified law when responding to requests for payoff or reinstatement information.

When some or all of the principal sum of an obligation secured by real property has become due prior to the maturity date by reason of default or other specified failure to pay and a power of sale is to be exercised, existing law authorizes a trustor or mortgagor, at any time prior to foreclosure, to pay to the beneficiary or mortgagee specified amounts, including specified amounts shown in the notice of default and reasonable costs and expenses that are actually incurred in enforcing the terms of the obligation, deed of trust, or mortgage, as specified. If the trustor or mortgagor cures the default pursuant to these provisions, existing law requires the beneficiary or mortgagee to execute and deliver to the trustee a notice of rescission, as specified. Existing law limits costs and expenses that may be charged pursuant to specified mortgage law to $50.

This bill would include reasonable costs and expenses that will be incurred as a direct result of the cure payment being tendered as part of the cure payment described above. This bill would include recording a notice of rescission as part of the costs and expenses that may be charged pursuant to specified mortgage law and raise the limit to $100.

Exhibit "H"

Case: 25-40564    Doc# 52    Filed: 07/03/25    Entered: 07/03/25 23:43:52    Page 51 of 72

Existing law specifies when a trustee's sale is deemed final and perfected, and provides that, if an eligible bidder submits a written notice of intent to bid pursuant to (1), as described below, the trustee's sale is deemed perfected as of 8 a.m. on the actual date of sale if a specified requirement is met.

This bill would recast that provision to provide that the trustee's sale is deemed perfected as of 8 a.m. on the actual date of sale if a specified requirement is met if an eligible bidder submits a written notice of intent to bid under any of the provisions granting eligible bidders the rights and priorities to make bids on the property after the initial trustee sale described above.

Existing law, until January 1, 2031, grants eligible tenant buyers, as defined, and other eligible bidders, as defined, certain rights and priorities to make bids on the property after the initial trustee sale. Existing law provides that a trustee's sale of property under a power of sale contained in a deed of trust or mortgage on specified real property until the earliest of, among other things, (1) the date upon which a representative of all of the eligible tenant buyers submits to the trustee a bid that meets specified requirements, including that the bid be limited to a single bid amount and not contain instructions for successive bid amounts; and (2) 45 days after the trustee's sale, except if an eligible bidder submits to the trustee a bid meeting specified requirements. Existing law requires prospective owner-occupants, as defined, eligible tenant buyers, and eligible bidders to submit specified affidavits or declarations regarding bidder eligibility under certain circumstances. Existing law authorizes the trustee to reasonably rely on these affidavits and declarations regarding bidder eligibility, and requires these affidavits or declarations of the winning bidder to be attached as an exhibit to the trustee's deed and recorded.

This bill would remove the requirement that the bid be limited to a single bid amount and not contain instructions for successive bid amounts from (1), as described above, and would add that requirement to (2), as described above. If the winning bidder is not required to submit an affidavit or declaration pursuant to the provisions described above, the bill would require the trustee to attach as an exhibit to the trustee's deed a statement that no affidavit or declaration is required by these provisions, and would provide that the lack of an affidavit or declaration shall not prevent the deed from being recorded and shall not invalidate the transfer of title pursuant to the trustee's deed.

Existing law requires, for trustee's sales where the winning bidder is an eligible bidder under the provisions described above, the trustee or an authorized agent to electronically send specified information to the Attorney General within 15 days of the sale being deemed final, including a copy of the trustee's deed, as recorded, as specified.

This bill would recast that provision to require the trustee to provide a copy of the trustee's deed as executed instead of as recorded.

Existing law, the COVID-19 Small Landlord and Homeowner Relief Act of 2020, requires a mortgage servicer to provide a specified written notice to a borrower if the mortgage servicer denies forbearance during the effective

Exhibit "H"

time period that states the reasons for that denial if the borrower was both current on payments as of February 1, 2020, and is experiencing a financial hardship that prevents the borrower from making timely payments on the mortgage obligation due, directly or indirectly, to the COVID-19 emergency. The act defines various terms for these purposes. If a mortgage servicer denies a forbearance request, the act requires a specified declaration to include the written notice together with a statement as to whether forbearance was or was not subsequently provided.

This bill would clarify that the act requires that specified declaration to include that written notice if the mortgage servicer denied the forbearance request during the effective time period.

This bill would declare that it is to take effect immediately as an urgency statute.

*The people of the State of California do enact as follows:*

SECTION 1.   Section 2924 of the Civil Code is amended to read:

2924.   (a)  Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge. If, by a mortgage created after July 27, 1917, of any estate in real property, other than an estate at will or for years, less than two, or in any transfer in trust made after July 27, 1917, of a like estate to secure the performance of an obligation, a power of sale is conferred upon the mortgagee, trustee, or any other person, to be exercised after a breach of the obligation for which that mortgage or transfer is a security, the power shall not be exercised except where the mortgage or transfer is made pursuant to an order, judgment, or decree of a court of record, or to secure the payment of bonds or other evidences of indebtedness authorized or permitted to be issued by the Commissioner of Financial Protection and Innovation, or is made by a public utility subject to the provisions of the Public Utilities Act, until all of the following apply:

(1)  The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default. That notice of default shall include all of the following:

(A)  A statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property.

(B)  A statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred.

(C)  A statement setting forth the nature of each breach actually known to the beneficiary and of the beneficiary's election to sell or cause to be sold

Exhibit "H"

the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default.

(D)  If the default is curable pursuant to Section 2924c, the statement specified in paragraph (1) of subdivision (b) of Section 2924c.

(2)  Not less than three months shall elapse from the filing of the notice of default.

(3)  Except as provided in paragraph (4), after the lapse of the three months described in paragraph (2), the mortgagee, trustee, or other person authorized to take the sale shall give notice of sale, stating the time and place thereof, in the manner and for a time not less than that set forth in Section 2924f.

(4)  Notwithstanding paragraph (3), the mortgagee, trustee, or other person authorized to take sale may record a notice of sale pursuant to Section 2924f up to 5 days before the lapse of the three-month period described in paragraph (2), provided that the date of sale is no earlier than three months and 20 days after the recording of the notice of default.

(5)  Whenever a sale is postponed for a period of at least 10 business days pursuant to Section 2924g, a mortgagee, beneficiary, or authorized agent shall provide written notice to a borrower regarding the new sale date and time, within 5 business days following the postponement. Information provided pursuant to this paragraph shall not constitute the public declaration required by subdivision (d) of Section 2924g. Failure to comply with this paragraph shall not invalidate any sale that would otherwise be valid under Section 2924f.

(6)  An entity shall not record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. An agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee, or substituted trustee under the deed of trust shall not record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

(b)  In performing acts required by this article or responding to requests for payoff or reinstatement information, the trustee shall not incur liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage. In performing the acts required by this article or responding to requests for payoff or reinstatement information, a trustee shall not be subject to Title 1.6c (commencing with Section 1788) of Part 4.

(c)  A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive

Exhibit "H"

evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.

(d) All of the following shall constitute privileged communications pursuant to Section 47:

(1) The mailing, publication, and delivery of notices as required by this section.

(2) Performance of the procedures set forth in this article.

(3) Performance of the functions and procedures set forth in this article if those functions and procedures are necessary to carry out the duties described in Sections 729.040, 729.050, and 729.080 of the Code of Civil Procedure.

(e) There is a rebuttable presumption that the beneficiary actually knew of all unpaid loan payments on the obligation owed to the beneficiary and secured by the deed of trust or mortgage subject to the notice of default. However, the failure to include an actually known default shall not invalidate the notice of sale and the beneficiary shall not be precluded from asserting a claim to this omitted default or defaults in a separate notice of default.

(f) With respect to residential real property containing no more than four dwelling units, a separate document containing a summary of the notice of default information in English and the languages described in Section 1632 shall be attached to the notice of default provided to the mortgagor or trustor pursuant to Section 2923.3.

SEC. 2. Section 2924.21 is added to the Civil Code, to read:

2924.21. A person shall not contact, solicit, or initiate communication with an owner to claim the surplus funds from a foreclosure sale of the owner's residence before 90 days after the trustee's deed has been recorded.

SEC. 3. Section 2924c of the Civil Code is amended to read:

2924c. (a) (1) Whenever all or a portion of the principal sum of any obligation secured by deed of trust or mortgage on real property or an estate for years therein hereafter executed has, prior to the maturity date fixed in that obligation, become due or been declared due by reason of default in payment of interest or of any installment of principal, or by reason of failure of trustor or mortgagor to pay, in accordance with the terms of that obligation or of the deed of trust or mortgage, taxes, assessments, premiums for insurance, or advances made by beneficiary or mortgagee in accordance with the terms of that obligation or of the deed of trust or mortgage, the trustor or mortgagor or their successor in interest in the mortgaged or trust property or any part thereof, or any beneficiary under a subordinate deed of trust or any other person having a subordinate lien or encumbrance of record thereon, at any time within the period specified in subdivision (e), if the power of sale therein is to be exercised, or, otherwise at any time prior to entry of the decree of foreclosure, may pay to the beneficiary or the mortgagee or their successors in interest, respectively, the entire amount due, at the time payment is tendered, with respect to (A) all amounts of principal, interest, taxes, assessments, insurance premiums, or advances actually known by the beneficiary to be, and that are, in default and shown in the notice of default, under the terms of the deed of trust or mortgage and

92

Exhibit "H"

the obligation secured thereby, (B) all amounts in default on recurring obligations not shown in the notice of default, and (C) all reasonable costs and expenses, subject to subdivision (c), that are actually incurred, or will be incurred as a direct result of the payment being tendered, in enforcing the terms of the obligation, deed of trust, or mortgage, and trustee's or attorney's fees, subject to subdivision (d), other than the portion of principal as would not then be due had no default occurred, and thereby cure the default theretofore existing, and thereupon, all proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and deed of trust or mortgage shall be reinstated and shall be and remain in force and effect, the same as if the acceleration had not occurred. This section does not apply to bonds or other evidences of indebtedness authorized or permitted to be issued by the Department of Financial Protection and Innovation or made by a public utility subject to the Public Utilities Code. For the purposes of this subdivision, the term "recurring obligation" means all amounts of principal and interest on the loan, or rents, subject to the deed of trust or mortgage in default due after the notice of default is recorded; all amounts of principal and interest or rents advanced on senior liens or leaseholds that are advanced after the recordation of the notice of default; and payments of taxes, assessments, and hazard insurance advanced after recordation of the notice of default. If the beneficiary or mortgagee has made no advances on defaults that would constitute recurring obligations, the beneficiary or mortgagee may require the trustor or mortgagor to provide reliable written evidence that the amounts have been paid prior to reinstatement.

(2) If the trustor, mortgagor, or other person authorized to cure the default pursuant to this subdivision does cure the default, the beneficiary or mortgagee or the agent for the beneficiary or mortgagee shall, within 21 days following the reinstatement, execute and deliver to the trustee a notice of rescission that rescinds the declaration of default and demand for sale and advises the trustee of the date of reinstatement. The trustee shall cause the notice of rescission to be recorded within 30 days of receipt of the notice of rescission and of all allowable fees and costs.

No charge, except for the recording fee, shall be made against the trustor or mortgagor for the execution and recordation of the notice which rescinds the declaration of default and demand for sale.

(b) (1) The notice, of any default described in this section, recorded pursuant to Section 2924, and mailed to any person pursuant to Section 2924b, shall begin with the following statement, printed or typed thereon:

"IMPORTANT NOTICE [14-point boldface type if printed or in capital letters if typed]

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, [14-point boldface type if printed or in capital letters if typed] and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and

Exhibit "H"

expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is _____ as  of  _____
                                                                              (Date)

and will increase until your account becomes current.

    While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

    Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

    Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

    To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

_____
(Name of beneficiary or mortgagee)
_____
(Mailing address)
_____
(Telephone)

    If you have any questions, you should contact a lawyer or the governmental agency that may have insured your loan.

92

Exhibit "H"

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. [14-point boldface type if printed or in capital letters if typed]"

Unless otherwise specified, the notice, if printed, shall appear in at least 12-point boldface type.

If the obligation secured by the deed of trust or mortgage is a contract or agreement described in paragraph (1) or (4) of subdivision (a) of Section 1632, the notice required herein shall be in Spanish if the trustor requested a Spanish language translation of the contract or agreement pursuant to Section 1632. If the obligation secured by the deed of trust or mortgage is contained in a home improvement contract, as defined in Sections 7151.2 and 7159 of the Business and Professions Code, which is subject to Title 2 (commencing with Section 1801), the seller shall specify on the contract whether or not the contract was principally negotiated in Spanish and if the contract was principally negotiated in Spanish, the notice required herein shall be in Spanish. No assignee of the contract or person authorized to record the notice of default shall incur any obligation or liability for failing to mail a notice in Spanish unless Spanish is specified in the contract or the assignee or person has actual knowledge that the secured obligation was principally negotiated in Spanish. Unless specified in writing to the contrary, a copy of the notice required by subdivision (c) of Section 2924b shall be in English.

(2) Any failure to comply with the provisions of this subdivision shall not affect the validity of a sale in favor of a bona fide purchaser or the rights of an encumbrancer for value and without notice.

(c) Costs and expenses that may be charged pursuant to Sections 2924 to 2924i, inclusive, shall be limited to the costs incurred for recording, mailing, including certified and express mail charges, publishing, and posting notices required by Sections 2924 to 2924i, inclusive, recording a notice of rescission under this section, postponement pursuant to Section 2924g not to exceed one hundred dollars ($100) per postponement and a fee for a trustee's sale guarantee or, in the event of judicial foreclosure, a litigation guarantee. For purposes of this subdivision, a trustee or beneficiary may purchase a trustee's sale guarantee at a rate meeting the standards contained in Sections 12401.1 and 12401.3 of the Insurance Code.

(d) (1) Trustee's or attorney's fees that may be charged pursuant to subdivision (a), or until the notice of sale is deposited in the mail to the trustor as provided in Section 2924b, if the sale is by power of sale contained in the deed of trust or mortgage, or, otherwise at any time prior to the decree of foreclosure, are hereby authorized to be in an amount as follows:

(A) If the unpaid principal sum secured is fifty thousand dollars ($50,000) or less, then in a base amount that does not exceed three hundred fifty dollars ($350).

Exhibit "H"

Case: 25-40564    Doc# 52    Filed: 07/03/25    Entered: 07/03/25 23:43:52    Page 58 of 72

(B) If the unpaid principal sum secured is greater than fifty thousand dollars ($50,000) but does not exceed one hundred fifty thousand dollars ($150,000), then in a base amount that does not exceed three hundred fifty dollars ($350) plus one-half of 1 percent of the unpaid principal sum secured exceeding fifty thousand dollars ($50,000).

(C) If the unpaid principal sum secured is greater than one hundred fifty thousand dollars ($150,000) but does not exceed five hundred thousand dollars ($500,000), then in a base amount that does not exceed three hundred dollars ($300) plus one-half of 1 percent of the unpaid principal sum secured exceeding fifty thousand dollars ($50,000) up to and including one hundred fifty thousand dollars ($150,000) plus one-quarter of 1 percent of any portion of the unpaid principal sum secured exceeding one hundred fifty thousand dollars ($150,000).

(D) If the unpaid principal sum secured is greater than five hundred thousand dollars ($500,000), then in a base amount that does not exceed three hundred dollars ($300) plus one-half of 1 percent of the unpaid principal sum secured exceeding fifty thousand dollars ($50,000) up to and including one hundred fifty thousand dollars ($150,000) plus one-quarter of 1 percent of any portion of the unpaid principal sum secured exceeding one hundred fifty thousand dollars ($150,000) up to and including five hundred thousand dollars ($500,000) plus one-eighth of 1 percent of any portion of the unpaid principal sum secured exceeding five hundred thousand dollars ($500,000).

(2) Any charge for trustee's or attorney's fees authorized by this subdivision shall be conclusively presumed to be lawful and valid where the charge does not exceed the amounts authorized in this subdivision. For purposes of this subdivision, the unpaid principal sum secured shall be determined as of the date the notice of default is recorded.

(e) Reinstatement of a monetary default under the terms of an obligation secured by a deed of trust, or mortgage may be made at any time within the period commencing with the date of recordation of the notice of default until five business days prior to the date of sale set forth in the initial recorded notice of sale.

In the event the sale does not take place on the date set forth in the initial recorded notice of sale or a subsequent recorded notice of sale is required to be given, the right of reinstatement shall be revived as of the date of recordation of the subsequent notice of sale, and shall continue from that date until five business days prior to the date of sale set forth in the subsequently recorded notice of sale.

In the event the date of sale is postponed on the date of sale set forth in either an initial or any subsequent notice of sale, or is postponed on the date declared for sale at an immediately preceding postponement of sale, and, the postponement is for a period that exceeds five business days from the date set forth in the notice of sale, or declared at the time of postponement, then the right of reinstatement is revived as of the date of postponement and shall continue from that date until five business days prior to the date of sale declared at the time of the postponement.

92

Exhibit "H"

Nothing contained herein shall give rise to a right of reinstatement during the period of five business days prior to the date of sale, whether the date of sale is noticed in a notice of sale or declared at a postponement of sale.

Pursuant to the terms of this subdivision, no beneficiary, trustee, mortgagee, or their agents or successors shall be liable in any manner to a trustor, mortgagor, their agents or successors or any beneficiary under a subordinate deed of trust or mortgage or any other person having a subordinate lien or encumbrance of record thereon for the failure to allow a reinstatement of the obligation secured by a deed of trust or mortgage during the period of five business days prior to the sale of the security property, and no such right of reinstatement during this period is created by this section. Any right of reinstatement created by this section is terminated five business days prior to the date of sale set forth in the initial date of sale, and is revived only as prescribed herein and only as of the date set forth herein.

As used in this subdivision, the term "business day" has the same meaning as specified in Section 9.

SEC. 4.   Section 2924h of the Civil Code, as amended by Section 7 of Chapter 642 of the Statutes of 2022, is amended to read:

2924h.   (a)   Each and every bid made by a bidder at a trustee's sale under a power of sale contained in a deed of trust or mortgage shall be deemed to be an irrevocable offer by that bidder to purchase the property being sold by the trustee under the power of sale for the amount of the bid. Any second or subsequent bid by the same bidder or any other bidder for a higher amount shall be a cancellation of the prior bid.

(b)   At the trustee's sale the trustee shall have the right (1) to require every bidder to show evidence of the bidder's ability to deposit with the trustee the full amount of their final bid in cash, a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, or a cash equivalent which has been designated in the notice of sale as acceptable to the trustee prior to, and as a condition to, the recognizing of the bid, and to conditionally accept and hold these amounts for the duration of the sale, and (2) to require the last and highest bidder to deposit, if not deposited previously, the full amount of the bidder's final bid in cash, a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, or a cash equivalent which has been designated in the notice of sale as acceptable to the trustee, immediately prior to the completion of the sale, the completion of the sale being so announced by the fall of the hammer or in another customary manner. The present beneficiary of the deed of trust under foreclosure shall have the right to offset their bid or bids only to the extent of the total amount due the beneficiary including the trustee's fees and expenses.

Exhibit "H"

Case: 25-40564   Doc# 52   Filed: 07/03/25   Entered: 07/03/25 23:43:52   Page 60 of 72

(c) In the event the trustee accepts a check drawn by a credit union or a savings and loan association pursuant to this subdivision or a cash equivalent designated in the notice of sale, the trustee may withhold the issuance of the trustee's deed to the successful bidder submitting the check drawn by a state or federal credit union or savings and loan association or the cash equivalent until funds become available to the payee or endorsee as a matter of right.

For the purposes of this subdivision, the trustee's sale shall be deemed final upon the acceptance of the last and highest bid, and shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 21 calendar days after the sale, or the next business day following the 21st day if the county recorder in which the property is located is closed on the 21st day. If an eligible bidder submits a written notice of intent to bid pursuant to paragraph (2) of subdivision (c) of Section 2924m, the trustee's sale shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 60 calendar days after the sale or the next business day following the 60th day if the county recorder in which the property is located is closed on the 60th day. However, the sale is subject to an automatic rescission for a failure of consideration in the event the funds are not "available for withdrawal" as defined in Section 12413.1 of the Insurance Code. The trustee shall send a notice of rescission for a failure of consideration to the last and highest bidder submitting the check or alternative instrument, if the address of the last and highest bidder is known to the trustee.

If a sale results in an automatic right of rescission for failure of consideration pursuant to this subdivision, the interest of any lienholder shall be reinstated in the same priority as if the previous sale had not occurred.

(d) If the trustee has not required the last and highest bidder to deposit the cash, a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, or a cash equivalent which has been designated in the notice of sale as acceptable to the trustee in the manner set forth in paragraph (2) of subdivision (b), the trustee shall complete the sale. If the last and highest bidder then fails to deliver to the trustee, when demanded, the amount of their final bid in cash, a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, or a cash equivalent which has been designated in the notice of sale as acceptable to the trustee, that bidder shall be liable to the trustee for all damages which the trustee may sustain by the refusal to deliver to the trustee the amount of the final bid, including any court costs and reasonable attorney's fees.

92

Exhibit "H"

If the last and highest bidder willfully fails to deliver to the trustee the amount of their final bid in cash, a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, or a cash equivalent which has been designated in the notice of sale as acceptable to the trustee, or if the last and highest bidder cancels a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, or a cash equivalent that has been designated in the notice of sale as acceptable to the trustee, that bidder shall be guilty of a misdemeanor punishable by a fine of not more than two thousand five hundred dollars ($2,500).

In the event the last and highest bidder cancels an instrument submitted to the trustee as a cash equivalent, the trustee shall provide a new notice of sale in the manner set forth in Section 2924f and shall be entitled to recover the costs of the new notice of sale as provided in Section 2924c.

(e) Any postponement or discontinuance of the sale proceedings shall be a cancellation of the last bid.

(f) Except as specifically provided in Section 2924m, in the event that this section conflicts with any other statute, then this section shall prevail.

(g) It shall be unlawful for any person, acting alone or in concert with others, (1) to offer to accept or accept from another, any consideration of any type not to bid, or (2) to fix or restrain bidding in any manner, at a sale of property conducted pursuant to a power of sale in a deed of trust or mortgage. However, it shall not be unlawful for any person, including a trustee, to state that a property subject to a recorded notice of default or subject to a sale conducted pursuant to this chapter is being sold in an "as-is" condition.

In addition to any other remedies, any person committing any act declared unlawful by this subdivision or any act which would operate as a fraud or deceit upon any beneficiary, trustor, or junior lienor shall, upon conviction, be fined not more than ten thousand dollars ($10,000) or imprisoned in the county jail for not more than one year, or be punished by both that fine and imprisonment.

(h) This section shall remain in effect only until January 1, 2031, and as of that date is repealed, unless a later enacted statute that is enacted before January 1, 2031, deletes or extends that date.

(i) The amendments made to this section by the bill adding this subdivision shall become operative on January 1, 2022.

(j) The amendments made to this section by the act adding this subdivision are declaratory of existing law.

SEC. 5. Section 2924m of the Civil Code is amended to read:

2924m. (a) For purposes of this section:

Exhibit "H"

(1)  "Prospective owner-occupant" means a natural person who presents to the trustee an affidavit or declaration, pursuant to Section 2015.5 of the Code of Civil Procedure, that:

(A)  They will occupy the property as their primary residence within 60 days of the trustee's deed being recorded.

(B)  They will maintain their occupancy for at least one year.

(C)  They are not any of the following:

(i)  The mortgagor or trustor.

(ii)  The child, spouse, or parent of the mortgagor or trustor.

(iii)  The grantor of a living trust that was named in the title to the property when the notice of default was recorded.

(iv)  An employee, officer, or member of the mortgagor or trustor.

(v)  A person with an ownership interest in the mortgagor, unless the mortgagor is a publicly traded company.

(D)  They are not acting as the agent of any other person or entity in purchasing the real property.

(2)  "Eligible tenant buyer" means a natural person who at the time of the trustee's sale:

(A)  Is occupying the real property as their primary residence.

(B)  Is occupying the real property under a rental or lease agreement entered into as the result of an arm's-length transaction with the mortgagor or trustor, or with the mortgagor or trustor's predecessor in interest, on a date prior to the recording of the notice of default against the property, and who attaches evidence demonstrating the existence of the tenancy to the affidavit or declaration required pursuant to subparagraph (B) of paragraph (2) of subdivision (c).

(C)  Is not the mortgagor or trustor, or the child, spouse, or parent of the mortgagor or trustor.

(D)  Is not acting as the agent of any other person or entity in purchasing the real property. Submission of a bid pursuant to paragraph (3) of subdivision (c) does not violate this subparagraph.

(E)  Has not filed a petition under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code at any time during the period from the date of the trustee's sale of the property to the 45th day after the trustee's sale, or the next business day following the 45th day if the 45th day is a weekend or holiday.

(3)  "Eligible bidder" means any of the following:

(A)  An eligible tenant buyer.

(B)  A prospective owner-occupant.

(C)  A nonprofit association, nonprofit corporation, or cooperative corporation in which an eligible tenant buyer is a voting member or director.

(D)  An eligible nonprofit corporation with all of the following attributes:

(i)  It has a determination letter from the Internal Revenue Service affirming its tax-exempt status pursuant to Section 501(c)(3) of the Internal Revenue Code and is not a private foundation as that term is defined in Section 509 of the Internal Revenue Code.

(ii)  It has its principal place of business in California.

Exhibit "H"

(iii) The primary residences of all board members are located in California.

(iv) One of its primary activities is the development and preservation of affordable rental or home ownership housing in California.

(v) It is registered and in good standing with the Attorney General's Registry of Charities and Fundraisers, pursuant to the Supervision of Trustees and Fundraisers for Charitable Purposes Act (Article 7 (commencing with Section 12580) of Chapter 6 of Part 2 of Division 3 of Title 2 of the Government Code).

(E) A limited liability company wholly owned by one or more eligible nonprofit corporations as described in subparagraph (C) or (D).

(F) A community land trust, as defined in clause (ii) of subparagraph (C) of paragraph (11) of subdivision (a) of Section 402.1 of the Revenue and Taxation Code.

(G) A limited-equity housing cooperative as defined in Section 817.

(H) The state, the Regents of the University of California, a county, city, district, public authority, or public agency, and any other political subdivision or public corporation in the state.

(4) "Evidence demonstrating the existence of the tenancy" means a copy of the dated and signed rental or lease agreement or, if a copy of the dated and signed rental or lease agreement is not available, then one of the following:

(A) Evidence of rent payments made for the property by the person asserting that they are an eligible tenant buyer for the six months prior to the recording of the notice of default.

(B) Copies of utility bills for the property payable by the person asserting that they are an eligible tenant buyer for the six months prior to the recording of the notice of default.

(b) This section does not prevent an eligible tenant buyer who meets the conditions set forth in paragraph (1) of subdivision (a) from being deemed a prospective owner-occupant.

(c) A trustee's sale of property under a power of sale contained in a deed of trust or mortgage on real property containing one to four residential units pursuant to Section 2924g shall not be deemed final until the earliest of the following:

(1) If a prospective owner-occupant is the last and highest bidder at the trustee's sale, the date upon which the conditions set forth in Section 2924h for the sale to become final are met. The prospective owner-occupant shall submit to the trustee the affidavit or declaration described in paragraph (1) of subdivision (a) at the trustee's sale or to the trustee by 5 p.m. on the next business day following the trustee's sale.

(2) Fifteen days after the trustee's sale unless at least one eligible tenant buyer or eligible bidder submits to the trustee either a bid pursuant to paragraph (3) or (4) or a nonbinding written notice of intent to place such a bid. The bid or written notice of intent to place a bid shall:

(A) Be sent to the trustee by certified mail, overnight delivery, or other method that allows for confirmation of the delivery date.

Exhibit "H"

(B)  Be accompanied by an affidavit or declaration, pursuant to Section 2015.5 of the Code of Civil Procedure, identifying the category set forth in paragraph (3) of subdivision (a) to which the person or entity submitting the bid or nonbinding written notice of intent belongs and stating that the person meets the criteria for that category. If the winning bid is placed by an eligible bidder described in subparagraphs (C) to (G), inclusive, of paragraph (3) of subdivision (a), the affidavit or declaration shall affirm the bidder's duty to comply with subdivision (a) of Section 2924o for the benefit of tenants occupying the property.

(C)  Be received by the trustee no later than 5 p.m. on the 15th day after the trustee's sale, or the next business day following the 15th day if the 15th day is a weekend or holiday.

(D)  Contain a current telephone number and return mailing address for the person submitting the bid or nonbinding written notice of intent.

(3)  (A)  The date upon which a representative of all of the eligible tenant buyers submits to the trustee a bid in an amount equal to the full amount of the last and highest bid at the trustee's sale, in the form of cash, a cashier's check drawn on a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state. This bid shall:

(i)  Be sent to the trustee by certified mail, overnight delivery, or other method that allows for confirmation of the delivery date.

(ii)  Be accompanied by an affidavit or declaration, pursuant to Section 2015.5 of the Code of Civil Procedure, stating that the persons represented meet the criteria set forth in paragraph (2) of subdivision (a), and that the persons represented are all of the eligible tenant buyers.

(iii)  Meet either of the following criteria:

(I)  Be received by the trustee no later than 5 p.m. on the 15th day after the trustee's sale, or the next business day following the 15th day if the 15th day is a weekend or holiday.

(II)  Be received by the trustee no later than 5 p.m. on the 45th day after the trustee's sale, or the next business day following the 45th day if the 45th day is a weekend or holiday, if at least one of the eligible tenant buyers submitted a nonbinding written notice of intent to place a bid pursuant to paragraph (2).

(iv)  Contain a current telephone number and return mailing address for the person submitting the bid.

(B)  If the conditions in this paragraph are satisfied, the eligible tenant buyers shall be deemed the last and highest bidder pursuant to the power of sale.

(4)  (A)  Forty-five days after the trustee's sale, except that during the 45-day period, an eligible bidder may submit to the trustee a bid in an amount that exceeds the last and highest bid at the trustee's sale, in the form of cash, a cashier's check drawn on a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or

Exhibit "H"

federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state. The bid shall:

(i) Be sent to the trustee by certified mail, overnight delivery, or other method that allows for confirmation of the delivery date.

(ii) Be accompanied by an affidavit or declaration, pursuant to Section 2015.5 of the Code of Civil Procedure, identifying the category set forth in paragraph (3) of subdivision (a) to which the eligible bidder belongs and stating that the eligible bidder meets the criteria for that category.

(iii) Be received by the trustee no later than 5 p.m. on the 45th day after the trustee's sale, or the next business day following the 45th day if the 45th day is a weekend or holiday, if the eligible bidder submitted a nonbinding written notice of intent to bid pursuant to paragraph (2). Notwithstanding clause (i), on the last day that bids are eligible to be received by the trustee under this clause, the trustee shall not receive any bid that is not sent by certified mail or overnight mail.

(iv) Contain a current telephone number and return mailing address for the person submitting the bid.

(v) Be limited to a single bid amount and not contain instructions for successive bid amounts.

(B) As of 5 p.m. on the 45th day after the trustee's sale, if one or more eligible bidders has submitted a bid that meets the conditions in this paragraph, the eligible bidder that submitted the highest bid shall be deemed the last and highest bidder pursuant to the power of sale. The trustee shall return any losing bid to the eligible bidder that submitted it.

(d) The trustee may reasonably rely on affidavits and declarations regarding bidder eligibility received under this section. The affidavit or declaration of the winning bidder shall be attached as an exhibit to the trustee's deed and recorded. If the winning bidder is not required to submit an affidavit or declaration pursuant to this section, the trustee shall attach as an exhibit to the trustee's deed a statement that no affidavit or declaration is required by this section, and the lack of an affidavit or declaration shall not prevent the deed from being recorded and shall not invalidate the transfer of title pursuant to the trustee's deed.

(e) If the conditions set forth in paragraph (1) of subdivision (c) for a sale to be deemed final are not met, then:

(1) Not later than 48 hours after the trustee's sale of property under Section 2924g, the trustee or an authorized agent shall post on the internet website set forth on the notice of sale, as required under paragraph (8) of subdivision (b) of Section 2924f, the following information:

(A) The date on which the trustee's sale took place.

(B) The amount of the last and highest bid at the trustee's sale.

(C) An address at which the trustee can receive documents sent by United States mail and by a method of delivery providing for overnight delivery.

(2) The information required to be posted on the internet website under paragraph (1) shall also be made available not later than 48 hours after the trustee's sale of property under Section 2924g by calling the telephone

92

Exhibit "H"

Case: 25-40564    Doc# 52    Filed: 07/03/25    Entered: 07/03/25 23:43:52    Page 66 of 72

number set forth on the notice of sale as required under paragraph (8) of subdivision (b) of Section 2924f.

(3) The information required to be provided under paragraphs (1) and (2) shall be made available using the file number assigned to the case that is set forth on the notice of sale as required under paragraph (8) of subdivision (b) of Section 2924f.

(4) The information required to be provided under paragraphs (1) and (2) shall be made available for a period of not less than 45 days after the sale of property under Section 2924g.

(5) A disruption of any of these methods of providing the information required under paragraphs (1) and (2) to allow for reasonable maintenance or due to a service outage shall not be deemed to be a violation of this subdivision.

(6) The information to be provided by the trustee to eligible bidders or to persons considering whether to submit a bid or notice of intent to bid pursuant to this section is limited to the information set forth in paragraph (1).

(f) Title to the property shall remain with the mortgagor or trustor or successor in interest until the property sale is deemed final as provided in this section.

(g) A prospective owner-occupant shall not be in violation of this section if a legal owner's compliance with the requirements of Section 2924n renders them unable to occupy the property as their primary residence within 60 days of the trustee's deed being recorded.

(h) This section shall prevail over any conflicting provision of Section 2924h.

(i) For trustee's sales where the winning bidder is an eligible bidder under this section, the trustee or an authorized agent shall electronically send the following information to the office of the Attorney General within 15 days of the sale being deemed final:

(1) The dates when the trustee's sale took place and when it was deemed final.

(2) The name of the winning bidder.

(3) The street address and assessor's parcel number of the subject property.

(4) A copy of the trustee's deed, as executed, including the attached affidavit or declaration of the winning bidder.

(5) The category set forth in paragraph (3) of subdivision (a) to which the eligible bidder belongs.

(j) The Attorney General, a county counsel, a city attorney, or a district attorney may bring an action for specific performance or any other remedy at equity or at law to enforce this section.

(k) The Department of Justice shall include a summary of information contained in the reports received pursuant to subdivision (i) in a searchable repository on its official internet website.

Exhibit "H"

Case: 25-40564   Doc# 52   Filed: 07/03/25   Entered: 07/03/25 23:43:52   Page 67 of 72

(*l*) The pendency of a determination of finality under subdivision (c) shall not cause termination of any hazard insurance coverage in effect at the time of the trustee's sale.

(m) This section shall remain in effect only until January 1, 2031, and as of that date is repealed, unless a later enacted statute that is enacted before January 1, 2031, deletes or extends that date.

SEC. 6. Section 3273.10 of the Civil Code is amended to read:

3273.10. (a) If a mortgage servicer denies a forbearance request made during the effective time period, the mortgage servicer shall provide written notice to the borrower that sets forth the specific reason or reasons that forbearance was not provided, if both of the following conditions are met:

(1) The borrower was current on payment as of February 1, 2020.

(2) The borrower is experiencing a financial hardship that prevents the borrower from making timely payments on the mortgage obligation due, directly or indirectly, to the COVID-19 emergency.

(b) If the written notice in subdivision (a) cites any defect in the borrower's request, including an incomplete application or missing information, that is curable, the mortgage servicer shall do all of the following:

(1) Specifically identify any curable defect in the written notice.

(2) Provide 21 days from the mailing date of the written notice for the borrower to cure any identified defect.

(3) Accept receipt of the borrower's revised request for forbearance before the aforementioned 21-day period lapses.

(4) Respond to the borrower's revised request within five business days of receipt of the revised request.

(c) If a mortgage servicer denies a forbearance request made during the effective time period, the declaration required by subdivision (b) of Section 2923.5 shall include the written notice together with a statement as to whether forbearance was or was not subsequently provided.

(d) A mortgage servicer, mortgagee, or beneficiary of the deed of trust, or an authorized agent thereof, who, with respect to a borrower of a federally backed mortgage, complies with the relevant provisions regarding forbearance in Section 4022 of the federal Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) (Public Law 116-136), including any amendments or revisions to those provisions, shall be deemed to be in compliance with this section. A mortgage servicer of a nonfederally backed mortgage that provides forbearance that is consistent with the requirements of the CARES Act for federally backed mortgages shall be deemed to be in compliance with this section.

SEC. 7. This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the California Constitution and shall go into immediate effect. The facts constituting the necessity are:

92

Exhibit "H"

To enable the smooth and predictable process of foreclosure and to protect consumers impacted by the foreclosure process, it is necessary for this act to take effect immediately.

O

92

Exhibit "H"

**WRIGHT, FINLAY & ZAK, LLP**
Arnold L. Graff, Esq. (SBN 269170)
Michelle A. Mierzwa, Esq. (SBN 196175)
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Telephone: (949) 477-5050
Fax: (949) 608-9142
Email: agraff@wrightlegal.net

Attorney for Respondent,
NBS DEFAULT SERVICES, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In re: | BK Case No.: 25-40564 CN |
| MELISSA MARIE WILKERSON, | Chapter: 13 |
| Debtor. | **CERTIFICATE OF SERVICE** |
| | <u>Hearing</u>: <br> Date: July 18, 2025 <br> Time: 11:00 am <br> Location: United States Bankruptcy Court <br> 1300 Clay Street <br> Oakland, CA 94612 <br> **Courtroom 215** |

## <u>CERTIFICATE OF SERVICE</u>

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660.

On 7/7/2025, I served the foregoing document described as **OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY; REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF NBS DEFAULT SERVICES, LLC'S OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY ;**

CERTIFICATE OF SERVICE

**DECLARATION OF JESSICA KAHLER IN SUPPORT OF NBS DEFAULT SERVICES, LLC'S OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY; DECALARATION OF MICHELLE A. MIERZWA IN SUPPORT OF NBS DEFAULT SERVICES, LLC'S OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY AND CERTIFICATE OF SERVICE** on the interested parties in this action as follows:

[X] (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Las Vegas, Nevada. I am readily familiar with the firm's business practice for collection and processing of correspondence for mailing with the U.S. Postal Service pursuant to which practice the correspondence is deposited with the U.S. Postal Service the same day in the ordinary course of business. **See attached service list.**

[X] (BY ELCTRONIC SERVICE) Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF systems sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system. **See attached service list.**

[X] (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on 7/3/2025, at Newport Beach, California.

*/s/ Jackie Powell*
JACKIE POWELL

CERTIFICATE OF SERVICE

## ADDITIONAL SERVICE INFORMATION

TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONICA FILING ("NEF"):

Martha G. Bronitsky    13trustee@oak13.com
Andrew Christensen    andrew@californiahomelawyer.com, R61919@notify.bestcase.com
Dane Wyatt Exnowski    dane.exnowski@mccalla.com, mccallaecf@ecf.courtdrive.com
Arnold L. Graff    agraff@wrightlegal.net, jpowell@wrightlegal.net
Office of the U.S. Trustee/Oak    USTPRegion17.OA.ECF@usdoj.gov
Elaine Soong    esoong@wedgewood-inc.com, aguisinger@wedgewood-inc.com
E. Vincent Wood    general@shepwoodlaw.com, Wood.E.V.B@notify.bestcase.com

TO BE SERVED BY UNITED STATES MAIL:

DEBTOR:
Melissa Marie Wilkerson
1933 Grass Mountain Ct
Antioch, CA 94531

DEBTOR'S COUNSEL:
Andrew Christensen
Law Office of Andrew J. Christensen, P.C.
2063 Mountain Blvd., Suite 2
Oakland, CA 94611

DEBTOR'S CO-COUNSEL:
E. Vincent Wood
Shepherd & Wood LLP
2950 Buskirk Ave.,Ste 300
Walnut Creek, CA 94597

CHAPTER 13 TRUSTEE:
Martha G. Bronitsky
P.O. Box 5004
Hayward, CA 94540

U.S. TRUSTEE:
Office of the United States Trustee
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102

INTERESTED PARTY:
Good Neighbor Homes, LLC
Wedgewood Office of the General Counsel
2015 Manhattan Beach Blvd., Ste. 100
Redondo Beach, CA 90278

CERTIFICATE OF SERVICE