# Exhibit H

by telephone immediately at (949) 477-5052 and arrangements will be made for the return of this material. Thank You.

 

---

**From:** Olivia Reyes <oreyes@wedgewoodhomes.com>
**Sent:** Wednesday, May 21, 2025 10:44:09 AM
**To:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>
**Cc:** SaveIt <SaveIt@wrightlegal.net>
**Subject:** RE: 252-20242335 1933 Grass Mountain Court, Antioch, CA Bankruptcy Case No. 25-40564 CN

Hi Michelle,

Our in-house legal team reviewed the BK and agrees this could be headache…. No one has time for an additional headache these days. 😊 Will funds be returned via wire or check?

Good Neighbor Homes, LLC is requesting interest due to our funds being held in the amount of $4,888.35 (51 days x $95.85 per day). Can you please demand from the servicer?

Thank you

**OLIVIA REYES**
**T**. 310.640.3070 x 2110 | **F**. 424-218-0880



OREYES@WEDGEWOODHOMES.COM
WWW.WEDGEWOODHOMES.COM

---

**From:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>
**Sent:** Tuesday, May 20, 2025 5:52 PM
**To:** Olivia Reyes <oreyes@wedgewoodhomes.com>
**Cc:** SaveIt <SaveIt@wrightlegal.net>
**Subject:** 252-20242335 1933 Grass Mountain Court, Antioch, CA Bankruptcy Case No. 25-40564 CN

[External Sender]

Ms. Reyes,

As we discussed, the foreclosure sale of the above-mentioned property was conducted at 9:14 am PT on April 1, 2025, prior to the filing of the above-mentioned bankruptcy case at 9:36 am PT on April 1, 2025. You indicated that you became aware of the bankruptcy filing at some point. As a result of the delivery of a notice of intent to bid affidavit pursuant to Civil Code section 2924m(c)(2), the 45-day period for post-sale bids was triggered, so the identity of the high bidder was not known until recently. Since no other post-sale bidders submitted a bid, Good Neighbor Homes, LLC as the high bidder at the live sale auction was deemed the last and highest bidder pursuant to Civil Code section 2924m(c)(4). It is our understanding that the Trustee's Deed Upon Sale will need to be

Case: 25-40564   Doc# 55-1   Filed: 07/05/25   Entered: 07/05/25 01:48:58   Page 2 of 30

recorded within 60 days of the live sale auction in order to benefit from the statutory "relation back" to 8:00 a.m. on the day of the live sale.

There is a concern that the borrower (Wilkerson) under the foreclosed loan intends to challenge the validity of the sale, as our client, NBS Default, was already served with, and provided preliminary responses to, a subpoena seeking information about the identity of the high bidder, post auction eligible bidders and the timing of the live auction. As a result, it may be prudent for Good Neighbor Homes, LLC to file an ex parte motion for annulment/relief from stay regarding the recording of the Trustee's Deed, in addition to ensuring that the Trustee's Deed Upon Sale is recorded inside the statutory period. Otherwise, there may be ongoing challenges to the validity of the sale. If Good Neighbor Homes prefers not to become involved in potential litigation relating to the foreclosure, with the agreement of all parties NBS Default may be able to return the bid funds to allow the borrower's bankruptcy to play out in the ordinary course. Please let us know how Good Neighbor Homes, LLC would like to proceed.

**Michelle A. Mierzwa, Esq.**
Partner, Compliance Division

4665 MacArthur Court, Suite 280
Newport Beach CA 92660
(949) 438-1265 Direct
(949) 608-9142 Fax
(949) 477-5050 Main Ext. 1042
**Wright, Finlay & Zak: Your Western Regional Counsel for California, Nevada, Arizona, Washington, Oregon, Utah, New Mexico, Montana, Hawaii, Idaho, and South Dakota**

PLEASE BE ADVISED THAT THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
**IF YOU ARE A CONSUMER AND WISH TO OPT OUT OF EMAIL COMMUNICATIONS REGARDING YOUR DEBT, PLEASE REPLY TO THIS EMAIL WITH "OPT OUT."**

Confidentiality Note: The information contained in this email is privileged and confidential and is intended only for the use of the individual or entity named If the reader of this email is not the intended recipient, you are hereby notified that any distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify the sender by telephone immediately at (949) 477-5052 and arrangements will be made for the return of this material. Thank You.

CONFIDENTIALITY NOTICE: This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, you may NOT use, disclose, copy or disseminate this information. Please contact the sender

# **Exhibit I**

**WRIGHT, FINLAY & ZAK, LLP**
Arnold L. Graff, Esq. (SBN 269170)
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Telephone: (949) 477-5050
Fax: (949) 608-9142
Email: agraff@wrightlegal.net

Attorneys for Interested Party,
NBS DEFAULT SERVICES, LLC

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No.: 25-40564-CN |
| MELISSA WILKERSON, | Chapter: 13 |
| Debtor. | **INTERESTED PARTY'S NBS DEFAULT SERVICES, LLC'S RESPONSES TO DEBTOR'S REQUEST FOR INTERROGATORIES** |
| | **SET ONE** |

PROPOUNDING PARTY:     MELISSA WILKERSON

RESPONDING PARTY:     NBS DEFAULT SERVICES, LLC

SET NO.:     ONE

    Interested Party, NBS Default Services, LLC ("Responding Party" or "NBS") hereby responds to the Interrogatories (Set 1) propounded by Debtor, Melissa Wilkerson, ("Debtor" or "Propounding Party") as follows:

## **GENERAL OBJECTIONS**

    Responding Party generally objects to the Interrogatories to the extent that the demand would require the Responding Party to disclose information which is legally protected by one or

1

Case: 25-40564   Doc# 55-1   Filed: 07/03/25   Entered: 07/03/25 01:48:38   Page 5 of 30

more evidentiary privileges recognized under California and/or Federal law, including the attorney-client privilege and the attorney work-product doctrine. Accordingly, to the extent that the Interrogatories call for a disclosure of protected information, a continuing objection to each and every such request is hereby imposed. Responding Party further and generally objects to the Interrogatories to the extent that it seeks information which is equally available to the Propounding Party.

Notwithstanding and without waiving the foregoing objections, responding party, in good faith, has intended to supply, wherever possible, responsive information in answer to Propounding Party's request and will make assumptions wherever necessary to attempt to understand the intent of certain questions asked. In this regard, all responses made herein are based upon information presently known to the responding party, its representatives, agents and attorneys of record after reasonable investigation.

Responding Party is in the initial stages of its investigation and discovery concerning the subject matter of this action and anticipates that, during the course of its continued investigation and discovery, further pertinent information will be found. As such, Responding Party reserves its right to introduce evidence and/or rely upon at trial, or any other preliminary hearings set in this action and on facts and information omitted from the following responses, whether as a result of mistake, error or oversight, or because such information has not yet been discovered or recognized.

Responding Party further reserves all rights and objections asserted herein with respect to the propriety, scope and related aspects of this or other discovery and reserves all rights in connection therewith. In each and every response, Responding Party does not intend or will not attempt to list each and every item of evidentiary material in support of its contentions, but rather, as a courtesy, will provide facts and responses where appropriate.

2

The foregoing general objections are incorporated into each response set forth below.

## **INTERROGATORIES**

**INTERROGATORY NO. 1:**

IDENTIFY the time and date that YOU first learned of this BANKRUPTCY filing and state the manner in which YOU first received notice or learned of the BANKRUPTCY.

**RESPONSE TO INTERROGATORY NO. 1:**

On April 1, 2025 at 11:57 a.m. Central Time, Responding Party received a phone call from a male caller. He did not disclose his relationship with the borrowers under the Loan, but he indicated that the Borrowers under the Loan filed bankruptcy. He provided a Northern District Bankruptcy Case Number of 25-40564, but he did not provide any copies of a filed petition or a Notice of Bankruptcy Filing entered by the court. After performing due diligence to determine if and when a bankruptcy petition was actually filed, NBS obtained from the bankruptcy court PACER system a copy of a bankruptcy petition filed by a different debtor, Melissa Wilkerson, which was stamped by the bankruptcy court as entered at 9:36 a.m. Pacific Time, after the completion of the foreclosure sale at 9:14 a.m. Pacific Time on April 1, 2025

**INTERROGATORY NO. 2:**

State all facts supporting YOUR contention that YOUR actions relating to the foreclosure of the SUBJECT PROPERTY did not violate the automatic stay.

**RESPONSE TO INTERROGATORY NO. 2:**

When the default under the Loan was not cured, on February 18, 2025, NBS, as foreclosure trustee, recorded a Notice of Trustee's Sale that set the date for the foreclosure auction for April 1, 2025, in Pleasant Hill, California. Prior to the foreclosure auction a Sale Datedown was ordered by NBS and prepared by a title company, which included confirmation that as of 9:03 a.m. on April 1, 2025, bankruptcy PACER records indicated that no bankruptcy petition had been filed

3

1  by the Borrowers or Melissa Wilkerson. Thereafter on April 1, 2025, the NBS conducted and

2  completed a foreclosure sale through a local auction company at 9:14 a.m. Pacific Time where

3  the Property sold to a third-party, Good Neighbor Homes, LLC. Good Neighbor Homes, LLC

4  delivered its bid funds to the local auction company via wire, and the bid funds were accepted as

5  the high bid at the foreclosure sale effective 9:14 a.m. Pacific Time on April 1, 2025. NBS

6  received sale result information and a copy of the Trustee Certificate of Sale/Receipt confirming

7  that the foreclosure auction was cried and completed as of 9:14 a.m. Pacific Time on April 1,

8  2025 with Good Neighbor Homes, LLC as the high bidder.

9       Later the same morning as the foreclosure sale, Debtor filed a Voluntary Petition under

10  Chapter 13 of the bankruptcy code. At 11:57 a.m. Central Time on April 1, 2025, NBS received

11  a phone call from a male caller indicating that a Chapter 13 bankruptcy petition was filed as Case

12  No. 25-40564 in the Northern District of California. NBS retrieved a copy of the petition available

13  on the court's PACER Docket, which bears a time stamp of 9:36:41 a.m., after completion of the

14  foreclosure sale to Good Neighbor Homes, LLC. On April 11, 2025, NBS received an email

15  attaching a letter from Shepard & Wood, LLP, identifying E. Vincent Wood as the attorney for

16  the Debtor and providing written notice that the Debtor's Bankruptcy was filed at 9:19 a.m. The

17  letter enclosed a copy of a Notice of Bankruptcy Case filing stating "A bankruptcy case

18  concerning the debtor(s) listed below was filed under Chapter 13 of the United States Bankruptcy

19  Code, entered on 04/01/2025 at 09:36 AM and filed on 04/01/2025" and the Notice indicated a

20  filing time of 9:19 a.m. on April 1, 2025, after completion of the foreclosure sale to Good

21  Neighbor Homes, LLC. On April 14, 2025, NBS responded to the April 11, 2025 letter to confirm

22  to Debtor's counsel that the foreclosure sale was completed at 9:14 am on April 1, 2025, and there

23  was no violation of the stay.

24

1       Since the Property contained a single-family residence, NBS was required to wait for 15

2   days after the completion of the foreclosure sale before issuing the Trustee's Deed Upon Sale to

3   see if any eligible bidders would deliver a notice of intent to bid pursuant to Civil Code section

4   2924m(c)(2). On April 4, 2025, NBS received a notice of intent to bid from Carl Dexter pursuant

5   to Civil Code section m(c)(2), who provided an Affidavit pursuant to Civil Code section 2924m

6   under penalty of perjury indicating that he qualified as an eligible bidder in the category of

7   prospective owner occupant under Civil Code section 2924m(a)(1). The notice under Civil Code

8   sections 2924m(c)(2) [Notice of Intent] and 2924m(a)(1) [Prospective Owner Occupant

9   Affidavit] triggered the 45-day waiting period for post-auction bids to be submitted to the trustee

10   pursuant to Civil Code section 2924m(c)(4) so that NBS as trustee could confirm the identity of

11   the high bidder to include in the Trustee's Deed Upon Sale. As of July 18, 2024, clarifying

12   language in Civil Code section 2924h(c) was enacted to confirm that if an eligible bidder submits

13   a written notice of intent to bid pursuant to Civil Code section 2924m(c)(2), the trustee's deed

14   shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded

15   within 60 calendar days after the sale or the next business day if the county recorder is closed on

16   the 45th day. As a result, when the 45-day period is triggered by submission of a notice of intent

17   under Civil Code section 2924m(c)(2), no action is taken by the trustee until the end of the 45-

18   day period, which maintains the status quo to allow the required statutory overbid period to play

19   out.

20   On April 25, 2025, NBS received a subpoena from Vincent Wood, the attorney for Debtor and

21   on May 2, 2025 NBS retained Wright, Finlay & Zak. LLP ("WFZ") as its counsel to assist with

22   response to the subpoena. On May 5, 2025, WFZ Partner Michelle Mierzwa spoke with Mr. Wood

23   regarding the timing of the foreclosure sale prior to the Debtor's bankruptcy filing and the receipt

24   of a notice of intent to bid from a prospective owner occupant under Civil Code section

Case 25-40564   Doc# 55-1   Filed: 07/05/25   Entered: 07/05/25 01:48:58   Page 9 of
30

1  2924m(c)(2), delaying the identity of the high bidder for the completed sale until May 16, 2025.

2  On May 7, 2025, NBS responded to a Subpoena served by Debtor's counsel, providing copies of

3  documents evidencing compliance with applicable statutes and confirmation that the foreclosure

4  sale was completed at 9:14 a.m. prior to the filing of the Debtor's bankruptcy petition (whether it

5  was at 9:36 a.m. or at 9:19 a.m. on April 1, 2025). The end of the 45-day period for submission

6  of post-sale overbids was May 16, 2025, and the end of the 60-day period to record the trustee's

7  deed was Saturday, May 31, 2025, with the next business day being Monday, June 2, 2025. On

8  May 19, 2025, NBS confirmed no other bid funds had been received and that the high bidder at

9  auction, Good Neighbor Home, LLC, was still the high bidder. NBS did not take any action

10 regarding the completed sale during the 45-day period that would be considered a violation of

11 any bankruptcy stay because the information available to NBS between April 1, 2025 and May

12 27, 2025 indicated that the foreclosure sale was completed before the Debtor's bankruptcy was

13 filed.

14        Despite the apparent validity of the completed foreclosure sale, in light of the aggressive

15 behavior and threats of the Debtor's counsel in April and May of 2025, NBS inquired with the

16 high bidder Good Neighbor Homes, LLC, regarding whether it might agree to voluntarily cancel

17 the completed sale. On May 21, 2025 Good Neighbor Homes indicated that it would agree to

18 accept a refund of its bid funds to cancel the foreclosure sale, so NBS inquired with Shellpoint

19 about a voluntary agreement to cancel the completed sale.

20 On May 22, 2024, before any Trustee's Deed had been prepared or issued, new co-counsel for

21 Debtor, Andrew J. Christensen, filed the Motion for Damages for Violation of Automatic Stay,

22 alleging for the first time that the bankruptcy petition was filed earlier than 9:19 a.m. on April, 1,

23 2025. However, since Mr. Andersen mailed the Motion via USPS Ground Service and failed to

24 communicate with NBS or its counsel about the new allegations regarding earlier filing, NBS and

its counsel did not receive the Motion containing these new allegations until May 27, 2028. Immediately following review of the Motion for Damages, NBS' counsel called Mr. Andersen on May 28, 2025 and demanded that Debtor withdraw the Motion as no Trustee's Deed Upon Sale had been prepared or issued, and NBS would confirm cancellation of the foreclosure sale as soon as possible. On May 30, 2025, NewRez/Shellpoint confirmed approval of the cancellation of the foreclosure, authorizing return of the bid funds to Good Neighbor Homes, LLC. Thereafter, NBS' counsel sent an email to Mr. Christensen and Mr. Wood on May 30, 2025, confirming the sale was being canceled and again demanding withdrawal of the Motion. On the same date, Mr. Christensen sent a demand for payment of $25,000.00 to withdraw the Motion for Damages. NBS returned the bid funds to Good Neighbor Homes, LLC June 4, 2025, deeming the sale cancelled, and a Trustee's Deed Upon Sale was never prepared or recorded. On June 5, 2025, NBS' counsel sent a copy of the bid fund return correspondence and check to Debtor's counsel, confirming no trustee's deed was or would be issued.

**INTERROGATORY NO. 3:**

State all facts supporting YOUR contention that YOUR actions relating to the foreclosure of the SUBJECT PROPERTY were not willful violations of the automatic stay.

**RESPONSE TO INTERROGATORY NO. 3:**

When the default under the Loan was not cured, on February 18, 2025, NBS, as foreclosure trustee, recorded a Notice of Trustee's Sale that set the date for the foreclosure auction for April 1, 2025, in Pleasant Hill, California. Prior to the foreclosure auction a Sale Datedown was ordered by NBS and prepared by a title company, which included confirmation that as of 9:03 a.m. on April 1, 2025, bankruptcy PACER records indicated that no bankruptcy petition had been filed by the Borrowers or Melissa Wilkerson. Thereafter on April 1, 2025, the NBS conducted and completed a foreclosure sale through a local auction company at 9:14 a.m. Pacific Time where

7

Case: 25-40964   Doc# 55-1   Filed: 07/05/25   Entered: 07/05/25 01:48:58   Page 11 of 30

the Property sold to a third-party, Good Neighbor Homes, LLC. Good Neighbor Homes, LLC delivered its bid funds to the local auction company via wire, and the bid funds were accepted as the high bid at the foreclosure sale effective 9:14 a.m. Pacific Time on April 1, 2025. NBS received sale result information and a copy of the Trustee Certificate of Sale/Receipt confirming that the foreclosure auction was cried and completed as of 9:14 a.m. Pacific Time on April 1, 2025 with Good Neighbor Homes, LLC as the high bidder.

Later the same morning as the foreclosure sale, Debtor filed a Voluntary Petition under Chapter 13 of the bankruptcy code. At 11:57 a.m. Central Time on April 1, 2025, NBS received a phone call from a male caller indicating that a Chapter 13 bankruptcy petition was filed as Case No. 25-40564 in the Northern District of California. NBS retrieved a copy of the petition available on the court's PACER Docket, which bears a time stamp of 9:36:41 a.m., after completion of the foreclosure sale to Good Neighbor Homes, LLC. On April 11, 2025, NBS received an email attaching a letter from Shepard & Wood, LLP, identifying E. Vincent Wood as the attorney for the Debtor and providing written notice that the Debtor's Bankruptcy was filed at 9:19 a.m. The letter enclosed a copy of a Notice of Bankruptcy Case filing stating "A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 13 of the United States Bankruptcy Code, entered on 04/01/2025 at 09:36 AM and filed on 04/01/2025" and the Notice indicated a filing time of 9:19 a.m. on April 1, 2025, after completion of the foreclosure sale to Good Neighbor Homes, LLC. On April 14, 2025, NBS responded to the April 11, 2025 letter to confirm to Debtor's counsel that the foreclosure sale was completed at 9:14 am on April 1, 2025, and there was no violation of the stay.

Since the Property contained a single-family residence, NBS was required to wait for 15 days after the completion of the foreclosure sale before issuing the Trustee's Deed Upon Sale to see if any eligible bidders would deliver a notice of intent to bid pursuant to Civil Code section

8

Case: 25-40564   Doc# 55-1   Filed: 07/05/25   Entered: 07/05/25 01:48:58   Page 12
of 30

2924m(c)(2). On April 4, 2025, NBS received a notice of intent to bid from Carl Dexter pursuant to Civil Code section m(c)(2), who provided an Affidavit pursuant to Civil Code section 2924m under penalty of perjury indicating that he qualified as an eligible bidder in the category of prospective owner occupant under Civil Code section 2924m(a)(1). The notice under Civil Code sections 2924m(c)(2) [Notice of Intent] and 2924m(a)(1) [Prospective Owner Occupant Affidavit] triggered the 45-day waiting period for post-auction bids to be submitted to the trustee pursuant to Civil Code section 2924m(c)(4) so that NBS as trustee could confirm the identity of the high bidder to include in the Trustee's Deed Upon Sale. As of July 18, 2024, clarifying language in Civil Code section 2924h(c) was enacted to confirm that if an eligible bidder submits a written notice of intent to bid pursuant to Civil Code section 2924m(c)(2), the trustee's deed shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 60 calendar days after the sale or the next business day if the county recorder is closed on the 45th day. As a result, when the 45-day period is triggered by submission of a notice of intent under Civil Code section 2924m(c)(2), no action is taken by the trustee until the end of the 45-day period, which maintains the status quo to allow the required statutory overbid period to play out.

On April 25, 2025, NBS received a subpoena from Vincent Wood, the attorney for Debtor and on May 2, 2025 NBS retained Wright, Finlay & Zak. LLP ("WFZ") as its counsel to assist with response to the subpoena. On May 5, 2025, WFZ Partner Michelle Mierzwa spoke with Mr. Wood regarding the timing of the foreclosure sale prior to the Debtor's bankruptcy filing and the receipt of a notice of intent to bid from a prospective owner occupant under Civil Code section 2924m(c)(2), delaying the identity of the high bidder for the completed sale until May 16, 2025. On May 7, 2025, NBS responded to a Subpoena served by Debtor's counsel, providing copies of documents evidencing compliance with applicable statutes and confirmation that the foreclosure

9

Case: 25-40364   Doc# 55-1   Filed: 07/05/25   Entered: 07/05/25 01:48:58   Page 13 of 30

sale was completed at 9:14 a.m. prior to the filing of the Debtor's bankruptcy petition (whether it was at 9:36 a.m. or at 9:19 a.m. on April 1, 2025). The end of the 45-day period for submission of post-sale overbids was May 16, 2025, and the end of the 60-day period to record the trustee's deed was Saturday, May 31, 2025, with the next business day being Monday, June 2, 2025. On May 19, 2025, NBS confirmed no other bid funds had been received and that the high bidder at auction, Good Neighbor Home, LLC, was still the high bidder. NBS did not take any action regarding the completed sale during the 45-day period that would be considered a violation of any bankruptcy stay because the information available to NBS between April 1, 2025 and May 27, 2025 indicated that the foreclosure sale was completed before the Debtor's bankruptcy was filed.

Despite the apparent validity of the completed foreclosure sale, in light of the aggressive behavior and threats of the Debtor's counsel in April and May of 2025, NBS inquired with the high bidder Good Neighbor Homes, LLC, regarding whether it might agree to voluntarily cancel the completed sale. On May 21, 2025 Good Neighbor Homes indicated that it would agree to accept a refund of its bid funds to cancel the foreclosure sale, so NBS inquired with Shellpoint about a voluntary agreement to cancel the completed sale.

On May 22, 2024, before any Trustee's Deed had been prepared or issued, new co-counsel for Debtor, Andrew J. Christensen, filed the Motion for Damages for Violation of Automatic Stay, alleging for the first time that the bankruptcy petition was filed earlier than 9:19 a.m. on April, 1, 2025. However, since Mr. Andersen mailed the Motion via USPS Ground Service and failed to communicate with NBS or its counsel at any point previously about the new allegations regarding earlier filing, NBS and its counsel did not receive the Motion containing these new allegations until May 27, 2028. Immediately following review of the Motion for Damages, NBS' counsel called Mr. Andersen on May 28, 2025 advising that NBS would confirm cancellation of the

10

1  foreclosure sale as soon as possible based on the new allegations, and demanded that Debtor

2  withdraw the Motion as no Trustee's Deed Upon Sale had been prepared or issued,. On May 30,

3  2025, NewRez/Shellpoint confirmed approval of the cancellation of the foreclosure, authorizing

4  return of the bid funds to Good Neighbor Homes, LLC. Thereafter, NBS' counsel sent an email

5  to Mr. Christensen and Mr. Wood on May 30, 2025, confirming the sale was being canceled and

6  again demanding withdrawal of the Motion. On the same date, Mr. Christensen sent a demand for

7  payment of $25,000.00 to withdraw the Motion for Damages. NBS returned the bid funds to Good

8  Neighbor Homes, LLC June 4, 2025, deeming the sale cancelled, and a Trustee's Deed Upon Sale

9  was never prepared or recorded. On June 5, 2025, NBS' counsel sent a copy of the bid fund return

10  correspondence and check to Debtor's counsel, confirming no trustee's deed was or would be

11  issued.

12  **INTERROGATORY NO. 4:**

13        If YOU have policies and procedures for handling foreclosures in California related to

14  bankruptcy filings and California Civil Codes §2924m and/or §2924h , identify all

15  DOCUMENTS that evidence such policies and procedures.

16  **RESPONSE TO INTERROGATORY NO. 4:**

17  Policies and procedures of NBS regarding the processing of California non-judicial foreclosures

18  are contained in the "California Non-Judicial Procedures" job aid, which includes sections on

19  Post-Sale – Overbid / Sale Proceeds / Trustee's Deed, Day 16 Intent to Overbid Review, Day 45

20  – Bid Review, and Bankruptcy Notifications.

21  **INTERROGATORY NO. 5:**

22        DESCRIBE ALL policies and procedures YOU have for dealing with a foreclosure when

23  a bankruptcy case is filed after the auction starts but before the conclusion of the auction on the

24  15th or 45th day under §2924m.

11

Case: 25-40364   Doc# 53-1   Filed: 07/05/25   Entered: 07/05/25 01:48:58   Page 15
of 30

**RESPONSE TO INTERROGATORY NO. 5:**

Responding Party objects to the Interrogatory to the extent that it requires Responding Party to admit or accept as true a proposed legal conclusion that the foreclosure sale is not complete until the 15th or 45th day under §2924m, and Responding Party is not a law firm or attorney. Subject to and without waiving the foregoing objection, Responding Party responds that policies and procedures of NBS regarding the processing of California non-judicial foreclosures are contained in the "California Non-Judicial Procedures" job aid, which includes sections on Post-Sale – Overbid / Sale Proceeds / Trustee's Deed, Day 16 Intent to Overbid Review, Day 45 – Bid Review, and Bankruptcy Notifications.

**INTERROGATORY NO. 6:**

IDENTIFY the person(s) responsible for creating the policies and procedures for handling foreclosures in California related to bankruptcy filings and California Civil Codes §2924m and/or §2924h.

**RESPONSE TO INTERROGATORY NO. 6:**

Objection, compound. Without waiving this objection, Responding Party responds that NBS management creates policies and procedures for handling non-judicial foreclosures in California, including policies and procedures regarding bankruptcy filings and California Civil Codes §2924m and/or §2924h.

**INTERROGATORY NO. 7:**

EXPLAIN all actions taken by NBS to deem the sale final and/or accept the bid of Good Neighbor Homes, LLC in relation to the foreclosure of the SUBJECT PROPERTY.

**RESPONSE TO INTERROGATORY NO. 7:**

Responding Party objects to the Interrogatory to the extent that it requires Responding Party to admit or accept as true a proposed legal or factual conclusion that the foreclosure sale was deemed

12

1    final to Good Neighbor Homes, LLC by the issuance and recording of a trustee's deed, since no

2    trustee's deed was ever prepared or recorded regarding this foreclosure. Subject to and without

3    waiving the foregoing objection, Responding Party responds as follows. Prior to the foreclosure

4    auction a Sale Datedown was ordered by NBS and prepared by a title company, which included

5    confirmation that as of 9:03 a.m. on April 1, 2025, bankruptcy PACER records indicated that no

6    bankruptcy petition had been filed by the Borrowers or Melissa Wilkerson. Thereafter on April

7    1, 2025, the NBS conducted and completed a foreclosure sale through a local auction company at

8    9:14 a.m. Pacific Time where the Property sold to a third-party, Good Neighbor Homes, LLC.

9    Good Neighbor Homes, LLC delivered its bid funds to the local auction company via wire, and

10   the bid funds were accepted as the high bid at the foreclosure sale effective 9:14 a.m. Pacific Time

11   on April 1, 2025. The completion of the sale auction and the acceptance of the bid funds by the

12   local auction company completed the foreclosure sale. NBS received sale result information and

13   a copy of the Trustee Certificate of Sale/Receipt confirming that the foreclosure auction was cried

14   and completed as of 9:14 a.m. Pacific Time on April 1, 2025 with Good Neighbor Homes, LLC

15   as the high bidder.

16       At 11:57 a.m. Central Time on April 1, 2025, when NBS received a phone call from a

17   male caller indicating that a Chapter 13 bankruptcy petition was filed as Case No. 25-40564 in

18   the Northern District of California, NBS retrieved a copy of the petition available on the court's

19   PACER Docket, which bears a time stamp of 9:36:41 a.m. NBS confirmed that this time stamp

20   occurred after the completion of the foreclosure auction as of 9:14 .am. Pacific Time. NBS

21   reviewed the timing of the completed foreclosure sale to Good Neighbor Homes, LLC with its

22   counsel to confirm that the later bankruptcy filing did not impact the validity of the foreclosure

23   sale, and because the property contained a single family residence, waited for the 15-day period

24   after the foreclosure sale to expire to allow for the post auction bid process to occur, pursuant to

RESPONDING PARTY, NBS DEFAULT SERVICES, LLC'S RESPONSES TO DEBTOR'S
REQUEST FOR INTERROGATORIES

1   Civil Code sections 2924m and 2924h. On April 4, 2025, NBS received a notice of intent to bid

2   from Carl Dexter pursuant to Civil Code section m(c)(2), who provided an Affidavit pursuant to

3   Civil Code section 2924m under penalty of perjury indicating that he qualified as an eligible

4   bidder in the category of prospective owner occupant under Civil Code section 2924m(a)(1). The

5   notice under Civil Code sections 2924m(c)(2) [Notice of Intent] and 2924m(a)(1) [Prospective

6   Owner Occupant Affidavit] triggered the 45-day waiting period for post-auction bids to be

7   submitted to the trustee pursuant to Civil Code section 2924m(c)(4) so that NBS as trustee could

8   confirm the identity of the high bidder to include in the Trustee's Deed Upon Sale. As of July 18,

9   2024, clarifying language in Civil Code section 2924h(c) was enacted to confirm that if an eligible

10   bidder submits a written notice of intent to bid pursuant to Civil Code section 2924m(c)(2), the

11   trustee's deed shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed

12   is recorded within 60 calendar days after the sale or the next business day if the county recorder

13   is closed on the 45th day. As a result, when the 45-day period was triggered by submission of a

14   notice of intent under Civil Code section 2924m(c)(2), no action was taken by the NBS to issue

15   the trustee's deed until the end of the 45-day period, which maintains the status quo to allow the

16   required statutory overbid period to play out.

17        On April 11, 2025, NBS received an email attaching a letter from Shepard & Wood, LLP,

18   identifying E. Vincent Wood as the attorney for the Debtor and providing written notice that the

19   Debtor's Bankruptcy was filed at 9:19 a.m. The letter enclosed a copy of a Notice of Bankruptcy

20   Case filing stating "A bankruptcy case concerning the debtor(s) listed below was filed under

21   Chapter 13 of the United States Bankruptcy Code, entered on 04/01/2025 at 09:36 AM and filed

22   on 04/01/2025" and the Notice indicated a filing time of 9:19 a.m. on April 1, 2025, after

23   completion of the foreclosure sale to Good Neighbor Homes, LLC. On April 14, 2025, NBS

24   responded to the April 11, 2025 letter to confirm to Debtor's counsel that the foreclosure sale was

14

1 completed at 9:14 am on April 1, 2025, and there was no violation of the stay, even if the petition

2 was filed at 9:19 am.

3       On April 25, 2025, NBS received a subpoena from Vincent Wood, the attorney for Debtor

4 and on May 2, 2025 NBS retained Wright, Finlay & Zak. LLP ("WFZ") as its counsel to assist

5 with response to the subpoena. On May 5, 2025, WFZ Partner Michelle Mierzwa spoke with Mr.

6 Wood regarding the timing of the foreclosure sale prior to the Debtor's bankruptcy filing and the

7 receipt of a notice of intent to bid from a prospective owner occupant under Civil Code section

8 2924m(c)(2), delaying the identity of the high bidder for the completed sale until May 16, 2025.

9 On May 7, 2025, NBS responded to the Subpoena served by Debtor's counsel, providing copies

10 of documents evidencing compliance with applicable statutes and confirmation that the

11 foreclosure sale was completed at 9:14 a.m. prior to the filing of the Debtor's bankruptcy petition

12 (whether it was at 9:36 a.m. or at 9:19 a.m. on April 1, 2025). The end of the 45-day period for

13 submission of post-sale overbids was May 16, 2025, and the end of the 60-day period to record

14 the trustee's deed was Saturday, May 31, 2025, with the next business day being Monday, June

15 2, 2025. On May 19, 2025, NBS confirmed no other bid funds had been received and that the

16 high bidder at auction, Good Neighbor Home, LLC, was still the high bidder. NBS did not take

17 any action regarding the completed sale during the 45-day period that could be considered a

18 violation of any bankruptcy stay because the information available to NBS between April 1, 2025

19 and May 27, 2025 indicated that the foreclosure sale was completed before the Debtor's

20 bankruptcy was filed.

21       In light of the aggressive position of Mr. Wood in subpoenaing the trustee documents and

22 the apparent equity in the property, WFZ inquired with Good Neighbor Homes, LLC on May 20,

23 2025, about a potential cancellation of the foreclosure sale after WFZ let them know that no post-

24 sale bids had been received and the Trustee's Deed Upon Sale was eligible for issuance. On May

15

21, 2025, Good Neighbor confirmed its willingness to rescind upon payment of interest on their funds, and NBS asked the foreclosing lender for approval of the voluntary rescission. On May 22, 2024, before any Trustee's Deed had been issued, new co-counsel for Debtor, Andrew J. Christensen, filed the Motion for Damages, alleging for the first time that the bankruptcy petition was filed earlier than 9:19 a.m. on April, 1, 2025. However, since Mr. Andersen mailed the Motion via USPS Ground Services and failed to communicate with NBS or its counsel about the new allegations, NBS and its counsel did not receive the Motion containing these new allegations until May 27, 2028. Immediately following review of the Motion for Damages, NBS' counsel called Mr. Andersen on May 28, 2025 to advise that NBS would confirm cancellation of the foreclosure sale as soon as possible and demanded that Debtor withdraw the Motion as no Trustee's Deed Upon Sale had been issued. On May 30, 2025, NewRez/Shellpoint confirmed approval of the cancellation of the foreclosure, authorizing return of the bid funds. Thereafter, NBS' counsel sent an email to Mr. Christensen and Mr. Wood on May 30, 2025, confirming the sale was being canceled and demanding withdrawal of the Motion. On the same date, Christensen sent a demand for payment of $25,000.00 to withdraw the Motion for Damages. NBS returned the bid funds to Good Neighbor on June 4, 2025, deeming the sale cancelled, and a Trustee's Deed Upon Sale was never prepared or recorded. On June 5, 2025, NBS' counsel sent a copy of the bid fund return correspondence and check to Debtor's counsel, confirming no trustee's deed was or would be issued, but the Debtor has failed and refused to withdraw the Motion. At each step in the statutory process, NBS acted in good faith and evaluated the information available from the bankruptcy court, from Debtor's counsel, and from the eligible post-sale prospective owner occupant to perform due diligence to determine the appropriate status of the foreclosure sale, pursuant to its policies and procedures and applicable law. As soon as NBS was provided new alleged facts regarding the purported earlier filing of the Debtor's bankruptcy petition

16

Case: 25-40964    Doc# 53-1    Filed: 07/05/25    Entered: 07/05/25 01:48:58    Page 20 of 30

1  (despite the inability of NBS to confirm whether the allegations were actually true), NBS arranged

2  for the cancellation of the foreclosure sale, before any trustee's deed was prepared or issued to

3  the high bidder.

4                                          **WRIGHT, FINLAY & ZAK, LLP**

5
   Dated:  July 3, 2025                    By:    _/s/ Arnold L. Graff, Esq._
6                                                 Arnold L. Graff, Esq.
                                                  Attorneys for Responding Party,
7                                                 NBS DEFAULT SERVICES, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

RESPONDING PARTY, NBS DEFAULT SERVICES, LLC'S RESPONSES TO DEBTOR'S
REQUEST FOR INTERROGATORIES

## **VERIFICATION**

I, <u>Jessica Kahler</u>, as an authorized agent for NBS Default Services, LLC in the above-entitled action, am authorized to make this Verification on its behalf. I have read the foregoing NBS Default Services, LLC's Responses to Debtor's Interrogatories (SET ONE) and know the contents. The same is true of our own knowledge except as to those matters stated on information and belief, and as to those matters, we believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Verification was executed on July 3, 2025, at Dallas, TX.

By: _____

JESSICA KAHLER

Title: Assistant Vice President, Foreclosure
Operations For NBS Default Services, LLC

18

**WRIGHT, FINLAY & ZAK, LLP**
Arnold L. Graff, Esq. (SBN 269170)
Michelle A. Mierzwa, Esq. (SBN 196175)
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Telephone: (949) 477-5050
Fax: (949) 608-9142
Email: agraff@wrightlegal.net

Attorney for Respondent,
NBS DEFAULT SERVICES, LLC

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In re: | BK Case No.: 25-40564 CN |
| MELISSA MARIE WILKERSON, | Chapter: 13 |
| Debtor. | **CERTIFICATE OF SERVICE** |

## <u>CERTIFICATE OF SERVICE</u>

I, Jaclyn Powell, declare that I am over 18 years of age, employed in Orange County, and not a party to the action. My business address is 4665 MacArthur Ct #200, Newport Beach, CA 92660. On July 3, 2025, I served the following documents on the parties below by First Class Mail and email.

**INTERESTED PARTY'S NBS DEFAULT SERVICES, LLC'S RESPONSES TO DEBTOR'S REQUEST FOR INTERROGATORIES, SET ONE.**

CERTIFICATE OF SERVICE

1  I declare under penalty of perjury that the foregoing is true and correct and that this

2  declaration was executed on the following date at Newport Beach, California.

3  Executed on 7/3/2025, at Newport Beach, California.

4  */s/ Jackie Powell*
   JACKIE POWELL

5

| NewRez LLC, dba Shellpoint Mortgage Servicing<br>Attn: Agent Koy Saechao, or Rebecca Wang, or Alex Jenkins, or Wendy Harris<br>2710 Gateway Oaks Drive,<br>Sacramento, CA. 95833<br>(Secretary of State Address) | |
| Bonial & Associates, P.C.<br>14841 Dallas Pkwy. Suite 350<br>Dallas TX. 73254 | Attorney for NBS Default Services<br>LLC |
| Brandon Trout Esq.<br>2015 Manhattan Beach Boulevard Suite 100, Redondo CA. 90278<br>btrout@wedgewood-inc.com | Attorney for Good Neighbor Homes<br>LLC |
| Andrew J. Christensen (SBN: 260748)<br>Law Offices of Andrew J. Christensen, P.C.<br>2063 Mountain Blvd. Suite 2<br>Oakland, CA 94611<br>Andrew@CaliforniaHomeLawyer.com | Attorney for Debtor Melissa Wilkerson |

CERTIFICATE OF SERVICE

# Exhibit J

# Daniel Marcus

| | |
|---|---|
| **From:** | Olivia Reyes |
| **Sent:** | Monday, May 19, 2025 5:17 PM |
| **To:** | Justin Bruni; Brandon Trout; Tanner Smith |
| **Subject:** | FW: BK Potential Invalidation - 1933 Grass Mountain Ct, Antioch, CA |
| **Attachments:** | audio.mp3 |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Hi,

Tanner – how much do you like this deal? Possible issue due to a BK filing.

https://mprod.wedgewood-inc.com/propertydetails/59422

Brandon – Sale cried at 9:14 am. BK filed at 9:36 am; 25-40564. This is the borrowers first filing. Per the attached voice message and below transcript, the borrower's attorney will most likely contest the sale. An NOI was filed but funds were not received, thus the trustee can issue the deed, and we will have to record before the 60th day. ███████████████████████████████████
███████

Thank you

**OLIVIA REYES**
**T**. 310.640.3070 x 2110 | **F**. 424-218-0880


**WEDGEWOOD HOMES**

OREYES@WEDGEWOODHOMES.COM
WWW.WEDGEWOODHOMES.COM

---

**From:** Mercy Gutierrez <Mercy@wedgewoodhomes.com>
**Sent:** Monday, May 19, 2025 2:02 PM
**To:** Olivia Reyes <oreyes@wedgewoodhomes.com>; Tanner Smith <tsmith@wedgewoodhomes.com>; Nathan Reeves <nreeves@wedgewoodhomes.com>
**Cc:** Luci Moise <lmoise@wedgewoodhomes.com>; Deeds <Deeds@wedgewood-inc.com>
**Subject:** BK Potential Invalidation - 1933 Grass Mountain

Hi Olivia,

Please see below for transcribed voicemail.  No NOI received however, there was a BK filed and there is a possibility of an invalidation.

1933 GRASS MOUNTAIN CT

Case: 25-40564    Doc# 55-1    Filed: 07/05/25    Entered: 07/05/25 01:48:58    Page 26 of 30

**Regards,**

**MERCY GUTIERREZ**

Senior Director, Acquisition and Title Operations
424.269.3450



WEDGEWOOD HOMES

MERCY@WEDGEWOODHOMES.COM

WWW.WEDGEWOODHOMES.COM

---

**From:** +1 619-252-0915 <+16192520915>
**Sent:** Monday, May 19, 2025 11:12 AM
**To:** Mercy Gutierrez <Mercy@wedgewoodhomes.com>
**Subject:** Voice Mail (2 minutes and 31 seconds)

Hi, this message is for Michelle Lee. This is Michelle calling on behalf of NBS Default Services and I'm calling regarding a foreclosure sale of property that was conducted in Contra Costa County and you were the successful bidder at the live auction. And the reason for my call is that I wanted to let you know that the there was a bankruptcy that was filed after shortly after the sale was cried and the borrower's attorney has subpoenaed the records of the trustee and it appears that they may be seeking to contest the results of the foreclosure. So I wanted to let you know because there were no other post sale bidders who submitted bids in the SB1079 process and so the trustee would normally issue the deed to you, but we at least wanted to let you know that there was this pending issue. So in the event that you wanted to reconsider whether you want to complete the sale in light of the potential bankruptcy invalidation issue. So anyway, if you could give me a call, I would greatly appreciate it. My name is Michelle. My phone number is 94. Well, let me yeah, 949438 1265 and let me see if I can also find a property address for you. Hang on a second, let me see here. It looks like 1933 Grass Mountain Court in Antioch, CA. So again, please give me a call. If you can't reach me at my desk, you can try my mobile number which is 619-252-0915. Thank you.

You received a voice mail from +1 619-252-0915.

**Thank you for using Transcription! If you don't see a transcript above, it's because the audio quality was not clear enough to transcribe.**

Set Up Voice Mail

# Exhibit K



CALIFORNIA

HOME LAWYER

The Law Offices of
Andrew J. Christensen

### Andrew J. Christensen Billable Hours

| Date | Who | Matter | Project | Description | Time | Rate | Total | |
|------|-----|--------|---------|-------------|------|------|-------|---|
| 5/28/2025 | AJC | Wilkerson | Stay Violation | call from creditor counsel Michelle Mierzwa re motion for violation of the stay | 0.2 | $650 | $130 | ☐ |
| 5/28/2025 | AJC | Wilkerson | Stay Violation | call with client with update from call with Michelle Mierzwa re motion for violation of the stay | 0.4 | $650 | $260 | ☐ |
| 5/28/2025 | AJC | Wilkerson | Stay Violation | call with co counsel Vincent Wood regarding call from creditor counsel Michelle Mierzwa re motion for violation of the stay, and steps forward | 0.5 | $650 | $325 | ☐ |
| 5/30/2025 | AJC | Wilkerson | Settlement | read email from creditors counsel Mierzwa re sale cancellation and draft settlement offer in response | 0.9 | $650 | $585 | ☐ |
| 5/30/2025 | AJC | Wilkerson | Settlement | call with client about email from creditors counsel Mierzwa re sale cancellation and settlement offer in response | 0.2 | $650 | $130 | ☐ |
| 5/30/2025 | KS | Wilkerson | Stay Violation | draft amended notice of hearing | 0.3 | $100 | $30 | ☐ |
| 5/30/2025 | AJC | Wilkerson | Discovery | draft discovery requests, RFP, RFA, ROGS | 0.3 | $650 | $195 | ☐ |
| 6/2/2025 | AJC | Wilkerson | Settlement | call from Good Neigbor counsel Brandon Trout about facts and request for dismissal. draft and send follow email to him | 0.4 | $650 | $260 | ☐ |
| 6/3/2025 | AJC | Wilkerson | Discovery | draft discovery requests to Shellpoint, Good Neighbor, and NBS, including RFA, ROGS, RFP | 3.8 | $650 | $2,470 | ☐ |
| 6/3/2025 | KS | Wilkerson | Discovery | draft discovery requests to Shellpoint, Good Neighbor, and NBS, including RFA, ROGS, RFP | 1.6 | $100 | $160 | ☐ |
| 6/12/2025 | AJC | Wilkerson | Stay Violation | call with co counsel Vincent Wood | 0.7 | $650 | $455 | ☐ |
| 6/12/2025 | AJC | Wilkerson | Stay Violation | Draft portion of reply brief on issues raised in call with co counsel Vincent Wood | 0.6 | $650 | $390 | ☐ |
| 6/27/2025 | AJC | Wilkerson | Stay Violation | read Good neighbor opposition brief and emails about discovery, and respond to email | 0.7 | $650 | $455 | ☐ |
| 7/4/2025 | AJC | Wilkerson | Stay Violation | Read opposition of NBS to motion for damages for stay violation,Read discovery responses of NBS and Good Neighbor, draft Reply brief. Actual time, 10.6 hours, voluntary reduction to 7 hours | 7 | $650 | $4,550 | ☐ |

| Timekeeper Subtotals | | |
|---|---|---|
| AJC | 15.7 | $10,205 |
| KS | 1.9 | $190 |

| Project Subtotals | | |
|---|---|---|
| Discovery | 5.7 | $2,825 |
| Settlement | 1.5 | $975 |
| Stay Violation | 10.4 | $6,595 |

| **Total** | | **$10,395** |
|---|---|---|