Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorneys for Debtor Melissa Wilkerson

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| In the Matter of:<br><br>Melissa Wilkerson<br>　　　　Debtor_____ | Bankruptcy Case: 25-40564 CN<br><br>Chapter 13<br><br>**Supplemental Reply of Debtor Re Motion for Damages for Violation of the Automatic Stay**<br><br><u>Hearing REMOTE OR IN PERSON</u><br>Date: August 1, 2025<br>Time: 11:00 a.m.<br>Place: Courtroom 215<br>1300 Clay Street, Oakland CA 94612<br>The Honorable Charles Novack |
|---|---|

　　　　Melissa Wilkerson hereby files this Supplemental Reply to address Shellpoint's late filed opposition to Wilkerson's *Motion for Damages for Violation of the Automatic Stay* against NewRez LLC dba Shellpoint Mortgage Servicing, NBS Default Services, LLC, ("NBS") and Good Neighbor Homes LLC, ("GNH") (jointly "Creditors") for proceeding with a foreclosure sale in violation of the automatic stay.  Opposition was due July 4, 2025, 14 days before the hearing scheduled for July 18, 2025.  Debtor received timely oppositions from NBS and Good Neighbor, and filed a reply brief regarding those oppositions on July 5, 2025.  Shellpoint filed its opposition untimely, three days later on July 7, 2025.

　　　　This Court may disregard the opposition as untimely, being filed after the original reply brief. In the alternative, this Court should permit this supplemental

-1-

reply to address Shellpoint's late filed brief.

## 1. **EQUITABLE ESTOPPEL**

Shellpoint does not cite any cases where a bankrutpcy court has used equitable estoppel to relieve a creditor of the strict liability for willful violations of the automatic stay.

Estoppel does not relieve Shellpoint of its liability for willfully violating the stay because it should not matter whether the bankrutpcy was filed before or after the beginning of the auction on April 1 because of §2924m.

The estoppel argument is meritless because estoppel is premised on intentionally deceptive conduct designed to induce reliance harmful to Shellpoint and helpful to Debtor which is absurd here because Debtor did not try to deceive Shellpoint into violating the stay, nor did it have that effect. The second element of estoppel is that "He must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended." The second element of estoppel cannot be met because Debtor did not send the letter on April 11, 2025, to deceive Shellpoint into refusing to cancel the sale and therefore violate the stay nor intend that they act on the information in the letter to not stop the sale to create a stay violation where none existed nor can that intent be inferred. Shellpoint has no right to believe that Debtor intended Shellpoint to act on any information in the letter to continue the sale in violation of the stay because the letter expressly demands the cancellation of the ongoing sale which is the action Debtor wanted Shellpoint to take.

The fourth element of estoppel cannot be established because Shellpoint did not rely on Debtor's conduct to its injury because they clearly dispute the 9:06 am filing time now, and they obviously would have disputed it then and still refused to cancel the sale on the same grounds they do now. Their entire position is based on disputing the 9:06 filing time and arguing for improper interpretations of §2924m and §2924f. They did not rely on any information in the letter to their detriment and clearly chose

-2-

Case: 25-40564    Doc# 60    Filed: 07/17/25    Entered: 07/17/25 09:54:53    Page 2 of 12

to push forward with the sale until they realized they were facing a Debtor serious about enforcing her rights and then decided to cancel the sale to avoid litigation and damages as shown in the emails between the parties. The emails show that decision was made only to avoid litigation, and was made only after Debtor's counsel refused to agree to NBS's counsel's demand to withdraw the motion.

Attached as **Exhibit L** are emails produced by Shellpoint in response to Debtor's discovery requests for documents, and they demonstrate that Shellpoint and NBS only chose to cancel the foreclosure because of the threat of litigation, not because they found out about a 9:06 am filing time and suddenly decided to honor the automatic stay. On May 23, 2025, the day after this Motion was filed, attorney Chandra Pryor of Bonial & Associates emailed many Shellpoint employees the following: "counsel for the borrower served a Subpoena for Production of Documents on NBS Default and asserted his intention to challenge the validity of the sale. […] No post-sate bids have been received, and the Trustee's Deed could be issued to the original third-party bidder now. However, there remains the threat of expensive and time-consuming litigation by the borrower, and the third-party purchaser is willing to walk away from the sale in exchange for a return of bid funds to avoid the potential litigation regarding the validity of the sale in light of the close-filed BK. […] It seems that the borrower's counsel is pretty aggressive about the desire to invalidate the sale, so he will likely file a lawsuit or a motion in the bankruptcy court challenging the validity of the sale and naming Shellpoint, NBS and the third-party purchaser as parties. We have seen many examples of borrowers filing lawsuits challenging the validity of foreclosure sales related to the filing of bankruptcy during the SB 1079 post-auction period and/or within minutes of the live sate auction, and they have been causing substantial delay and expense." **Exhibit L**.

This shows that the decision was not based on any desire to honor or abide by the automatic stay to follow the law, nor based on accepting the 9:06 filing time, but

was because Debtor's counsel was intent on protecting her rights. NBS and Shellpoint did not decide on May 23rd the day of these emails to cancel the sale, but only decided to cancel the sale a week later after Debtor refused their counsel's demand to withdraw the motion. Five days later on May 28, 2025, NBS attorney Michelle Mierzwa emailed Shellpoint again in that email chain stating "As indicated previously, it appears that the attorney for the borrower is serious about vigorously contesting the validity of the sale. Our office just received the attached Motion filed in the bankruptcy court, asserting that the bankruptcy was actually filed at 9:06am prior to the sale completion at 9:14am, as she was waiting in line for the court to open. While it is possible to oppose this motion, due to the factual dispute regarding the time of filing, the substantial equity in the property and the legitimate nature of the first-time BK filing, we recommend a voluntary rescission of the sale so that we can negotiate for a dismissal of the attached motion and avoid incurring substantial attorneys' fees and costs to validate the sale." **Exhibit L**. Thereafter on May 30, 2025, Shellpoint (NewRez) emailed their counsel that "The rescission strategy was approved by the Investor, please proceed" **Exhibit L**. Shellpoint and NBS clearly were not relying on any representation about the time of filing in deciding to proceed in violation of the stay, but their actions were strictly based on assessments of the risk of litigation costs. They did not take the letter of April 11 seriously, and only started taking it seriously after the Rule 2004 examination subpoena was served, and after several rounds of emails with Debtor's counsel, and after the motion was filed, and then only took action after Debtor refused their demand to withdraw the motion in exchange for Shellpoint and NBS maybe considering cancelling the sale.

  On April 21, 2025 and May 15, 2025, Shellpoint's servicing notes from its system of record show that it was aware of the Rule 2004 examination subpoena and Debtor's intention to challenge the sale, with notes stating "We are handling the subpoena and correspondence with the law firm representing the borrower and attempting to force

us to rescind the sale" and Shellpoint marked this note as "Risk: Low." **Exhibit M**. However, the emails between Shellpoint and NBS and Bonial & Associates attached as **Exhibit L** show that by May 23, 2025, after the Motion for Sanctions was filed, that they marked all the emails with headings stating "Importance: High." This demonstrates Shellpoint and NBS only started to take things seriously because of the threat of litigation, not because of the 9:06 filing time.

In any event, this entire argument of Shellpoint is irrelevant because §362 is a strict liability statute, and a willful violation only requires knowledge of the stay and a willful act, which are both undisputed facts here. It is not an excuse for violating the stay that Shellpoint thought it had a good legal argument under §2924m and §2924h: "No specific intent is necessary, and a creditor's good faith belief that the stay was not being violated is not relevant to the issue of willfulness." *Stanwyck v. Bogen (In re Stanwyck)*, 450 B.R. 181, 192 (Bankr. C.D. Cal. 2011).

## 2. **TIME OF FILING**

Shellpoint argues that Debtor's evidence does not clearly and convincingly establish a 9:06 filing time. This argument is meritless because there are text messages and detailed declarations from two witnesses establishing the filing time based on clearly articulated facts about when they drove there, that the court opened a few minutes early, and that Wilkerson knew the time because she looked at the time on her phone, and based on a text she received at 9:11 from her uncle, after she had handed the petition to the clerk. These are not "conclusory" allegations, but concrete and detailed facts sufficient to establish the time of filing, particularly where there is no evidence contradicting this timeline, nor any reason provided by Shellpoint to doubt the veracity of the declarations.

Shellpoint argues that the foreclosure sale "was completed on 4/01/2025 at 9:14 a.m." This is not correct factually or legally, because that is only the alleged time that NBS received Good Neighbor's bid at the initial auction. That is not the time that NBS

determined that bid was the high bid and winning bidder and deemed the sale final because that all occurred after the 45th day as shown by the extensive evidence and arguments in Debtor's initial Reply brief.

In addition, NBS produced in discovery a procedure manual for handing sales under §2924m, which provides that after the 45th day, the trustee reviews an Excel spreadsheet report, determining whether there were qualified bids received during the time, update the report, return funds to unsuccessful bidder with the lower amounts if any, update the client with the new winning amount, distribute funds. **Exhibit N**. All these are acts to complete the sale that violate the stay, and show that NBS did not finalize the sale at 9:14 am on April 1, but after the 45th day pursuant to their policy.

### 3. HAGER WAS NOT SUPERCEEDED BY STATUTE

The argument that *In re Hager* is superseded by statute is an egregious misrepresentation of the case and the statute. *In re Hager* was not superseded by statute because *Hager* was based on the fact that the bankruptcy was filed before the sale could be deemed final, and the deemed final part of the statute has not changed. The amendment to the statute to have the 60-day relation back period for perfection apply to all eligible bidders would not have changed the outcome in *Hager* and was addressed in *Hager* to refute the buyer's argument that the 60 days applied to him and justified his conduct.

Furthermore, this argument about being superseded is irrelevant because the relation back period is not an issue in this present case because it is undisputed that no TDUS was recorded. There is some dispute about whether a TDUS was executed, delivered and accepted, but no dispute that it was not recorded.

The language of *Hager* cited by Shellpoint only shows the *Hager* court recognized the relation-back statute only applied to eligible tenant buyers, not prospective owner occupants or nonprofits, but it does not say that the outcome of the

case depended on that factor. In fact, that discussion was limited to refuting the buyer McGilvray's argument that he was entitled to the 60-day period and that therefore he did not violate the stay. The *Hager* court ruled that the relation back period did not apply to him under the then-applicable statute, and also that it would not change the outcome. "Therefore, the sale became final under CC § 2924m(c)(4) post-petition and is void.CC § 2924h(c) cannot be used to finalize an incomplete sale to a time before the petition was filed. McGilvray does not qualify for the relation back effects of CC § 2924h(c) as the statute was written in 2022." *Hager*, at 887.

In *Hager*, the facts were that the auction began on November 7, 2022, notices of intent to bid were submitted, opening the 45 day period such that the sale could not be deemed final before December 22, 2022 at 5 pm, no other bids were received, the foreclosure trustee illegally issued a TDUS early on November 23, 2022 and sent it to the high bidder from the auction in violation of 2924m, and the debtor filed chapter 13 on December 1, 2022, only 21 days after the auction began, and the buyer recorded the TDUS the day after the bankruptcy was filed.

The Court in *Hager* held that the sale became final on the 45th day, and that finalizing the sale on or after that date violates the stay because the bankruptcy was filed before that date, and that therefore the foreclosure sale was void. *Hager* held that the TDUS recorded before the 45-day period could not perfect a sale that could not be completed. *Id* at 883. This holding was not based on whether the 60-day relation-back period applied to that buyer or not because the sale could not be deemed final under the statute yet so the issue of perfection and relation-back was not determinative of the outcome. This shows that the issue was when the sale was deemed final, and perfection was irrelevant. It is true that in *Hager* the TDUS that was illegally issued early was recorded and that there was no relation-back period applicable to that buyer based on the statute at that time and that the 60-day period could not apply to that buyer, but that fact did not change the outcome of the case. Essentially, issuing or

recording a TDUS that is void for violating §2924m and §2924h does not complete or perfect a sale.

Shellpoint argues that because the statue was amended to give a 60-day relation back period to all eligible bidders "any act to complete the Foreclosure Sale post-petition is not a stay violation." This argument is frivolous and false. Completing a sale is not the same thing as perfecting a sale by recording a previously issued and accepted TDUS. The exception to the stay violation in §362(b)(3) relates only to perfection, which is only the act of recording. Executing, issuing, delivering, or accepting of the TDUS, or deeming a sale final or any other act in the foreclosure sale process to complete the sale violate the automatic stay, and only recording a TDUS that was issued and accepted pre-petition falls under the exception for perfection.

### 4. **DAMAGES**

Shellpoint argues that Debtor failed to establish damages. This is not true. Attorney's fees are damages under §362(k) by statute specifically because many stay violations such as sending collection letters do not typically cause monetary damages and therefore the statute was designed to be strict liability with attorney's fees as damages rather than under a typical type of fee shifting clause. Section 362(k) states ""shall recover actual damages, including costs and attorneys' fees[.]".

Shellpoint argues that "Had Debtor simply provided this information to SMS in the 4/11/2025 letter, the Foreclosure Sale would have thereupon been cancelled." This argument is frivolous because the emails and voicemails obtained in discovery from Good Neighbor show that they considered cancelling the sale only to avoid litigation once they realized Debtor was serious about enforcing her rights, and not to honor the stay based on a 9:06 filing time. NBS's counsel Michelle Mierzwa said to Good Neighbor homes by voicemail on May 19, 2025, that the bankruptcy was filed after the sale and that debtor "subpoenaed the records of the trustee and it appears that they may be

seeking contest the results of the foreclosure" and therefore "So in the event that you wanted to reconsider whether you want to complete the sale in light of the potential bankruptcy invalidation issue." **Exhibit J**. Then on May 20, 2025, NBS counsel said to Good Neighbor by email "If Good Neighbor Homes prefers not to become involved in potential litigation relating to the foreclosure, with the agreement of all parties NBS Default may be able to return the bid funds to allow the borrower's bankruptcy to play out in the ordinary course. Please let us know how Good Neighbor Homes, LLC would like to proceed." **Exhibit H**. Good Neighbor emailed NBS on May 21, 2025, stating "Our in-house legal team reviewed the BK and agrees this could be headache…." **Exhibit H**. The desire to avoid a headache and litigation costs is not a desire to abide by the stay based on a 9:06 am filing time and plainly shows that is not the reason they cancelled the sale and therefore no reason to believe they would have cancelled the sale earlier with that knowledge.

The declaration of Michelle Mierzwa, counsel for NBS, states that she called Debtor's counsel on May 28, 2025, demanding that Debtor withdraw the Motion for Sanctions. Dkt 54. This is true, and it is also true that on that call Debtor refused to withdraw the Motion for Sanctions when Ms. Mierzwa said that if the Motion was withdrawn NBS "might consider" cancelling the foreclosure sale. Ms. Mierzwa's declaration then goes on to say that "On May 30, 2025, NewRez/Shellpoint confirmed approval of the cancellation of the foreclosure[.]" Dkt 54, ¶10. This plainly shows that Shellpoint did not "immediately cancel the sale" when it learned of the 9:06 am filing time but shows that Shellpoint only cancelled the sale because Debtor refused their demand to withdraw the motion. That is exactly why punitive damages should be awarded in this case.

The Servicing Notes produced by Shellpoint confirm that on May 30, 2025, they cancelled the sale only because of litigation risk: "Firm advised that would it be beneficial to rescind similar previous rulings the sale favored as the borrower and that

it would be costly to pursue in court.  Previous rulings favored the borrower to due to "wait in line" times. The escalation was presented to the investor. The investor agreed to the rescission." **Exhibit M**.

Shellpoint argues "The attorney's fees would not have been incurred but for the bringing of the Motion, which was entirely avoidable by simply letting SMS know of the alleged 9:06 a.m. filing time." This is also untrue because it requried attorneys' fees to investigate the facts, draft the demand letter, review the communications from NBS refusing to cancel the sale, seek the Rule 2004 examination to get the necessary evidence, and continue communications and calls and emails with NBS in an effort to get them to cancel the sale to avoid the motion.  These damages were incurred to avoid the motion, not because of the motion.  These fees were incurred exclusively on account of NBS and Shellpoint's express written refusal to cancel the sale.

## 5. OBJECTION TO EVIDENCE

Debtor objects to the evidence submitted by NBS of settlement offer emails between counsel. That evidence is inadmissible under Federal Rule of Evidence 408 and should be stricken.  This objection includes paragraph 10 of the declaration of Michelle Mierzwa, and NBS Exhibit D, attached to the Mierzwa declaration, docket 54.

Counsel incurred $2,470 in fees reading Shellpoint's untimely opposition and drafting this reply and reviewing the documents produced in discovery and selecting exhibits, which is from 3.8 hours on July 16, 2025.

DATED:  July 17, 2025

                                              /s/ Andrew J. Christensen
                                              Andrew J. Christensen
                                              Counsel for Debtor

Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorneys for Debtor Melissa Wilkerson

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| In the Matter of: | Bankruptcy Case: 25-40564 CN |
|---|---|
| Melissa Wilkerson | Chapter 13 |
| Debtor_____ | |
| | **Declaration of Andrew J. Christensen in Support of Motion for Damages for Violation of the Automatic Stay** |
| | Hearing REMOTE OR IN PERSON<br>Date: August 1, 2025<br>Time: 11:00 a.m.<br>Place: Courtroom 215<br>1300 Clay Street, Oakland CA 94612<br>The Honorable Charles Novack |

I, Andrew J. Christensen, am counsel for Melissa Wilkerson. The statements made herein are based upon my personal knowledge except to those matters which are herein alleged on information and belief, and as to those matters, I believe them to be true. If called as a witness in this matter, I could and would testify competently to each and all of the statements made herein.

1. **Exhibit L** are true and correct copies of emails that I received from Shellpoint in response to discovery requests I served.

2. **Exhibit M** is a true and correct copy of a few pages of the servicing notes, also called collection comments, I received from Shellpoint in discovery in this case.

3. **Exhibit N** is a true and correct copy of a document I received from NBS in discovery.

-1-

4. On July 16, 2025, I spent 3.8 hours reading Shellpoint's untimely opposition brief, drafting a supplemental reply brief, and reviewing Shellpoint's evidence produced in discovery and selecting exhibits for the reply brief, incurring $2,470 in attorney's fees.

I swear under the penalty of perjury that this is true and correct, and that this declaration was executed on the following date in Oakland California.

DATED: July 17, 2025

/s/ Andrew J. Christensen
Andrew J. Christensen
Counsel for Debtor