Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorney for Debtor Melissa Wilkerson

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of: | Bankruptcy Case: 25-40564 CN |
| Melissa Wilkerson<br>        Debtor | Chapter 13 |
| | **Status Conference Statement on Motion for Damages for Violation of the Automatic Stay** |
| | <u>Hearing REMOTE OR IN PERSON</u><br>Date: September 12, 2025<br>Time: 11:00 a.m.<br>Place: Courtroom 215<br>1300 Clay Street, Oakland CA 94612<br><u>The Honorable Charles Novack</u> |

Melissa Wilkerson hereby files this Status Conference Statement regarding her *Motion for Damages for Violation of the Automatic Stay* against NewRez LLC dba Shellpoint Mortgage Servicing, NBS Default Services, LLC, ("NBS") and Good Neighbor Homes LLC, ("GNH") (jointly "Creditors") for proceeding with a foreclosure sale in violation of the automatic stay.

This statement is pursuant to this Courts order, docket 70, requiring a statement regarding: "a. Whether there is a factual dispute about the time of the bankruptcy filing. b. Whether the parties believe there are any other factual disputes that the court is required to resolve."

Debtor's position is that there is no factual dispute about the time of the bankruptcy filing because there was no objections to Debtor's declarations and no conflicting evidence was submitted by Respondents as to the time of filing, therefore there is no need for an evidentiary hearing or further discovery on that issue. Therefore, this Court can simply find on the uncontroverted evidence that the petition was filed at 9:06 am.

Debtor believes that it should not be required to resolve any other factual disputes by evidentiary hearing because on the undisputed facts Respondents are all liable for violating the automatic stay as set forth in the Motion on account of §2924m. Debtor's reply briefs explain that all material facts necessary to find liability and award damages are undisputed.

However, there are a few factual findings that need to be made on issues where all the evidence establishes only one conclusion but where Respondents make unsupported counterfactual arguments.

A. <u>Facts Related to Estoppel</u>

Shellpoint argues that it rescinded the foreclosure sale "immediately" upon learning of the 9:06 am filing time. Shellpoint argues that it "expressly relied on the 9:19 a.m. filing time to its injury." Shellpoint argues that "Debtor clearly intended that SMS act on the 4/11/2025 Demand Letter and the 9:19 a.m. filing time by demanding a rescission of the Foreclosure Sale based on the 9:19 a.m. filing time." These are all allegations of fact by counsel without any evidentiary support. These allegations are not supported by declaration or documents. Therefore, Debtor's position is that they are not legitimate issues of fact that require discovery or an evidentiary hearing and the Court may simply make the factual findings that Shellpoint rescinded the completed foreclosure sale to avoid litigation risks as set forth in the extensive email correspondence, and that Shellpoint did not rely on the 9:19 filing time to its injury when refusing to cancel the foreclosure sale because arguments of counsel are not evidence, and that Debtor did not intend Shellpoint to rely on the 9:19 filing time by refusing to cancel the sale because there is no evidence of this and it is patently absurd. On this basis the Court should reject the estoppel argument because there is no evidence to support these claims and therefore these are not legitimate disputes of fact that require discovery or an evidentiary hearing. Shellpoint has the burden to establish these facts and failed to submit evidence and should not be allowed further opportunity to support these baseless claims. Therefore, Debtor requests that the Court address these issues at the hearing.

Shellpoint argues that "SMS was ignorant of the 9:06 a.m. filing time." This allegation of fact is based on Shellpoint's declaration, but there is doubt as to its truth because the recordings of

Case: 25-40564    Doc# 75    Filed: 09/09/25    Entered: 09/09/25 17:37:35    Page 2 of 6

the telephone calls where they received notice have not been produced.  Debtor believes this is not a material fact and need not be resolved in order for the Court to rule for Debtor because none of the other facts regarding estoppel are established so it is unnecessary to reach this point because it would not affect the outcome even if true.  However, to the extent the Court believes it is relevant, the call recordings and servicing notes can be produced in discovery to get to the bottom of it.

B. <u>The Reason Respondents Rescinded the Foreclosure Sale</u>

The reasons that Respondents cancelled the foreclosure sale are material facts for the Court to decide related to punitive damages because the evidence shows they rescinded the sale out of fear of litigation, but Respondents' counsel argues it was rescinded upon learning of the 9:06 am filing time. However, Debtor's position is that there is not a material dispute of fact on this issue, but that the emails and declarations and judicial admissions plainly establish Respondents rescinded the foreclosure to avoid litigation exposure after this Motion was filed and that the arguments of NBS and Shellpoint in their briefs that they cancelled the sale upon learning of the 9:06 filing time when the Motion was filed are simply unsubstantiated arguments of counsel that are plainly undermined by the extensive email correspondence produced in discovery and attached to Debtor's Reply briefs docket 55 and 60.

Debtor believes that the Court should make the factual finding that Respondents only cancelled the sale after this Motion was filed and only after they could not scare Debtor into withdrawing it and that it was not withdrawn based on learning of the 9:06 filing time.  Debtor believes the evidence before the Court on this point is substantial and unambiguous and that no further discovery or evidentiary hearing is required on that point. However, if the Court believes further evidence on this point would be helpful, Debtor proposes that the Court enter an order that Respondents willfully violated the automatic stay and that the matter proceed forward for discovery and evidentiary hearing on this narrow factual issue for purposes of punitive damages only, not underlying liability.

Case: 25-40564    Doc# 75    Filed: 09/09/25    Entered: 09/09/25 17:37:35    Page 3 of 6

C. <u>When the Foreclosure Sale was Deemed Final</u>

The Court will need to make the factual finding that the foreclosure auction was deemed final by NBS after the 45th day, and not on April 1, 2025, the day the auction started. This fact is critical to the case, and likewise Debtor's position is that all evidence before the Court leads to the conclusion that it was deemed final after the 45th day but on or before May 19, 2025, when NBS left the voicemail for GNH notifying it that it was the winning bidder. There are only unsubstantiated arguments of counsel claiming the sale was final on April 1, 2025, at 9:14 am, but there is no evidence to support a factual finding on this point and therefore there is no need for further discovery or evidentiary hearing. This is technically a factual issue of when NBS took the steps to deem the sale final, and not a legal argument about when a sale is final under §2924m and 2924h. Debtor's reply briefs address this in detail sufficient for the Court to make a factual finding on this point. Respondents had the opportunity to present evidence on this point but failed to submit evidence showing anything other than that NBS reviewed the file after the 45th day and determined GNH was the high bidder, accepted the bid at that time and notified GNH.

This fact about the point in time that NBS and Shellpoint took the actions to deem the sale final are relevant because Shellpoint argues and states in a declaration that the sale "was completed on 4/01/2025 at 9:14 a.m." However, Debtor does not believe that this rises to the level of a dispute of fact, but rather it is an issue of Respondents' counsel making counterfactual arguments. The fact is that the sale was deemed final sometime after the 45th day and either before or at the time NBS communicated by voicemail and email to GNH that it was the winning bidder, which fact is based on various emails, a voicemail, and admissions in briefing that the sale was held open for 45 days on account of the notice of intent to bid and that the winning bidder would not be known until the 45th day, clearly establishing that the sale was not deemed final until after the 45th day. However, Respondents made arguments running counter to those facts, such as that the home was not property of the estate because the sale was completed pre-petition.

There is no evidence to support the allegation that the sale was "deemed final" by NBS on April 1, 2025, or otherwise before the 45th day, and the arguments of counsel are not evidence.

However, Debtor believes it is important that the Court acknowledge that the foreclosure auction that began on April 1, 2025, continued until at least the 45th day at 5:00 pm and was not deemed final any earlier. The facts relevant to this issue are discussed in Debtors' two reply briefs. If the Court believes that there is conflicting evidence on the point in time when NBS deemed the sale final, then Debtor requests the opportunity to address the matter at the hearing in more detail, and then if necessary, further discovery. However, this should not be necessary because Debtor believes the existing evidence is sufficiently clear on this point.

The point in time that the sale was deemed final is important because NBS argues "Debtor does not provide any evidence that NBS took any affirmative acts." Debtor believes the evidence of affirmative acts is plentiful and is laid out in the Reply briefs. However, to the extent the Court believes further evidence or argument on this is necessary, Debtor is willing to address it and submit or pursue further evidence on this point. It is sufficient for purposes of the Motion that the Court find based on the undisputed facts that after the 45th day NBS took the affirmative act of deeming the sale final either before or at the time NBS communicated this to GNH on May 19, 2025.

D. <u>Trustees' Deed Upon Sale</u>

There is a dispute of fact as to whether a trustee's deed upon sale was executed, or delivered by NBS, or received or accepted by GNH. It is undisputed that no TDUS was recorded in the county recorders' office, but that does not mean it was not executed and delivered. All three Respondents deny that there was a TDUS. However, there are emails strongly suggesting that a TDUS was created and sent to GNH as discussed in the Reply Briefs.

However, as to GNH there are other undisputed facts that establish liability for violating the automatic stay such as the fact that they learned of the bankruptcy case on May 19, 2025, but the sale was not cancelled until May 30, 2025, eleven days later, and only after this Motion was filed and only after Debtor refused NBS's demand to withdraw the Motion. Therefore, Debtor's position is that the Court can find liability as to GNH for willfully violating the stay by not affirmatively taking action to cancel or rescind the sale or back out of the transaction. However, to the extent the Court finds this to be insufficient for liability as to GNH, Debtor will proceed with depositions of

employees of GNH and foreclosure trustee NBS to get to the bottom of whether a TDUS was executed, delivered, or accepted.

However, the Court may enter an order on liability and damages as to the three Respondents separately, and find NBS and Shellpoint liable for their acts that violate the stay for affirmatively refusing to stop the sale for nearly two months after receiving notice of the bankruptcy, deeming the sale final after the 45th day, communicating the finality of the sale to GNH, and the other acts established by the evidence in this case. If NBS executed, issued, or delivered a TDUS that would also violate the stay, but the other violations are sufficient for liability, so it is unnecessary to delay ruling as to NBS and Shellpoint for discovery on the TDUS.

Date:  September 9, 2025

/s/ Andrew J. Christensen
Andrew J. Christensen
Attorney for Melissa Wilkerson