Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorney for Debtor Melissa Wilkerson

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| In the Matter of: | Bankruptcy Case: 25-40564 CN |
|---|---|
| Melissa Wilkerson<br>　　　　　Debtor_____ | Chapter 13 |
| | **Status Conference Statement on Motion for Damages for Violation of the Automatic Stay** |
| | <u>Hearing REMOTE OR IN PERSON</u><br>Date: October 3, 2025<br>Time: 11:00 a.m.<br>Place: Courtroom 215<br>1300 Clay Street, Oakland CA 94612<br>The Honorable Charles Novack |

Melissa Wilkerson hereby files this Status Conference Statement regarding her *Motion for Damages for Violation of the Automatic Stay* against NewRez LLC dba Shellpoint Mortgage Servicing, NBS Default Services, LLC, ("NBS") and Good Neighbor Homes LLC, ("GNH") (jointly "Creditors") for proceeding with a foreclosure sale in violation of the automatic stay.

This Court held a hearing on September 12, 2025, to discuss the Parties' positions on whether further discovery is necessary and whether there were disputes of fact. Respondent Creditors asked for three weeks to discuss the matter and determine if the parties could agree to undisputed facts.

Debtor's statement filed before the prior hearing, docket 75, identified several facts at issue and identified the problem that some of Respondents statements are facts, and some appear to be counterfactual arguments, including on the issue of when

-1-

the foreclosure sale was deemed final, whether there is evidence to support Shellpoint's estoppel argument, whether a TDUS was issued, and whether there is evidence to support arguments about why the sale was cancelled.

The parties met and conferred about the issues by email and phone. Debtor proposed certain stipulated facts to resolve the issues identified at the hearing. Each Respondent submitted a list of proposed stipulated facts that essentially mirrored the arguments in their briefs.

A. <u>Respondents Did Not Identify Additional Evidence They Have or That They Want</u>

During the meet and confer, Debtor asked Respondents if they had any additional evidence to produce or present on the issues to determine if Debtor needed to conduct any further discovery. No Respondent claimed to have any further evidence on any of the issues raised by Debtor. Therefore, it appears that there is no further evidence for Debtor to obtain in discovery relating to the issues raised in Debtor's brief docket 75.

Debtor asked Respondents if they wanted any further evidence from Debtor, and no Respondent said that they had any evidence or discovery they wanted from Debtor.

B. <u>Undisputed Facts</u>

On October 1, 2025, docket 80, Respondents Shellpoint, NBS, and GNH jointly submitted a *Statement of Position on Undisputed Facts or Facts Not Reasonably Subject to Dispute*. Debtor disputes many of the alleged proposed undisputed facts and parts of them. However, Debtor does not dispute the following facts set forth in Respondents' statement Docket 80:

> 4. A notice of intent to bid pursuant to Civil Code section 2924m(c)(2) was timely received by NBS Default before the 15th

day after April 1, 2025.

5. The bidding process required by Civil Code section 2924m(c)(4) remained open for 45 days from April 1, 2025 until May 16, 2025, at 5:00 pm.

6. No additional bids were received during the 45-day period.

7. On May 7, 2025 NBS Default sent an email to Debtor's counsel regarding its position that the sale was conducted at 9:14 am, prior to what it thought was the petition date and filing time.

11. On May 22, 2025, the debtor filed and mailed a Motion for Damages for Violation of the Automatic Stay, alleging that her bankruptcy was filed at 9:06 a.m. on April 1, 2025.

15. No Trustee's Deed Upon Sale for the property was recorded in the Official Records of Contra Costa County after May 16, 2025.

Many of the remaining proposed facts in Respondents' Statement, Docket 80, are objectionable in part because of the improper and misleading use of certain words and adjectives that create confusion, but would be acceptable with different wording. These go to some of the issues identified in Debtor's Status Conference Statement on facts (docket 75), and will be discussed herein below.

C. <u>When the Foreclosure Sale was Deemed Final</u>

The Court will need to make the factual finding that the foreclosure auction was deemed final by NBS on May 19, 2025, after the 45th day, and not on April 1, 2025, the day the auction started. On this issue, it appears that no further evidence or discovery

Case: 25-40564    Doc# 81    Filed: 10/01/25    Entered: 10/01/25 19:47:54    Page 3 of 10

is necessary and the Court can resolve it on the evidence presented.

Respondents' proposed undisputed fact number 1 states "The foreclosure auction described in the Notice of Trustee's Sale was conducted on April 1, 2025" is inaccurate because the word "conducted" should be replaced with "began" because the auction opened on April 1, but closed 45 days later on May 16, therefore being "conducted" over a 45-day period, not on April 1 and Respondents admit bidding stayed open for 45 days. "Conducted" gives the impression that the foreclosure began and ended on April 1, which is not accurate. It is undisputed that the foreclosure auction began on April 1, and undisputed that the auction stayed open for bidding for 45 days. Respondents did not offer any evidence that the auction completed on April 1, and did not say that they had any additional evidence on this point.

Respondents proposed undisputed fact number 2 states "The bid funds of GNH in the amount of $499,799.40 were accepted as the high bid at 9:14 a.m. on April 1, 2025." This is agreeable except that the word "accepted" should be replaced with "received" because the word "accepted" has very specific meaning within §2924m and §2924h as being the point in time that the sale is deemed final by the act of the trustee in identifying and "accepting" the high bid after bidding closes after 45 days. It is undisputed that GNH gave this money to NBS that day, and the issue is simply with the characterization of the transaction. Respondents' use of the word "accepted" here is not a fact, but an argument based on inaccurate use of "accepted" in the general sense meaning "received" and not in the specific statutory sense under §2924m and §2924h, which is the primary issue in this case.

Section 2924h(c) states "For the purposes of this subdivision, the trustee's sale shall be deemed final upon the ***acceptance*** of the last and highest bid[.]" (emphasis added). Under California law "an acceptance of an offer must be communicated to the offeror to become effective. (Civ. Code, § 1565, [citations]." *Drouin v. Fleetwood Enters.*, 163 Cal. App. 3d 486, 491 (1985). Therefore, "acceptance" within the meaning of

-4-

§2924m and §2924h has specific meaning and occurs when the trustee NBS identifies the highest bid after the close of bidding and communicates that to the high bidder. This is the equivalent of an auctioneer dropping the hammer and saying "sold" at the auction. Here, NBS admits that it reviewed the file on May 19, 2025, after the 45th day and determined no other bids came in, and determined the high bid was from GNH, and communicated that to GNH that same day. [Respondents Proposed Facts 8, 9].

Respondents proposed undisputed fact 8 states "On May 19, 2025, NBS Default confirmed that no other bid funds had been received and determined that GNH remained the high bidder." This would be acceptable as a fact except as to the word "remained" the high bidder, because the word should be "was" the high bidder, because the truth is that the high bidder was identified and determined and accepted only on that day May 19 based on the undisputed fact that bidding stayed open for 45 days and communication of the acceptance happened on May 19, the same day NBS reviewed the file to identify the high bid for the first time after the close of bidding. Therefore, the Court can make the finding in this case that NBS accepted the high bid and deemed the sale final within the meaning of the statute based on the undisputed facts that NBS reviewed the file and identified the high bid and communicated the acceptance to GNH on May 19, 2025. There is no other evidence on this issue for discovery.

These undisputed facts establish that NBS "accepted" the GNH bid as the high bid on May 19, 2025, thereby deeming the sale final within the meaning of §2924m and §2924h. This is the finding that this Court must make on this Motion regarding "acceptance" and when the sale was "deemed final" which the Court can do on the undisputed facts identified here.

During meet and confer Respondents would not specifically confirm that they deemed the sale final on April 1 within the meaning of §2924m and §2924h rather than

deeming the sale final on May 19.  However, NBS and Shellpoint admit that NBS communicated to GNH for the first time on May 19 that they were the high bidder of the foreclosure sale. This fact precludes a finding by this Court that the sale was deemed final on April 1.

Under §2924m(c) the "trustee's sale [...] shall not be deemed final until" the 45th day at 5 pm as admitted by Respondents. Respondents all take the position that they complied with §2924m and §2924h, which means that they did not actually deem the sale final by accepting the high bid on April 1.  That would be impossible considering they propose the undisputed fact that the 45-day timeframe applied for receiving bids, they kept the bidding open for that time, reviewed the file after 45 days, and first communicated to the high bidder after the 45th day. On these truly undisputed facts, the only conclusion that can be drawn is that the foreclosure sale was "deemed final" within the meaning of §2924h by NBS when NBS "accepted" the bid of GNH as the final high bid on May 19, 2025, communicating the acceptance that day.

The Court will need to make the factual finding that NBS deemed the sale final on May 19 by accepting and communicating the acceptance to GNH within the meaning of §2924m and §2924h because the issue in the Motion for Sanctions for Violation of the Automatic Stay depends on actions being taken by Respondents after they had notice of the bankruptcy case. Here, these undisputed actions include that Respondents kept bidding open for 45 days expressly refusing to close it in letters they sent to Debtor's counsel, and that they took the action of reviewing the file and identifying the high bidder, accepted the high bid, and communicating their acceptance to GNH on May 19, 2025, 48 days after they had notice of the bankruptcy and had been asked to stop.

D. <u>Facts Related to Estoppel</u>

Shellpoint argues that it rescinded the foreclosure sale "immediately" upon

Case: 25-40564    Doc# 81    Filed: 10/01/25    Entered: 10/01/25 19:47:54    Page 6 of 10

learning of the 9:06 am filing time. Shellpoint argues that it "expressly relied on the 9:19 a.m. filing time to its injury." Shellpoint argues that "Debtor clearly intended that SMS act on the 4/11/2025 Demand Letter and the 9:19 a.m. filing time by demanding a rescission of the Foreclosure Sale based on the 9:19 a.m. filing time." These are all allegations of fact by counsel without any evidentiary support by declaration or documents. Debtor asked if Shellpoint had any additional evidence to support these facts, but Shellpoint did not respond that it had any additional evidence, therefore no further discovery is needed.

Therefore, Debtor's position is that they are not legitimate issues of fact that require discovery or an evidentiary hearing and the Court may simply make the factual findings that Shellpoint rescinded the completed foreclosure sale to avoid litigation risks as set forth in the extensive email correspondence, and that Shellpoint did not rely on the 9:19 filing time to its injury when refusing to cancel the foreclosure sale because arguments of counsel are not evidence, and that Debtor did not intend Shellpoint to rely on the 9:19 filing time by refusing to cancel the sale because there is no evidence of this and it is patently absurd.

On this basis the Court should reject the estoppel argument because there is no evidence to support these claims and therefore these are not legitimate disputes of fact that require discovery or an evidentiary hearing. Shellpoint has the burden to establish these facts and failed to submit evidence or identify that it had any additional evidence to support it.

E. <u>The Reason Respondents Rescinded the Foreclosure Sale</u>

The reasons that Respondents cancelled the foreclosure sale are material facts for the Court to decide related to punitive damages because the evidence shows they rescinded the sale out of fear of litigation, but Respondents' counsel argues it was rescinded upon learning of the 9:06 am filing time.

On this key issue no Respondent has any further evidence and there is no reason for further discovery. Therefore, there is not a material dispute of fact on this issue, and the emails and declarations and judicial admissions plainly establish Respondents rescinded the foreclosure to avoid litigation exposure after this Motion was filed and that the arguments of NBS and Shellpoint in their briefs that they cancelled the sale upon learning of the 9:06 filing time when the Motion was filed are simply unsubstantiated arguments of counsel that are plainly undermined by the extensive email correspondence produced in discovery and attached to Debtor's Reply briefs docket 55 and 60.

F. <u>Trustees' Deed Upon Sale</u>

There is a dispute of material fact as to whether a trustee's deed upon sale was executed, or delivered by NBS, or received or accepted by GNH. It is undisputed that no TDUS was recorded in the county recorders' office, but that does not mean it was not executed and delivered. All three Respondents deny that there was a TDUS. However, there are emails strongly suggesting that a TDUS was created and sent to GNH as discussed in the Reply Briefs. The email **Exhibit H** previously submitted shows that when NBS Counsel Michelle Mierzwa emailed GNH employee Olivia Reyes on May 20, 2025, she said GNH was previously deemed the high bidder, and that the TDUS needs to be recorded within 60 days, and suggests GNH "file an ex parte motion for annulment/relief from stay regarding the recording of the Trustee's Deed" This language strongly suggests a TDUS was issued because none of this language makes any sense if no TDUS had been issued or accepted because the discussion would have been about completing that step first. The fact that they suggest annulment of the stay regarding the TDUS is because it was already issued and accepted.

Debtor asked GNH counsel by email to meet and confer about dates for a deposition on the issue on September 11, but GNH has ignored the email.

-8-

Case: 25-40564    Doc# 81    Filed: 10/01/25    Entered: 10/01/25 19:47:54    Page 8 of 10

There is a further disputed material fact about when GNH learned of the bankrutpcy case. GNH claims in its opposition brief that it first learned of the bankruptcy on May 19, 2025, when NBS notified it of the acceptance of its bid as the winning high bid. However, the email **Exhibit H** makes it clear that GNH learned about the bankruptcy some time earlier than May 19 because Michelle Mierzwa states "You indicated that you became aware of the bankruptcy filing at some point." Obviously, GNH learned of the bankruptcy before May 19. Even if no TDUS was issued or received by GNH, or if Respondents hide that evidence, the fact that GNH learned of the bankruptcy case earlier than May 19, 2025, will show a willful violation of the stay for not immediately cancelling the sale.

On September 11, Debtor asked GNH counsel to meet and confer about dates for deposing Olivia Reyes about when she learned of the bankrutpcy case, and about a corporate designated witness on the date they first learned of the bankrutpcy case, and the PACER account information for all users so the Debtor can subpoena the records to find out when GNH or its counsel first looked up the bankrutpcy case, but GNH has ignored the email.

Debtor's position is that the Court can find GNH liable on these facts without further discovery, including for not taking affirmative action to cancel the sale immediately upon learning of the bankruptcy case at some point before May 19. It is clear that the evidence contradicts their narrative on when they learned of the bankruptcy and whether a TDUS was issued, and that is enough to support a finding against them, and it is apparent that further discovery will be expensive and contested but will eventually establish the same facts already visible. Discovery will be hard fought and require motions to compel all discovery because GNH's written responses to requests for admission, interrogatories, and requests for production do not comply with virtually any of the FRCP requirements and would require motions to compel before any evidentiary hearing to ensure compliant responses are served to avoid any

surprises at trial with new evidence.

However, to the extent the Court finds this to be insufficient for liability as to GNH, Debtor will proceed with depositions to get to the bottom of whether a TDUS was executed, delivered, or accepted and when GNH first learned of the bankruptcy case.

However, the Court may enter an order on liability and damages as to the three Respondents separately, and find NBS and Shellpoint liable for their acts that violate the stay while discovery proceeds as to GNH. If NBS executed, issued, or delivered a TDUS that would also violate the stay, but the other violations are sufficient for liability, so it is unnecessary to delay ruling as to NBS and Shellpoint for discovery on the TDUS.

Date: October 1. 2025

/s/ Andrew J. Christensen
Andrew J. Christensen
Attorney for Melissa Wilkerson