Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorneys for Debtor Melissa Wilkerson

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of: | Bankruptcy Case:     25-40564 CN |
| Melissa Wilkerson<br>          Debtor_____ | Chapter 13 |
| | **Motion for Summary Judgment on Debtor's Motion for Damages for Violation of the Automatic Stay** |
| | <u>Hearing REMOTE OR IN PERSON</u><br>Date: November 7, 2025<br>Time: 11:00 a.m.<br>Place: Courtroom 215<br>1300 Clay Street, Oakland CA 94612<br>The Honorable Charles Novack |

Melissa Wilkerson hereby makes this *Motion for Summary Judgment* on her *Motion for Damages for Violation of the Automatic Stay* against NewRez LLC dba Shellpoint Mortgage Servicing, NBS Default Services, LLC, (jointly "Creditors" or "Respondents") for proceeding with a foreclosure sale in violation of the automatic stay.

Debtor seeks relief from the Court for the Creditors' willful violations of the automatic stay 11 U.S.C. §362(a) for proceeding with the foreclosure of her home despite the filing of this bankruptcy case. This Motion is based on the memorandum of points and authorities, the attached declarations of Melissa Wilkerson, Dean Freeman, Vincent Wood, Andrew J. Christensen, and Exhibits and the files and records in this action and any further evidence and argument that the Court may receive.

Debtor requests that the Court grant summary judgement against Shellpoint

and NBS for willfully violating the automatic stay and find them jointly and severally liable for violating the automatic stay and award damages of $58,218.50 in attorney's fees and costs and any other relief or damages the Court deems just and proper.

Date: October 8. 2025

/s/ Andrew J. Christensen
Andrew J. Christensen
Attorney for Melissa Wilkerson

Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorneys for Debtor Melissa Wilkerson

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of: | Bankruptcy Case: 25-40564 CN |
| Melissa Wilkerson | Chapter 13 |
| Debtor_____ | |
| | **Memorandum of Points and Authorities in Support of Motion for Summary Judgment** |
| | Hearing REMOTE OR IN PERSON<br>Date: November 7, 2025<br>Time: 11:00 a.m.<br>Place: Courtroom 215<br>1300 Clay Street, Oakland CA 94612<br>The Honorable Charles Novack |

Debtor submits the following Memorandum of Points and Authorities in Support of the Motion for Summary Judgment on her Motion for Damages for Violation of the Automatic Stay.

//

//

//

//

//

Table of Contents

STATEMENT OF FACTS ................................................................................................1

LEGAL STANDARD ....................................................................................................5

   1.   LEGAL STANDARD FOR SUMMARY JUDGMENT.............................5

   2.   LEGAL STANDARD FOR VIOLATING THE AUTOMATIC STAY........5

ARGUMENT.................................................................................................................6

   3.   NBS AND SHELLPOINT WILLFULLY VIOLATED THE AUTOMATIC STAY   7

     A.   Respondents Violated the Stay by Inaction........................................9

     B.   Respondents' Purported Belief That They Were Not Violating the Stay is Not a Defense.................................................................................10

   4.   DAMAGES ...........................................................................................12

CONCLUSION ...........................................................................................................18

Case: 25-40564   Doc# 83   Filed: 10/08/25   Entered: 10/08/25 16:04:01   Page 4 of 35

# Table of Authorities

**Cases**

*Ariz. v. ASARCO LLC*
...........................................................................................................13

*Cash of Wash., Inc.*
(In re Snowden), 769 F.3d 651 (9th Cir. 2014) ....................................................16

*Drouin v. Fleetwood Enters.,*
163 Cal. App. 3d 486 (1985) .................................................................................8

*Eskanos & Alder, P.C. v. Leetien*
309 F.3d 1210 (9thCircuit 2002) ..........................................................................6

*Goichman v. Bloom*
(In re Bloom), 875 F.2d 224 (9th Cir. 1989) .......................................................12

*Herbert v. United States, IRS*
(In re Herbert), No. CC-96-1979-HOHi, 1998 Bankr. LEXIS 617 .........................6

*In re Stringer,*
847 F.2d 549 (9th Cir. 1988) ..................................................................................6

*In re Taylor,*
884 F.2d 478 (9th Cir. 1989) ................................................................................13

*Ozenne v. Bendon*
(In re Ozenne), 337 B.R. 214 (B.A.P. 9th Cir. 2006) ..........................................13

*Rushmore Loan Mgmt. Servs., LLC v. Moon*
(In re Moon), Nos. NV-20-1057-BGTa, NV-20-1070-BGTa, 2021 Bankr. LEXIS 28 (B.A.P. 9th Cir. Jan. 7, 2021) ....................................................................................13

-1-

*Stanwyck v. Bogen*

(In re Stanwyck), 450 B.R. 181 (Bankr. C.D. Cal. 2011) .......................................... 9

*Sundquist v. Bank of Am., N.A.*

(In re Sundquist), 576 B.R. 858 (Bankr. E.D. Cal. 2017) ..................................... 10

*Williams,*

323 B.R. ...................................................................................................... 13

**Statutes**

11 U.S.C. §362 ...................................................................... 1, 6, 7, 9, 10, 12

Civ. Code, § 1565 .......................................................................................... 8

Section 2924h .............................................................................................. 8

§2924h ..................................................................................... 2, 8, 9, 13, 15

**Other**

FRCP 54 ........................................................................................... 10, 21

## STATEMENT OF FACTS

Debtor's home is a single-family residence at 1933 Grass Mountain Court., Antioch CA. 94531. The Property has been in Debtor's family since 1998. Debtor has been the owner of record since 2020 through administering her parents' estate. The loan is in the name of Debtor's parents, Steven and Lisa Wilkerson. The Property is worth about $779,900. Debtor owes about $150,244 on the mortgage loan which is evidenced by a deed of trust recorded in Contra Costa County as document number 2013-0113662. Debtor fell behind on the mortgage and there are about $77,216 in arrears. Debtor has resolved to pay the arrears by withdrawing money from her retirement savings and will do so in her chapter 13 plan to save the $630,000 in equity in her property.

The Loan is serviced by NewRez LLC dba Shellpoint Mortgage Servicing ("Shellpoint"). The foreclosure trustee is NBS Default Services, LLC ("NBS"), which is the authorized agent of Shellpoint and conducted the foreclosure sale and all related matters as the agent of Shellpoint. Shellpoint is liable for the acts of its agent NBS.

NBS recorded a Notice of Default on July 31, 2024, and a Notice of Trustee Sale on February 18, 2025, both as the agent for Shellpoint. The foreclosure sale was scheduled for April 1, 2025.

Debtor filed this chapter 13 bankruptcy case pro se on April 1, 2025, at 9:06 am at the bankruptcy court clerk's office in Oakland to stop the foreclosure sale of her home that was scheduled for that day at 9:00 am. [Decl. of Melissa Wilkerson and Decl. of Dean Freeman]. This fact is no longer in dispute. GNH filed a statement in this case, docket 73, stating "there is no pending factual dispute as to the time that Debtor filed bankruptcy." Shellpoint filed a statement, docket 72, stating "SMS submits that there is no factual dispute on the filing time, without prejudice otherwise to its argument set forth in its opposition[.]" NBS filed a statement, docket 74, stating "For purposes of the Motion, the parties agree that the bankruptcy petition was filed at 9:06 am."

NBS admits that it received notice of the bankruptcy at 11:57 am central time

(9:57 am pacific time) by phone within less than an hour of the case being filed. [Dkt 53 Decl. Jessica Kahler of NBS ¶6]. This knowledge is imputed to Shellpoint through its agent NBS.

Both NBS and Shellpoint received notice directly from Debtor's counsel by letter on April 11, 2025.

The highest bid submitted at the opening of the auction on April 1, 2025, was third party foreclosure investor Good Neighbor Homes, LLC for $499,799.40. [**Exhibit B** Trustee Certificate of Sale/Receipt]. It is undisputed that GNH gave this money to NBS that day pursuant to its bid. It is undisputed that bidding remained open after this bid money was received by NBS for 45 days until May 16, 2025.

Because the highest bid submitted at the initial auction was a third party, the foreclosure auction was not completed at the courthouse steps on April 1, 2025, at 9:14 am, but remained open for 15 days for further bids pursuant to California Civil Code §2924m. [Decl. Kahler ¶8, Dkt 53].

A notice of intent to bid pursuant to Civil Code section 2924m(c)(2) was timely received by NBS Default before the 15th day after April 1, 2025. [Dkt. 80, Shellpoint, NBS, GNH statement of facts, and Decl. Kahler ¶8, Dkt 53 and Exhibit E to that declaration].

Because of the notice of intent to bid was timely received, the bidding process required by Civil Code §2924m remained open for 45 days from April 1, 2025, until May 16, 2025, at 5:00 pm. [Dkt. 80, Shellpoint, NBS, GNH statement of facts, and Decl. Kahler ¶8, Dkt 53]. No additional bids were received during the 45-day period.

Debtor hired bankruptcy counsel Shepherd & Wood LLP, which appeared in the case 10 days later on April 10, 2025. Attorney Vincent Wood sent a letter to Shellpoint and NBS on April 11, 2025, notifying them of the bankruptcy filing and requesting that the sale be cancelled on account of the stay. [**Exhibit D**, and Decl. Kahler ¶7 Dkt 53]. The letter attached the Notice of Bankruptcy Case Filing from PACER showing a time stamp of 9:19 am.

On April 14, 2025, Chandra D. Pryor, an attorney at Bonial & Associates, counsel for NBS, emailed Debtor's Counsel's office in response to the April 11 letter and stated "It is my client's position that as long as the TDUS is recorded within the appropriate period (60-day period if SB 1079 is triggered), the relation back doctrine now applies to all types of eligible bidders and this sale would be deemed final as of 9:14 am and the BK was filed at 9:36 am . The sale occurred prior to the bankruptcy filing therefore no violation of the automatic stay has occurred." **Exhibit Q**. This was an express refusal to stop the ongoing foreclosure auction in willful violation of the automatic stay.

That same day, Debtor's attorney's office emailed Ms. Pryor asking whether the winning bidder was a qualified bidder, and Ms. Pryor answered "We received an affidavit of compliance with Civ. Code 2924m which indicates that the winning bidder is a prospective owner occupant as defined by Civ Code 2924m(a)(1)." **Exhibit Q**. This statement was false and known to be false at the time it was made and was plainly intended to discourage any action because under §2924m, if the winning bidder is a prospective owner occupant the sale is deemed final at the opening live auction at the courthouse steps and does not remain open for any more time after that.

On April 15, 2025, Mr. Wood had a phone call with NBS's counsel Michelle Mierzwa of Wright Finlay & Zak wherein he asked her to stop the ongoing foreclosure because of the bankruptcy case. Ms. Mierzwa told him that NBS and Shellpoint would not stop the foreclosure sale on account of the bankruptcy but would proceed forward with the ongoing auction which was still open for bidding. [Decl. Wood ¶6].

Counsel for NBS Michelle Mierzwa sent Debtor's counsel Mr. Wood an email on May 7, 2025, stating that foreclosure was conducted at 9:14 am before the bankruptcy was filed at 9:36 am based on the time stamped petition, and that the 45 day period applies under §2924m, and that the sale will proceed despite the bankruptcy case and the foreclosure trustee "will issue the trustee's deed regarding the April 1, 2025 foreclosure sale once the identity of the high bidder has been determined as dictated

by statute." [**Exhibit E**].

On May 8, 2025, Ms. Mierzwa emailed Mr. Wood stating that "If the post-auction bidder submits a bid, we will provide copies of those communications and any bid checks at that time." **Exhibit F**. This proves NBS refused to cancel the ongoing foreclosure auction after notice of the bankruptcy case and kept the auction open to receive bids and intended to accept the high bid after the 45th day and issue the TDUS.

On May 19, 2025, three days after the foreclosure auction closed after 45 days, NBS reviewed its files and confirmed that no other bid funds had been received and that the high bidder at the auction was Good Neighbor Homes LLC. [Decl. Kahler ¶10, Dkt 53].

On May 19, 2025, NBS notified GNH by leaving a voicemail that GNH was the winning high bidder of the foreclosure sale. [Dkt. 80, Shellpoint, NBS, GNH statement of facts, and **Exhibit J** voicemail transcript]. This was the first time that NBS communicated to GNH that it had accepted its bid as the winning high bid at the auction.

NBS's counsel Michelle Mierzwa stated in an email to GNH on May 20, 2025, that "Good Neighbor Homes, LLC as the high bidder at the live sale auction was deemed the last and highest bidder pursuant to Civil Code section 2924m(c)(4)." **Exhibit H**.

On May 22, 2025, Debtor filed the Motion for Sanctions for Violation of the Automatic Stay because NBS and Shellpoint's counsel Ms. Mierzwa had repeatedly by email and phone refused to cancel the ongoing auction and made it clear she would complete the auction and issue a TDUS.

On May 28, 2025, Ms. Mierzwa called Debtor's counsel Andrew J. Christensen demanding that the motion be withdrawn and that if it was withdrawn, NBS "might consider" cancelling the completed foreclosure. When asked by Debtor's counsel if Ms. Mierzwa had authority from her client NBS to resolve the matter or make offers, she said she did not.

-4-

On May 30, 2025, Ms. Mierzwa emailed Debtor's counsel claiming that they had arranged for cancellation of the foreclosure sale.

## LEGAL STANDARD

### 1. LEGAL STANDARD FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). The moving party must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. (citation). Of course, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." (citation)."If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." (citation). *Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 780-81 (9th Cir. 1998).

The Court may grant partial summary judgment on discrete elements of a claim, or "part of each claim or defense." Fed. R. Civ. P. 56(a)

### 2. LEGAL STANDARD FOR VIOLATING THE AUTOMATIC STAY

The automatic stay goes into effect upon the filing of the bankruptcy petition and stays certain actions. Section 362(a)(3) provides that the filing of the petition stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]"

Section 362(a)(4) provides that the filing of the petition stays "any act to create, perfect, or enforce any lien against property of the estate[.]"

Case: 25-40564   Doc# 83   Filed: 10/08/25   Entered: 10/08/25 16:04:01   Page 11 of 35

Section 362(a)(5) provides that the filing of the petition stays "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title[.]"

Section 362(a)(6) provides that the filing of the petition stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]"

"Any proceedings in violation of the automatic stay in bankruptcy are void." *In re Stringer*, 847 F.2d 549, 551 (9th Cir. 1988).

Creditors are liable to Debtor for damages for willful violations of the automatic stay. §362(k).

A violation of the stay is willful when a creditor acts intentionally with knowledge of the bankruptcy. Willfulness does not require a specific intent to violate the automatic stay, but only that the creditor knew of the automatic stay and that the creditor's actions which violated the stay were intentional. *Herbert v. United States, IRS (In re Herbert)*, No. CC-96-1979-HOHi, 1998 Bankr. LEXIS 617, at *8, 81 A.F.T.R.2d (RIA) 1998-2105 (B.A.P. 9th Cir. May 19, 1998)

## **ARGUMENT**

There is no dispute of material fact that NBS and Shellpoint learned of the bankruptcy on April 1, 2025, but willfully violated the stay by keeping the auction open, accepting notices of intent to bid, refused expressly to stop the auction, kept bidding open for 45 days, reviewed its file on May 19, 2025, determined GNH was the winning bidder, and notified GNH of its winning bid that day. Shellpoint and NBS only cancelled the foreclosure sometime after May 30, 2025, only after they were unsuccessful in demanding Debtor withdrawing the motion, and more than a week after the Motion for Sanctions was filed. There is no dispute of material fact that NBS was the authorized foreclosure agent of Shellpoint and that Shellpoint is liable for the acts of its agent NBS.

The Court can grant summary judgment against NBS and Shellpoint, finding

that these were all acts done in willful violation of the stay after they knew of the bankruptcy.

The Court can grant summary judgment for Debtor by finding that NBS deemed the sale final on May 19, 2025, by its actions in accepting the high bid on May 19, 2025, and communicating that acceptance to GNH and that these are willful violations of the stay. The Court may award damages on summary judgment because attorney's fees are damages under §362(k) and the evidence is undisputed and there is not a genuine dispute of material fact that fees and costs were incurred.

**3. NBS AND SHELLPOINT WILLFULLY VIOLATED THE AUTOMATIC STAY**

There is no genuine dispute of material fact that NBS and Shellpoint knew of the bankruptcy case as of April 1, 2025, within an hour of the start of the auction, and took the following acts willfully after learning of the bankruptcy case:

1. Kept bidding open for 15 days pursuant to §2924m; [Decl. Kahler ¶8, Dkt 53].

2. Received and accepted a notice of intent to bid before the 15th day; [Dkt. 80, Shellpoint, NBS, GNH statement of facts, and Decl. Kahler ¶8, Dkt 53 and Exhibit E to that declaration].

3. Kept the bidding open for 45 days to May 16, 2025, pursuant to §2924m because they received and accepted the notice of intent to bid; [Dkt. 80, Shellpoint, NBS, GNH statement of facts, and Decl. Kahler ¶8, Dkt 53].

4. Refused to stop the ongoing sale when asked by Debtor's counsel to stop; [**Exhibits E, F, Q**, Decl. Wood, Decl. Christensen].

5. Reviewed their file on May 19, 2025, and determined GNH was the highest bid received during the entire 45 day bidding period of the auction; [Decl. Kahler ¶10, Dkt 53].

1   6. Contacted GNH on May 19 telling them they were the winning bidder.
2   **Exhibit H**.

3

4       There is no genuine dispute of material fact that each of these are actions taken
5   intentionally by NBS and Shellpoint. Based on these undisputed facts, the Court may
6   grant summary judgment finding that NBS and Shellpoint deemed the sale final
7   within the meaning of §2924m and §2924h by accepting the high bid on May 19, 2025,
8   48 days after they learned of the bankruptcy case.

9       Section 2924h(c) states "For the purposes of this subdivision, the trustee's sale
10  shall be deemed final upon the ***acceptance*** of the last and highest bid[.]" (emphasis
11  added). Under California law "an acceptance of an offer must be communicated to the
12  offeror to become effective. (Civ. Code, § 1565, [citations]." *Drouin v. Fleetwood Enters.*,
13  *163 Cal. App. 3d 486, 491 (1985)*. Therefore, "acceptance" within the meaning of
14  §2924m and §2924h has specific meaning and occurs when the trustee NBS identifies
15  the highest bid after the close of bidding and communicates that to the high bidder.
16  This is the equivalent of an auctioneer dropping the hammer and saying "sold" at the
17  auction. Here, NBS admits that it reviewed the file on May 19, 2025, after the 45th
18  day and determined no other bids came in, and determined the high bid was from
19  GNH, and communicated that to GNH that same day.

20      The emails from NBS's counsel refusing to stop the sale and stating that bidding
21  is ongoing and that they will issue a TDUS show the willful violation of the automatic
22  stay. **Exhibit E**, **Exhibit F**.

23      NBS's counsel Michelle Mierzwa stated in an email to GNH on May 20, 2025,
24  that "Good Neighbor Homes, LLC as the high bidder at the live sale auction was
25  deemed the last and highest bidder pursuant to Civil Code section 2924m(c)(4)."
26  **Exhibit H**. NBS's counsel goes on to say that the "Trustee's Deed Upon Sale will need
27  to be recorded within 60 days of the live sale auction in order to benefit from the
28  statutory "relation back" to 8:00 a.m. on the day of the live sale" and that "There is a

concern that the borrower (Wilkerson) under the foreclosed loan intends to challenge the validity of the sale" because they were served with the Rule 2004 examination order and subpoena, and that therefore "As a result, it may be prudent" for GNH to seek for "annulment/relief from stay regarding recording of the Trustee's Deed[.]"

This evidence establishes that NBS took the affirmative act to deem the sale final on or shortly after the 45th day by officially accepting GNH's bid as the high bid, in violation of the automatic stay. This is why NBS claims that it "cancelled" the sale, which means it cancelled a completed sale it had deemed final and notified GNH that they were the winner.   NBS produced a procedure manual in discovery, **Exhibit N** that sets out the actions that must be taken after the 45th day to review the file to determine if more bids were received, how to record this in their system, and how to finalize the sale.   These are steps and actions taken to finalize the foreclosure, as occurred here.

NBS also admitted in response to Debtor's Interrogatory 2 that "NBS inquired with the high bidder Good Neighbor Homes, LLC, regarding whether it might agree to voluntarily *cancel the completed sale*. On May 21, 2025 Good Neighbor Homes indicated that it would agree to accept a refund of its bid funds to cancel the foreclosure sale, so NBS inquired with Shellpoint about a voluntary agreement *to cancel the completed sale*." (emphasis added). **Exhibit I**.  These facts show that Shellpoint, NBS, and GNH all considered that the auction had been "deemed final" pursuant to §2924m and §2924h, which plainly occurred on May 19, 2025, upon NBS accepting the high bid and notifying GNH, all of which are affirmative actions in violating the stay.

These actions violated the stay because Debtor's home was property of the estate at the time the bankruptcy case was filed at 9:06 am on April 1, 2025.

Respondents argue that they did not take actions after the petition date that violate the stay, which the evidence above plainly contradicts and there is no genuine dispute of material fact that acts were taken.

A. Respondents Violated the Stay by Inaction

Respondents are liable for violating the stay even the Court accepts their claim that they did not take affirmative acts after learning of the bankruptcy on April 1 because the inaction and failure to cancel the auction and instead let it proceed violates the stay because creditors have an affirmative duty to discontinue post-petition collection actions. *Eskanos & Alder, P.C. v. Leetien* 309 F.3d 1210 (9thCircuit 2002). The failure to take action to stop the ongoing auction is in itself a stay violation. Even if the original stay violation was done without knowledge of the bankruptcy stay, the violation becomes willful if the Creditor does not take affirmative action to discontinue the violations or reverse actions taken in violation of the stay. Here, Shellpoint and NBS should have rejected the notices of intent to bid, returned GNH funds to it, taken the information for bidding off NBS's website, and confirmed to Debtor that the auction was stopped.  The failure to take these actions to stop the auction is an omission that allows the violation to continue by keeping the auction open for bidding.

B. <u>Respondents' Purported Belief That They Were Not Violating the Stay is Not a Defense</u>

It is not an excuse for violating the stay that Shellpoint and NBS thought they had a good legal argument under §2924m and §2924h to proceed with the foreclosure: "No specific intent is necessary, and a creditor's good faith belief that the stay was not being violated is not relevant to the issue of willfulness." *Stanwyck v. Bogen (In re Stanwyck)*, 450 B.R. 181, 192 (Bankr. C.D. Cal. 2011).

Here, because the high bid at the opening live auction was from an investor, it does not matter under §2924m whether the bankruptcy case was filed before the auction started at 9:14 am or after the auction began because the auction stayed open for bidding for at least 15 days automatically, which was then extended to 45 days when the notice of intent to bid came in.  Therefore, there is no valid argument by Creditors that they could move forward with the sale because the Notice of Bankruptcy Case Filing stated a 9:19am filing time. Therefore, there is no good faith belief that

their actions did not violate the stay.

"If there is any question about the applicability or scope of the stay, the creditors are required to come to the bankruptcy court to obtain clarification or relief from the stay." *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 591 (B.A.P. 9th Cir. 1995). Here, Creditors and their counsel Michelle Mierzwa had full knowledge of §2924m and the *Hager* case and that their conduct in continuing an ongoing and uncompleted foreclosure auction was highly likely to be found to violate the stay. NBS's counsel Michelle Mierzwa is an expert on §2924m and the case law, including *Hager*, and Ms. Mierzwa has written articles and given speeches about the statute, plainly indicating her knowledge of the statute and that when the auction remains open for 45 days the foreclosing lender is still responsible for the property, including paying property taxes because the property is still owned by the borrower during that time. **Exhibit O** is an article purportedly written by Ms. Mierzwa about SB1079 and §2924m.

Ms. Mierzwa gave speech to the Northern California Bankruptcy Conference in Sacramento with Judge Rene Lastreto, the author of the *Hager* decision, about the *Hager* case, on March 21, 2025. **Exhibit P** is a screen shot of a Linkedin post that appears to be from Michelle Mierzwa's Linkedin page that she posted about giving a panel discussion with Judge Rene Lastreto about the *In re Hager* decision to the Northern California Bankruptcy Conference. That conference occurred only 10 days before the foreclosure sale here. This evidence shows intentional violation of the stay with full knowledge that proceeding with a foreclosure auction during the 15 or 45 days under §2924m is certainly or at least highly likely to violate the automatic stay. Here, Creditors were not violating the stay in ignorance or confusion about a new law, but willfully proceeding with full knowledge of the risks. Creditors should have stopped the sale and sought relief from this Court instead of pushing forward.

The Ninth Circuit has long held that "good faith reliance on the advice of counsel was no defense to a contempt action brought to remedy willful violations of the stay."

*In re Taylor*, 884 F.2d 478, 483 (9th Cir. 1989) Furthermore, "Likewise, whether Dollar believed in good faith that it had a right to the Property is irrelevant: "No specific intent is required; a good faith belief that the stay is not being violated 'is not relevant to whether the act was "willful" or whether compensation must be awarded[,]'" *Id.* (citation omitted); *In re Taylor*, 884 F.2d 478, 483 (9th Cir. 1989), nor is good faith reliance on the advice of counsel a defense, *Williams*, 323 B.R. at 701; nor is reliance on a state court's determination." *Ozenne v. Bendon (In re Ozenne)*, 337 B.R. 214, 221 (B.A.P. 9th Cir. 2006).

Therefore, there is no genuine dispute of material facts on the issue of willful violations of the stay by Shellpoint and NBS and the Court should grant summary judgment.

**4. <u>DAMAGES</u>**

Debtor suffered damages in the amount of $58,218.50 for attorneys' fees and costs on account of the stay violation for notifying creditors, attempting to resolve the issue informally, drafting the motion for the Rule 2004 examination, and drafting this motion and declarations, and litigating the matter, including discovery.

Counsel Vincent Wood has incurred $6,596.00 in fees, at his lodestar rate of $485 per hour. [Declaration of Wood ¶9-14, **Exhibit S**].

Counsel Andrew J. Christensen has incurred $48,980 in fees at the lodestar rate of $650 per hour, and $100 per hour for paralegal time. Costs incurred are $42.50 for serving the motion by mail and transcripts of hearings. [Decl. Christensen]. Time records in chronological order are attached as **Exhibit G1**. The same time entries organized by project category are attached as **Exhibit G2**. In the exercise of reasonable billing judgment, Mr. Wood and Mr. Christensen did not bill for many phone calls between them, more than 1.8 hours total. Counsel diligently avoided duplication of services by delegating tasks.

Counsel anticipates an additional 4 hours will be required to read the opposition,

draft a reply, and appear at the hearing, for an additional $2,600.

Attorney's fees are damages under §362(k). Section 362(k) states that for a willful violation of the stay debtor "shall recover actual damages, including costs and attorneys' fees[.]" It is important to note that this is not a typical fee shifting statute entitling the prevailing party to file a motion for attorney's fees if they win. Section 362 is one of very few statutes making fees and costs damages. Judge Christopher Klein explained that "§362(k)(1) is unusual in that it specifies that attorney fees are a component of actual damages, with the consequence that fees could operate to increase punitive damages, and not merely be an additional charge[.]" *Sundquist v. Bank of Am., N.A. (In re Sundquist)*, 576 B.R. 858, 866 (Bankr. E.D. Cal. 2017). Because the attorneys' fees and costs are damages, this Court may award them based on the evidence in summary judgment. Also, because they are damages, the amount of punitive damages may be based on a multiplier of the fees and costs awarded as damages.

This Court may award fees and costs as damages on summary judgment because under FRCP 54(d)(2) specifies that " A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." In other words, because fees and costs are damages under §362 they are to be proven at trial and awarded as part of the judgment.

The Bankruptcy Code makes fees a damage for a very specific purpose, which is because many stay violations such as sending collection letters do not typically cause monetary damages and therefore the statute was designed to be strict liability with attorney's fees as damages rather than under a typical type of fee shifting clause, because anytime a debtor had to enforce the automatic stay it required attorney's fees, and stay violation motions and enforcement is intended to be quick and efficient and allowing a ruling on the merits and awarding fees at the same time without a two part process of winning on liability then filing a motion for fees. This structure in the

statute also prevents courts from finding stay violations, but no damages, and denying fees and costs on that basis as if the stay violations were harmless.

Debtor attempted to mitigate damages by sending the letter on April 11, 2025, to NBS and Shellpoint asking that the ongoing foreclosure auction sale be cancelled and not completed. The letter Debtor would file a motion for the violation of the stay if Respondents continued forward with the foreclosure. Many emails and calls were exchanged between Debtor's counsel and Creditors counsel for six weeks between April 11 and May 22 before the motion was filed, all of which were intended to resolve the issue informally without a motion. Debtor only started drafting the motion on May 15, 2025, after giving Creditors many opportunities to cancel the sale, but Creditors repeatedly stated in emails that they intended to complete the sale after 45 days and issue the trustee's deed upon sale. Respondents conduct forced Debtor to file the motion because all efforts before that failed.

Debtor sought a Rule 2004 examination on April 15, 2025, to get the information about the sale to be sure of the facts before deciding to bring the motion because this is efficient and cost effective. The information received confirmed that GNH was the buyer and that the sale was required to stay open for 45 days on account of the notice of intent to bid, which information was critical to the case because NBS's counsel had stated that the buyer was a prospective owner occupant, which the 2004 examination information proved was false.

Debor filed the Motion on May 22, 2025. After the Motion was filed Debtor's counsel had calls with counsel for NBS, and Good Neighbor Homes, and with counsel for Shellpoint, and it became clear that they each disputed the facts and law and had varying explanations, and that therefore discovery would be necessary to determine if there was any evidence to support their claims and defenses, so Debtor drafted and served discovery on June 3, 2025, including requests for admissions, requests for production of documents, and interrogatories to determine what facts and issues are disputed and what evidence Respondents have to support their contentions because it

was clear that all Respondents would vigorously oppose the motion.  The information produced by Respondents through this discovery was critical to the case, and many documents and emails supporting Debtor's claims were attached to the reply briefs.

The fees and costs were reasonable and necessary because there is no genuine dispute of material fact that Creditors only cancelled the foreclosure after the motion was filed and after Creditors were unsuccessful in their demands that Debtor withdraw the motion. On May 28, 2025, Debtor's counsel Andrew J. Christensen received a call from Michelle Mierzwa, counsel for NBS.  Ms. Mierzwa aggressively demanded that Debtor dismiss the Motion for Sanctions for Violation of the Automatic Stay claiming that there was no violation of the stay. She made arguments about §2924m and §2924h, stating that the *Hager* case was wrongly decided and now overruled by a change in statute, claiming she knew this because she was the industry expert on the matter.  Ms. Mierzwa said that if Debtor immediately withdrew the motion, NBS "might consider" cancelling the completed foreclosure sale of Debtor's Property.  Debtor's counsel asked Ms. Mierzwa to confirm that she was demanding withdrawal of the motion without any promise to cancel the sale and without putting anything in writing, and she confirmed that is what she was demanding.  Debtor's counsel asked her whether she had authority from her client make a settlement offer or to resolve the case and she said that she did not have the authority. Debtor's counsel informed Ms. Mierzwa that Debtor was willing to discuss resolving the matter as soon as she had authority from her client to do so.  Ms. Mierzwa terminated the call.  [Decl. Christensen].

On May 28, 2025, the same day as this phone call from Ms. Mierzwa to Mr. Christensen, Ms. Mierzwa emailed Shellpoint stating:

> "As indicated previously, it appears that the attorney for the
> borrower is serious about vigorously contesting the validity of the sale.
> Our office just received the attached Motion filed in the bankruptcy
> court, asserting that the bankruptcy was actually filed at 9:06am prior

to the sale completion at 9:14am, as she was waiting in line for the court to open. While it is possible to oppose this motion, due to the factual dispute regarding the time of filing, the substantial equity in the property and the legitimate nature of the first-time BK filing, we recommend a voluntary rescission of the sale so that we can negotiate for a dismissal of the attached motion and avoid incurring substantial attorneys' fees and costs to validate the sale." **Exhibit L**.

Attached as **Exhibit L** are emails produced by Shellpoint in response to Debtor's discovery requests for documents, and they demonstrate that Shellpoint and NBS only chose to cancel the foreclosure because of the threat of litigation, not because they found out about a 9:06 am filing time and suddenly decided to honor the automatic stay.  On May 23, 2025, the day after this Motion was filed, attorney Chandra Pryor of Bonial & Associates emailed many Shellpoint employees the following:

"counsel for the borrower served a Subpoena for Production of Documents on NBS Default and asserted his intention to challenge the validity of the sale. […] No post-sate bids have been received, and the Trustee's Deed could be issued to the original third-party bidder now. However, there remains the threat of expensive and time-consuming litigation by the borrower, and the third-party purchaser is willing to walk away from the sale in exchange for a return of bid funds to avoid the potential litigation regarding the validity of the sale in light of the close-filed BK. […] It seems that the borrower's counsel is pretty aggressive about the desire to invalidate the sale, so he will likely file a lawsuit or a motion in the bankruptcy court challenging the validity of the sale and naming Shellpoint, NBS and the third-party purchaser as parties. We have seen many examples of borrowers filing

lawsuits challenging the validity of foreclosure sales related to the filing of bankruptcy during the SB 1079 post-auction period and/or within minutes of the live sate auction, and they have been causing substantial delay and expense." **Exhibit L**.

This shows that the decision was not based on any desire to honor or abide by the automatic stay to follow the law, nor based on accepting the 9:06 filing time, but was because Debtor's counsel was intent on protecting her rights. NBS and Shellpoint did not decide on May 23rd the day of these emails to cancel the sale, but only decided to cancel the sale a week later after Debtor refused their counsel's demand to withdraw the motion.

Thereafter on May 30, 2025, Shellpoint (NewRez) emailed their counsel that "The rescission strategy was approved by the Investor, please proceed" **Exhibit L**. Shellpoint and NBS clearly were not relying on any representation about the time of filing in deciding to proceed in violation of the stay, but their actions were strictly based on assessments of the risk of litigation costs. They did not take the letter of April 11 seriously, and only started taking it seriously after the Rule 2004 examination subpoena was served, and after several rounds of emails with Debtor's counsel, and after the motion was filed, and then only took action after Debtor refused their demand to withdraw the motion in exchange for Shellpoint and NBS maybe considering cancelling the sale.

Shellpoint intentionally violated the stay will full knowledge of the violation because it considered the matter low risk and specifically noted this in their internal records. On April 21, 2025 and May 15, 2025, Shellpoint's servicing notes from its system of record show that it was aware of the Rule 2004 examination subpoena and Debtor's intention to challenge the sale, with notes stating "We are handling the subpoena and correspondence with the law firm representing the borrower and attempting to force us to rescind the sale" and Shellpoint marked this note as "Risk: Low." **Exhibit M**.

-17-

However, the emails between Shellpoint and NBS and Bonial & Associates attached as **Exhibit L** show that by May 23, 2025, after the Motion for Sanctions was filed, that they marked all the emails with headings stating "Importance: High." This demonstrates Shellpoint and NBS only started to take things seriously because of the threat of litigation, not because of the 9:06 filing time.

NBS's counsel Michelle Mierzwa said to Good Neighbor homes by voicemail on May 19, 2025, that the bankruptcy was filed after the sale and that debtor "subpoenaed the records of the trustee and it appears that they may be seeking contest the results of the foreclosure" and therefore "So in the event that you wanted to reconsider whether you want to complete the sale in light of the potential bankruptcy invalidation issue." **Exhibit J**.

Then on May 20, 2025, NBS counsel said to Good Neighbor by email "If Good Neighbor Homes prefers not to become involved in potential litigation relating to the foreclosure, with the agreement of all parties NBS Default may be able to return the bid funds to allow the borrower's bankruptcy to play out in the ordinary course. Please let us know how Good Neighbor Homes, LLC would like to proceed." **Exhibit H**.

Good Neighbor emailed NBS on May 21, 2025, stating "Our in-house legal team reviewed the BK and agrees this could be headache…." **Exhibit H**. The desire to avoid a headache and litigation costs is not a desire to abide by the stay based on a 9:06 am filing time and plainly shows that is not the reason they cancelled the sale and therefore no reason to believe they would have cancelled the sale earlier with that knowledge.

There is no genuine dispute of material fact based on this evidence that that the only reason the foreclosure sale was cancelled was because Debtor incurred the fees and costs to defend her rights and file the motion.

## <u>CONCLUSION</u>

Debtor requests that the Court grant summary judgment in favor of Debtor

Case: 25-40564    Doc# 83    Filed: 10/08/25    Entered: 10/08/25 16:04:01    Page 24 of 35

against Shellpoint and NBS for willful violations of the automatic stay and order that they are jointly and severally liable to pay $58,218.50 in attorney's fees and costs to Debtor's Counsel. Debtor requests that the Court award any other damages that it feels is just and proper, including punitive damages.

Debtor requests that the Court specify that pursuant to FRCP 54(b) the judgment is final and enforceable as to Shellpoint and NBS because there is no just reason for delay. The motion for damages for violation of the stay may proceed separately against Good Neighbor Homes even though final judgment is entered against Shellpoint and NBS. Discovery is proceeding as to GNH regarding the date they first learned of the bankruptcy case, and whether a TDUS was issued or sent to GNH.

DATED: October 8, 2025

/s/ Andrew J. Christensen
Andrew J. Christensen
Attorney for Melissa Wilkerson

-19-

Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorneys for Debtor Melissa Wilkerson

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of: | Bankruptcy Case:    25-40564 CN |
| Melissa Wilkerson | Chapter 13 |
| Debtor_____ | |
| | **Declaration of Andrew J. Christensen in Support of Motion for Damages for Violation of the Automatic Stay** |
| | Hearing REMOTE OR IN PERSON<br>Date: November 7, 2025<br>Time: 11:00 a.m.<br>Place: Courtroom 215<br>1300 Clay Street, Oakland CA 94612<br>The Honorable Charles Novack |

I, Andrew J. Christensen, am counsel for Melissa Wilkerson. The statements made herein are based upon my personal knowledge except to those matters which are herein alleged on information and belief, and as to those matters, I believe them to be true. If called as a witness in this matter, I could and would testify competently to each and all of the statements made herein.

1.    A true and correct copy of the billing records that I keep are attached here as **Exhibit G1 and G2**. These records were kept in the ordinary course of business and made at or about the time the work was done.

2.    **Exhibit H and J** are true and correct copies of an email that I received from Good Neighbor Homes in response to discovery requests I served.

Case: 25-40564    Doc# 83    Filed: 10/08/25    Entered: 10/08/25 16:04:01    Page 26 of 35

3.    **Exhibit I** is a true and correct copy of the interrogatory responses I received from NBS Default Services.

4.    **Exhibits L, M, N**, are true and correct copies of documents I received in discovery from Respondents.

5.    **Exhibit O** is a true and correct copy of an article I found online about §2924m which purports to be written by Michelle Mierzwa.

6.    **Exhibit P** is a true and correct copy of a screen shot I took of a Linkedin post I found online that appears to be from Michelle Mierzwa's Linkedin page that she posted about giving a panel discussion with Judge Rene Lastreto about the In re Hager decision to the Northern California Bankruptcy Conference. That conference occurred on March 21, 2025, only 10 days before the foreclosure sale here.

7.    **Exhibit R** is a true and correct copy of the interrogatory responses I received from Shellpoint to set one requests.

8.    On May 21, 2025, I sent a letter to Good Neighbor Homes, LLC by mail and email notifying them of the bankruptcy case and requesting that they not proceed with the sale. I sent the letter to the email and mailing address on the bid slip receipt from the records produced by NBS of the auction.

9.    On May 28, 2025, I received a call from Michelle Mierzwa, counsel for NBS. Ms. Mierzwa aggressively demanded that I dismiss the Motion for Sanctions for Violation of the Automatic Stay claiming that there was no violation of the stay. She made arguments about §2924m and §2924h, stating that the *Hager* case was wrongly decided and now overruled by a change in statute, claiming she knew this because she was the industry expert on the matter. Ms. Mierzwa said that if Debtor immediately withdrew the motion, NBS "might consider" cancelling the completed foreclosure sale of Debtor's Property. I asked Ms. Mierzwa to confirm that she was demanding I withdraw the motion without any promise to cancel the sale and without putting anything in writing, and she confirmed that is what she was demanding. I asked her whether she had authority from her client make a settlement offer or to resolve the

case and she said that she did not have the authority. I informed Ms. Mierzwa that we were willing to discuss resolving the matter as soon as she had authority from her client to do so.

10.    My lodestar hourly rate is $650 per hour based on my 16 years' experience representing Debtors in bankruptcy cases.

11.    Judge Charles Novack awarded me the rate of $650 per hour in November 2023 for representing chapter 13 debtors in the case of Raul and Tina Flores, 21-41252, Docket 82, and awarded that rate on May 19, 2025, in the case of Melvyn Beck, 22-40711 in a motion for fees against creditors on an objection to claim.

12.    Judge Rene Lastreto II, from the Eastern District of California awarded me the rate of $650 per hour in October 2023 for representing a chapter 13 Debtor in a unique case of first impression on a new California law, Civil Code §2924m, in the case of Shannon Hager, 22-12056.

13.    I have been practicing law in the Bay Area for 15 years. I graduated from Santa Clara Law School in Santa Clara California in 2008 and have been practicing continuously since that time.    My areas of practice are representing debtors and creditors in consumer bankruptcy and bankruptcy related litigation and homeowners and borrowers in civil litigation related to mortgage servicing and foreclosure matters.

14.    I am a nationally recognized expert in this field of mortgage litigation, and I am regularly asked to speak to groups of attorneys because of my expertise, including events for MCLE Credit and for national conferences.

15.    On June 5, 2023, I spoke at the National Consumer Law Center's annual Summer Mortgage Conference in Philadelphia on litigating zombie second mortgage cases in state court and bankruptcy court.  I spoke on a panel along with James Savage, Senior Counsel for the Consumer Financial Protection Bureau's (CFPB) Enforcement Policy and Strategy team.

16. Judge Dennis Montali awarded my lodestar rate of $650 in the case of *In re Wilson*, bankruptcy case 19-30651 in an order entered on June 20, 2020, docket number 95.

17. My lodestar rate of $650 per hour is reasonable because I have clients that pay this rate on an hourly basis.

18. The lodestar rate of my paralegal Leanne Rodriguez is $196 per hour based on her over 30 years' experience. Judge Efremsky awarded $196 per hour for my paralegal in bankruptcy litigation matters.

I swear under the penalty of perjury that this is true and correct, and that this declaration was executed on the following date in Oakland California.

DATED: October 8. 2025

/s/ Andrew J. Christensen
Andrew J. Christensen
Counsel for Debtor

-4-

Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorneys for Debtor Melissa Wilkerson

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| In the Matter of: | Bankruptcy Case:    25-40564 CN |
|---|---|
| Melissa Wilkerson | Chapter 13 |
|            Debtor_____ | |
| | **Declaration of E. Vincent Wood in Support of Motion for Summary Judgment on Debtor's Motion for Damages for Violation of the Automatic Stay** |

I, Vincent Wood, am the Attorney for Melissa Wilkerson. The statements made herein are based upon my personal knowledge except to those matters which are herein alleged on information and belief, and as to those matters, I believe them to be true. If called as a witness in this matter, I could and would testify competently to each and all of the statements made herein.

1.    Attached here as **Exhibits B, C, E**, are true and correct copies of documents I received from NBS Default Services LLC pursuant to a Rule 2004 examination ordered by this Court.

2.    **Exhibit B** is a copy of the high bid slip.

3.    **Exhibit C** is a copy of the notice of intent to bid.

4.    **Exhibit D** is a true and correct copy of the letter I sent to the foreclosure trustee notifying them of the bankruptcy case and the automatic stay and to stop the foreclosure auction.

-1-

5.      On April 15, 2025, I had a call with Michelle Mierzwa of Wright Finlay & Zak, counsel for NBS, and she told me that NBS and Shellpoint would not stop the foreclosure sale on account of the bankruptcy filing.

6.      **Exhibit E** is a copy of the email I received from the foreclosure trustee.

7.      **Exhibit F** is a true and correct copy of an email I received from Michelle Mierzwa.

8.      **Exhibit Q** is a true and correct copy of the emails received from Bonial and Associates.

9.      I have incurred a total of $6,596.00 in attorney's fees in this case, as set forth in the billing detail attached hereto as **Exhibit S**.

10.     As reflected in **Exhibit S**, my time entries include research and drafting related to correspondence with NBS Default Services, preparation of the Rule 2004 motion, and review of the documents produced pursuant to that examination.

11.     In the exercise of reasonable billing judgment, I am not seeking compensation for 1.8 hours of time spent consulting with co-counsel Andrew J. Christensen regarding this matter.

12.     Mr. Christensen and I have been careful not to duplicate work and have delegated tasks amongst ourselves so there is no unnecessary duplicate billing.

13.     In total, I have spent 13.6 hours on this case.

14.     My lodestar rate is $485.00 per hour, which is the rate customarily charged to my clients and has been previously approved by courts.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on the following date in Walnut Creek, California.

Date:  October 8, 2025

/s/ E. Vincent Wood
_____
E. Vincent Wood
Attorney for Melissa Wilkerson

-2-

Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorneys for Debtor Melissa Wilkerson

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of: | Bankruptcy Case:  25-40564 CN |
| Melissa Wilkerson | Chapter 13 |
| Debtor_____ | |

**Declaration of Melissa Wilkerson in Support of Motion for Damages for Violation of the Automatic Stay**

<u>Hearing REMOTE OR IN PERSON</u>
Date: July 11, 2025
Time: 11:00 a.m.
Place: Courtroom 215
1300 Clay Street, Oakland CA 94612
The Honorable Charles Novack

I, Melissa Wilkerson, am the Debtor in this case. The statements made herein are based upon my personal knowledge except to those matters which are herein alleged on information and belief, and as to those matters, I believe them to be true. If called as a witness in this matter, I could and would testify competently to each and all of the statements made herein.

1.      My grandfather Dean Freeman drove me to the bankruptcy court in Oakland April 1, 2025. We arrived at about 8:15 am. I arranged to meet Jidae there who would help me fill out my bankruptcy petition.  Jidae met me there at about 8:50 am and brought the blank forms.

2.      A true and correct copy of the text messages between myself and Jidae on April 1, 2025, are attached here as **Exhibit A**.

3. The bankruptcy court opened the doors a few minutes early at 8:57 am. I entered the lobby with Jidae and my grandfather and filled out the skeleton petition of about 8 pages over the next few minutes. I glanced at my phone at 9:05 am as I made the last signature and then I handed the petition to the bankruptcy court clerk at 9:06 am.

4. My uncle texted me at 9:11 am, which was after I gave the petition to the clerk.

5. I called the foreclosure trustee NBS on April 9, 2025, to tell them about the bankruptcy and ask about the bidders at the foreclosure auction.

I swear under the penalty of perjury that this is true and correct, and that this declaration was executed on the following date in Oakland California.

DATED: May 22, 2025

/s/ Melissa Wilkerson
Melissa Wilkerson

Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorneys for Debtor Melissa Wilkerson

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of:<br><br>Melissa Wilkerson<br><br>Debtor_____ | Bankruptcy Case:    25-40564 CN<br><br>Chapter 13<br><br>**Declaration of Dean Freeman in Support of Motion for Damages for Violation of the Automatic Stay**<br><br>Hearing REMOTE OR IN PERSON<br>Date: July 11, 2025<br>Time: 11:00 a.m.<br>Place: Courtroom 215<br>1300 Clay Street, Oakland CA 94612<br>The Honorable Charles Novack |

I, Dean Freeman, declare that the statements made herein are based upon my personal knowledge except to those matters which are herein alleged on information and belief, and as to those matters, I believe them to be true. If called as a witness in this matter, I could and would testify competently to each and all of the statements made herein.

1.    I drove my granddaughter Melissa Wilkerson to the bankruptcy court on April 1, 2025. We arrived about 8:15 am.

2.    The bankruptcy court lobby opened at about 8:57 am.  I watched Ms. Wilkerson fill out the bankruptcy forms over the next few minutes.  I saw Ms. Wilkerson hand her forms to the bankruptcy court clerk about five to eight minutes later, at about 9:06 am.

I swear under the penalty of perjury that this is true and correct, and that this declaration was executed on the following date in Oakland California.

DATED: May 22, 2025

/s/ Dean Freeman
Dean Freeman