# Exhibit A



# <u>Exhibit B</u>

# TRUSTEE CERTIFICATE OF SALE / RECEIPT

**Auction: E-28184**          **Auction id: GD6**          **Winning Bid: $499,799.40**          **Bidder No: GGL383**

**General Information:**
Sale Date: 2025-04-01          Sale Time: 09:14:00 AM   Trustee Sale Number: RUN 1 - 9462-6555 Trustee: Bonial & Associates, P.C.

**Property Address:**
Address: 1933 GRASS MOUNTAIN CRT          City: ANTIOCH          State: CA     Zip: 94531     County: Contra Costa

**Form 8300:**                              Yes                              No

**Owner Information**
Buyer/Owner 1: Good Neighbor Homes, LLC
Email: checks@wedgewood-inc.com          Cell Phone: 4242693450
Address: 2015 Manhattan Beach Boulevard Suite 100          City: Redondo Beach          State: CA     Zip: 90278
Deed Mailing Address:          Same as Owner          Same as Representative          Other: _____
Buyer Type:          Owner Occupied          Investor          Second Home

**Representative Information**
Name: Jared Delgadillo                    Cell Phone: 4242693450
Email: checks@wedgewood-inc.com
Relationship to Buyer:     Agent          Director/Officer          Manager/Member          Power of Attorney          Other

**Vesting - Record Title As Shown:** Good Neighbor Homes, LLC

**Receipt of Funds:**

| Check No. | Financial Institution | | Amount | |
|---|---|---|---|---|
| **Total Check Amount Received** | | $.00 | | |
| **No.** - | **Financial Institution** | | **Amount** | $499,799.40 |
| **Total Wire Amount Received** | | $499,799.40 | | |
| **Cash Received** | | $.00 | **Recording Fee** | $.00 |
| **Other Received** | | $.00 | | |
| | | | **Amount Required** | $499,799.40 |
| **Total Received** | | $499,799.40 | **Refund Amount** | $.00 |

**Refund Payable To:**
Name: Good Neighbor Homes, LLC                    Phone: 4242693450
Address: 2015 Manhattan Beach Boulevard Suite 100          City: Redondo Beach
State: CA                              Zip: 90278

The sale may be rescinded due to requirements set out in both state and federal laws or regulations, including anti-money laundering, anti-terrorism, anti-drug trafficking and economic sanctions laws and regulations. Federal law requires all financial institutions to obtain, verify, and record information that identifies parties to transactions. This means that when your bid is provisionally accepted, you may be asked for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents to comply with such rules and regulations. Your bid is subject to verification of your identity and confirmation of compliance with all applicable laws and regulations. By singing below, Buyer's or Buyer's Representative's signature agree and confirm that (i) all of the above information is true and correct, (ii) the sale was conducted in accordance with all the terms, conditions, and disclaimers applicable to the sale, and (iii) a copy of this disclosure and the sale terms and conditions was received and reviewed. IMPORTANT NOTE: Buyer or Buyer's Representative understands and agrees the sale of this property is on an "AS IS, WHERE IS" basis, with no warranties express or implied. At the time and date set forth above, the above-referenced property was sold to the above-named Buyer for the amount shown above being the highest bid for cash or cash equivalent. Buyer is required to tender payment as required in satisfaction of the amount necessary to purchase.

Signature of Buyer/Representative: _____ Date: _____

Auctioneer Printed Name: <u>Michele Lee</u>  Signature: _____ Date: <u>2025-04-01</u>
Auditor Printed Name: <u>Miranda Tarry</u>  Signature: _____ Date: <u>2025-04-01</u>

| Auction Event | E-28184 | Address | 1933 GRASS MOUNTAIN CRT |
| Auction Id | GD6 | Date | 04/01/2025 |
| State | CA | County | Contra Costa |

| BID | TOKEN_BIDDER | DATE AND TIME |
| --- | --- | --- |
| $499,799.40 | GGL383 | 04/01/2025 09:13:31 |
| $499,699.40 | Opening Bid | 04/01/2025 09:12:29 |

# Exhibit C

**Affidavit of Compliance with Civ. Code § 2924m**

TS No.: _9462-6555_  Property Address: _1933 GRASS MOUNTAIN CT._

The undersigned hereby represents and declares under the penalty of perjury under the laws of the State of California that:

[x] **I am a "prospective owner occupant" as defined in Civ. Code § 2924m(a)(1). As such, all of the following are true:**
I am a natural person. I will occupy the above referenced property as my primary residence within 60 days of the trustee's deed being recorded. I will maintain my occupancy for at least one year. I am not the mortgagor or trustor. I am not the child, spouse or parent of the mortgagor or trustor. I am not the grantor of a living trust that was named in the title to the property when the notice of default was recorded. I am not an employee, officer, or member of the mortgagor or trustor. I am not a person with an ownership interest in the mortgagor, unless the mortgagor is a publicly traded company. I am not acting as the agent of any other person or in purchasing the real property.

[ ] **I am an "eligible tenant buyer" as defined in Civ. Code § 2924m(a)(2). As such, all of the following were true at the time of the trustee's sale:**
I am a natural person. At the time of the trustee's sale, I occupied the real property as my primary residence. At the time of the trustee's sale, I was occupying the real property under a rental or lease agreement entered into as the result of an arm's length transaction with the mortgagor or trustor, or with the mortgagor or trustor's predecessor in interest, on a date prior to the recording of the notice of default against the property. I have attached evidence demonstrating the existence of this tenancy, including: a copy of the dated and signed rental or lease agreement or, if a copy of the dated and signed rental or lease agreement is not available, then one of the following: Evidence of rent payments made for the property by the person asserting that they are an eligible tenant buyer for the six months prior to the recording of the notice of default, or copies of utility bills for the property payable by the person asserting that they are an eligible tenant buyer for the six months prior to the recording of the notice of default. At the time of the trustee's sale, I was not the mortgagor or trustor, or the child, spouse or parent of the mortgagor or trustor. At the time of the trustee's sale, I was not acting as the agent of any other person or entity in purchasing the real property. I have not filed a petition under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code from the date of the trustee's sale of the property and will not file a petition under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code through the 45th day after the trustee's sale, or the next business day following the 45th day if the 45th day is a weekend or holiday.

[ ] **The undersigned is the representative of all of the "eligible tenant buyers" in accordance with Civ. Code § 2924m(c)(3). As such, all of the following are true:**
All of the eligible tenant buyers are natural persons. At the time of the trustee's sale, all of the eligible tenant buyers occupied the real property as their primary residence. At the time of the trustee's sale, all of the eligible tenant buyers were occupying the real property under a rental or lease agreement entered into as the result of an arm's length transaction with the mortgagor or trustor, or with the mortgagor or trustor's predecessor in interest, on a date prior to the recording of the notice of default against the property. As the representative of all of the eligible tenant buyers, I have attached evidence demonstrating the existence of this tenancy, including: a copy of the dated and signed rental or lease agreement or, if a copy of the dated and signed rental or lease agreement is not available, then one of the following: evidence of rent payments made for the property by the persons asserting that they are all of the eligible tenant buyers for the six months prior to the recording of the notice of default, or copies of utility bills for the property payable by the persons asserting that they are all of the eligible tenant buyers for the six months prior to the recording of the notice of default. At the time of the trustee's sale, none of the eligible tenant buyers were the mortgagor or trustor, or the child, spouse or parent of the mortgagor or trustor. At the time of the trustee's sale, none of the eligible tenant buyers were acting as the agent of any other person or entity in purchasing the real property. None of the eligible tenant buyers have filed a petition under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code from the date of the trustee's sale of the property and none of the eligible tenant buyers will file a petition under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code through the 45th day after the trustee's sale, or the next business day following the 45th day if the 45th day is a weekend or holiday.

[ ] The undersigned is a nonprofit association, nonprofit corporation, or cooperative corporation in which an "eligible tenant buyer" is a voting member or director. Affiant hereby affirms the duty to comply with subdivision (a) of California Civil Code Section 2924o for the benefit of tenants occupying the property.

[ ] The undersigned is an eligible nonprofit corporation with all of the following attributes: It has a determination letter from the Internal Revenue Service affirming its tax-exempt status pursuant to Section 501(c)(3) of the Internal Revenue Code and is not a private foundation as that term is defined in Section 509 of the Internal Revenue Code. It has its principal place of business in California. The primary residences of all board members are located in California. One of its primary activities is the development and preservation of affordable rental or homeownership housing in California. It is registered and in good standing with the Attorney General's Registry of Charitable Trusts, pursuant to the Supervision of Trustees and Fundraisers for Charitable Purposes Act (Article 7 (commencing with Section 12580) of Chapter 6 of Part 2 of Division 3 of Title 2 of the Government Code). Affiant hereby affirms the duty to comply with subdivision (a) of California Civil Code Section 2924o for the benefit of tenants occupying the property.

[ ] The undersigned is a limited liability company wholly owned by either a nonprofit association, nonprofit corporation, or cooperative corporation in which an eligible tenant buyer is a voting member or director, or an eligible nonprofit corporation with all of the following attributes:
It has a determination letter from the Internal Revenue Service affirming its tax-exempt status pursuant to Section 501(c)(3) of the Internal Revenue Code and is not a private foundation as that term is defined in Section 509 of the Internal Revenue Code. It has its principal place of business in California. The primary residences of all board members are located in California. One of its primary activities is the development and preservation of affordable rental or homeownership housing in California. It is registered and in good standing with the Attorney General's Registry of Charitable Trusts, pursuant to the Supervision of Trustees and Fundraisers for Charitable Purposes Act (Article 7 (commencing with Section 12580) of Chapter 6 of Part 2 of Division 3 of Title 2 of the Government Code). Affiant hereby affirms the duty to comply with subdivision (a) of California Civil Code Section 2924o for the benefit of tenants occupying the property.

[ ] The undersigned is a community land trust, as defined in clause (ii) of subparagraph (C) or paragraph (11) of subdivision (a) of Section 402.1 of the Revenue and Taxation Code. Affiant hereby affirms the duty to comply with subdivision (a) of California Civil Code Section 2924o for the benefit of tenants occupying the property.

[ ] The undersigned is a limited-equity housing cooperative, as defined in Civ. Code Section 817. Affiant hereby affirms the duty to comply with subdivision (a) of California Civil Code Section 2924o for the benefit of tenants occupying the property.

[ ] The undersigned is the state, the Regents of the University of California, a county, city district, public authority, or public agency, or any other political subdivision or public corporation in the state. Affiant hereby affirms the duty to comply with subdivision (a) of California Civil Code Section 2924o for the benefit of tenants occupying the property.

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated and signed this _04_ day of _APRIL_ 20_25_ at _SACRAMENTO_ California.

| | |
|---|---|
| Signature: | |
| Name and title of signer: | CARL DEXTER |
| Name of entity (if applicable): | |
| Address of signer: | P.O. Box 15371 SACRAMENTO, CA 95851 |
| Telephone number of signer: | 916.272.3420 |

# Exhibit D



# SHEPHERD & WOOD LLP

### ATTORNEYS AT LAW

2950 Buskirk Ave Suite 300, Walnut Creek, CA 94597
Phone 925.278-6680 | Fax 925.955.1655 |   https://www.shepwoodlaw.com

# FAX

April 11, 2025

| TO: | NBS Default Services, LLC<br>Bonial and Associates<br>Shellpoint Mortgage Servicing | FROM: | Nicole Zorrilla |
|---|---|---|---|
| FAX: | 972-643-6698<br>972-643-6699<br>866-467-1184 | PHONE: | |
| RE: | BK Case #25-40564 – Wilkerson – NTS 9462-6555 | | |

XXX☐ Urgent          XXX☐ For Review          ☐ Please Reply

COMMENTS:

To Whom it May Concern:

Please see the attached for your immediate attention.

Thank you,

**Nicole Zorrilla**
Shepherd & Wood LLP
2950 Buskirk Ave #300, Walnut Creek, CA 94597
Main: (925) 278-6680
Direct/MMS/Text/iMessage: (925) 542-8020**
Fax: (925) 955-1655
Email: nicole@shepwoodlaw.com



2950 Buskirk Ave., Suite 300, Walnut Creek, CA 94597
Phone 925.278-6680 | Fax 925.955.1655 | www.shepwoodlaw.com

April 11, 2025

National Bankruptcy Services, LLC
Attn: Legal Department
14841 Dallas Parkway, Suite 300
Dallas, TX 75254

Bonial and Associates
Attn: Bankruptcy Department
3160 Crow Canyon Place, Suite 215
San Ramon, CA 94583

Agent for Service for Process
(for National Bankruptcy Services, LLC)
1505 Corporation
CT Corporation System
Amanda Garcia
330 N Brand Blvd,
Glendale, CA 91203

Newrez LLC dba Shellpoint Mortgage Servicing
Attn: Legal Department
PO Box 10826
Greenville, SC 29603-0826

> Re:     Notice of Bankruptcy Case Filing
>         Trustee Sale No: 9462-6555
>         1933 Grass Mountain Court Antioch, CA 94531
>         Borrower(s): Steven Wilkerson and Lisa Wilkerson
>         Owner: Melissa Wilkerson

This is to notify NBS Default Services, LLC and Shellpoint Mortgage Servicing that Melissa Marie Wilkerson filed Bankruptcy in the Northern District of California on April 1, 2025, at 9:19 am case number 25-40564. The foreclosure sale must be stopped and cannot continue on account of the bankruptcy case and C.C.C. §2924m. The notice of bankruptcy case filing is attached.

**Trustee Sale Number:** 9462-6555

**Property Address:** 1933 Grass Mountain Court Antioch, CA 94531

The initial auction was held on April 1, 2025.  The bankruptcy was filed on April 1, 2025, Pursuant to the California Civil Code §2924m the foreclosure sale is not deemed final until 15 days later on April 16, 2025, at 5:00 pm, and now it cannot be made final because of the bankruptcy case filing and the automatic stay.  Attempts to complete the sale transaction will be void automatically for violating the automatic stay because the bankruptcy case was filed before the foreclosure sale could be deemed final under the law.  *In re Hager 651 B.R. 873 (2023)*.  A copy of this case law is attached here.

Please respond to this letter at your earliest convenience to confirm that you will not complete the sale. If you take any steps to complete the sale we will seek sanctions for violation of the stay.

If a trustee's deed upon sale has been issued it must be rescinded and the sale must be undone.

Sincerely,

*E. Vincent Wood*

E. Vincent Wood
Shepherd & Wood LLP

Encl.  Notice of Bankruptcy Case Filing
In re Hager 651 B.R. 873 (2023)
Grant Deed

United States Bankruptcy Court
California Northern Bankruptcy Court

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 13 of the
United States Bankruptcy Code, entered on 04/01/2025 at 09:36 AM and filed on
04/01/2025.

**Melissa Marie Wilkerson**
1933 Grass Mountain Ct
Antioch, CA 94531
SSN / ITIN: xxx-xx-9068

| The debtor's attorney is: | The bankruptcy trustee is: |
|---|---|
| **E. Vincent Wood** | **Martha G. Bronitsky** |
| Shepherd & Wood LLP | P.O. Box 5004 |
| 2950 Buskirk Ave. | Hayward, CA 94540 |
| Ste 300 | (510) 266-5580 |
| Walnut Creek, CA 94597 | |
| 925-278-6680 | |

The case was assigned case number 25-40564 to Judge Charles Novack.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the
debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the
court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be
penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our *Internet* home page
https://ecf.canb.uscourts.gov/ or at the Clerk's Office, 1300 Clay Street, Suite 300, Oakland, CA 94612.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

**Edward J. Emmons**
**Clerk, U.S. Bankruptcy Court**

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/11/2025 11:51:16 | | | |
| **PACER Login:** | evshepwood | **Client Code:** | |
| **Description:** | Notice of Filing | **Search Criteria:** | 25-40564 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

 Neutral

As of: April 9, 2025 10:47 PM Z

## *In re Hager*

United States Bankruptcy Court for the Eastern District of California, Fresno Division

May 25, 2023, Decided

Case No. 22-12056-B-13

**Reporter**

651 B.R. 873 *; 2023 Bankr. LEXIS 1385 **; 121 Fed. R. Evid. Serv. (Callaghan) 2067; 2023 WL 4174065

In re SHANNON HAGER, Debtor.

**Subsequent History:** As Amended June 26, 2023.

**Prior History:** DCN PK-2.

# Case Summary

**Overview**

HOLDINGS: [1]-The movant's motion to annul the automatic stay under *11 U.S.C.S. § 362(d)(1)* to validate his purchase of real property at a foreclosure sale and to allow him to proceed with his unlawful detainer action was denied because the sale became final when the automatic stay was in effect and *Cal. Civ. Code § 2924h(c)* could not be invoked to finalize the sale to the pre-petition date of the sale because the Trustee's Deed was recorded before the expiration of the 45-day bid period.

**Outcome**
Motion denied.

**Counsel:** **[**1]** Patrick Kavanagh, LAW OFFICES OF PATRICK KAVANAGH, Bakersfield, CA, for Ian McGilvray, Movant.

Andrew J. Christensen, LAW OFFICES OF ANDREW J. CHRISTENSEN, P.C., Oakland, CA, & Robert S. Williams, WILLIAMS & WILLIAMS, INC., Bakersfield CA, for Shannon Hager, Debtor.

**Judges:** René Lastreto II, United States Bankruptcy Judge.

**Opinion by:** René Lastreto II

# Opinion

**[*877] AMENDED MEMORANDUM RULING ON MOTION TO ANNUL STAY**

RENÉ LASTRETO II, Bankruptcy Judge:

California's nonjudicial foreclosure system is designed to provide the lender-beneficiary with an ine **[*878]** xpensive and efficient remedy against a defaulting borrower, while protecting the borrower from wrongful loss of the property and ensuring that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser. *Moeller v. Lien, 25 Cal. App. 4th 822, 830, 30 Cal. Rptr. 2d 777 (1994)*.

651 B.R. 873, *878; 2023 Bankr. LEXIS 1385, **1

My, how things change.

Ian McGilvray ("McGilvray") moved to annul the automatic stay under *11 U.S.C. § 362(d)(1)* to validate his purchase of real property located at 2313 Sycamore Lane, Pine Mountain Club, CA 93222 ("Property") at a foreclosure sale, and to allow him to proceed with his unlawful detainer action in Kern County Superior Court, entitled *Giuliana Vista GP v. Shannon Hager, et al.*, case no. BCL-23-010025 ("Unlawful Detainer Action").[1] Dckt. 44. McGilvray also **[**2]** requested waiver of the 14-day stay of *Fed. R. Bankr. P. ("Rule") 4001(a)(3)*. *Id.*

Shannon Hager ("Debtor") timely opposed and McGilvray replied. Dckt. 58-59, 61-64.

At the hearing on May 17, 2023, the parties presented oral argument and the court took the matter under submission. Dckt. 65. Under *11 U.S.C. § 362(e)* and for good cause, the court ordered continuation of the automatic stay through July 14, 2023, unless terminated by further order of the court. *Id.*

Applying the amended California foreclosure statutes and weighing the factors at play when considering a request to annul the stay, the court finds annulment inappropriate and DENIES the motion.

I. FACTS

In early November 2022, Property was Debtor Shannon Hager's residence. She lived there for 24 years. Dckt. 62. Her sister and her 75-year-old mother with declining health also reside there. *Id.* Property, which is in one of the mountain communities in Tejon Pass in southwestern Kern County, was encumbered by a Deed of Trust in favor of Flagstar Bank ("Flagstar"). Due to the COVID-19 outbreak, Ms. Hager's employment and that of her sister and daughter, were interrupted. *Id.* Earlier, she had difficulty making payments to Flagstar. *Id.* So, Flagstar agreed to forbear collection of some payments. **[**3]** But due to Ms. Hager's employment situation, she could not qualify for a loan modification. *Id.* Flagstar rejected Ms. Hager's tender of $10,000 six months earlier and was foreclosing.

McGilvray has been in the real estate business for years and has purchased properties at foreclosure sales before. Dckt. 48. He is also familiar with the "multiple steps" foreclosing parties have to take to foreclose on certain properties including allowing for sales to "non-profits." *Id.*

McGilvray purchased Property at the nonjudicial foreclosure sale for $164,512.71 on November 7, 2022. Dckt 48. Multiple parties submitted notices of intent to bid on the Property from November 10 to 21, 2022, but it is undisputed that no bids were received. *Ex. A*, Dckt. 63. The foreclosure trustee, Prober & Rafael ("Prober"), executed the *Trustee's Deed Upon Sale* ("Trustee's Deed") on November 23, 2022 and sent it to McGilvray. *Ex. A*, Dckt. 49.

On December 1, 2022, 21 days after the foreclosure sale, Debtor filed chapter 13 bankruptcy. Dckt. 1. She says she did not know of the foreclosure sale until someone claiming to be the owner of Property called her the day after Thanksgiving, **[*879]** 2022. Dckt. 62. The day after Debtor filed **[**4]** her bankruptcy case, McGilvray submitted the Trustee's Deed to the Kern County recorder's office who recorded it that day. *Ex. A*, Dckt. 49. McGilvray claims he had no knowledge of the bankruptcy at that time. Dckt. 48. McGilvray initiated the Unlawful Detainer Action about one month later. *Ex. B*, Dckt. 29. According to McGilvray's attorney, the Unlawful Detainer Action has been dismissed.

Debtor valued Property in her schedules at $426,600 and listed Flagstar as the mortgagee with a secured claim of $177,863.79. Dckt. 18. Flagstar's treatment under the proposed plan is to be paid as though the foreclosure sale did not occur. Dckt. 17. Notably, neither McGilvray nor Giuliana Vista were listed as creditors in the schedules or the master address list. Dckt. 1, 3, 18.

On March 1, 2023, McGilvray filed a motion for relief from the automatic stay under *11 U.S.C. § 362(d)(1)* and *(d)(2)*. Dckt. 27; PK-1. The court granted the motion without retroactive relief because it was not requested. Dckt.

---

[1] McGilvray is one of the partners in Giuliana Vista ("Giuliana Vista"). Dckt. 32.

651 B.R. 873, *879; 2023 Bankr. LEXIS 1385, **4

37. The court directed McGilvray to prepare the order, which was to be approved by Debtor's counsel, but an order is not yet submitted.

McGilvray now seeks to annul the stay on two grounds. Dckt. 44. First, he contends California **[**5]** law allows the post-petition recording of the Trustee's Deed to relate back to the date of the sale. Since notices of intent to bid were submitted, McGilvray contends the Trustee's Deed will be deemed perfected as of the date of the sale under *Cal. Civ. Code § 2924h(c)* if it is recorded within 60 days of the sale, as it was here. Dckt. 46. Second, McGilvray contends the *Fjeldsted* balancing test supports annulling the automatic stay. *Id.*; *see* *Fjeldsted v. Lien (In re Fjeldsted), 293 B.R. 12, 23 (B.A.P. 9th Cir. 2003)*.

Debtor opposes, first, because the foreclosure sale was void as a matter of law for violating the automatic stay. Under California law, Debtor argues the trustee's sale was not final before the bankruptcy was filed. Dckt. 61. Second, Debtor contends the *Fjeldsted* factors do not support annulling the stay. *Id.* Neither party requested discovery. Both parties consented on the record to the court taking this matter under submission and ruling based on the existing record.

## II. JURISDICTION

The United States District Court for the Eastern District of California has jurisdiction of this civil proceeding by virtue of *28 U.S.C. § 1334(b)* because it arises under title 11 and in a case under title 11 of the United States Code. The District Court has referred this matter to this court under *28 U.S.C. § 157(a)*. This is a "core" proceeding **[**6]** under *28 U.S.C. § 157(b)(2)(G)*.

## III. ISSUES

1. Whether the post-petition finalizing of a pre-petition foreclosure sale subject to overbid under *Cal. Civ. Code ("CC") § **2924m**(c)* violated the automatic stay of *11 U.S.C. § 362(a)*.

2. If the automatic stay does apply, whether to annul the automatic stay under applicable law.

## IV. DISCUSSION

### A. Important General Concepts

A bankruptcy petition operates as a stay applicable to all parties and prevents, among other things, any act to obtain possession of property of the estate. *11 U.S.C. § 362(a)(3)*. The stay does not apply to any act to perfect an interest in property to the extent that the trustee's rights are subject to perfection under *11 U.S.C. § 546(b)*. That section permits an entity who acquires **[*880]** rights to property pre-petition to perfect its interest in property post-petition. *In re Stork, 212 B.R. 970, 971 (Bankr. N.D. Cal. 1997)*.

The Debtor bears the ultimate burden of proving that the request for retroactive relief from the stay should be denied. *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.), 129 F.3d 1052, 1055 (9th Cir. 1997)*.

State law determines the property rights of the parties, and whether those rights are obtained pre-or post-petition. *Butner v. United States, 440 U.S. 48, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979)*. We must "look to state law to determine property interests of the debtor." *Eden Place LLC v. Perl (In re Perl), 811 F.3d 1120, 1127 (9th Cir. 2016)*. That said, filing bankruptcy cannot give a debtor a greater interest in an asset than that which she owned pre-bankruptcy. *Gendreau v. Gendreau (In re Gendreau), 122 F.3d 815, 819 (9th Cir. 1997)*.

In interpreting California law, *CC § 4* requires **[**7]** the Civil Code "to be liberally construed with view to effect its objects and to promote justice." *Blevins v. Palmer, 172 Cal. App. 2d 324, 327, 342 P.2d 356, 358 (1959)* ("[P]rovisions of the Civil Code dealing with transfers of real property are, as required by *section 4*, to be 'liberally construed with a view to effect its objects.'") (citations omitted). In the case of substantially similar existing statutes, the Civil Code shall be construed as a continuation, rather than as a new enactment. *CC § 5*.

651 B.R. 873, *880; 2023 Bankr. LEXIS 1385, **7

Words and phrases are construed according to their context and the approved usage, but technical words and phrases are to be construed according to peculiar and appropriate meaning or definition. _CC § 13_. _Los Angeles Cnty. v. Frisbie, 19 Cal. 2d 634, 639, 122 P.2d 526, 529 (1942)_ ("While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious design of the law should not be sacrificed to a literal interpretation of such language."), citing _In re Haines, 195 Cal. 605, 612, 234 P. 883, 885-86 (1925)_.

B. Prior California law

California substantially modified its foreclosure scheme in 2020, effective January 1, 2021 through January 1, 2026.[2] Since then, it has been further amended and the sunset has been extended to January 1, 2031.[3]

Under former California law in effect through the end of 2020, the analysis here would have been relatively **[**8]** straightforward. A foreclosure sale occurred before the bankruptcy was filed. The sale was deemed final on the date of the foreclosure sale. _CC § 2924h(c) (2020)_.[4] A timely recorded trustee's deed post-petition would have related back to the date of the sale. _Id._ Debtor would have possessed only bare legal title to the Property on the petition date and Debtor's equitable title would have been extinguished whether or not a trustee's deed had been recorded before the bankruptcy. Stay relief would not have been required to record the trustee's deed under _§ 362(b)(3)_ as a post-petition perfection **[*881]** of the pre-petition interest in Property. The sale would not be avoidable because the trustee's rights to avoid the transfer under _11 U.S.C. §§ 544(a)_ or _549_ are subordinate to perfection of pre-petition interests under _11 U.S.C. § 546(b)_.[5]

Prior to January 1, 2021, _CC § 2924h(c)_ controlled finality of the sale and perfection. That provision provided that a trustee's sale "shall be deemed final upon the acceptance of the last and highest bid and shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 15 calendar days after the sale . . ." _CC § 2924h(c)_ (2020).

Bankruptcy courts quickly established the "ground rules" for invoking the **[**9]** previous version of _CC § 2924h(c)_. A foreclosure sale commenced after a bankruptcy filing was void notwithstanding former _CC § 2924h(c)_. _Blatnick v. Sanders (In re Sanders), 198 B.R. 326, 327-28 (Bankr. S.D. Cal. 1996)_ ("_[CC] § 2924h(c)_ properly may only be invoked, if at all, where there is a valid foreclosure sale which occurs pre-petition.").[6] If "the gavel falls" at the foreclosure sale against the debtors pre-petition, the sale is finalized and the debtors possess only bare legal title, which "is of no value to the estate." _Davisson v. Engles (In re Engles), 193 B.R. 23, 25, 27-28 (Bankr. S.D. Cal. 1996)_ (citations omitted). If the trustee's deed resulting from a pre-petition foreclosure sale was recorded within the then-applicable 15-days after the sale, the recordation of the trustee's deed did not violate the automatic stay under _11 U.S.C. § 362 (b)(3)_. _In re Garner, 208 B.R. 698, 701 (Bankr. N.D. Cal. 1997)_;[7] _Bebensee-Wong v. Fannie Mae, 248 B.R. 820, 823 (B.A.P. 9th Cir. 2000)_ (holding the automatic stay is not violated with a timely post-petition recording of a trustee's deed upon a pre-petition sale); _cf. In re Stork, 212 B.R. at 972_ (although the post-petition

---

[2] Senate Bill ("SB") 1079, Cal. 2019-20 Reg. Sess. (eff. Jan. 1, 2021)

[3] Assembly Bill ("AB") 175, Cal. 2021-22 Reg. Sess. (eff. Jan. 1, 2022); AB 1837, Cal. 2022-23 Reg. Sess. (eff. Jan. 1, 2023). At the time this case was filed and the salient facts here occurred, the relevant California Civil Code in effect from Jan. 1, 2022 through Dec. 31, 2022 was applicable (AB 175). Unless otherwise indicated, references to the Civil Code are to this 2022 version.

[4] SB 1277, Cal. 2003-04 Reg. Sess. (eff. Jan. 1 2005—Dec. 31, 2020).

[5] This is a chapter 13 case. The debtor's lingering "rights" post-petition would be defined by _§§ 1302_, _1303_, and _1306(b)_.

[6] The _Sanders_ court annulled the automatic stay because of the debtor's bad faith. _Sanders, 198 B.R. at 329-30_.

[7] The _Garner_ court noted if the recording of the trustee's deed occurred more than 15 days after the foreclosure sale, the automatic stay would be violated. _Garner, 208 B.R. at 701_.

651 B.R. 873, *881; 2023 Bankr. LEXIS 1385, **9

recording of pre-petition trustee's deed outside of then-15-day relation back window violated the stay, annulment was appropriate because purchaser qualified for protection under _11 U.S.C. § 549(c)_).

This approach has been applied on numerous occasions. _Turturici v. Nat'l Mortg. Servicing, LP, No. CIV-S-10-2853 KJM, 2011 U.S. Dist. LEXIS 109242, 2011 WL 4480169 (E.D. Cal. Sep. 24, 2011)_; _Edwards v. Wells Fargo Bank, N.A. (In re Edwards), 454 B.R. 100 (B.A.P. 9th Cir. 2011)_; _In re Lucore, No. SC-12-1604-JuBaPa, 2013 Bankr. LEXIS 2498, 2013 WL 2367800 (B.A.P. 9th Cir. May 30, 2013)_; _In re Shirazi, 2013 U.S. Dist. LEXIS 85654, 2013 WL 3070996 (Bankr. C.D. Cal. June 18, 2013)_; _In re Richter, 525 B.R. 735 (Bankr. C.D. Cal. 2015)_; _In re Svacina, 618 B.R. 852 (Bankr. C.D. Cal. 2020)_.

This relative stasis was significantly upset in 2020.

C. Current California law

When California amended its foreclosure scheme in 2020, effective **[\*\*10]** January 1, 2021, certain contingent overbid rights were given to any "prospective owner-occupant," "eligible tenant buyer," and "eligible bidder."[8] The statutory scheme for determining sale finality and overbid procedure, if applicable, was expanded by enacting _CC § **2924m**(c)_. **[\*882]** _CC § 2924h(c)_ was also amended to extend the relation back period, first to 18 days, and then to 21 days beginning in 2022.[9] This relation back period can be further extended under certain circumstances.

Under _CC § **2924m**(c)_, if a foreclosure sale of a real property containing 1-4 residential units is completed and the prevailing bidder is a prospective owner-occupant as defined in _CC § **2924m**(a)(1)_, then the sale is final, and that person will immediately take title to the property. _CC § **2924m**(c)(1)_. If the prospective owner-occupant records their trustee's deed within 21 days of the sale, then the sale will be deemed final on the foreclosure sale date, and the trustee's deed perfected as of 8 a.m. on the actual date of the sale. _CC § 2924h(c)_.

If the prevailing bidder is not a prospective owner-occupant, then a 15-day window opens after the sale. While the window is open, eligible third parties may submit bids or notices of intent to bid, and the sale will not be deemed final until the earliest **[\*\*11]** of one of the conditions specified in _CC § **2924m**(c)(1) through (c)(4)_ are satisfied.

Within 48 hours of the sale, the foreclosing trustee is required to post facts on the internet website set forth in the notice of sale: (1) the date on which the foreclosure sale took place; (2) the amount of the last and highest bid at the sale; and (3) an address at which the trustee can receive documents sent via U.S. mail and overnight delivery. _CC § **2924m**(d)(1)_.[10] The purpose of this posting is to inform prospective eligible bidders of the sale and to provide them with an opportunity to bid or submit a notice of intent to bid.[11]

If no bids or notices of intent to bid are received by the foreclosing trustee by the 15th day, then the window closes. The sale is final on the 15th day after the foreclosure sale. _CC § **2924m**(c)(2)_. If the trustee's deed is recorded by the 21st day after the sale, then the sale will be deemed final and perfected as of 8:00 a.m. on the date of the sale. _CC § 2924h(c)_.

If, however, a representative of all eligible tenant buyers submits a bid that (i) matches the foreclosure sale price, (ii) is sent to the trustee by certified mail, overnight delivery, or another method allowing confirmation of the delivery

---

[8] SB 1079 (2020).

[9] AB 175 (2021).

[10] This provision has been re-lettered to _CC § **2924m**(e)(1)_ as of Jan. 1, 2023. AB 1837 (2022).

[11] An "eligible bidder" is broadly defined to include eligible tenant buyers, prospective owner-occupants, and certain types of nonprofit associations, nonprofit corporations, cooperative corporations, limited partnerships, limited liability companies, community land trusts, and limited-equity housing cooperatives, as well as the state, the Regents of the University of California, a county, city, district, public authority, or public agency, and any other political subdivision or public corporation in the state. _CC § **2924m**(a)(3)_.

651 B.R. 873, *882; 2023 Bankr. LEXIS 1385, **11

date, and (iii) such bid is received by the **[**12]** trustee before 5:00 p.m. on the 15th day after the foreclosure sale (while the window is open), then the sale is immediately deemed final and the eligible tenant buyers will take title to the property. *CC § 2924m(c)(3)*. This provision essentially operates as a right of first refusal for tenants. Under this scenario, if the eligible tenant buyers' trustee's deed is recorded within 60 days, then the sale will be deemed final on the date the bid is submitted and deemed perfected as of 8:00 a.m. on the date of the foreclosure sale. *CC § 2924h(c)*.

Alternatively, during the same 15-day window, any current tenant in the property and all other eligible bidders can submit a higher offer than the foreclosure sale **[*883]** price or a non-binding notice of intent to bid. *CC § 2924m(c)(2)*. Should either of these occur, an additional window of time opens lasting until the 45th day after the foreclosure sale. *Id.*

While this 45-day window is open, a representative of all current tenants can match the sale price to have it immediately deemed final. *CC § 2924m(c)(3)(A)*. The tenant will immediately take title to the property. If the deed is recorded within 60 days of the foreclosure sale, then the sale will be deemed perfected as of 8:00 a.m. on the date of the foreclosure **[**13]** sale. *CC §§ 2924m(c)(3)(B)*, *2924h(c)*.

On the other hand, if an eligible bidder who timely provided a notice of intent to bid to the trustee in the first 15-day window submits a bid that exceeds the foreclosure sale price within the 45-day window, the sale is deemed final at the conclusion of the 45-day window. *CC § 2924m(c)(4)(B)*. The eligible bidder with the highest offer will take title to the property. Relation back under *CC § 2924h(c)* is not in the statute and is not applicable. More on this later.

Lastly, if, by the 45th day at 5:00 p.m., no eligible bidders or eligible tenant buyers have submitted bids pursuant to their timely notices of intent to bid, then the sale will be final at the end of the 45th day, and the last, highest bidder at the initial foreclosure sale auction will take title to the property. *CC § 2924m(c)(4)(A)*.

D. <u>The Sale Finalized Post-Petition and Violated the Stay</u>

The last scenario describes this dispute. The foreclosure sale occurred on November 7, 2022. *Ex. A*, Dckt. 49. Since McGilvray is an investor and not a prospective owner-occupant, a 15-day period to overbid opened from the date of the sale.

Several eligible bidders submitted notices of intent to bid during the 15-day window. *Ex. A*, Dckt. 63. These notices of intent to bid **[**14]** opened a 45-day window running from the date of the sale in which these eligible bidders could submit a bid exceeding the foreclosure sale price and comply with other requirements. No bids were received.[12] Thus, the sale became final on the 45th day at 5 p.m.: December 22, 2022. By then, Debtor had already filed bankruptcy. The automatic stay was in effect. Finalizing the sale on or after that date violates the stay. Any violation of the stay is void and without effect. *Sanders, 198 B.R. at 328* (citing *In re Stringer, 847 F.2d 549 (9th Cir. 1988)*; *In re Schwartz, 954 F.2d 569 (9th Cir. 1992)*; *In re Krueger, 88 B.R. 238, 241 (B.A.P. 9th Cir. 1988)*). Therefore, the sale is void for violating the automatic stay.

McGilvray recorded the Trustee's Deed on December 2, 2022, which is 20 days before the expiration of the 45-day window.[13] At that time, such perfection could not be accomplished because the sale had not yet been "deemed final." *CC § 2924m(c)*, *(c)(4)*.

Notwithstanding *CC § 2924m(c)(4)*, McGilvray argues he qualifies under *CC § 2924h(c)* to have the sale deemed final upon the foreclosing trustee's acceptance of McGilvray's last and highest bid, and to have his interest deemed perfected as of 8 a.m. **[*884]** on the actual date of the sale because the Trustee's Deed was recorded within 60 days. Dckt. 46.

---

[12] Debtor's counsel argues that bids may have been received if McGilvray had not prematurely recorded the Trustee's Deed 25 days after the sale, and instead allowed the full 45-day period to run its course. That is speculative on this record.

[13] It is also 25 days after the foreclosure sale, which is outside the default 21-day "relation back" period under *CC § 2924h(c)*.

651 B.R. 873, *884; 2023 Bankr. LEXIS 1385, **14

In response, Debtor emphasizes the distinction between a sale being "deemed final" and "deemed perfected." [**15]  Dckt. 61. Debtor contends that *CC § 2924m(c)* prevails over *§ 2924h(c)* as to when the sale is deemed final. Debtor also asserts that the 60-day relation back period for perfection applies only if there is a notice of intent to bid submitted by an eligible tenant buyer. Since the 60-day relation back period did not apply, Debtor maintains that McGilvray only had a 21-day period under *CC § 2924h(c)* to have the perfection relate back to the date of the sale.

McGilvray replies that Debtor's interpretation is a radical departure from the pre-existing law and a departure from the cases that have interpreted the law. Dckt. 59. Although the court agrees that *CC § 2924m* is a radical departure from the prior precedent, the legislature has changed when a foreclosure sale is deemed final for affected properties.

The distinction between finality and perfection is important. "Deemed final" means the point in time in which the foreclosure sale is considered completed and equitable title transfers from the mortgagor/homeowner to the buyer, and when a sale is "deemed final" is controlled by *CC §§ 2924m(c)* and *2924h(c)*. Prior to the enactment of *§ 2924m(c)*, foreclosure sales were "deemed final" at the time of the sale under *CC § 2924h(c)*. *Engles, 193 B.R. at 26*; *Sanders, 198 B.R. at 327*; *Garner, 208 B.R. at 700*; *Bebensee-Wong, 248 B.R. at 822*. But that is no longer the rule. Now, [**16]  *CC § 2924m(c)* controls finality except in certain circumstances where *CC § 2924h(c)* is applicable*. See, e.g., Students v. Clear Recon Corp.*, No. 56202200566272CUORVT, 2022 WL 17541903 (Cal.Super. Nov. 4, 2022) ("[T]he general rule about when a trustee's sale is deemed final is not applicable in the present case, which instead is governed by *Civ. Code § 2924m* due to Plaintiffs attempt to make an overbid pursuant to *§ 2924m*.")

Meanwhile, the point in time in which a sale is "deemed perfected" is controlled by CC *§ 2924h(c)*. The difference is that the 60-day relation back period for having a sale both "deemed final" and "deemed perfected" is only applicable if notices of intent to bid are received from eligible tenant buyers for properties with 1-4 residential units. In all other cases, the finality and perfection of a sale will occur under *§ 2924h(c)* if the deed is recorded within 21 days. Since CC *§ 2924h(c)* specifically references *CC § 2924m(c)(3)*, and not *(c)*, *(c)(2)*, or *(c)(4)*, Debtor contends, and the court agrees, that when a sale is subject to the 45-day overbid window, the 60-day relation back period of CC *§ 2924h(c)* only applies to eligible tenant buyers, rather than eligible bidders and prospective owner occupants. It is undisputed that McGilvray is not a tenant buyer.

*CC § 2924h(c)* states, in relevant part:

> For the purposes of this subdivision, the trustee's sale shall be deemed final upon the acceptance of the last and highest bid and [**17]  shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 21 calendar days after the sale, or the next business day following the 21st day if the county recorder in which the property is located is closed on the 21st day. If an eligible bidder submits a written notice of intent to bid **pursuant to paragraph (3) of subdivision (c) of Section 2924m**, the trustee's sale shall be **deemed perfected** as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 60 calendar days after the sale or the next business day following the 60th day if the county recorder [*885]  in which the property is located is closed on the 60th day . . .

*CC § 2924h(c)* (emphasis added).

First, the relation back period expired after the after 21st day. The 60-day window is only applicable for bids or notices of intent to bid that were submitted pursuant to *CC § 2924m(c)(3)*, which is specific to eligible tenant buyers only. *CC § 2924h(c)* appears to be ambiguous at first glance because it refers to an "eligible bidder" while citing to *CC § 2924m(c)(3)*, rather than *(c)*, *(c)(2)* or *(c)(4)*.

If a general statute states that its provisions govern except as otherwise expressly provided by statute, a specific statute governing the same matter in a particular context will be treated [**18]  as an express exception to the general statute. *Williams v. Chino Valley Indep. Fire Dist., 61 Cal. 4th 97, 104-109, 186 Cal. Rptr. 3d 826, 347 P.3d 976 (2015)*. When a statute with reference to one subject contains a given term or provision, the omission of that

651 B.R. 873, *885; 2023 Bankr. LEXIS 1385, **18

term or provision from another part of the same statute, or from a similar statute concerning the related subject, is significant to show that a different legislative intent existed. *Dep't Homeland Sec. v. MacLean, 574 U.S. 383, 391, 135 S. Ct. 913, 190 L. Ed. 2d 771 (2015)*; *Kabran v. Sharp Mem'l Hosp., 2 Cal. 5th 330, 344, 212 Cal. Rptr. 3d 361, 386 P.3d 1159 (2017)*. If the legislature intended to allow all eligible bidders to take advantage of the 60-day relation back period, then it could have referenced the bidding procedure in *(c)*, *(c)(2)*, or *(c)(4)*, rather than specifically to *(c)(3)*.

The Assembly Judiciary Committee Report[14] on SB 1079 indicates that the legislative purpose of SB 1079, predecessor to AB 175, was to "curb further purchases of single-family homes at foreclosure auctions by companies that then operate them as rental properties." SB 1079 (Skinner), Cal. Assemb. Judiciary Comm. Report (Aug. 12, 2020).[15] This report's description of the bidding procedure under *CC § 2924m(c)(3)* and *(c)(4)* when notices of intent to bid or bids are submitted and a 45-day window opens makes clear that the relation back provision was intended to only apply to eligible tenant buyers:

> g) During the 45-day window, **a representative of all of the current tenant[s] in the house again has a right [**19] of first refusal to match the foreclosure sale price. If, at any time during the 45 days, this representative matches the foreclosure sale price, the sale is immediately deemed final and the tenant will take title to the property**.
> h) During the same 45-day window, any current tenant in the property and all other eligible bidders can submit higher offers than the foreclosure sale price.
> i) If, during the 45 days, one or more of the eligible bidders submits a bid that exceeds the foreclosure sale price, the sale is deemed final at the conclusion of the 45 days, and the eligible bidder that made the highest offer will take title to the property.
>
> [*886] j) **Otherwise, the sale is deemed final at the conclusion of the 45 days, and the party that made the last and highest offer at the initial foreclosure auction will take title to the property**.

*Id.* at 3-4 (emphasis added).

Second, *CC § **2924m(f)**[16]* states that "[t]his section shall prevail over any conflicting provision of *Section 2924h*." Contemporaneously, CC *§ 2924h(f)[16]* provides, "[e]xcept as specifically provided in *Section **2924m***, in the event that this section conflicts with any other statute, then this section shall prevail." In the absence of these sections, CC *§ 2924h(c)* could reasonably be construed as applying [**20] the 60-day relation back period to all eligible bidders. But in the context of *CC § **2924m**(c)*, which is controlling, eligible bidders include eligible tenant buyers and others, and the sale "shall not be deemed final until the earliest of the following: . . . [*(c)(1)-(c)(4)]*" *CC §§ 2924h(c)* and ***2924m**(c)*, therefore, appear to contain conflicting periods as to when the sale shall be deemed final for non-eligible tenant buyers attempting to use *CC § 2924h(c)* to invoke the relation back procedure. *CC §§ **2924m**(f)* and *2924h(f)* resolve this conflict in favor of *CC § **2924m***. Therefore, the 60-day relation back period is reserved for eligible tenant buyers under *CC § **2924m**(c)(3)*.

McGilvray argues that the focus on December 22, 2022—the 45th day after the foreclosure sale—is misplaced because McGilvray had equitable title subject to divestment by all three classes of persons who qualified under *§ **2924m**(c)* at the time the last bid was taken. Dckt. 59.

---

[14] The court may consider statements in legislative committee reports concerning the statutory objects and purposes that are in accord with a reasonable interpretation of the statute as an aid in determining legislative intent. *S. Cal. Gas Co. v. Pub. Utils. Com., 24 Cal. 3d 653, 659, 156 Cal. Rptr. 733, 736, 596 P.2d 1149, 1152 (1979)*.

[15] The legislative committee documents for SB 1079 are available at https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201 920200SB1079 (visited May 23, 2023).

[16] This provision has been re-lettered to *CC § **2924m(h)*** as of Jan. 1, 2023. AB 1837 (2022).

651 B.R. 873, *886; 2023 Bankr. LEXIS 1385, **20

This overstates his interest. Under CC *§ 2924h(c)* (even before the amendments), the foreclosure sale is not deemed perfected on the original sale date until the deed is recorded. Before the deed is recorded, the sale is neither "perfected" nor "deemed perfected" - it is just a sale. *Dr. Leevil, LLC v. Westlake Health Care Ctr., 6 Cal. 5th 474, 482, 241 Cal. Rptr. 3d 12, 431 P.3d 151, 155 (2018)*. Under the new statutes, McGilvray's purchase of Property at the foreclosure sale **[**21]** was not final until the 45th day after the sale.

In *Ford*, a bankruptcy court in the Central District of California dealt with the new version of *CC §§ 2924h* and *2924m* in a similar situation involving a pre-petition foreclosure sale with a post-petition recording. *In re Ford, No. 2:22-bk-13649-WB, 2022 Bankr. LEXIS 3545, 2022 WL 17742285 (Bankr. C.D. Cal. Dec. 15, 2022)*. There, two eligible bidders submitted notices of intent to bid within 15 days of the foreclosure sale. *2022 Bankr. LEXIS 3545, [WL] at *7*. As a result, the court found that CC *§ 2924h(c)* extended the time for relation back of the recordation to 60 days, and the sale was deemed final and perfected as of 8:00 a.m. on the date of the sale. *Id.* Notably, neither of these eligible bidders were "eligible tenant buyers," so the court, in effect, applied *§ 2924h(c)* to all eligible bidders. *2022 Bankr. LEXIS 3545, [WL] at *6*; *see also*, *Exs.* 1-2, Dckt. 20-2, 20-3, Case No. 2:22-bk-13649-WB (Bankr. C.D. Cal.).

But *Ford* differs from the facts here for at least two reasons. There, the debtor did not raise the issue of when the sale became final under the new amendments to the foreclosure procedure. Also, the trustee's deed was recorded forty-nine (49) days after the foreclosure sale. *2022 Bankr. LEXIS 3545, [WL] at *1*. So, there was no question concerning finality of the sale.

 **[*887]** When the sale here became final on December 22, 2022, the automatic stay was in full force and effect. *§ 362(a)(3)*. **[**22]** Although the facts of this case mirror those in *Garner*, *Bebensee-Wong*, and related progeny, the legislature changed the date that the sale is deemed final by enacting *CC § 2924m(c)*. Thus, instead, this case mirrors *Sanders* in that the sale became final post-petition:

> On the facts of this case, the Court holds that the foreclosure sale conducted postpetition is void, and recordation of the trustee's deed . . . cannot resuscitate the void sale by reliance on a state statute that would relate back the act to a time when it would not have been prohibited.

*Sanders, 198 B.R. at 329*.

Therefore, the sale became final under *CC § 2924m(c)(4)* post-petition and is void. CC *§ 2924h(c)* cannot be used to finalize an incomplete sale to a time before the petition was filed. McGilvray does not qualify for the relation back effects of CC *§ 2924h(c)* as the statute was written in 2022.[17]

D. The *Fjeldsted* Factors Do Not Support Annulling the Stay

The court now turns to McGilvray's request to annul the automatic stay.

*11 U.S.C. § 362(d)(1)* allows the court to grant relief from the stay for cause, including the lack of adequate protection. "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case-by-case basis." *In re Mac Donald, 755 F.2d 715, 717 (9th Cir. 1985)*.

*11 U.S.C. § 362(d)(2)* allows the court **[**23]** to grant relief from the stay if the debtor does not have an equity in such property and such property is not necessary to an effective reorganization.

The Ninth Circuit Court of Appeals has warned that retroactive relief should only be "applied in extreme circumstances." *Mataya v. Kissinger (In re Kissinger), 72 F.3d 107, 109 (9th Cir. 1995)*, quoting *In re Shamblin, 890*

---

[17] Debtor's counsel has argued that two provisions of **CC § 2924m** establish Debtor's title to Property during these "open window" periods. That is incorrect. Both provisions, **subdivisions (f)** dealing with a trustor's title until the sale is deemed final, and **(l)** dealing with continued hazard insurance coverage until the sale is final became effective in 2023 and were not part of **§ 2924m** in 2022 when the salient facts here occurred. *See CC § 2924m(o)* (2023).

651 B.R. 873, *887; 2023 Bankr. LEXIS 1385, **23

*F.2d 123, 126 (9th Cir. 1989)*; *see also In re Aheong, 276 B.R. 233, 250 (B.A.P. 9th Cir. 2002)*. When deciding a motion to annul the automatic stay, the court may consider the *"Fjeldsted"* factors:

1. Number of filings;
2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
4. The Debtor's overall good faith (totality of circumstances test;
5. Whether creditors knew of the stay but nonetheless took action, thus compounding the problem;
6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
7. The relative ease of restoring parties to the status quo ante;
8. The costs of annulment to debtors and creditors;

 **[*888]** 9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative contract;

10. Whether, **[**24]** after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
11. Whether annulment of the stay will cause irreparable injury to the debtor;
12. Whether stay relief will promote judicial economy or other efficiencies.

*Fjeldsted, 293 B.R. at 24-25*. One factor alone may be dispositive. *Id.* The two main factors focused on by courts are "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *In re Merriman, 616 B.R. 381, 387 (B.A.P. 9th Cir. 2020)*, quoting *Nat'l Envtl. Waste Corp., 129 F.3d at 1055*.

Weighing the *Fjeldsted* factors follows:

1. <u>Number of filings</u>: This appears to be Debtor's first bankruptcy filing in this district. This factor is inapplicable.

2. <u>Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors</u>: This factor is inapplicable since this is Debtor's first bankruptcy filing.

3. <u>Extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser</u>: McGilvray claims to be a bona fide, pre-petition purchaser of Property. At the time the Trustee's Deed was recorded, McGilvray **[**25]** claims he did not have actual or constructive notice of the bankruptcy. Dckt. 46, 47. McGilvray contends he will be prejudiced if the stay is not annulled.

Meanwhile, Debtor contends that McGilvray will not be prejudiced if the stay is not annulled because he can get his money back from the sale and not enough time has passed for there to be any serious prejudice. Dckt. 58, 61. Additionally, the automatic stay was violated, so Debtor argues the sale is void as a matter of law. Since annulment is an extraordinary remedy in repeat-filing cases with legitimate harm to innocent third parties, this factor should support denying this motion. Further, Debtor claims that if the stay is annulled, she will suffer catastrophic financial ruin and lose over $250,000 in equity.

There are no facts suggesting McGilvray has transferred Property, or that any third party is affected if the stay is not annulled.

The focus of this factor is on harm or prejudice to third parties and creditors, including bona fide purchasers. It is unclear whether McGilvray can recover the money already paid. From McGilvray's previous motion, it appeared that the mortgagee has already been paid from the foreclosure sale proceeds. **[**26]** It seems a claim for unjust enrichment in the proper forum may be an option. McGilvray may have claims to recover his funds from third parties on various tort or contract theories.

This factor weighs against annulment.

651 B.R. 873, *888; 2023 Bankr. LEXIS 1385, **26

4. Debtor's overall good faith (totality of the circumstances): McGilvray does not contend that Debtor or counsel misrepresented facts or engaged in egregious behavior. Dckt. 46. Debtor filed bankruptcy more than 15 days post-foreclosure, but less than 60 days after the sale. McGilvray contends that timing alone makes this factor support annulment.

The court disagrees. Debtor's largely uncontroverted declaration states she was made aware of the sale weeks after the foreclosure. Dckt. 62. No evidence was **[*889]** presented that she was aware of the sale date. It seems likely she received notice of the sale, but there is no proof of that on this motion. Nevertheless, given the delay before many sales are final under the new law, this factor does not support annulment.

5. Whether creditors knew of the stay but nonetheless acted, thus compounding the problem: McGilvray contends that he did not have knowledge of the bankruptcy at the time this case was filed. Dckt. 47. McGilvray's bankruptcy **[**27]** attorney declares that there was no record notice or constructive notice in the form of a recorded notice of bankruptcy. Dckt. 48. Movant was not listed as a creditor in Debtor's schedules. Although McGilvray recorded the Trustee's Deed and initiated the Unlawful Detainer Action post-petition, after learning of the bankruptcy, McGilvray filed a motion for relief from the automatic stay (PK-1), and then subsequently filed this motion to annul the stay.

In contrast, Debtor contends that McGilvray knew of the stay at the time the Trustee's Deed was recorded and at the time he filed the Unlawful Detainer Action. Dckt. 58, 61. Debtor suggests that the evidence proves he knew of the bankruptcy on the date it was filed and compounded the problem by recording the Trustee's Deed, giving a three-day notice to quit, initiating the Unlawful Detainer Action, and then waiting three months to file the first stay relief motion and four and one-half months to file this motion.

The court disagrees with Debtor here. There is nothing except speculation that McGilvray knew of the bankruptcy filing before he brought the Trustee's Deed to the Recorder's Office. He obviously subsequently learned of the bankruptcy, **[**28]** but he did not affirmatively act to seek stay relief for some months thereafter.[18]

As noted above, McGilvray was not listed in the bankruptcy schedules or master address list. The only evidence provided by Debtor is a declaration "on information and belief" that McGilvray knew about the bankruptcy before the Trustee's Deed was recorded and before the Unlawful Detainer Action was filed. Dckt. 62. However, non-expert witness testimony must be based on the personal knowledge of the witness. _Fed. R. Evid. 602_. Debtor's declaration fails to provide any credible evidence that McGilvray had knowledge of the bankruptcy.

This factor favors annulment on this record.

6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules: McGilvray contends that it is impossible to confirm a plan because no adversary proceeding has been filed. Dckt. 46. However, Debtor claims to be complying with the plan and is current on payments. Although the objection to plan confirmation was sustained earlier, the plan can be reconsidered or modified if this motion is denied.

Notwithstanding failure to list McGilvray as a creditor in this bankruptcy case, Debtor appears to have complied with the Bankruptcy **[**29]** Code and Rules. This factor weighs slightly against annulment.

7. The relative ease of restoring the parties to the _status quo ante_: McGilvray contends that that he cannot be compelled to give up his interest in Property without a repayment. Dckt. 46. The original lender has been paid, so an adversary **[*890]** proceeding would be necessary. In response, Debtor claims that it is easy to restore the parties to the _status quo ante_ because McGilvray can be repaid because the sale is void. Dckt. 61.

---

[18] The court acknowledges McGilvray's counsel's representations supported by bankruptcy counsel's statements that there were ongoing settlement discussions for a time before motions were filed in this court.

651 B.R. 873, *890; 2023 Bankr. LEXIS 1385, **29

The *status quo ante* appears to be the period after the foreclosure sale but before the Trustee's Deed was recorded and the Unlawful Detainer Action initiated. The Unlawful Detainer Action is dismissed. However, under *CC § 2924m(c)(4)*, restoring Debtor to the *status quo ante* would result in Debtor possessing legal and equitable title in Property because the foreclosure sale was not final at the time of the bankruptcy.

True enough, it is likely some litigation between McGilvray and other parties may ensue. But when weighed here against Debtor's losses if annulment is granted, the court sees this factor slightly favoring denial of annulment.

8. <u>The costs of annulment to the debtor and creditors</u>: McGilvray claims the cost of **[**30]** annulment is the cost of an adversary proceeding. Dckt. 46. McGilvray contends this factor supports annulment but insists that it should be limited due to the extensive facts of this case.

In contrast, Debtor's asserted cost of annulment is $250,000 plus attorney's fees, which is the equity lost as result of the foreclosure sale. Dckt. 61-62. Debtor also says that there is no cost for McGilvray. Instead, she asserts, McGilvray would receive a $250,000 windfall from Debtor's equity in Property if the sale were to be finalized and perfected.

Debtor has other creditors in this case. The successful confirmation of a plan and repayment of creditors is enhanced if annulment is denied. Otherwise, Debtor, her mother, and sister will no longer have a residence and the possible payment to creditors will be diminished.

Even if she prevails on this motion, Debtor must pay off Flagstar to keep her residence. Any right Debtor had to reinstate the loan with Flagstar vanished five days before the sale. *CC § 2924c(a)(1), (e)*. She has no windfall.

This factor weighs against annulment.

9. <u>How quickly creditors moved for annulment, or how quickly the debtor moved to set aside the sale or contract</u>: In the beginning of this **[**31]** case, there were some settlement negotiations and neither party took any action. McGilvray initially moved for relief from stay on March 1, 2023, which is four months post-petition. PK-1.

Debtor claims that this delay is inexcusable; however, Debtor also acknowledges that the unfamiliarity with the new statutory scheme likely delayed the filing of the stay relief motion. Debtor claims she did not know about the foreclosure sale until late November 2022. She filed this case on December 1, 2022. Debtor moved expeditiously.

This factor weighs slightly against annulment.

10. <u>Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved to expeditiously gain relief</u>: McGilvray claims he did not have notice of the bankruptcy. Dckt. 46-47. True enough, he was not listed in the schedules or the master address list. Although McGilvray did initiate the Unlawful Detainer Action, he has not prosecuted that case and it has been dismissed. *Id.*

In response, Debtor speculates McGilvray was likely informed of the bankruptcy by the foreclosure trustee on the petition date, thus prompting him to record the Trustee's Deed the next day. **[**32]** That recording also occurred before the 45-day period **[*891]** alleged to be applicable under *CC § 2924h(c)*. Also, McGilvray's declaration was silent as to when he learned of the bankruptcy. The declaration says McGilvray had no knowledge of the bankruptcy at the time of recording but makes no mention of whether he knew about it at the time he filed the Unlawful Detainer Action. Given the 4-month delay in filing the first stay relief motion, this factor weighs against annulling the stay.

11. <u>Whether annulment of the stay will cause irreparable injury to the debtor</u>: McGilvray says this factor supports annulment because Debtor's right to reorganize was greatly diminished at 8:01 a.m. on November 7, 2022 because the foreclosure sale took place later that day. Dckt. 46. McGilvray's position implies that Debtor could not have filed bankruptcy before the sale but after 8:01 a.m. on that same day, causing it to occur post-petition, and then use *CC*

651 B.R. 873, *891; 2023 Bankr. LEXIS 1385, **32

§ 2924h(c) to relate the sale back to before the petition date. However, this approach is expressly rejected in _Sanders. 198 B.R. at 329_

Debtor will undoubtedly suffer irreparable injury if the stay is annulled as discussed above. This factor weighs against annulment.

12. Whether stay relief will promote **[**33]** judicial economy: Annulling the stay would promote judicial economy by avoiding litigation in the bankruptcy case. But, as mentioned, McGilvray has rights to prosecute if he so chooses. This factor supports annulling the stay.

The court concludes that the _Fjeldsted_ factors do not support annulling the automatic stay. The result may be different if the sale had finalized before the petition date.

V. CONCLUSION

The foreclosure sale was finalized post-petition and is thus void as a violation of the automatic stay. _CC § 2924h(c)_ cannot be invoked to finalize or perfect the sale to the pre-petition date of the sale. Since notices of intent to bid were submitted, finality is controlled by CC § **2924m**(c). McGilvray is not an eligible tenant buyer that bid on Property pursuant to CC § **2924m**(c)(3), so he does not qualify for the 60-day relation back provision for perfection under CC § 2924h(c). Additionally, the Trustee's Deed was recorded before the expiration of the 45-day bid period under CC § **2924m**(c)(4). The automatic stay was therefore applicable when the sale became final. McGilvray violated the stay when he recorded the Trustee's Deed. The _Fjeldsted_ factors when properly weighed and considered do not justify annulment of the stay. Accordingly, the motion to annul the automatic stay is DENIED.

A separate order shall issue.

Dated: 06/26/2023

By the Court

/s/ René Lastreto II

René Lastreto II, Judge

United States Bankruptcy Court

DCN PK-2


**ORDER ON MOTION TO ANNUL STAY**

On May 17, 2023, a hearing was held on Movant Ian McGilvray's motion to annul the automatic stay. Appearances **[**34]** were noted in the record. Following oral argument, the parties submitted the matter for decision. After careful consideration of the parties' oral arguments, pleadings, and evidence submitted in support of and opposition to the motion, the court issued its ruling on the motion to annul stay on May 25, 2023.

In accordance with the ruling and for cause appearing,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Ian McGilvray's motion to annul the automatic stay is **DENIED**.

Dated: May 25, 2023

By the Court

/s/ René Lastreto II

651 B.R. 873, *891; 2023 Bankr. LEXIS 1385, **34

René Lastreto II, Judge

United States Bankruptcy Court

---

**End of Document**

RECORDING REQUESTED BY
Jerald N. Marrs

AND WHEN RECORDED MAIL TO
Jerald N. Marrs
Claassen Marrs, P.C.
111 Deerwood Road, Suite 200
San Ramon, California 94583

APN: 055-350-011

CONTRA COSTA Co Recorder Office
DEBORAH COOPER, Clerk-Recorder
**DOC - 2020-0259947**
Monday, Nov 2, 2020 15:00:00

Total Paid: **$20.00**          Receipt #: 202003917324
                                                                    210 / CPPC / 13
0000 - Public

Space above line for Recorder's Use
NO TAX DUE

## GRANT DEED

The undersigned Grantor declares under the penalty of perjury that the following is true and correct.

Documentary transfer tax is NONE. Not pursuant to a sale. No consideration. A transfer into a revocable trust. Rev. & Tax Code Section 11930.

_____ Unincorporated area    X    City of Antioch

This transfer is exempt from the fee imposed by Gov. Code. Section 27388.1 because the property is a residential dwelling transferred to an owner-occupier.

This is a transfer into a revocable trust excludable from reassessment under Rev. & Tax Code Section 62(d).

FOR NO CONSIDERATION, GRANTOR MELISSA WILKERSON, a single person, as her sole and separate property, hereby GRANTS TO MELISSA WILKERSON, trustee of the MELISSA WILKERSON REVOCABLE TRUST dated June 19, 2020, that real property in the City of Antioch, County of Contra Costa, State of California, described in Exhibit "A" attached hereto and incorporated herein.

Commonly known as 1933 Grass Mountain Court, Antioch, CA 94509

APN: 055-350-011

Dated:  October 7, 2020

_____
MELISSA WILKERSON

Mail tax statement to 1933 Grass Mountain Court, Antioch, CA 94509

# ACKNOWLEDGMENT

> *A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.*

State of California                              )
                                                )
County of Contra Costa                          )

On October 7, 2020, before me, C. A. Stafford, notary public, personally appeared

MELISSA WILKERSON, who proved to me on the basis of satisfactory evidence to be the

person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that

he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their

signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)

acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that

the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

C. A. Stafford                                   (Seal)

C. A. STAFFORD
Notary Public – California
Contra Costa County
Commission # 2186749
My Comm. Expires Mar 17, 2021

NOT FOR OFFICIAL USE

Exhibit "A"

The land referred to is situated in the State of California, County of Contra Costa, City of Antioch, and is described as follows:

Lot 341 . as shown on the Map of Subdivision 7500, filed June 10, 1997 in Book 392, Page 49, Contra Costa County Records.

EXCEPTING THEREFROM:

All oil, gas, casinghead gasoline and other hydrocarbon and mineral substances below a point 500 feet below the surface of said land together with the right to take, remove , mine, pass through and dispose of all oil, gas, casinghead gasoline and other hydrocarbon and mineral substances, but without any right whatsoever to enter upon the surface of said land, as reserved in the Deed from Mary M. Hines, et al , recorded October 5, 1977, Book 8536, page 172, Official Records.

(Being APN 055-350-011)

This deed is made and accepted upon the Covenants, Conditions and Restrictions and other matters set forth in that certain Declaration of Restrictions recorded December 16, 1997, as Instrument No. 97-244267, Official Records of said county, all of which Covenants, Conditions and Restrictions and other matters are incorporated herein by reference to said Declaration of Restrictions with the same force and effect as though fully set forth herein.

# <u>Exhibit E</u>



### Fwd: 252-20242335 Wilkerson Bankruptcy Case No. 25-40564 CN

1 message

**General Email** <general@shepwoodlaw.com>
To: Andrew Christensen <andrew@californiahomelawyer.com>
Cc: Vincent Wood <vince@shepwoodlaw.com>

Thu, May 8, 2025 at 10:27 AM

Andrew,
Please see the below. Vince asked that I send you a copy.

---------- Forwarded message ---------
From: **Michelle A. Mierzwa** <mmierzwa@wrightlegal.net>
Date: Wed, May 7, 2025 at 4:12 PM
Subject: 252-20242335 Wilkerson Bankruptcy Case No. 25-40564 CN
To: general@shepwoodlaw.com <general@shepwoodlaw.com>
Cc: SaveIt <SaveIt@wrightlegal.net>

Mr. Wood,

As we discussed, the foreclosure sale of the property was conducted at 9:14 am PT on April 1, 2025, prior to the filing of the above-mentioned bankruptcy case at 9:36 am PT on April 1, 2025. As a result of the delivery of a notice of intent to bid affidavit pursuant to Civil Code section 2924m(c)(2), the 45-day period for post-sale bids was triggered, so the identity of the high bidder is not yet known. The identity of the high bidder will be determined at or after 5:00 pm on the 45th day following April 1, 2025, which is May 16, 2025. The high bidder will either be Good Neighbor Homes LLC (the high bidder at the live auction on April 1, 2025) or Carl Dexter (the post-auction eligible bidder if he submits a bid in excess of the high bid by Good Neighbor Homes LLC on or before 5:00 pm on May 16, 2025). Pursuant to Civil Code section 2924m(c)(4) and Civil Code section 2924h(c), NBS Default Services LLC will issue the trustee's deed regarding the April 1, 2025 foreclosure sale once the identity of the high bidder has been determined as dictated by statute.

Based on the above circumstances, and the fact that the high bidder's identity is not yet known, NBS Default Services LLC can only provide the information and documents related to the current status of the completed foreclosure sale but cannot yet respond with respect to the identity of the final high bidder under Civil Code section 2924m. Attached please find informal production of the documents currently in the possession of NBS Default Services, LLC that are currently responsive to the Order for Production of Documents in the above-mentioned matter. The attached production is necessarily incomplete because the identity of the highest bidder cannot be determined under applicable statutes. However, NBS Default Services LLC will be able to provide a formal response with Declaration of Custodian following May 16, 2025. Documents subject to the attorney client privilege and/or work product privilege are subject to objection and will not be produced.

Please note that the list of properties that were scheduled for foreclosure sale on April 1, 2025 in Contra Costa County that is provided below is a list of the scheduled sales for the auction vendor, auction.com, but the only foreclosure sale that was scheduled and cried by auction.com on behalf of NBS Default Services LLC that day in Contra Costa was the first sale on the list regarding the subject property. The other sales at Contra Costa County that day were not related to NBS Default Services LLC, and the company has no other information about those other sales. In addition, the bid funds for the subject property were submitted by Good Neighbor Homes LLC by wire to the auction company, so there are no copies of cashier's checks to provide. The submission of funds via wire is identified on the Trustee Certificate of Sale/Receipt produced herewith. Auction.com is a separate company than NBS Default Services, LLC, and NBS does not have information about wires received by the company or the employees or auctioneers of the company aside from what is provided on the sale result spreadsheet and the Trustee Certificate of Sale/Receipt. It appears from the Trustee Certificate of Sale/Receipt that there were no other bidders aside from Good Neighbor Homes LLC for the live sale after the announcement of the minimum statutory bid for residential 1-4 property pursuant to Civil Code section 2924f(f).

Auction.com said the below is what they can provide us for Contra Costa sales that day:

| Listing Status | County | Street Address | City | State | Zip | Listing Sale Date | Listing Sale Time | Postponement to |
|---|---|---|---|---|---|---|---|---|
| **3rd Party Sale** | Contra Costa | 1933 GRASS MOUNTAIN CRT | ANTIOCH | CA | 94531 | 4/1/2025 | 9:00 AM | |
| **Revert** | Contra Costa | 181 BAYSIDE CT | RICHMOND | CA | 94804 | 4/1/2025 | 9:00 AM | |
| **Postponed** | Contra Costa | 1097 TEAL COURT | BRENTWOOD | CA | 94513 | 4/1/2025 | 9:00 AM | **5/13/2025** |
| **Postponed** | Contra Costa | 68 INLET DR | BAY POINT | CA | 94565 | 4/1/2025 | 9:00 AM | **5/13/2025** |
| **Postponed** | Contra Costa | 295 GLASGOW CIRCLE | DANVILLE | CA | 94526 | 4/1/2025 | 9:00 AM | **5/13/2025** |
| **Postponed** | Contra Costa | 121 AMADOR CT | OAKLEY | CA | 94561 | 4/1/2025 | 9:00 AM | **5/13/2025** |
| **Postponed** | Contra Costa | 5601 DOREMUS AVE | RICHMOND | CA | 94805 | 4/1/2025 | 9:00 AM | **6/10/2025** |
| **Postponed** | Contra Costa | 3201 MUIR CT | ANTIOCH | CA | 94509 | 4/1/2025 | 9:00 AM | **5/13/2025** |
| **Postponed** | Contra Costa | 168 GLENWOOD | HERCULES | CA | 94547 | 4/1/2025 | 9:00 AM | **5/13/2025** |

| Postponed | Contra Costa | 5548 PLUMBRIDGE WAY | ANTIOCH | CA | 94531 | 4/1/2025 | 9:00 AM | 5/13/2025 |
| Canceled | Contra Costa | 1009 VICTORIA PARK | HERCULES | CA | 94547 | 4/1/2025 | 9:00 AM | |
| Canceled | Contra Costa | 482 CRIMSON CLOVER COURT | BRENTWOOD | CA | 94513 | 4/1/2025 | 9:00 AM | |
| Canceled | Contra Costa | 3252 CUB COURT | ANTIOCH | CA | 94531 | 4/1/2025 | 9:00 AM | |

After review, please let me know if you have any questions regarding this preliminary initial production pending the determination of the identity of the high bidder pursuant to statute.

**Michelle A. Mierzwa, Esq.**
Partner, Compliance Division



4665 MacArthur Court, Suite 280
Newport Beach CA 92660
(949) 438-1265 Direct

(949) 608-9142 Fax
(949) 477-5050 Main Ext. 1042

**Wright, Finlay & Zak: Your Western Regional Counsel for California, Nevada, Arizona, Washington, Oregon, Utah, New Mexico, Montana, Hawaii, Idaho, and South Dakota**



PLEASE BE ADVISED THAT THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**IF YOU ARE A CONSUMER AND WISH TO OPT OUT OF EMAIL COMMUNICATIONS REGARDING YOUR DEBT, PLEASE REPLY TO THIS EMAIL WITH "OPT OUT."**

Confidentiality Note: The information contained in this email is privileged and confidential and is intended only for the use of the individual or entity named if the reader of this email is not the intended recipient, you are hereby notified that any distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify the sender by telephone immediately at (949) 477-5052 and arrangements will be made for the return of this material. Thank You.

---------- Forwarded message ----------
From: Carl Dexter <arbitragellc@yahoo.com>
To: FRCLinquiries <FRCLInquiries@bonialpc.com>
Cc:
Bcc:
Date: Fri, 4 Apr 2025 13:42:17 +0000
Subject: Re: 1933 Grass Mountain Ct SB1079 Intent To Bid
To whom it may concern:

Please see attachment below.

Carl Dexter

---------- Forwarded message ----------
From: FRCLinquiries <FRCLInquiries@bonialpc.com>
To: '"Carl Dexter'" <arbitragellc@yahoo.com>, FRCLinquiries <FRCLInquiries@bonialpc.com>
Cc:
Bcc:
Date: Fri, 4 Apr 2025 14:38:46 +0000
Subject: RE: 1933 Grass Mountain Ct SB1079 Intent To Bid

Hello,

Received. Thanks!

FRCLInquires

Bonial & Associates, P.C.

14841 Dallas Parkway, Suite 350 | Dallas, TX 75254

D: 972.643.6600 F: 972.643.6699

FRCLInquiries@BonialPC.com



Serving the states of California, Kansas, Missouri, Nebraska, Oklahoma & Texas

*Not licensed to practice law

*Bonial & Associates, P.C. is certified as a Women's Business Enterprise (WBE) and LGBT Business Enterprise (LGBTBE)*



This communication contains information that is intended only for the recipient named and may be privileged, confidential, subject to the attorney-client privilege, and/or exempt from disclosure under applicable law. If you are not the intended recipient or agent responsible for delivering this communication to the intended recipient, you are hereby notified that you have received this communication in error, and that any review, disclosure, dissemination, distribution, use, or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify us immediately by telephone at 1-800-766-7751 or 1-972-643-6600 and destroy the material in its entirety, whether in electronic or hard copy format.

This firm is a debt collector and any information we obtain from you will be used for that purpose.

You may opt out of receiving further email communications to this address by replying with the word "STOP" in the subject line.

**From:** Carl Dexter
**Sent:** Friday, April 4, 2025 8:42 AM
**To:** FRCLinquiries
**Subject:** Re: 1933 Grass Mountain Ct SB1079 Intent To Bid

To whom it may concern:

Please see attachment below.

Carl Dexter

---------- Forwarded message ----------
From: Paul DeJesus <pdejesus@auction.com>
To: "Kahler, Jessica" <Jessica.Kahler@nationalbankruptcy.com>, Jonathan Chau <jchau@auction.com>, John Hund <jhund@auction.com>, Joseph Steinhaus <jsteinhaus@auction.com>, Shawn Smart <SSmart@auction.com>, FRCLinquiries <FRCLInquiries@bonialpc.com>, Future Sales <FutureSales@auction.com>, "Williams, DeEdra" <Deedra.Williams@nationalbankruptcy.com>, "Rogers, Leigh" <Leigh.Rogers@nationalbankruptcy.com>, "Adams, Marissa" <Marissa.Adams@nationalbankruptcy.com>
Cc:
Bcc:
Date: Mon, 31 Mar 2025 21:42:48 +0000
Subject: RE: [EXT] Bidding Instructions: File: 9462-6555; Case: NT-2147041247-FC; Step Bid Reviewed (End) 03/31/2025

Morning,

Confirmed,

**Fair Market Value: 745,820.00**

**Credit bid: 155,400.82**

**Starting Bid: 499,699.40**

**Total Debt Value: 155,400.82**

**If any interested parties minimum bid must be at least: $499,699.40. If no interested parties, please postpone to: 04/15/2025 due to failure to meet minimum bid.**

Thank you!

**Paul DeJesus Sr. Foreclosure Asset Manager**

(949) 672-3667 | pdejesus@auction.com
1 Mauchly, Irvine, CA 92618 | © 2022 Auction.com, LLC, All Rights Reserved

**Attorneys can find out more about our new product at:**
**Attorney Interact**

**From:** Kahler, Jessica
**Sent:** Monday, March 31, 2025 2:23 PM
**To:** Jonathan Chau ; John Hund ; Joseph Steinhaus ; Shawn Smart ; Paul DeJesus ; FRCLInquiries@BonialPC.com; Future Sales ; Jessica.Kahler@NationalBankruptcy.com; Deedra.Williams@NationalBankruptcy.com; Leigh.Rogers@NationalBankruptcy.com; Marissa.Adams@NationalBankruptcy.com
**Subject:** [EXT] Bidding Instructions: File: 9462-6555; Case: NT-2147041247-FC; Step Bid Reviewed (End) 03/31/2025

Below is the Bidding Instructions required for:

**CAUTION:** This email came from outside of the company. Always use caution when opening attachments or clicking links from unknown senders or unexpected emails.

File Number: 9462-6555
Property Address: 1933 GRASS MOUNTAIN CRT, ANTIOCH, CA 94531
Scheduled Sale Date of: 1st day of April, 2025
Estimated Total Debt: 155,400.82

Bid Instructions: â€¢ Fair Market Value: $745,820.00
â€¢ Credit Bid: $155,400.82 (Total Debt/Specified Bid)
â€¢ Starting Bid: $499,699.40 (67% of FMV)
â€¢ If no bid exceeds $499,699.40 postpone to 4/15/2025 (67% of FMV and next sale)

Total Debt amount (155,400.82) represents $153,152.27 Client Total Debt plus $2,248.55 in attorney fees and costs.

NOTE: PRIVATE AND PRIVILEGED INFORMATION: THIS TRANSMISSION MAY CONTAIN INFORMATION OR MATERIAL WHICH IS CONFIDENTIAL AND NOT TO BE DISCLOSED TO ANYONE OTHER THAN THE PERSON TO WHOM THIS TRANSMISSION IS DIRECTED. ANY DISCLOSURE, DISTRIBUTION, COPYING OR USE OF THIS COMMUNICATION BY ANY OTHER PERSON IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE CONTACT US BY TELEPHONE IMMEDIATELY AND RETURN THE ORIGINAL COMMUNICATION TO US AT THE ABOVE ADDRESS VIA FIRST CLASS MAIL. THANK YOU VERY MUCH FOR YOUR COOPERATION AND UNDERSTANDING.

---

**17 attachments**

**Agent-Posting_Affidavit.pdf**
145K

**30_day_letters.pdf**
4409K

**10_day_letters.pdf**
4582K

**recorded_NOS.pdf**
170K

**5_day_letters.pdf**
126K

**Rec NOD.pdf**
282K

**Rec SOT.pdf**
83K

**Publication-Affidavit.pdf**
160K

**Copy_of_04.01.25_Bonial_and_Associates_P.C._Final_Sale_Results_CA.xlsx**
14K

**1933 GRASS MOUNTAIN CRT.pdf**
20K

**1933 Grass Mountain Ct SB1079 Intent To Bid.pdf**
2283K

**Re: 1933 Grass Mountain Ct SB1079 Intent To Bid.eml**
3134K

**9462-6555_NOI_CARL_DEXTER_04.04.2025.pdf**
2283K

**RE: 1933 Grass Mountain Ct SB1079 Intent To Bid.eml**
96K

**Wilkerson Auction.com_ Real Estate Auctions for Foreclosures and Bank Owned Properties.pdf**
110K

**6927508.pdf**
429K

**RE: [EXT] Bidding Instructions: File: 9462-6555; Case: NT-2147041247-FC; Step Bid Reviewed (End) 03/31/2025.eml**
119K

# **<u>Exhibit F</u>**



**Andrew Christensen <andrew@californiahomelawyer.com>**

---

## Fwd: 252-20242335 Wilkerson Bankruptcy Case No. 25-40564 CN

**Vincent Wood** <vince@shepwoodlaw.com>                             Thu, May 8, 2025 at 1:38 PM
To: andrew@californiahomelawyer.com



---------- Forwarded message ---------
From: **Michelle A. Mierzwa** <mmierzwa@wrightlegal.net>
Date: Thu, May 8, 2025 at 12:59 PM
Subject: 252-20242335 Wilkerson Bankruptcy Case No. 25-40564 CN
To: Vincent Wood <vince@shepwoodlaw.com>
Cc: SaveIt <SaveIt@wrightlegal.net>


Hi Vince,


The trustee also provided copies of the Trustee Sale Guarantee and the datedowns, which I can forward as well. These are also fairly large attachments. I can send them now or with the Bates Stamped final version after May 16th. Let me know which you prefer.


If the post-auction bidder submits a bid, we will provide copies of those communications and any bid checks at that time. I also asked the trustee if they have the ability to search their historical records for the name of the high bidder once it is determined, so there may be additional documents to produce regarding request numbers 15-17. If there are particular documents you were expecting to see that you want me to ask for, please let me know and I will inquire. With the short timeframe, we were rushing to get a production together for you.


**Michelle A. Mierzwa, Esq.**
Partner, Compliance Division



4665 MacArthur Court, Suite 200
Newport Beach CA 92660
(949) 438-1265 Direct

(949) 608-9142 Fax
(949) 477-5050 Main Ext. 1042

**Wright, Finlay & Zak: Your Western Regional Counsel for California, Nevada, Arizona, Washington, Oregon, Utah, New Mexico, Montana, Hawaii, Idaho, South Dakota and Colorado**

# Exhibit G1



## Andrew J. Christensen Billable Hours, by Project Category

| Date | Who | Matter | Project | Description | Time | Rate | Total |
|------|-----|--------|---------|-------------|------|------|-------|
| 5/15/2025 | AJC | Wilkerson | Stay Violation | draft motion for violation of the stay against Shellpoint | 6.5 | $650 | $4,225 |
| 5/19/2025 | AJC | Wilkerson | Stay Violation | draft motion for violation of the stay against Shellpoint, compare new amended versions of statutes with 2023 versions to addres arguments of creditors counsel | 5.3 | $650 | $3,445 |
| 5/19/2025 | AJC | Wilkerson | Stay Violation | Review docuemnts produced pursuant to Rule 2004 Examination by foreclosure trustee | 0.8 | $650 | $520 |
| 5/20/2025 | AJC | Wilkerson | Stay Violation | Call with client re facts | 0.7 | $650 | $455 |
| 5/20/2025 | AJC | Wilkerson | Stay Violation | draft motion for violation of the automatic stay | 2.8 | $650 | $1,820 |
| 5/20/2025 | KS | Wilkerson | Stay Violation | draft and edit motion for violation of the stay | 0.7 | $100 | $70 |
| 5/21/2025 | AJC | Wilkerson | Stay Violation | finalize drafting declarations in support of motion for stay violation | 2.3 | $650 | $1,495 |
| 5/21/2025 | AJC | Wilkerson | Stay Violation | phone calls with client re facts and declarations | 0.3 | $650 | $195 |
| 5/28/2025 | AJC | Wilkerson | Stay Violation | call from creditor counsel Michelle Mierzwa re motion for violation of the stay | 0.2 | $650 | $130 |
| 5/28/2025 | AJC | Wilkerson | Stay Violation | call with client with update from call with  Michelle Mierzwa re motion for violation of the stay | 0.4 | $650 | $260 |
| 5/28/2025 | AJC | Wilkerson | Stay Violation | call with co counsel Vincent Wood regarding call from creditor counsel Michelle Mierzwa re motion for violation of the stay, and steps forward | 0.5 | $650 | $325 |
| 5/30/2025 | AJC | Wilkerson | Discovery | draft discovery requests, RFP, RFA, ROGS | 0.3 | $650 | $195 |
| 5/30/2025 | AJC | Wilkerson | Settlement | read email from creditors counsel Mierzwa re sale cancellation and draft settlement offer in response | 0.9 | $650 | $585 |
| 5/30/2025 | AJC | Wilkerson | Settlement | call with client about email from creditors counsel Mierzwa re sale cancellation and settlement offer in response | 0.2 | $650 | $130 |
| 5/30/2025 | KS | Wilkerson | Stay Violation | draft amended notice of hearing | 0.3 | $100 | $30 |
| 6/2/2025 | AJC | Wilkerson | Settlement | call from Good Neigbor counsel Brandon Trout about facts and request for dismissal. draft and send follow email to him | 0.4 | $650 | $260 |
| 6/3/2025 | AJC | Wilkerson | Discovery | draft discovery requests to Shellpoint, Good Neighbor, and NBS, including RFA, ROGS, RFP | 3.8 | $650 | $2,470 |
| 6/3/2025 | KS | Wilkerson | Discovery | draft discovery requests to Shellpoint, Good Neighbor, and NBS, including RFA, ROGS, RFP | 1.6 | $100 | $160 |
| 6/12/2025 | AJC | Wilkerson | Stay Violation | call with co counsel Vincent Wood | 0.7 | $650 | $455 |
| 6/12/2025 | AJC | Wilkerson | Stay Violation | Draft portion of reply brief on issues raised in call with co counsel Vincent Wood | 0.6 | $650 | $390 |
| 6/27/2025 | AJC | Wilkerson | Stay Violation | read Good neighbor opposition brief and emails about discovery, and respond to email | 0.7 | $650 | $455 |
| 7/4/2025 | AJC | Wilkerson | Stay Violation | Read opposition of NBS to motion for damages for stay violation, Read discovery responses of NBS and Good Neighbor,  draft Reply brief.  Actual time, 10.6 hours, voluntary reduction to 7 hours | 7 | $650 | $4,550 |
| 7/16/2025 | AJC | Wilkerson | Sanctions | read Shellpoint oppostiion and draft supplemental reply brief, review Shellpoint evidence produced in discovery and select exhibits for reply | 3.8 | $650 | $2,470 |
| 8/1/2025 | AJC | Wilkerson | Stay Violation | appear at hearing for our motion for stay violation | 1.2 | $650 | $780 |
| 8/12/2025 | AJC | Wilkerson | Stay Violation | call with client re hearing, and keeping case alive, and call with Vincent Wood re same. Emails to client re loan payments | 1.1 | $650 | $715 |
| 8/12/2025 | AJC | Wilkerson | Stay Violation | call with client re hearing, and keeping case alive, and call with Vincent Wood re same. Emails to client re loan payments | 1.1 | $650 | $715 |
| 9/8/2025 | KS | Wilkerson | Stay Violation | Create a status conference statement template | 0.25 | $100 | $25 |
| 9/9/2025 | AJC | Wilkerson | Stay Violation | draft status conference statement pursuant to judge's order re factual disputes, read statements of other parties | 2.4 | $650 | $1,560 |
| 9/9/2025 | KS | Wilkerson | Stay Violation | Make AI transcript of hearing on 8/1/2025 on motion for damages, review transcript for Good Morning liability statements | 0.5 | $100 | $50 |
| 9/12/2025 | AJC | Wilkerson | Stay Violation | attend hearing on evidentiary issues pursuant to court's order setting hearing | 1.9 | $650 | $1,235 |
| 9/12/2025 | AJC | Wilkerson | Stay Violation | call with Shellpoint counsel Exnowski re stipulation of facts | 0.5 | $650 | $325 |



### Andrew J. Christensen Billable Hours, by Project Category

| Date | Who | Matter | Project | Description | Time | Rate | Total |
|---|---|---|---|---|---|---|---|
| 9/12/2025 | AJC | Wilkerson | Stay Violation | draft email to all Respondents counsel re proposed stipulated facts pursuant to court 's order and creditors' request to do so | 0.9 | $650 | $585 |
| 9/17/2025 | AJC | Wilkerson | Discovery | review discovery responses of SHellpoint, NBS, GNH and email opposing counsel to follow up on my prior email to meet and confer about stipulated facts pursuant to the court's order and the creditors request for time for this. Email creditors to meet and confer about compelling proper discovery responses becaue their responses are mostly invalid, and if the parties have fact disputes this will be required. | 2.4 | $650 | $1,560 |
| 10/1/2025 | AJC | Wilkerson | Stay Violation | read Respondents pre hearing statement of proposed stipulated facts, and draft our prehearing statement in response | 2.9 | $650 | $1,885 |
| 10/2/2025 | AJC | Wilkerson | Depositions | Draft depostion notice topics for corprate witness depostiion of GNH regarding the TDUS and the date GNH learned of the bankruptcy | 1.1 | $650 | $715 |
| 10/2/2025 | AJC | Wilkerson | Discovery | draft subpoena to AOUSC for PACER records, research PACER's available records and data and reports, research what entity to serve the subpoena on. | 3.8 | $650 | $2,470 |
| 10/2/2025 | KS | Wilkerson | Discovery | Draft notice of subpoena and subpoena for PACER records. Research agent of service. Contact process server re PACER subpoena. | 1.75 | $100 | $175 |
| 10/3/2025 | AJC | Wilkerson | Discovery | finalize subpoena for PACER, deposition notice to GNH and Olivia Reyes | 0.2 | $650 | $130 |
| 10/3/2025 | KS | Wilkerson | Discovery | Draft noticices of deposition for Olivia Reyes and GNH. Prepare notices of deposition with attachments and RFPs to serve by mail. Schedule depositions of Olivia Reyes and GNH.  Place order for process server of subpoena for PACER records and served one copy by certified mail. Created COS for depos, subpoena and RFPs. | 4.5 | $100 | $450 |
| 10/3/2025 | AJC | Wilkerson | MSJ | draft MSJ re Shellpoint, NBS | 6.8 | $650 | $4,420 |
| 10/3/2025 | AJC | Wilkerson | MTC1 | draft meet and confer email to NBS counsel regarding their improper and incomplete discovery responses | 0.8 | $650 | $520 |
| 10/3/2025 | AJC | Wilkerson | MTC2 | draft meet and confer email to Shellpoint counsel regarding their improper and incomplete discovery responses | 0.7 | $650 | $455 |
| 10/3/2025 | AJC | Wilkerson | MTC3 | draft meet and confer email to GHN counsel regarding their improper and incomplete discovery responses | 0.3 | $650 | $195 |
| 10/3/2025 | AJC | Wilkerson | Stay Violation | attend hearing set by court regarding possible evidentiary disputes | 0.9 | $650 | $585 |
| 10/6/2025 | AJC | Wilkerson | MSJ | Draft motion for MSJ as to Shellpoint, NBS, declarations in support, | 3.7 | $650 | $2,405 |
| 10/7/2025 | KS | Wilkerson | Discovery | Contact Lexitas and change date of depos. Draft amended notices of depos and serve by mail and email. | 0.5 | $100 | $50 |
| 10/7/2025 | AJC | Wilkerson | MSJ | draft MSJ re Shellpoint, NBS. Actual time 4.6, reduced to 1 | 1 | $650 | $650 |
| 10/8/2025 | AJC | Wilkerson | MSJ | finalize MSJ, calls with Vincent Wood re decl. | 1.9 | $650 | $1,235 |

### Timekeeper Subtotals

| | Time | | Total |
|---|---|---|---|
| AJC | 76.9 | | $49,985 |
| KS | 10.1 | | $1,010 |

### Project Subtotals

| | Time | | Total |
|---|---|---|---|
| Depositions | 1.1 | | $715 |
| Discovery | 18.85 | | $7,660 |
| MSJ | 16.5 | | $10,725 |
| MTC1 | 0.8 | | $520 |
| MTC2 | 0.7 | | $455 |
| MTC3 | 0.3 | | $195 |



CALIFORNIA

HOME LAWYER

The Law Offices of
Andrew J. Christensen

## Andrew J. Christensen Billable Hours, by Project Category

| Date | Who | Matter | Project | Description | Time | Rate | Total |
|------|-----|--------|---------|-------------|------|------|-------|
| | | | | Sanctions | 3.8 | | $2,470 |
| | | | | Settlement | 1.5 | | $975 |
| | | | | Stay Violation | 43.45 | | $27,280 |
| | | | | **Total** | | | **$48,980** |
| | | | | COSTS | | | |
| | | | | Mail, service of Motion | | | $29.50 |
| | | | | Informal transcripts of hearings | | | $13.00 |
| | | | | Total Costs | | | $42.50 |

# Exhibit G2



CALIFORNIA

HOME LAWYER

The Law Offices of
Andrew J. Christensen

| Date | Who | Matter | Project | Description | Time | Rate | Total |
|---|---|---|---|---|---|---|---|
| 10/2/2025 | AJC | Wilkerson | Depositions | Draft depostion notice topics for corprate witness depostiion of GNH regarding the TDUS and the date GNH learned of the bankruptcy | 1.1 | $650 | $715 |
| 5/30/2025 | AJC | Wilkerson | Discovery | draft discovery requests, RFP, RFA, ROGS | 0.3 | $650 | $195 |
| 6/3/2025 | AJC | Wilkerson | Discovery | draft discovery requests to Shellpoint, Good Neighbor, and NBS, including RFA, ROGS, RFP | 3.8 | $650 | $2,470 |
| 6/3/2025 | KS | Wilkerson | Discovery | draft discovery requests to Shellpoint, Good Neighbor, and NBS, including RFA, ROGS, RFP | 1.6 | $100 | $160 |
| 9/17/2025 | AJC | Wilkerson | Discovery | review discovery responses of SHellpoint, NBS, GNH and email opposing counsel to follow up on my prior email to meet and confer about stipulated facts pursuant to the court's order and the creditors request for time for this. Email creditors to meet and confer about compelling proper discovery responses becasue their responses are mostly invalid, and if the parties have fact disputes this will be required. | 2.4 | $650 | $1,560 |
| 10/2/2025 | AJC | Wilkerson | Discovery | draft subpoena to AOUSC for PACER records, research PACER's available records and data and reports, research what entity to serve the subpoena on. | 3.8 | $650 | $2,470 |
| 10/2/2025 | KS | Wilkerson | Discovery | Draft notice of subpoena and subpoena for PACER records. Research agent of service. Contact process server re PACER subpoena. | 1.75 | $100 | $175 |
| 10/3/2025 | AJC | Wilkerson | Discovery | finalize subpoena for PACER, deposition notice to GNH and Olivia Reyes | 0.2 | $650 | $130 |
| 10/3/2025 | KS | Wilkerson | Discovery | Draft noticics of deposition for Olivia Reyes and GNH. Prepare notices of deposition with attachments and RFPs to serve by mail. Schedule depositions of Olivia Reyes and GNH. Place order for process server of subpoena for PACER records and served one copy by certified mail. Created COS for depos, subpoena and RFPs. | 4.5 | $100 | $450 |
| 10/7/2025 | KS | Wilkerson | Discovery | Contact Lexitas and change date of depos. Draft amended notices of depos and serve by mail and email. | 0.5 | $100 | $50 |
| 10/3/2025 | AJC | Wilkerson | MSJ | draft MSJ re Shellpoint, NBS | 6.8 | $650 | $4,420 |
| 10/6/2025 | AJC | Wilkerson | MSJ | Draft motion for MSJ as to Shellpoint, NBS, declarations in support, | 3.7 | $650 | $2,405 |
| 10/7/2025 | AJC | Wilkerson | MSJ | draft MSJ re Shellpoint, NBS. Actual time 4.6, reduced to 1 | 1 | $650 | $650 |
| 10/8/2025 | AJC | Wilkerson | MSJ | finalize MSJ, calls with Vincent Wood re decl. | 1.9 | $650 | $1,235 |
| 10/3/2025 | AJC | Wilkerson | MTC1 | draft meet and confer email to NBS counsel regarding their improper and incomplete discovery responses | 0.8 | $650 | $520 |
| 10/3/2025 | AJC | Wilkerson | MTC2 | draft meet and confer email to Shellpoint counsel regarding their improper and incomplete discovery responses | 0.7 | $650 | $455 |
| 10/3/2025 | AJC | Wilkerson | MTC3 | draft meet and confer email to GHN counsel regarding their improper and incomplete discovery responses | 0.3 | $650 | $195 |
| 7/16/2025 | AJC | Wilkerson | Sanctions | read Shellpoint oppostiion and draft supplemental reply brief, review Shellpoint evidence produced in discovery and select exhibits for reply | 3.8 | $650 | $2,470 |
| 5/30/2025 | AJC | Wilkerson | Settlement | read email from creditors counsel Mierzwa re sale cancellation and draft settlement offer in response | 0.9 | $650 | $585 |
| 5/30/2025 | AJC | Wilkerson | Settlement | call with client about email from creditors counsel Mierzwa re sale cancellation and settlement offer in response | 0.2 | $650 | $130 |
| 6/2/2025 | AJC | Wilkerson | Settlement | call from Good Neigbor counsel Brandon Trout about facts and request for dismissal. draft and send follow email to him | 0.4 | $650 | $260 |
| 5/15/2025 | AJC | Wilkerson | Stay Violation | draft motion for violation of the stay against Shellpoint | 6.5 | $650 | $4,225 |
| 5/19/2025 | AJC | Wilkerson | Stay Violation | draft motion for violation of the stay against Shellpoint, compare new amended versions of statutes with 2023 versions to addres arguments of creditors counsel | 5.3 | $650 | $3,445 |
| 5/19/2025 | AJC | Wilkerson | Stay Violation | Review docuemnts produced pursuant to Rule 2004 Examination by foreclosure trustee | 0.8 | $650 | $520 |
| 5/20/2025 | AJC | Wilkerson | Stay Violation | Call with client re facts | 0.7 | $650 | $455 |
| 5/20/2025 | AJC | Wilkerson | Stay Violation | draft motion for violation of the automatic stay | 2.8 | $650 | $1,820 |
| 5/20/2025 | KS | Wilkerson | Stay Violation | draft and edit motion for violation of the stay | 0.7 | $100 | $70 |

The table title row:

**Andrew J. Christensen Billable Hours, by Project Category**



CALIFORNIA

**HOME LAWYER**

THE LAW OFFICES OF
ANDREW J. CHRISTENSEN

### Andrew J. Christensen Billable Hours, by Project Category

| Date | Who | Matter | Project | Description | Time | Rate | Total |
|---|---|---|---|---|---|---|---|
| 5/21/2025 | AJC | Wilkerson | Stay Violation | finalize drafting declarations in support of motion for stay violation | 2.3 | $650 | $1,495 |
| 5/21/2025 | AJC | Wilkerson | Stay Violation | phone calls with client re facts and declarations | 0.3 | $650 | $195 |
| 5/28/2025 | AJC | Wilkerson | Stay Violation | call from creditor counsel Michelle Mierzwa re motion for violation of the stay | 0.2 | $650 | $130 |
| 5/28/2025 | AJC | Wilkerson | Stay Violation | call with client with update from call with Michelle Mierzwa re motion for violation of the stay | 0.4 | $650 | $260 |
| 5/28/2025 | AJC | Wilkerson | Stay Violation | call with co counsel Vincent Wood regarding call from creditor counsel Michelle Mierzwa re motion for violation of the stay, and steps forward | 0.5 | $650 | $325 |
| 5/30/2025 | KS | Wilkerson | Stay Violation | draft amended notice of hearing | 0.3 | $100 | $30 |
| 6/12/2025 | AJC | Wilkerson | Stay Violation | call with co counsel Vincent Wood | 0.7 | $650 | $455 |
| 6/12/2025 | AJC | Wilkerson | Stay Violation | Draft portion of reply brief on issues raised in call with co counsel Vincent Wood | 0.6 | $650 | $390 |
| 6/27/2025 | AJC | Wilkerson | Stay Violation | read Good neighbor opposition brief and emails about discovery, and respond to email | 0.7 | $650 | $455 |
| 7/4/2025 | AJC | Wilkerson | Stay Violation | Read opposition of NBS to motion for damages for stay violation, Read discovery responses of NBS and Good Neighbor, draft Reply brief. Actual time, 10.6 hours, voluntary reduction to 7 hours | 7 | $650 | $4,550 |
| 8/1/2025 | AJC | Wilkerson | Stay Violation | appear at hearing for our motion for stay violation | 1.2 | $650 | $780 |
| 8/12/2025 | AJC | Wilkerson | Stay Violation | call with client re hearing, and keeping case alive, and call with Vincent Wood re same. Emails to client re loan payments | 1.1 | $650 | $715 |
| 8/12/2025 | AJC | Wilkerson | Stay Violation | call with client re hearing, and keeping case alive, and call with Vincent Wood re same. Emails to client re loan payments | 1.1 | $650 | $715 |
| 9/8/2025 | KS | Wilkerson | Stay Violation | Create a status conference statement template | 0.25 | $100 | $25 |
| 9/9/2025 | AJC | Wilkerson | Stay Violation | draft status conference statement pursuant to judge's order re factual disputes, read statements of other parties | 2.4 | $650 | $1,560 |
| 9/9/2025 | KS | Wilkerson | Stay Violation | Make AI transcript of hearing on 8/1/2025 on motion for damages, review transcript for Good Morning liability statements | 0.5 | $100 | $50 |
| 9/12/2025 | AJC | Wilkerson | Stay Violation | attend hearing on evidentiary issues pursuant to court's order setting hearing | 1.9 | $650 | $1,235 |
| 9/12/2025 | AJC | Wilkerson | Stay Violation | call with Shellpoint counsel Exnowski re stipulation of facts | 0.5 | $650 | $325 |
| 9/12/2025 | AJC | Wilkerson | Stay Violation | draft email to all Respondents counsel re proposed stipulated facts pursuant to court 's order and creditors' request to do so | 0.9 | $650 | $585 |
| 10/1/2025 | AJC | Wilkerson | Stay Violation | read Respondents pre hearing statement of proposed stipulated facts, and draft our prehearing statement in response | 2.9 | $650 | $1,885 |
| 10/3/2025 | AJC | Wilkerson | Stay Violation | attend hearing set by court regarding possible evidentiary disputes | 0.9 | $650 | $585 |

### Timekeeper Subtotals

| | | |
|---|---|---|
| AJC | 76.9 | $49,985 |
| KS | 10.1 | $1,010 |

### Project Subtotals

| | | |
|---|---|---|
| Depositions | 1.1 | $715 |
| Discovery | 18.85 | $7,660 |
| MSJ | 16.5 | $10,725 |
| MTC1 | 0.8 | $520 |
| MTC2 | 0.7 | $455 |
| MTC3 | 0.3 | $195 |
| Sanctions | 3.8 | $2,470 |



The Law Offices of
ANDREW J. CHRISTENSEN

| | | | | Andrew J. Christensen Billable Hours, by Project Category | | | |
|---|---|---|---|---|---|---|---|
| **Date** | **Who** | **Matter** | **Project** | **Description** | **Time** | **Rate** | **Total** |
| | | | | Settlement | 1.5 | | $975 |
| | | | | Stay Violation | 43.45 | | $27,280 |
| | | | | **Total** | | | **$48,980** |

COSTS

| | |
|---|---|
| Mail, service of Motion | $29.50 |
| Informal transcripts of hearings | $13.00 |
| Total Costs | $42.50 |

# Exhibit H

by telephone immediately at [(949) 477-5052](tel:9494775052) and arrangements will be made for the return of this material. Thank You.

 

**From:** Olivia Reyes <[oreyes@wedgewoodhomes.com](mailto:oreyes@wedgewoodhomes.com)>
**Sent:** Wednesday, May 21, 2025 10:44:09 AM
**To:** Michelle A. Mierzwa <[mmierzwa@wrightlegal.net](mailto:mmierzwa@wrightlegal.net)>
**Cc:** SaveIt <[SaveIt@wrightlegal.net](mailto:SaveIt@wrightlegal.net)>
**Subject:** RE: 252-20242335 1933 Grass Mountain Court, Antioch, CA Bankruptcy Case No. 25-40564 CN

Hi Michelle,

Our in-house legal team reviewed the BK and agrees this could be headache…. No one has time for an additional headache these days. 😊 Will funds be returned via wire or check?

Good Neighbor Homes, LLC is requesting interest due to our funds being held in the amount of $4,888.35 (51 days x $95.85 per day). Can you please demand from the servicer?

Thank you

**OLIVIA REYES**
**T**. 310.640.3070 x 2110 | **F**. 424-218-0880



[OREYES@WEDGEWOODHOMES.COM](mailto:OREYES@WEDGEWOODHOMES.COM)
[WWW.WEDGEWOODHOMES.COM](http://WWW.WEDGEWOODHOMES.COM)

**From:** Michelle A. Mierzwa <[mmierzwa@wrightlegal.net](mailto:mmierzwa@wrightlegal.net)>
**Sent:** Tuesday, May 20, 2025 5:52 PM
**To:** Olivia Reyes <[oreyes@wedgewoodhomes.com](mailto:oreyes@wedgewoodhomes.com)>
**Cc:** SaveIt <[SaveIt@wrightlegal.net](mailto:SaveIt@wrightlegal.net)>
**Subject:** 252-20242335 1933 Grass Mountain Court, Antioch, CA Bankruptcy Case No. 25-40564 CN

[External Sender]

Ms. Reyes,

As we discussed, the foreclosure sale of the above-mentioned property was conducted at 9:14 am PT on April 1, 2025, prior to the filing of the above-mentioned bankruptcy case at 9:36 am PT on April 1, 2025. You indicated that you became aware of the bankruptcy filing at some point. As a result of the delivery of a notice of intent to bid affidavit pursuant to Civil Code section 2924m(c)(2), the 45-day period for post-sale bids was triggered, so the identity of the high bidder was not known until recently. Since no other post-sale bidders submitted a bid, Good Neighbor Homes, LLC as the high bidder at the live sale auction was deemed the last and highest bidder pursuant to Civil Code section 2924m(c)(4). It is our understanding that the Trustee's Deed Upon Sale will need to be

recorded within 60 days of the live sale auction in order to benefit from the statutory "relation back" to 8:00 a.m. on the day of the live sale.

There is a concern that the borrower (Wilkerson) under the foreclosed loan intends to challenge the validity of the sale, as our client, NBS Default, was already served with, and provided preliminary responses to, a subpoena seeking information about the identity of the high bidder, post auction eligible bidders and the timing of the live auction. As a result, it may be prudent for Good Neighbor Homes, LLC to file an ex parte motion for annulment/relief from stay regarding the recording of the Trustee's Deed, in addition to ensuring that the Trustee's Deed Upon Sale is recorded inside the statutory period. Otherwise, there may be ongoing challenges to the validity of the sale. If Good Neighbor Homes prefers not to become involved in potential litigation relating to the foreclosure, with the agreement of all parties NBS Default may be able to return the bid funds to allow the borrower's bankruptcy to play out in the ordinary course. Please let us know how Good Neighbor Homes, LLC would like to proceed.

**Michelle A. Mierzwa, Esq.**
Partner, Compliance Division

4665 MacArthur Court, Suite 280
Newport Beach CA 92660
(949) 438-1265 Direct
(949) 608-9142 Fax
(949) 477-5050 Main Ext. 1042
**Wright, Finlay & Zak: Your Western Regional Counsel for California, Nevada, Arizona, Washington, Oregon, Utah, New Mexico, Montana, Hawaii, Idaho, and South Dakota**

PLEASE BE ADVISED THAT THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
**IF YOU ARE A CONSUMER AND WISH TO OPT OUT OF EMAIL COMMUNICATIONS REGARDING YOUR DEBT, PLEASE REPLY TO THIS EMAIL WITH "OPT OUT."**

Confidentiality Note: The information contained in this email is privileged and confidential and is intended only for the use of the individual or entity named If the reader of this email is not the intended recipient, you are hereby notified that any distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify the sender by telephone immediately at (949) 477-5052 and arrangements will be made for the return of this material. Thank You.

CONFIDENTIALITY NOTICE: This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, you may NOT use, disclose, copy or disseminate this information. Please contact the sender

# Exhibit I

**WRIGHT, FINLAY & ZAK, LLP**
Arnold L. Graff, Esq. (SBN 269170)
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Telephone: (949) 477-5050
Fax: (949) 608-9142
Email: agraff@wrightlegal.net

Attorneys for Interested Party,
NBS DEFAULT SERVICES, LLC

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No.: 25-40564-CN |
| MELISSA WILKERSON, | Chapter: 13 |
| Debtor. | **INTERESTED PARTY'S NBS DEFAULT SERVICES, LLC'S RESPONSES TO DEBTOR'S REQUEST FOR INTERROGATORIES** |
| | **SET ONE** |

PROPOUNDING PARTY:        MELISSA WILKERSON

RESPONDING PARTY:        NBS DEFAULT SERVICES, LLC

SET NO.:        ONE

Interested Party, NBS Default Services, LLC ("Responding Party" or "NBS") hereby responds to the Interrogatories (Set 1) propounded by Debtor, Melissa Wilkerson, ("Debtor" or "Propounding Party") as follows:

## **GENERAL OBJECTIONS**

Responding Party generally objects to the Interrogatories to the extent that the demand would require the Responding Party to disclose information which is legally protected by one or

1

more evidentiary privileges recognized under California and/or Federal law, including the attorney-client privilege and the attorney work-product doctrine. Accordingly, to the extent that the Interrogatories call for a disclosure of protected information, a continuing objection to each and every such request is hereby imposed. Responding Party further and generally objects to the Interrogatories to the extent that it seeks information which is equally available to the Propounding Party.

Notwithstanding and without waiving the foregoing objections, responding party, in good faith, has intended to supply, wherever possible, responsive information in answer to Propounding Party's request and will make assumptions wherever necessary to attempt to understand the intent of certain questions asked. In this regard, all responses made herein are based upon information presently known to the responding party, its representatives, agents and attorneys of record after reasonable investigation.

Responding Party is in the initial stages of its investigation and discovery concerning the subject matter of this action and anticipates that, during the course of its continued investigation and discovery, further pertinent information will be found. As such, Responding Party reserves its right to introduce evidence and/or rely upon at trial, or any other preliminary hearings set in this action and on facts and information omitted from the following responses, whether as a result of mistake, error or oversight, or because such information has not yet been discovered or recognized.

Responding Party further reserves all rights and objections asserted herein with respect to the propriety, scope and related aspects of this or other discovery and reserves all rights in connection therewith. In each and every response, Responding Party does not intend or will not attempt to list each and every item of evidentiary material in support of its contentions, but rather, as a courtesy, will provide facts and responses where appropriate.

2

Case: 25-40364   Doc# 83-1   Filed: 10/08/25   Entered: 10/08/25 16:04:01   Page 50 of 116

The foregoing general objections are incorporated into each response set forth below.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

IDENTIFY the time and date that YOU first learned of this BANKRUPTCY filing and state the manner in which YOU first received notice or learned of the BANKRUPTCY.

**RESPONSE TO INTERROGATORY NO. 1:**

On April 1, 2025 at 11:57 a.m. Central Time, Responding Party received a phone call from a male caller. He did not disclose his relationship with the borrowers under the Loan, but he indicated that the Borrowers under the Loan filed bankruptcy. He provided a Northern District Bankruptcy Case Number of 25-40564, but he did not provide any copies of a filed petition or a Notice of Bankruptcy Filing entered by the court. After performing due diligence to determine if and when a bankruptcy petition was actually filed, NBS obtained from the bankruptcy court PACER system a copy of a bankruptcy petition filed by a different debtor, Melissa Wilkerson, which was stamped by the bankruptcy court as entered at 9:36 a.m. Pacific Time, after the completion of the foreclosure sale at 9:14 a.m. Pacific Time on April 1, 2025

**INTERROGATORY NO. 2:**

State all facts supporting YOUR contention that YOUR actions relating to the foreclosure of the SUBJECT PROPERTY did not violate the automatic stay.

**RESPONSE TO INTERROGATORY NO. 2:**

When the default under the Loan was not cured, on February 18, 2025, NBS, as foreclosure trustee, recorded a Notice of Trustee's Sale that set the date for the foreclosure auction for April 1, 2025, in Pleasant Hill, California. Prior to the foreclosure auction a Sale Datedown was ordered by NBS and prepared by a title company, which included confirmation that as of 9:03 a.m. on April 1, 2025, bankruptcy PACER records indicated that no bankruptcy petition had been filed

3

1    by the Borrowers or Melissa Wilkerson. Thereafter on April 1, 2025, the NBS conducted and

2    completed a foreclosure sale through a local auction company at 9:14 a.m. Pacific Time where

3    the Property sold to a third-party, Good Neighbor Homes, LLC. Good Neighbor Homes, LLC

4    delivered its bid funds to the local auction company via wire, and the bid funds were accepted as

5    the high bid at the foreclosure sale effective 9:14 a.m. Pacific Time on April 1, 2025. NBS

6    received sale result information and a copy of the Trustee Certificate of Sale/Receipt confirming

7    that the foreclosure auction was cried and completed as of 9:14 a.m. Pacific Time on April 1,

8    2025 with Good Neighbor Homes, LLC as the high bidder.

9        Later the same morning as the foreclosure sale, Debtor filed a Voluntary Petition under

10    Chapter 13 of the bankruptcy code. At 11:57 a.m. Central Time on April 1, 2025, NBS received

11    a phone call from a male caller indicating that a Chapter 13 bankruptcy petition was filed as Case

12    No. 25-40564 in the Northern District of California. NBS retrieved a copy of the petition available

13    on the court's PACER Docket, which bears a time stamp of 9:36:41 a.m., after completion of the

14    foreclosure sale to Good Neighbor Homes, LLC. On April 11, 2025, NBS received an email

15    attaching a letter from Shepard & Wood, LLP, identifying E. Vincent Wood as the attorney for

16    the Debtor and providing written notice that the Debtor's Bankruptcy was filed at 9:19 a.m. The

17    letter enclosed a copy of a Notice of Bankruptcy Case filing stating "A bankruptcy case

18    concerning the debtor(s) listed below was filed under Chapter 13 of the United States Bankruptcy

19    Code, entered on 04/01/2025 at 09:36 AM and filed on 04/01/2025" and the Notice indicated a

20    filing time of 9:19 a.m. on April 1, 2025, after completion of the foreclosure sale to Good

21    Neighbor Homes, LLC. On April 14, 2025, NBS responded to the April 11, 2025 letter to confirm

22    to Debtor's counsel that the foreclosure sale was completed at 9:14 am on April 1, 2025, and there

23    was no violation of the stay.

24

Since the Property contained a single-family residence, NBS was required to wait for 15 days after the completion of the foreclosure sale before issuing the Trustee's Deed Upon Sale to see if any eligible bidders would deliver a notice of intent to bid pursuant to Civil Code section 2924m(c)(2). On April 4, 2025, NBS received a notice of intent to bid from Carl Dexter pursuant to Civil Code section m(c)(2), who provided an Affidavit pursuant to Civil Code section 2924m under penalty of perjury indicating that he qualified as an eligible bidder in the category of prospective owner occupant under Civil Code section 2924m(a)(1). The notice under Civil Code sections 2924m(c)(2) [Notice of Intent] and 2924m(a)(1) [Prospective Owner Occupant Affidavit] triggered the 45-day waiting period for post-auction bids to be submitted to the trustee pursuant to Civil Code section 2924m(c)(4) so that NBS as trustee could confirm the identity of the high bidder to include in the Trustee's Deed Upon Sale. As of July 18, 2024, clarifying language in Civil Code section 2924h(c) was enacted to confirm that if an eligible bidder submits a written notice of intent to bid pursuant to Civil Code section 2924m(c)(2), the trustee's deed shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 60 calendar days after the sale or the next business day if the county recorder is closed on the 45th day. As a result, when the 45-day period is triggered by submission of a notice of intent under Civil Code section 2924m(c)(2), no action is taken by the trustee until the end of the 45-day period, which maintains the status quo to allow the required statutory overbid period to play out.

On April 25, 2025, NBS received a subpoena from Vincent Wood, the attorney for Debtor and on May 2, 2025 NBS retained Wright, Finlay & Zak. LLP ("WFZ") as its counsel to assist with response to the subpoena. On May 5, 2025, WFZ Partner Michelle Mierzwa spoke with Mr. Wood regarding the timing of the foreclosure sale prior to the Debtor's bankruptcy filing and the receipt of a notice of intent to bid from a prospective owner occupant under Civil Code section

5

Case: 25-40364   Doc# 83-1   Filed: 10/08/25   Entered: 10/08/25 16:04:01   Page 53 of 116

1 | 2924m(c)(2), delaying the identity of the high bidder for the completed sale until May 16, 2025.

2 | On May 7, 2025, NBS responded to a Subpoena served by Debtor's counsel, providing copies of

3 | documents evidencing compliance with applicable statutes and confirmation that the foreclosure

4 | sale was completed at 9:14 a.m. prior to the filing of the Debtor's bankruptcy petition (whether it

5 | was at 9:36 a.m. or at 9:19 a.m. on April 1, 2025). The end of the 45-day period for submission

6 | of post-sale overbids was May 16, 2025, and the end of the 60-day period to record the trustee's

7 | deed was Saturday, May 31, 2025, with the next business day being Monday, June 2, 2025. On

8 | May 19, 2025, NBS confirmed no other bid funds had been received and that the high bidder at

9 | auction, Good Neighbor Home, LLC, was still the high bidder. NBS did not take any action

10 | regarding the completed sale during the 45-day period that would be considered a violation of

11 | any bankruptcy stay because the information available to NBS between April 1, 2025 and May

12 | 27, 2025 indicated that the foreclosure sale was completed before the Debtor's bankruptcy was

13 | filed.

14 | Despite the apparent validity of the completed foreclosure sale, in light of the aggressive

15 | behavior and threats of the Debtor's counsel in April and May of 2025, NBS inquired with the

16 | high bidder Good Neighbor Homes, LLC, regarding whether it might agree to voluntarily cancel

17 | the completed sale. On May 21, 2025 Good Neighbor Homes indicated that it would agree to

18 | accept a refund of its bid funds to cancel the foreclosure sale, so NBS inquired with Shellpoint

19 | about a voluntary agreement to cancel the completed sale.

20 | On May 22, 2024, before any Trustee's Deed had been prepared or issued, new co-counsel for

21 | Debtor, Andrew J. Christensen, filed the Motion for Damages for Violation of Automatic Stay,

22 | alleging for the first time that the bankruptcy petition was filed earlier than 9:19 a.m. on April, 1,

23 | 2025. However, since Mr. Andersen mailed the Motion via USPS Ground Service and failed to

24 | communicate with NBS or its counsel about the new allegations regarding earlier filing, NBS and

6

its counsel did not receive the Motion containing these new allegations until May 27, 2028. Immediately following review of the Motion for Damages, NBS' counsel called Mr. Andersen on May 28, 2025 and demanded that Debtor withdraw the Motion as no Trustee's Deed Upon Sale had been prepared or issued, and NBS would confirm cancellation of the foreclosure sale as soon as possible. On May 30, 2025, NewRez/Shellpoint confirmed approval of the cancellation of the foreclosure, authorizing return of the bid funds to Good Neighbor Homes, LLC. Thereafter, NBS' counsel sent an email to Mr. Christensen and Mr. Wood on May 30, 2025, confirming the sale was being canceled and again demanding withdrawal of the Motion. On the same date, Mr. Christensen sent a demand for payment of $25,000.00 to withdraw the Motion for Damages. NBS returned the bid funds to Good Neighbor Homes, LLC June 4, 2025, deeming the sale cancelled, and a Trustee's Deed Upon Sale was never prepared or recorded. On June 5, 2025, NBS' counsel sent a copy of the bid fund return correspondence and check to Debtor's counsel, confirming no trustee's deed was or would be issued.

**INTERROGATORY NO. 3:**

State all facts supporting YOUR contention that YOUR actions relating to the foreclosure of the SUBJECT PROPERTY were not willful violations of the automatic stay.

**RESPONSE TO INTERROGATORY NO. 3:**

When the default under the Loan was not cured, on February 18, 2025, NBS, as foreclosure trustee, recorded a Notice of Trustee's Sale that set the date for the foreclosure auction for April 1, 2025, in Pleasant Hill, California. Prior to the foreclosure auction a Sale Datedown was ordered by NBS and prepared by a title company, which included confirmation that as of 9:03 a.m. on April 1, 2025, bankruptcy PACER records indicated that no bankruptcy petition had been filed by the Borrowers or Melissa Wilkerson. Thereafter on April 1, 2025, the NBS conducted and completed a foreclosure sale through a local auction company at 9:14 a.m. Pacific Time where

7

the Property sold to a third-party, Good Neighbor Homes, LLC. Good Neighbor Homes, LLC delivered its bid funds to the local auction company via wire, and the bid funds were accepted as the high bid at the foreclosure sale effective 9:14 a.m. Pacific Time on April 1, 2025. NBS received sale result information and a copy of the Trustee Certificate of Sale/Receipt confirming that the foreclosure auction was cried and completed as of 9:14 a.m. Pacific Time on April 1, 2025 with Good Neighbor Homes, LLC as the high bidder.

Later the same morning as the foreclosure sale, Debtor filed a Voluntary Petition under Chapter 13 of the bankruptcy code. At 11:57 a.m. Central Time on April 1, 2025, NBS received a phone call from a male caller indicating that a Chapter 13 bankruptcy petition was filed as Case No. 25-40564 in the Northern District of California. NBS retrieved a copy of the petition available on the court's PACER Docket, which bears a time stamp of 9:36:41 a.m., after completion of the foreclosure sale to Good Neighbor Homes, LLC. On April 11, 2025, NBS received an email attaching a letter from Shepard & Wood, LLP, identifying E. Vincent Wood as the attorney for the Debtor and providing written notice that the Debtor's Bankruptcy was filed at 9:19 a.m. The letter enclosed a copy of a Notice of Bankruptcy Case filing stating "A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 13 of the United States Bankruptcy Code, entered on 04/01/2025 at 09:36 AM and filed on 04/01/2025" and the Notice indicated a filing time of 9:19 a.m. on April 1, 2025, after completion of the foreclosure sale to Good Neighbor Homes, LLC. On April 14, 2025, NBS responded to the April 11, 2025 letter to confirm to Debtor's counsel that the foreclosure sale was completed at 9:14 am on April 1, 2025, and there was no violation of the stay.

Since the Property contained a single-family residence, NBS was required to wait for 15 days after the completion of the foreclosure sale before issuing the Trustee's Deed Upon Sale to see if any eligible bidders would deliver a notice of intent to bid pursuant to Civil Code section

8

2924m(c)(2).  On April 4, 2025, NBS received a notice of intent to bid from Carl Dexter pursuant to Civil Code section m(c)(2), who provided an Affidavit pursuant to Civil Code section 2924m under penalty of perjury indicating that he qualified as an eligible bidder in the category of prospective owner occupant under Civil Code section 2924m(a)(1).  The notice under Civil Code sections 2924m(c)(2) [Notice of Intent] and 2924m(a)(1) [Prospective Owner Occupant Affidavit] triggered the 45-day waiting period for post-auction bids to be submitted to the trustee pursuant to Civil Code section 2924m(c)(4) so that NBS as trustee could confirm the identity of the high bidder to include in the Trustee's Deed Upon Sale. As of July 18, 2024, clarifying language in Civil Code section 2924h(c) was enacted to confirm that if an eligible bidder submits a written notice of intent to bid pursuant to Civil Code section 2924m(c)(2), the trustee's deed shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 60 calendar days after the sale or the next business day if the county recorder is closed on the 45th day. As a result, when the 45-day period is triggered by submission of a notice of intent under Civil Code section 2924m(c)(2), no action is taken by the trustee until the end of the 45-day period, which maintains the status quo to allow the required statutory overbid period to play out.

On April 25, 2025, NBS received a subpoena from Vincent Wood, the attorney for Debtor and on May 2, 2025 NBS retained Wright, Finlay & Zak. LLP ("WFZ") as its counsel to assist with response to the subpoena. On May 5, 2025, WFZ Partner Michelle Mierzwa spoke with Mr. Wood regarding the timing of the foreclosure sale prior to the Debtor's bankruptcy filing and the receipt of a notice of intent to bid from a prospective owner occupant under Civil Code section 2924m(c)(2), delaying the identity of the high bidder for the completed sale until May 16, 2025. On May 7, 2025, NBS responded to a Subpoena served by Debtor's counsel, providing copies of documents evidencing compliance with applicable statutes and confirmation that the foreclosure

9

Case: 25-40364   Doc# 83-1   Filed: 10/08/25   Entered: 10/08/25 16:04:01   Page 57 of 116

1 sale was completed at 9:14 a.m. prior to the filing of the Debtor's bankruptcy petition (whether it

2 was at 9:36 a.m. or at 9:19 a.m. on April 1, 2025). The end of the 45-day period for submission

3 of post-sale overbids was May 16, 2025, and the end of the 60-day period to record the trustee's

4 deed was Saturday, May 31, 2025, with the next business day being Monday, June 2, 2025. On

5 May 19, 2025, NBS confirmed no other bid funds had been received and that the high bidder at

6 auction, Good Neighbor Home, LLC, was still the high bidder. NBS did not take any action

7 regarding the completed sale during the 45-day period that would be considered a violation of

8 any bankruptcy stay because the information available to NBS between April 1, 2025 and May

9 27, 2025 indicated that the foreclosure sale was completed before the Debtor's bankruptcy was

10 filed.

11      Despite the apparent validity of the completed foreclosure sale, in light of the aggressive

12 behavior and threats of the Debtor's counsel in April and May of 2025, NBS inquired with the

13 high bidder Good Neighbor Homes, LLC, regarding whether it might agree to voluntarily cancel

14 the completed sale. On May 21, 2025 Good Neighbor Homes indicated that it would agree to

15 accept a refund of its bid funds to cancel the foreclosure sale, so NBS inquired with Shellpoint

16 about a voluntary agreement to cancel the completed sale.

17 On May 22, 2024, before any Trustee's Deed had been prepared or issued, new co-counsel for

18 Debtor, Andrew J. Christensen, filed the Motion for Damages for Violation of Automatic Stay,

19 alleging for the first time that the bankruptcy petition was filed earlier than 9:19 a.m. on April, 1,

20 2025. However, since Mr. Andersen mailed the Motion via USPS Ground Service and failed to

21 communicate with NBS or its counsel at any point previously about the new allegations regarding

22 earlier filing, NBS and its counsel did not receive the Motion containing these new allegations

23 until May 27, 2028. Immediately following review of the Motion for Damages, NBS' counsel

24 called Mr. Andersen on May 28, 2025 advising that NBS would confirm cancellation of the

10

foreclosure sale as soon as possible based on the new allegations, and demanded that Debtor withdraw the Motion as no Trustee's Deed Upon Sale had been prepared or issued,. On May 30, 2025, NewRez/Shellpoint confirmed approval of the cancellation of the foreclosure, authorizing return of the bid funds to Good Neighbor Homes, LLC. Thereafter, NBS' counsel sent an email to Mr. Christensen and Mr. Wood on May 30, 2025, confirming the sale was being canceled and again demanding withdrawal of the Motion. On the same date, Mr. Christensen sent a demand for payment of $25,000.00 to withdraw the Motion for Damages. NBS returned the bid funds to Good Neighbor Homes, LLC June 4, 2025, deeming the sale cancelled, and a Trustee's Deed Upon Sale was never prepared or recorded. On June 5, 2025, NBS' counsel sent a copy of the bid fund return correspondence and check to Debtor's counsel, confirming no trustee's deed was or would be issued.

**INTERROGATORY NO. 4:**

If YOU have policies and procedures for handling foreclosures in California related to bankruptcy filings and California Civil Codes §2924m and/or §2924h , identify all DOCUMENTS that evidence such policies and procedures.

**RESPONSE TO INTERROGATORY NO. 4:**

Policies and procedures of NBS regarding the processing of California non-judicial foreclosures are contained in the "California Non-Judicial Procedures" job aid, which includes sections on Post-Sale – Overbid / Sale Proceeds / Trustee's Deed, Day 16 Intent to Overbid Review, Day 45 – Bid Review, and Bankruptcy Notifications.

**INTERROGATORY NO. 5:**

DESCRIBE ALL policies and procedures YOU have for dealing with a foreclosure when a bankruptcy case is filed after the auction starts but before the conclusion of the auction on the 15th or 45th day under §2924m.

11

RESPONDING PARTY, NBS DEFAULT SERVICES, LLC'S RESPONSES TO DEBTOR'S
REQUEST FOR INTERROGATORIES

**RESPONSE TO INTERROGATORY NO. 5:**

Responding Party objects to the Interrogatory to the extent that it requires Responding Party to admit or accept as true a proposed legal conclusion that the foreclosure sale is not complete until the 15th or 45th day under §2924m, and Responding Party is not a law firm or attorney. Subject to and without waiving the foregoing objection, Responding Party responds that policies and procedures of NBS regarding the processing of California non-judicial foreclosures are contained in the "California Non-Judicial Procedures" job aid, which includes sections on Post-Sale – Overbid / Sale Proceeds / Trustee's Deed, Day 16 Intent to Overbid Review, Day 45 – Bid Review, and Bankruptcy Notifications.

**INTERROGATORY NO. 6:**

IDENTIFY the person(s) responsible for creating the policies and procedures for handling foreclosures in California related to bankruptcy filings and California Civil Codes §2924m and/or §2924h.

**RESPONSE TO INTERROGATORY NO. 6:**

Objection, compound. Without waiving this objection, Responding Party responds that NBS management creates policies and procedures for handling non-judicial foreclosures in California, including policies and procedures regarding bankruptcy filings and California Civil Codes §2924m and/or §2924h.

**INTERROGATORY NO. 7:**

EXPLAIN all actions taken by NBS to deem the sale final and/or accept the bid of Good Neighbor Homes, LLC in relation to the foreclosure of the SUBJECT PROPERTY.

**RESPONSE TO INTERROGATORY NO. 7:**

Responding Party objects to the Interrogatory to the extent that it requires Responding Party to admit or accept as true a proposed legal or factual conclusion that the foreclosure sale was deemed

12

Case: 25-40964    Doc# 83-1    Filed: 10/08/25    Entered: 10/08/25 16:04:01    Page 60 of 116

1  final to Good Neighbor Homes, LLC by the issuance and recording of a trustee's deed, since no

2  trustee's deed was ever prepared or recorded regarding this foreclosure. Subject to and without

3  waiving the foregoing objection, Responding Party responds as follows. Prior to the foreclosure

4  auction a Sale Datedown was ordered by NBS and prepared by a title company, which included

5  confirmation that as of 9:03 a.m. on April 1, 2025, bankruptcy PACER records indicated that no

6  bankruptcy petition had been filed by the Borrowers or Melissa Wilkerson. Thereafter on April

7  1, 2025, the NBS conducted and completed a foreclosure sale through a local auction company at

8  9:14 a.m. Pacific Time where the Property sold to a third-party, Good Neighbor Homes, LLC.

9  Good Neighbor Homes, LLC delivered its bid funds to the local auction company via wire, and

10  the bid funds were accepted as the high bid at the foreclosure sale effective 9:14 a.m. Pacific Time

11  on April 1, 2025. The completion of the sale auction and the acceptance of the bid funds by the

12  local auction company completed the foreclosure sale.  NBS received sale result information and

13  a copy of the Trustee Certificate of Sale/Receipt confirming that the foreclosure auction was cried

14  and completed as of 9:14 a.m. Pacific Time on April 1, 2025 with Good Neighbor Homes, LLC

15  as the high bidder.

16  　　　　At 11:57 a.m. Central Time on April 1, 2025, when NBS received a phone call from a

17  male caller indicating that a Chapter 13 bankruptcy petition was filed as Case No. 25-40564 in

18  the Northern District of California, NBS retrieved a copy of the petition available on the court's

19  PACER Docket, which bears a time stamp of 9:36:41 a.m.  NBS confirmed that this time stamp

20  occurred after the completion of the foreclosure auction as of 9:14 .am. Pacific Time.  NBS

21  reviewed the timing of the completed foreclosure sale to Good Neighbor Homes, LLC with its

22  counsel to confirm that the later bankruptcy filing did not impact the validity of the foreclosure

23  sale, and because the property contained a single family residence, waited for the 15-day period

24  after the foreclosure sale to expire to allow for the post auction bid process to occur, pursuant to

| | |
|---|---|
| 1 | Civil Code sections 2924m and 2924h. On April 4, 2025, NBS received a notice of intent to bid |
| 2 | from Carl Dexter pursuant to Civil Code section m(c)(2), who provided an Affidavit pursuant to |
| 3 | Civil Code section 2924m under penalty of perjury indicating that he qualified as an eligible |
| 4 | bidder in the category of prospective owner occupant under Civil Code section 2924m(a)(1). The |
| 5 | notice under Civil Code sections 2924m(c)(2) [Notice of Intent] and 2924m(a)(1) [Prospective |
| 6 | Owner Occupant Affidavit] triggered the 45-day waiting period for post-auction bids to be |
| 7 | submitted to the trustee pursuant to Civil Code section 2924m(c)(4) so that NBS as trustee could |
| 8 | confirm the identity of the high bidder to include in the Trustee's Deed Upon Sale. As of July 18, |
| 9 | 2024, clarifying language in Civil Code section 2924h(c) was enacted to confirm that if an eligible |
| 10 | bidder submits a written notice of intent to bid pursuant to Civil Code section 2924m(c)(2), the |
| 11 | trustee's deed shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed |
| 12 | is recorded within 60 calendar days after the sale or the next business day if the county recorder |
| 13 | is closed on the 45th day. As a result, when the 45-day period was triggered by submission of a |
| 14 | notice of intent under Civil Code section 2924m(c)(2), no action was taken by the NBS to issue |
| 15 | the trustee's deed until the end of the 45-day period, which maintains the status quo to allow the |
| 16 | required statutory overbid period to play out. |
| 17 | On April 11, 2025, NBS received an email attaching a letter from Shepard & Wood, LLP, |
| 18 | identifying E. Vincent Wood as the attorney for the Debtor and providing written notice that the |
| 19 | Debtor's Bankruptcy was filed at 9:19 a.m. The letter enclosed a copy of a Notice of Bankruptcy |
| 20 | Case filing stating "A bankruptcy case concerning the debtor(s) listed below was filed under |
| 21 | Chapter 13 of the United States Bankruptcy Code, entered on 04/01/2025 at 09:36 AM and filed |
| 22 | on 04/01/2025" and the Notice indicated a filing time of 9:19 a.m. on April 1, 2025, after |
| 23 | completion of the foreclosure sale to Good Neighbor Homes, LLC. On April 14, 2025, NBS |
| 24 | responded to the April 11, 2025 letter to confirm to Debtor's counsel that the foreclosure sale was |

14

1  completed at 9:14 am on April 1, 2025, and there was no violation of the stay, even if the petition

2  was filed at 9:19 am.

3       On April 25, 2025, NBS received a subpoena from Vincent Wood, the attorney for Debtor

4  and on May 2, 2025 NBS retained Wright, Finlay & Zak. LLP ("WFZ") as its counsel to assist

5  with response to the subpoena. On May 5, 2025, WFZ Partner Michelle Mierzwa spoke with Mr.

6  Wood regarding the timing of the foreclosure sale prior to the Debtor's bankruptcy filing and the

7  receipt of a notice of intent to bid from a prospective owner occupant under Civil Code section

8  2924m(c)(2), delaying the identity of the high bidder for the completed sale until May 16, 2025.

9  On May 7, 2025, NBS responded to the Subpoena served by Debtor's counsel, providing copies

10  of documents evidencing compliance with applicable statutes and confirmation that the

11  foreclosure sale was completed at 9:14 a.m. prior to the filing of the Debtor's bankruptcy petition

12  (whether it was at 9:36 a.m. or at 9:19 a.m. on April 1, 2025). The end of the 45-day period for

13  submission of post-sale overbids was May 16, 2025, and the end of the 60-day period to record

14  the trustee's deed was Saturday, May 31, 2025, with the next business day being Monday, June

15  2, 2025. On May 19, 2025, NBS confirmed no other bid funds had been received and that the

16  high bidder at auction, Good Neighbor Home, LLC, was still the high bidder. NBS did not take

17  any action regarding the completed sale during the 45-day period that could be considered a

18  violation of any bankruptcy stay because the information available to NBS between April 1, 2025

19  and May 27, 2025 indicated that the foreclosure sale was completed before the Debtor's

20  bankruptcy was filed.

21       In light of the aggressive position of Mr. Wood in subpoenaing the trustee documents and

22  the apparent equity in the property, WFZ inquired with Good Neighbor Homes, LLC on May 20,

23  2025, about a potential cancellation of the foreclosure sale after WFZ let them know that no post-

24  sale bids had been received and the Trustee's Deed Upon Sale was eligible for issuance. On May

15

1    21, 2025, Good Neighbor confirmed its willingness to rescind upon payment of interest on their

2    funds, and NBS asked the foreclosing lender for approval of the voluntary rescission. On May

3    22, 2024, before any Trustee's Deed had been issued, new co-counsel for Debtor, Andrew J.

4    Christensen, filed the Motion for Damages, alleging for the first time that the bankruptcy petition

5    was filed earlier than 9:19 a.m. on April, 1, 2025. However, since Mr. Andersen mailed the

6    Motion via USPS Ground Services and failed to communicate with NBS or its counsel about the

7    new allegations, NBS and its counsel did not receive the Motion containing these new allegations

8    until May 27, 2028. Immediately following review of the Motion for Damages, NBS' counsel

9    called Mr. Andersen on May 28, 2025 to advise that NBS would confirm cancellation of the

10    foreclosure sale as soon as possible and demanded that Debtor withdraw the Motion as no

11    Trustee's Deed Upon Sale had been issued. On May 30, 2025, NewRez/Shellpoint confirmed

12    approval of the cancellation of the foreclosure, authorizing return of the bid funds. Thereafter,

13    NBS' counsel sent an email to Mr. Christensen and Mr. Wood on May 30, 2025, confirming the

14    sale was being canceled and demanding withdrawal of the Motion. On the same date, Christensen

15    sent a demand for payment of $25,000.00 to withdraw the Motion for Damages. NBS returned

16    the bid funds to Good Neighbor on June 4, 2025, deeming the sale cancelled, and a Trustee's

17    Deed Upon Sale was never prepared or recorded. On June 5, 2025, NBS' counsel sent a copy of

18    the bid fund return correspondence and check to Debtor's counsel, confirming no trustee's deed

19    was or would be issued, but the Debtor has failed and refused to withdraw the Motion. At each

20    step in the statutory process, NBS acted in good faith and evaluated the information available

21    from the bankruptcy court, from Debtor's counsel, and from the eligible post-sale prospective

22    owner occupant to perform due diligence to determine the appropriate status of the foreclosure

23    sale, pursuant to its policies and procedures and applicable law. As soon as NBS was provided

24    new alleged facts regarding the purported earlier filing of the Debtor's bankruptcy petition

16

Case: 25-40964   Doc# 83-1   Filed: 10/08/25   Entered: 10/08/25 16:04:01   Page 64
of 116

1  (despite the inability of NBS to confirm whether the allegations were actually true), NBS arranged

2  for the cancellation of the foreclosure sale, before any trustee's deed was prepared or issued to

3  the high bidder.

4                                          **WRIGHT, FINLAY & ZAK, LLP**

5
   Dated:  July 3, 2025                    By:    _/s/ Arnold L. Graff, Esq._____
6                                                 Arnold L. Graff, Esq.
                                                  Attorneys for Responding Party,
7                                                 NBS DEFAULT SERVICES, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Case: 25-40964    Doc# 83-1    Filed: 10/08/25    Entered: 10/08/25 16:04:01    Page 65
of 116

# **Exhibit J**

## Daniel Marcus

| | |
|---|---|
| **From:** | Olivia Reyes |
| **Sent:** | Monday, May 19, 2025 5:17 PM |
| **To:** | Justin Bruni; Brandon Trout; Tanner Smith |
| **Subject:** | FW: BK Potential Invalidation - 1933 Grass Mountain Ct, Antioch, CA |
| **Attachments:** | audio.mp3 |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Hi,

Tanner – how much do you like this deal? Possible issue due to a BK filing.

https://mprod.wedgewood-inc.com/propertydetails/59422

Brandon – Sale cried at 9:14 am. BK filed at 9:36 am; 25-40564. This is the borrowers first filing. Per the attached voice message and below transcript, the borrower's attorney will most likely contest the sale. An NOI was filed but funds were not received, thus the trustee can issue the deed, and we will have to record before the 60th day. ████████████████████████████████████
████

Thank you

**OLIVIA REYES**
**T**. 310.640.3070 x 2110 | **F**. 424-218-0880


**WEDGEWOOD HOMES**

OREYES@WEDGEWOODHOMES.COM
WWW.WEDGEWOODHOMES.COM

---

**From:** Mercy Gutierrez <Mercy@wedgewoodhomes.com>
**Sent:** Monday, May 19, 2025 2:02 PM
**To:** Olivia Reyes <oreyes@wedgewoodhomes.com>; Tanner Smith <tsmith@wedgewoodhomes.com>; Nathan Reeves <nreeves@wedgewoodhomes.com>
**Cc:** Luci Moise <lmoise@wedgewoodhomes.com>; Deeds <Deeds@wedgewood-inc.com>
**Subject:** BK Potential Invalidation - 1933 Grass Mountain

Hi Olivia,

Please see below for transcribed voicemail.  No NOI received however, there was a BK filed and there is a possibility of an invalidation.

1933 GRASS MOUNTAIN CT

**Regards,**

**MERCY GUTIERREZ**

Senior Director, Acquisition and Title Operations
424.269.3450



MERCY@WEDGEWOODHOMES.COM

WWW.WEDGEWOODHOMES.COM

---

**From:** +1 619-252-0915 <+16192520915>
**Sent:** Monday, May 19, 2025 11:12 AM
**To:** Mercy Gutierrez <Mercy@wedgewoodhomes.com>
**Subject:** Voice Mail (2 minutes and 31 seconds)

Hi, this message is for Michelle Lee. This is Michelle calling on behalf of NBS Default Services and I'm calling regarding a foreclosure sale of property that was conducted in Contra Costa County and you were the successful bidder at the live auction. And the reason for my call is that I wanted to let you know that the there was a bankruptcy that was filed after shortly after the sale was cried and the borrower's attorney has subpoenaed the records of the trustee and it appears that they may be seeking to contest the results of the foreclosure. So I wanted to let you know because there were no other post sale bidders who submitted bids in the SB1079 process and so the trustee would normally issue the deed to you, but we at least wanted to let you know that there was this pending issue. So in the event that you wanted to reconsider whether you want to complete the sale in light of the potential bankruptcy invalidation issue. So anyway, if you could give me a call, I would greatly appreciate it. My name is Michelle. My phone number is 94. Well, let me yeah, 949438 1265 and let me see if I can also find a property address for you. Hang on a second, let me see here. It looks like 1933 Grass Mountain Court in Antioch, CA. So again, please give me a call. If you can't reach me at my desk, you can try my mobile number which is 619-252-0915. Thank you.

You received a voice mail from +1 619-252-0915.

---

**Thank you for using Transcription! If you don't see a transcript above, it's because the audio quality was not clear enough to transcribe.**

Set Up Voice Mail

# **<u>Exhibit L</u>**

## Dane Exnowski

| | |
|---|---|
| **From:** | Gerald Looby <Gerald.Looby@newrez.com> |
| **Sent:** | Friday, May 30, 2025 11:52 AM |
| **To:** | Dayna Hansen; Michelle A. Mierzwa; Tim Nowlin; Shirin Shahidi; Mhari Holtzclaw; PostSaleEscalations; Arnold L. Graff |
| **Cc:** | Kahler, Jessica; Barnes, Braden; Pryor, Chandra; SaveIt |
| **Subject:** | RE: APPROVED- 252-20242335 RE: Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson 1031578955 |
| **Importance:** | High |

The rescission strategy was approved by the Investor, please proceed.

Thanks,

**Jerry Looby**
**Manager – Property Preservation**



**P 832-775-7684**
**gerald.looby@newrez.com**
**Newrez LLC**
**17000 Katy Freeway**
**Houston, TX 77094**



**From:** Dayna Hansen
**Sent:** Thursday, May 29, 2025 5:16 PM
**To:** Michelle A. Mierzwa ; Tim Nowlin ; Shirin Shahidi ; Mhari Holtzclaw ; PostSaleEscalations ; Arnold L. Graff ; Gerald Looby
**Cc:** Kahler, Jessica ; Barnes, Braden ; Pryor, Chandra ; SaveIt
**Subject:** RE: 252-20242335 RE: Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson 1031578955

Hello,

We are confirming with the investor how they want to proceed.

@Gerald Looby can you advise once you have a response?

1

**Thank you,**
**Dayna Hansen**
*Manager- Contested Foreclosure*


**Servicing**

**P** 864.248.6979
dayna.hansen@newrez.com





**From:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>
**Sent:** Wednesday, May 28, 2025 2:13 PM
**To:** Tim Nowlin <Tim.Nowlin@newrez.com>; Shirin Shahidi <shirin.shahidi@newrez.com>; Dayna Hansen
<Dayna.Hansen@newrez.com>; Mhari Holtzclaw <Mhari.Holtzclaw@newrez.com>; PostSaleEscalations
<PostSaleEscalations@newrez.com>; Arnold L. Graff <agraff@wrightlegal.net>
**Cc:** Kahler, Jessica <Jessica.Kahler@NationalBankruptcy.com>; Barnes, Braden
<Braden.Barnes@BonialPC.com>; Pryor, Chandra <Chandra.Pryor@BonialPC.com>; SaveIt
<SaveIt@wrightlegal.net>
**Subject:** [EXTERNAL] 252-20242335 RE: Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson 1031578955
**Importance:** High

External Email. Please use caution before clicking on links or opening attachments.

All,

As a follow-up to the below request, NBS Default still has the bid funds from the foreclosure sale and will be
able to facilitate returning them to the third-party purchaser directly. All we need urgently at this point is for
Shellpoint to confirm that NBS is authorized complete the rescission and return the funds. We will then need to
negotiate with the borrower's counsel for withdrawal of the unnecessary Motion for Sanctions.

2

**Michelle A. Mierzwa, Esq.**
Partner, Compliance Division



4665 MacArthur Court, Suite 200
Newport Beach CA 92660
(949) 438-1265 Direct
(949) 608-9142 Fax
(949) 477-5050 Main Ext. 1042
**Wright, Finlay & Zak: Your Western
Regional Counsel for California, Nevada,
Arizona, Washington, Oregon, Utah, New
Mexico, Montana, Hawaii, Idaho, South
Dakota and Colorado**



PLEASE BE ADVISED THAT THIS FIRM IS
A DEBT COLLECTOR **(California DFPI
License No. 10087-99)** ATTEMPTING TO
COLLECT A DEBT. ANY INFORMATION
OBTAINED WILL BE USED FOR THAT
PURPOSE.
**IF YOU ARE A CONSUMER AND WISH
TO OPT OUT OF EMAIL
COMMUNICATIONS REGARDING YOUR
DEBT, PLEASE REPLY TO THIS EMAIL
WITH "OPT OUT."**

Confidentiality Note: The information contained
in this email is privileged and confidential and is
intended only for the use of the individual or
entity named If the reader of this email is not the
intended recipient, you are hereby notified that
any distribution or copy of this email is strictly
prohibited. If you have received this email in
error, please notify the sender by telephone
immediately at (949) 477-5052 and
arrangements will be made for the return of this
material. Thank You.

**From:** Michelle A. Mierzwa
**Sent:** Wednesday, May 28, 2025 12:27 PM

3

**To:** Tim Nowlin <Tim.Nowlin@newrez.com>; Shirin Shahidi <shirin.shahidi@newrez.com>; Dayna Hansen <Dayna.Hansen@newrez.com>; Mhari Holtzclaw <Mhari.Holtzclaw@newrez.com>; PostSaleEscalations <PostSaleEscalations@newrez.com>; Arnold L. Graff <agraff@wrightlegal.net>
**Cc:** Kahler, Jessica <Jessica.Kahler@NationalBankruptcy.com>; Barnes, Braden <Braden.Barnes@BonialPC.com>; Pryor, Chandra <Chandra.Pryor@BonialPC.com>; SaveIt <SaveIt@wrightlegal.net>
**Subject:** 252-20242335 RE: Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson 1031578955
**Importance:** High

All,

As indicated previously, it appears that the attorney for the borrower is serious about vigorously contesting the validity of the sale. Our office just received the attached Motion filed in the bankruptcy court, asserting that the bankruptcy was actually filed at 9:06am prior to the sale completion at 9:14am, as she was waiting in line for the court to open. While it is possible to oppose this motion, due to the factual dispute regarding the time of filing, the substantial equity in the property, and the legitimate nature of the first-time BK filing, we recommend a voluntary rescission of the sale so that we can negotiate for a dismissal of the attached motion and avoid incurring substantial attorneys' fees and costs to validate the sale. **Please confirm ASAP that Shellpoint will agree to rescind the sale.**

**Michelle A. Mierzwa, Esq.**
Partner, Compliance Division



4665 MacArthur Court, Suite 200
Newport Beach CA 92660
(949) 438-1265 Direct
(949) 608-9142 Fax
(949) 477-5050 Main Ext. 1042
**Wright, Finlay & Zak: Your Western Regional Counsel for California, Nevada, Arizona, Washington, Oregon, Utah, New Mexico, Montana, Hawaii, Idaho, South Dakota and Colorado**



PLEASE BE ADVISED THAT THIS FIRM IS A DEBT COLLECTOR **(California DFPI License No. 10087-99)** ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
**IF YOU ARE A CONSUMER AND WISH TO OPT OUT OF EMAIL COMMUNICATIONS REGARDING YOUR DEBT, PLEASE REPLY TO THIS EMAIL WITH "OPT OUT."**

4

Confidentiality Note: The information contained
in this email is privileged and confidential and is
intended only for the use of the individual or
entity named If the reader of this email is not the
intended recipient, you are hereby notified that
any distribution or copy of this email is strictly
prohibited. If you have received this email in
error, please notify the sender by telephone
immediately at (949) 477-5052 and
arrangements will be made for the return of this
material. Thank You.

**From:** Tim Nowlin <Tim.Nowlin@newrez.com>
**Sent:** Wednesday, May 28, 2025 11:47 AM
**To:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>; Shirin Shahidi <shirin.shahidi@newrez.com>; Dayna
Hansen <Dayna.Hansen@newrez.com>; Mhari Holtzclaw <Mhari.Holtzclaw@newrez.com>;
PostSaleEscalations <PostSaleEscalations@newrez.com>
**Cc:** Kahler, Jessica <Jessica.Kahler@NationalBankruptcy.com>; Barnes, Braden
<Braden.Barnes@BonialPC.com>; Pryor, Chandra <Chandra.Pryor@BonialPC.com>
**Subject:** RE: Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson 1031578955

@PostSaleEscalations Can someone please review and confirm if the below is feasible?

*The borrower filed bankruptcy shortly after the Trustee's Sale was conducted, and counsel for the borrower served
a Subpoena for Production of Documents on NBS Default and asserted his intention to challenge the validity of the
sale. Since a Notice of Intent to Bid was received from an eligible post-sale bidder under Civil Code section 2924m,
the sale could not be finalized until after the 45-day period expired. No post-sale bids have been received, and the
Trustee's Deed could be issued to the original third-party bidder now. However, there remains the threat of
expensive and time-consuming litigation by the borrower, and the third-party purchaser is willing to walk away
from the sale in exchange for a return of bid funds to avoid the potential litigation regarding the validity of the sale in
light of the close-filed BK.*

Thank you,

**Tim Nowlin**
**Contested Foreclosure Supervisor**



**P** (602) 661-4847
**Tim.Nowlin@NewRez.com**
**shellpointmtg.com**

5

**From:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>
**Sent:** Wednesday, May 28, 2025 2:42 AM
**To:** Shirin Shahidi <shirin.shahidi@newrez.com>; Dayna Hansen <Dayna.Hansen@newrez.com>; Tim Nowlin <Tim.Nowlin@newrez.com>; Mhari Holtzclaw <Mhari.Holtzclaw@newrez.com>
**Cc:** Kahler, Jessica <Jessica.Kahler@NationalBankruptcy.com>; Barnes, Braden <Braden.Barnes@BonialPC.com>; Pryor, Chandra <Chandra.Pryor@BonialPC.com>
**Subject:** [EXTERNAL] Re: Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson 1031578955
**Importance:** High

External Email. Please use caution before clicking on links or opening attachments.

All,

Please confirm ASAP if you will agree to rescind the sale and return the foreclosure bid funds.

**Michelle A. Mierzwa, Esq.**
Partner, Compliance Division


4665 MacArthur Court, Suite 200
Newport Beach CA 92660
(949) 438-1265 Direct
(949) 608-9142 Fax
(949) 477-5050 Main Ext. 1042
**Wright, Finlay & Zak: Your Western**
**Regional Counsel for California, Nevada,**
**Arizona, Washington, Oregon, Utah, New**
**Mexico, Montana, Hawaii, Idaho, South**
**Dakota and Colorado**



PLEASE BE ADVISED THAT THIS FIRM IS
A DEBT COLLECTOR **(California DFPI**
**License No. 10087-99)**ATTEMPTING TO
COLLECT A DEBT. ANY INFORMATION
OBTAINED WILL BE USED FOR THAT
PURPOSE.
**IF YOU ARE A CONSUMER AND WISH**
**TO OPT OUT OF EMAIL**
**COMMUNICATIONS REGARDING**
**YOUR DEBT, PLEASE REPLY TO THIS**
**EMAIL WITH "OPT OUT."**

Confidentiality Note: The information
contained in this email is privileged and

6

confidential and is intended only for the use of
the individual or entity named If the reader of
this email is not the intended recipient, you are
hereby notified that any distribution or copy of
this email is strictly prohibited. If you have
received this email in error, please notify the
sender by telephone immediately at (949) 477-
5052 and arrangements will be made for the
return of this material. Thank You.

 

**From:** Shirin Shahidi <shirin.shahidi@newrez.com>
**Sent:** Friday, May 23, 2025 7:28:13 AM
**To:** Dayna Hansen <Dayna.Hansen@newrez.com>; Tim Nowlin <Tim.Nowlin@newrez.com>; Mhari
Holtzclaw <Mhari.Holtzclaw@newrez.com>
**Cc:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>; Kahler, Jessica
<Jessica.Kahler@NationalBankruptcy.com>; Barnes, Braden <Braden.Barnes@BonialPC.com>; Pryor,
Chandra <Chandra.Pryor@BonialPC.com>
**Subject:** RE: Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson 1031578955

Hello,

Can you please assist with this request?

The borrower filed bankruptcy shortly after the Trustee's Sale was conducted, and counsel for the borrower served
a Subpoena for Production of Documents on NBS Default and asserted his intention to challenge the validity of the
sale. Since a Notice of Intent to Bid was received from an eligible post-sale bidder under Civil Code section
2924m, the sale could not be finalized until after the 45-day period expired. No post-sale bids have been received,
and the Trustee's Deed could be issued to the original third-party bidder now. However, there remains the threat of
expensive and time-consuming litigation by the borrower, and the third-party purchaser is willing to walk away
from the sale in exchange for a return of bid funds to avoid the potential litigation regarding the validity of the sale
in light of the close-filed BK.

The high bid at sale was $499,799.40, and the Zillow value of the property is $766,300, so there is plenty of equity
for the borrower to refinance or for Shellpoint to recover the full balance of the loan in a subsequent foreclosure if
the borrower doesn't pay through the BK. It seems that the borrower's counsel is pretty aggressive about the
desire to invalidate the sale, so he will likely file a lawsuit or a motion in the bankruptcy court challenging the
validity of the sale and naming Shellpoint, NBS and the third-party purchaser as parties. We have seen many
examples of borrowers filing lawsuits challenging the validity of foreclosure sales related to the filing of bankruptcy
during the SB 1079 post-auction period and/or within minutes of the live sale auction, and they have been causing
substantial delay and expense. Please confirm that Shellpoint is willing to return the bid funds to the third-party
purchaser and rescind the foreclosure sale. Time is of the essence so a decision can be made and the funds can
be returned prior to the expiration of the 60-day relation back period on May 31, 2025. Counsel for NBS Default,
Michelle Mierzwa, is copied here if you would like to schedule a call to discuss further before making a decision.

7

**Thank you**
**Shirin Shahidi**
**Contested Foreclosure Specialist II**



**P: 864.248.6809 Ext 6809**
**Shirin.shahidi@newrez.com**



**From:** Heather David <Heather.David@newrez.com>
**Sent:** Friday, May 23, 2025 7:22 AM
**To:** Pryor, Chandra <Chandra.Pryor@BonialPC.com>; Tim Nowlin <Tim.Nowlin@newrez.com>; Shirin
Shahidi <shirin.shahidi@newrez.com>; Mhari Holtzclaw <Mhari.Holtzclaw@newrez.com>
**Cc:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>; Kahler, Jessica
<Jessica.Kahler@NationalBankruptcy.com>; Barnes, Braden <Braden.Barnes@BonialPC.com>
**Subject:** RE: Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson
**Importance:** High

@Shirin Shahidi & @Mhari Holtzclaw hi ladies – this file is assigned to Shirin.

Thanks!

**From:** Pryor, Chandra <Chandra.Pryor@BonialPC.com>
**Sent:** Friday, May 23, 2025 7:04 AM
**To:** Heather David <Heather.David@newrez.com>; Tim Nowlin <tim.nowlin@newrez.com>
**Cc:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>; Kahler, Jessica
<Jessica.Kahler@NationalBankruptcy.com>; Barnes, Braden <Braden.Barnes@BonialPC.com>
**Subject:** [EXTERNAL] Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson
**Importance:** High

External Email. Please use caution before clicking on links or opening attachments.

Loan #1031578955

Hello Heather and Tim,

The borrower filed bankruptcy shortly after the Trustee's Sale was conducted, and counsel for the borrower served a Subpoena for Production of Documents on NBS Default and asserted his intention to challenge the validity of the sale. Since a Notice of Intent to Bid was received from an eligible post-sale bidder under Civil Code section 2924m, the sale could not be finalized until after the 45-day period expired. No post-sale bids have been received, and the Trustee's Deed could be issued to the original third-party bidder now. However, there remains the threat of expensive and time-consuming litigation by the borrower, and the third-party purchaser is willing to walk away from the sale in exchange for a return of bid funds to avoid the potential litigation regarding the validity of the sale in light of the close-filed BK.

8

The high bid at sale was $499,799.40, and the Zillow value of the property is $766,300, so there is plenty of equity for the borrower to refinance or for Shellpoint to recover the full balance of the loan in a subsequent foreclosure if the borrower doesn't pay through the BK. It seems that the borrower's counsel is pretty aggressive about the desire to invalidate the sale, so he will likely file a lawsuit or a motion in the bankruptcy court challenging the validity of the sale and naming Shellpoint, NBS and the third-party purchaser as parties. We have seen many examples of borrowers filing lawsuits challenging the validity of foreclosure sales related to the filing of bankruptcy during the SB 1079 post-auction period and/or within minutes of the live sale auction, and they have been causing substantial delay and expense. Please confirm that Shellpoint is willing to return the bid funds to the third-party purchaser and rescind the foreclosure sale. Time is of the essence so a decision can be made and the funds can be returned prior to the expiration of the 60-day relation back period on May 31, 2025. Counsel for NBS Default, Michelle Mierzwa, is copied here if you would like to schedule a call to discuss further before making a decision.

Chandra D. Pryor*
Attorney | Bonial & Associates, P.C.
14841 Dallas Parkway, Suite 350 | Dallas, TX 75254
D: 972.643.6629 | M: 469.233.6572| F: 972.499.8777
Chandra.Pryor@BonialPC.Com
*licensed in California and Texas Federal Courts
Serving the states of California, Kansas, Missouri, Nebraska, Oklahoma & Texas




***Should escalation be required, please contact the following individual: Abbey Dreher at Abbey.Dreher@BonialPC.Com

This communication contains information that is intended only for the recipient named and may be privileged, confidential, subject to the attorney-client privilege, and/or exempt from disclosure under applicable law. If you are not the intended recipient or agent responsible for delivering this communication to the intended recipient, you are hereby notified that you have received this communication in error, and that any review, disclosure, dissemination, distribution, use, or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify us immediately by telephone at 1-800-766-7751 or 1-972-643-6600 and destroy the material in its entirety, whether in electronic or hard copy format.

This firm is a debt collector and any information we obtain from you will be used for that purpose.

You may opt out of receiving further email communications to this address by replying with the word "STOP" in the subject line.

Newrez LLC is an Equal Housing Opportunity Lender, NMLS # 3013 (www.nmlsconsumeraccess.org). Loans will be made or arranged pursuant to our applicable license(s), which may be found at www.Newrez.com. This communication does not constitute a commitment to lend or the guarantee of a specified interest rate. All loan programs and availability of cash proceeds are subject to underwriting and property approval.

This email may contain privileged and confidential information. The information is intended only for the use of the sender's intended recipient(s).

# Exhibit M

| Setup By<br>Comment | Date and Time<br>Additional Notes | | Counter |
|---|---|---|---|
| FC Contested Level 2 | Answer Filed :04/22/2025 | | |
| | Who Filed: 3rd Party Third Party Title Holder | | |
| | Primary allegation on the account?: Bankruptcy | | |
| | Additional allegations on the account:n/a | | |
| | Current Delay & firm's plan to resolve: We are handling the subpoena and correspondence with the law firm representing the borrower and attempting to force us to rescind the sale. | | |
| | Risk: Low | | |
| | On Hold: No | | |
| | Fapa: NO | | |
| | Estimated time to resolve:1 - 3 months | | |
| rwilliams5<br>Contesting Document Type | 5/15/2025  7:49:35AM<br>Answer Filed :04/22/2025 | STANDOUT COMMENT | 3736230725 |
| | Who Filed: 3rd Party Third Party Title Holder | | |
| | Primary allegation on the account?: Bankruptcy | | |
| | Additional allegations on the account:n/a | | |
| | Current Delay & firm's plan to resolve: We are handling the subpoena and correspondence with the law firm representing the borrower and attempting to force us to rescind the sale. | | |
| | Risk: Low | | |
| | On Hold: No | | |
| | Fapa: NO | | |
| | Estimated time to resolve:1 - 3 months | | |
| y80936i<br>INQ email Reply | 4/21/2025  12:23:42PM<br>INQ Final Response-MG Gen Corr<br>sent final response to:<br>missybluh@gmail.com<br>updated tracking | STANDOUT COMMENT | 3703203556 |
| y80936i<br>INQ email Reply | 4/21/2025  12:16:34PM<br>INQ Final Response-MG Gen Corr<br>sent final response to:<br>19259551655@fax2mail.com<br>updated tracking | STANDOUT COMMENT | 3703186349 |
| Admin<br>Freddie Review | 6/6/2024  2:10:01PM<br>Freddie Review Loan | STANDOUT COMMENT | 2401998066 |

Case: 25-40564    Doc# 83-1    Filed: 10/08/25    Entered: 10/08/25 16:04:01    Page 82 of 116

| Setup By | Date and Time | Counter |
|---|---|---|
| Comment | Additional Notes | |

| | | |
|---|---|---|
| Foreclosure Review | Task 280 opened as<br>The firm advised that the debtor is deceased. The borrowers daughter, Melissa Wilkerson, who holds title to the property following their death filed for BK.<br>Chapter 13 - BK Case # 25-40564<br>BK Docs uploaded to OnBase on 5/30/25<br><br>*There is not a previous task for deceased borrower. Opened task to ensure follow up on deceased borrower. Contacted firm to provide additional details on deceased borrower. Launched Deceased Borrower Notification rail and advised the firm to update the rail. | |
| alousidis<br>Foreclosure Review | 5/30/2025  7:40:49PM<br>Task 327 for New BK filing opened.<br><br>The firm advised that the debtor is deceased.<br>The borrowers daughter, Melissa Wilkerson, who holds title to the property following their death filed for BK.<br>Chapter 13 - BK Case # 25-40564<br>BK Docs uploaded to OnBase on 5/30/25 | 3747163753 |
| alousidis<br>FC Sale Rescission Initiated | 5/30/2025  7:30:56PM<br>This loan had been escalated. The firm advised that the borrower filed for BK the day of the sale. Sale time: 9:14am. BK filed 9:36am.<br><br>Firm advised that it would be beneficial to rescind the sale as similar previous rulings favored the borrower and that it would be costly to pursue in court.Previous rilings favored the borrower due to "wait in line" times.<br><br>The escalation was presented to the investor. The investor agreed to the rescission. | 3747161864 |
| Admin<br>E-Blast Standard Sufficiency | 5/30/2025  12:00:00AM<br>missybluh@gmail.com | 3746912171 |
| Admin<br>E-Blast Standard Sufficiency | 5/27/2025  12:00:00AM<br>missybluh@gmail.com | 3744571684 |
| Admin<br>E-Blast Standard Sufficiency | 5/23/2025  12:00:00AM<br>missybluh@gmail.com | 3743339558 |
| Admin<br>E-Blast Standard Sufficiency | 5/21/2025  12:00:00AM<br>missybluh@gmail.com | 3741351410 |
| SMS\dbsmssql02svc<br>Escrow Payment Review | 5/20/2025  9:30:00PM<br>Loan analyzed for State Schedule. New escrow payment of $728.89 effective on 07/01/2025. There were no changes in your taxes or insurance. A shortage of ($845.46) was carried over from prior EA resulting in a total shortage of ($845.44) | 3740903903 |
| Admin<br>Followed Up on Claim On Hold | 5/19/2025  12:00:00AM<br>Placed by Detria Martin with a date of 05/19/2025. | 3740057608 |
| Admin<br>Escrow Analysis Mailed | 5/19/2025  12:00:00AM<br>Batch ID: 1683255 | 3739181920 |
| ADMIN<br>Escrow Analysis Created | 5/17/2025  12:07:58AM | 3738120343 |

# Exhibit N

# Post-Sale – Overbid / Sale Proceeds / Trustee's Deed

The post-sale process involves specific timing based on potential overbidding by 3rd parties after the foreclosure sale has concluded.

Run the report via the link below, export it to Excel, and then reference each sub-section to work files for each stage.

http://opsreportserver.nbscorp.local/Reports/report/Foreclosure%20Reports/California/CA%20Post%20Sale

## Daily – Overbid Outcome - Not Needed – 3rd Party Purchaser will Occupy.

1) Filter the report as follows:
   a. Column G – Overbid Outcome
      i. Filter this column for "Not Needed – 3rd Party Purchaser will Occupy."
2) Refer to the Deed and Sale Funds Disbursement Procedure to send funds and the Trustee's Deed.

## Daily – 15 Day Overbid Deadline Reached

1) Filter the report as follows:
   a. Column G – Overbid Outcome
      i. Filter this column for blank
   b. Column F – Overbid Deadline
      i. Filter this column for dates in the past
2) Refer to the Day 16 Intent to Overbid Review procedure to update the overbid status.

## Daily – 45 Day Overbid Deadline Reached

1) Filter the report as follows:
   a. Column G – Overbid Outcome
      i. Filter this column for Qualified Bid Received
   b. Column H – Qualified Bid Funds Deadline
      i. Filter this column for dates in the past
2) Refer to the Day 45 – Bid Review Procedure to update the overbid status.

## POST SALE (Intent to Overbid)

CHECK FOR PI STEPS FOR BK AND SCRA

Following a foreclosure sale, a tenant and qualifying nonprofits will have 15 days to provide notice to the trustee that one or more of them have the intent to overbid the purchase price. Once a Notice of Intent is provided, the proposed overbidder gets 45 days from the sale date to provide cash or its equivalent (certified funds, etc.) to purchase the property.

NBS00629

3rd Party funds must be held until the expiration of either the 15- or 45-day waiting period. Recording the TRDEED must also be delayed to the expiration of the applicable waiting period, but must be recorded by the 18th day in the first scenario.

Overbidding is not allowed if the purchaser at sale is the "Owner/Occupier." A **Declaration** provided by the purchaser that they intend to occupy the property is sufficient. This also negates both the 15- and 45-day waiting period.

Relevant statute: SB 1079, now codified at Sections 2924h and 2924m and just recently amended by AB 175:

- increases the time to record a TDUS from 15 to 18 days after the sale date if no notice of intent to after-bid is received;
- increases the time to record a TDUS when an "eligible bidder" submits a notice of intent to bid from 45 days to 48 days;
- requires that notice(s) of intent to overbid be submitted as an affidavit or declaration under penalty of perjury and by certified mail, overnight delivery, or some other method that allows for confirmation of the delivery date;
- extends the time at which a TDUS is deemed perfected from 15 to 21 days after the TDUS is recorded, in general;
- extends the time at which a TDUS is deemed perfected from 48 days to 60 days after the TDUS is recorded when a tenant bidder or another eligible bidder has submitted a qualified over-bid;
- defines the deadline to submit a qualified over-bid as 5:00 p.m. on the last day to submit it, either as a qualified "tenant bidder" (day 15) or as another form of qualified "eligible bidder" (day 45);
- limits the information a trustee may/must provide to potential over-bidders to: (1) the date the sale took place; (2) the amount of the highest and last bid; and (3) an address at which the trustee can receive documents sent by U.S. mail or overnight delivery (physical address).

## Day 16 Intent to Overbid Review

1) Open the File in CaseAware and review all documents to see if a Qualified Intent to Overbid has been received. (See Overbid Procedure to determine if an Overbid is qualified).
2) Go to Step **100. Qualified Bid Deadline Reached or Bid Received** and click "Edit."
   a) Did we receive one or more qualified overbids?
      i) No –Check **"Bid Outcome Determined" and "Deadline Reached with No Bid"** Enter today's date as an End Date. Move to Deed and Sale Funds Disbursement.
      ii) Yes – Check **"Qualified Bid Received"** but do not enter an end date.

## Day 45 – Bid Review

1. Review the file to determine if overbid funds were received.
   a. Funds Received – Yes.
      i. Edit **100. Qualified Bid Deadline Reached or Bid Received**
         1. Check Bid Outcome Determined

NBS00630

2. Check Qualified Bid Received
3. End Step and Save
    ii. Did we receive more than one Upset Bid check?
        1. No, go to step c.
        2. Yes:
            a. Complete step **Qualified Bid Funds Received**.
            b. Add the **CA - Additional Qualified Bid Processing Fee** to the Fees Payable screen.
            c. Return funds to original 3PP and those who sent in lower bid amounts.
            d. Update the Sales Results in the Sale Edit Screen
            e. Update the client with the new winning about amount.
            f. Go to Third Party Sale Section of the procedure to distribute funds.

b. Funds Received – No.
    i. Edit Step **100. Qualified Bid Deadline Reached or Bid Received**
        1. Check Bid Outcome Determined.
        2. Check Deadline Reached with No Bid.
        3. Note the file under the Qualified Bid Received section: 45-day deadline reached. No funds received from overbidder.
        4. Enter an End Date for the step and save.
    ii. Cancel Step **Qualified Bid Funds Received**

c. Go to Third Party Sale Section of the procedure to distribute funds.

NBS00631

# Exhibit O


CALIFORNIA MORTGAGE
A S S O C I A T I O N

EVENTS ⌄        EDUCATION ⌄        NEWS & ARTICLES ⌄        ADVOCACY ⌄

ABOUT CMA ⌄        MEMBERSHIP        OUR SPONSORS

RECENT POSTS

Alternatives to Title Insurance – An Added Risk?

How Do Construction Lenders Verify Budgets?

Running Your Business

Congratulations to Mike Belote

Distressed Property Trends: Office

## BY
## MICHELLE A. MIERZWA, ESQ.
## WRIGHT, FINLAY & ZAK, LLP

California's Senate Bill 1079 (the "Bill") was passed by the Legislature at the end of August and signed into law by the Governor on September 28, 2020, despite vigorous industry opposition. The stated purpose of the Bill was to address the perceived "problem" of large investors buying and converting foreclosed properties to rentals, to the detriment of maintaining owner occupancy in residential neighborhoods. The amendments are intended to cover only residential real property comprised of one to four units; so larger residential buildings, vacant land and commercial properties containing no residential living units are outside the scope of the amendments. The amended statutes regarding the foreclosure process are effective January 1, 2021 and through January 1, 2026. As discussed further below, the Bill will significantly impact the foreclosure process on covered residential real property.

RECENT COMMENTS



## NEW BUNDLING PROHIBITION?

As described in the Legislative Counsel's Digest of the Bill: "Existing law generally requires that if the property consists of several lots or parcels, they are to be sold separately unless the deed of trust or mortgage provides otherwise." The Bill prohibits a trustee from bundling properties for the purpose of sale, instead requiring each property to be bid on separately, unless the deed of trust requires otherwise. However, what does this really mean for lenders? In summary, given that the prior language already provided that separate parcels should generally be sold separately, this amendment does not appear to do much. The primary difference is that the only way that properties can be bundled for sale together is if the deed of trust requires that they be bundled. Most existing deeds of trust do not "require" that properties be bundled together so they cannot be sold together going forward. For new loans, few lenders are going to want to obligate themselves at bundling properties by "requiring" it in their new deeds of trust[1].

## NEW POST-AUCTION BID PROCESS FOR ELIGIBLE BIDDERS

This portion of the Bill has the potential to substantially impact the non-judicial foreclosure process for lenders where the post-auction bid process is triggered. As described in the Legislative Counsel's Digest of the Bill with respect to the post-auction process: "If a prospective owner-occupant is not the last highest bidder, the bill would grant eligible tenant buyers, as defined, and other eligible

Case: 25-40564    Doc# 83-1    Filed: 10/08/25    Entered: 10/08/25 16:04:01    Page 90

bidders, as defined, certain rights and priorities to make bids on the property after the initial trustee sale and potentially to purchase it as the last and highest bidder, subject to certain requirements and timelines." What does this really mean for lenders and trustees?

New Civil Code section 2924m provides that a trustee's sale is not final until certain possible outcomes are allowed. For every 1-4 residential property, if a prospective owner-occupant was the high bidder at the live auction, the sale becomes final to the prospective owner-occupant. In the absence of a prospective owner-occupant being the high bidder at the foreclosure sale auction, other eligible bidders can submit a non-binding Notice of Intent to Bid within 15 calendar days of the foreclosure auction, thereafter requiring the trustee to wait until 5:00 pm on the 45th calendar day following the auction to allow for the potential eligible bidder to remit the "bid" funds. However, if during this time period, a group of all eligible tenants bidding jointly through a representative ("tenant group") submits a Notice of Intent to Bid and matches the last and highest bid at the foreclosure auction, the tenant group can "take" title to the property from the foreclosing lender or the initially-successful bidder by paying the equal amount of the high auction bid. If the necessary funds in the amount of the matching bid are remitted to the trustee within the 45-day period, the tenant group would be deemed the successful bidder and receive title to the property. If the tenant group does not remit the necessary funds, the highest of the other eligible bidders would be the successful bidder to receive the Trustee's Deed. The

Case: 25-40564   Doc# 83-1   Filed: 10/08/25   Entered: 10/08/25 16:04:01   Page 91

foreclosure trustee is responsible for collecting Notices of Intent, supporting affidavits and bid funds to determine the high bidder in the post-sale auction process, without the lender's involvement.

If a prospective owner-occupant is the high bidder at the sale or if the tenant group matches the high auction bid inside the 15-day period, there is no impact to the lender as compared with the traditional non-judicial foreclosure process. Similarly, if no prospective owner-occupant, tenant or other eligible bidder submits a Notice of Intent to Bid inside the 15-day period, the traditional high bidder process will ensue. In the foregoing scenarios, the foreclosing lender will be paid out of the sale proceeds, and the third party will take title via Trustee's Deed Upon Sale within 18 days following the auction. However, there are several potential impacts to the lender if the alternative post-sale process is triggered within the 15-day period. First, if the post-sale process is triggered by a Notice of Intent to Bid within the 15-day period:

(1) the lender's ability as the high auction bidder to obtain title to the REO property to commence rehabilitation and marketing will be automatically delayed, or (2) the lender's ability to receive the third party's foreclosure sale auction proceeds to pay off the loan may be delayed for at least an additional 45 calendar days following the sale auction, depending on the risk tolerance of the foreclosure trustee with respect to release of the sale proceeds. This extends the lender's responsibility for payments to loan investors, insurers, property tax authorities, etc. and subjects the property to potential damage, vandalism, and governmental abatement citations

Case: 25-40564    Doc# 83-1    Filed: 10/08/25    Entered: 10/08/25 16:04:01    Page 92
of 116

during this extended period. Second, there is the potential for extended delay where the bidders at the sale auction or post-sale process fail to consummate their bids in light of the uncertainty or lack of knowledge of the new post-auction process, and the foreclosure sale must be renoticed. Third, additional care must be taken in determining the amount of the lender's opening and final bid at foreclosure to ensure that the maximum bid amount takes into account the possibility of a post-auction bidder taking title to the property by placing a bid a minimal amount over the auction bid (or by the tenant group matching the bid). Finally, there is the potential for increased litigation risk as auction bidders and post-auction eligible bidders dispute their relative rights under this rushed, new, and in many ways unclear, statutory process.

## ENHANCED RESTRICTIONS ON POST-FORECLOSURE EVICTION RIGHTS

The Bill creates new Civil Code section 2924n, which provides: "Nothing in this article shall relieve a person deemed the legal owner of real property when the trustee's deed is recorded from complying with applicable law regarding the eviction or displacement of tenants, including, but not limited to, notice requirements, requirements for the provision of temporary or permanent relocation assistance, the right to return, and just cause eviction requirements." What does this mean for lenders or prospective purchasers at foreclosure sales?

While there may have been an argument that post-foreclosure evictions were not subject to the recently-enacted laws governing the eviction and displacement of tenants under 2019's Assembly Bill 1482, this new section appears to end any dispute. Tenants occupying property transferred to a new owner through the non-judicial foreclosure process appear to be entitled to these protections, unless the landlord is otherwise exempt under the provisions of AB 1482. Exemptions include single family homes and condominium units if the owner is not a REIT, corporation or LLC in which at least one member is a corporation. That being said, it remains unclear if a non-exempt new owner would be required to comply with the new eviction restrictions with respect to the borrower who continues to occupy the property. Arguably, the borrower and his or her family members would not be considered tenants under an applicable lease. In any event, counsel should be consulted before moving forward with service of any notice to vacate/quit in light of these provisions of the Bill, existing local rent control restrictions and in light of the potential impact of Assembly Bill 3088's COVID-related non-payment of rent restrictions.

What is the potential net effect of the new post-foreclosure bid process and the new eviction requirements? With the potential that an investor's money could be tied up for 45 days, it is expected that fewer investors will competitively bid at foreclosure sales. Unfortunately, this will likely chill the bidding at the foreclosure sale, reducing the amount of excess proceeds and negatively affecting the unfortunate borrowers who just lost their properties. Further, the complicated post-sale

Case: 25-40564    Doc# 83-1    Filed: 10/08/25    Entered: 10/08/25 16:04:01    Page 94
of 116

bidding process coupled with the need to have cash on hand within 45 days of the sale is likely to scare off most interested owner occupant or tenant bidders. Add in that the unsophisticated eligible bidder will now have to comply with California's rent control statute, it's hard to envision any tenant or owner occupant willing to take advantage of the new laws.

## INCREASED PENALTIES RELATED TO POST-FORECLOSURE RESIDENTIAL PROPERTY CONDITION

As described in the Legislative Counsel's Digest of the Bill: "This bill would increase the above-described civil fine to up to $2,000 per day for the first 30 days, and up to a maximum of $5,000 per day thereafter, subject to the discretion of the governmental entity levying the fine." What does this mean for lenders?

The Bill amends Civil Code section 2929.3 to provide with respect to residential properties[2] : "The maximum civil fine authorized by this section for each day that the owner fails to maintain the property, commencing on the day following the expiration of the period to remedy the violation established by the governmental entity, is as follows:

    i. Up to a maximum of two thousand dollars ($2,000) per day for the first 30 days.

    ii. Up to a maximum of five thousand dollars ($5,000) per day thereafter." [Emphasis

Case: 25-40564    Doc# 83-1    Filed: 10/08/25    Entered: 10/08/25 16:04:01    Page 95
of 116

added].

The Bill provides with respect to the notice periods prior to imposition of fines:

2. If the governmental entity chooses to impose a fine pursuant to this section, it shall give the legal owner, prior to the imposition of the fine, a notice containing the following information:

  ▪ Notice of the alleged violation, including a detailed description of the conditions that gave rise to the allegation.

  ▪ Notice of the entity's intent to assess a civil fine if the legal owner does not do both of the following:

    ▪ Within a period determined by the entity, consisting of not less than 14 business days following the date of the notice, commence action to remedy the violation and notify the entity of that action. This time period shall be extended by an additional 10 business days if requested by the legal owner in order to clarify with the entity the actions necessary to remedy the violation.

    ▪ Complete the action described in clause (i) within a period of no less than 16 business days following the end of the period set forth in clause (i).

  ▪ The notice required under this paragraph shall be mailed to the address provided in the deed or other instrument as specified in

Case: 25-40564    Doc# 83-1    Filed: 10/08/25    Entered: 10/08/25 16:04:01    Page 96

subdivision (a) of Section 27321.5 of the Government Code, or, if none, to the return address provided on the deed or other instrument.

3. The governmental entity shall provide a period of not less than the time set forth in clauses (i) and (ii) of subparagraph (B) of paragraph (2) to remedy the violation prior to imposing a civil fine and shall allow for a hearing and opportunity to contest any fine imposed. In determining the amount of the fine, the governmental entity shall take into consideration any timely and good faith efforts by the legal owner to remedy the violation."

Thus, the Bill substantially increases the potential fines for a lender's failure to maintain property acquired through foreclosure by increasing the maximum daily fines for the first thirty-day period following the remedy period from $1,000.00 to $2,000.00 and by increasing the maximum daily fines after the thirty day period from $1,000.00 to $5,000.00. In sum, the Bill provides additional incentives (if any were actually necessary over the previously-existing fines of $1,000.00 per day!) for lenders who obtain title to property post-foreclosure to ensure that the property is properly maintained during the period it is marketed for resale.

In summary, the Bill contains several new provisions that substantially impact lenders during and after the traditional non-judicial foreclosure process. For additional questions about particular loans and properties in your portfolio that may be impacted by the Bill, please reach out to Michelle Mierzwa at

mmierzwa@wrightlegal.net or Robert Finlay at rfinlay@wrightlegal.net.

---

Michelle A. Mierzwa is a Partner in Wright, Finlay & Zak's Compliance Division, providing state and federal compliance and regulatory counsel in the Western States. In 22 years of practice, she has resolved litigation through jury and bench trials and appellate practice, created a legal department for one of the largest foreclosure trustees in the West, coordinated compliance audits, and managed the California branch of a national law firm.

## ENDNOTES

1) In addition, the rights of junior lienholders under Civil Code sections 2899 and 3433 may impact the requirement to sell real property security parcels separately.

2) While the post-sale bid process in Civil Code section 2924m is limited to one-to four-unit residential properties, the post-foreclosure fine provisions in Civil Code section 2929.3 relate to residential property of any size, not limited to one-to four-units. Civil Code section 2929.3: "(a) (1) A legal owner shall maintain vacant residential property purchased by that owner at a foreclosure sale once that sale is deemed final or acquired by that owner through foreclosure under a mortgage or deed of trust...." While this section applies to all sizes of residential properties, it does not apply to commercial properties.



California Mortgage Association
2520 Venture Oaks Way, Suite 150
Sacramento, CA 95833

  

## QUICK LINKS

Home
About
Contact
Join CMA

## UTILITY PAGES

Events
Industry News
Donate to PAC
Member Directory
Find a Lender
Find a Vendor

Privacy Policy

Copyright © 2023 - 2025 CALIFORNIA MORTGAGE ASSOCIATION

# <u>Exhibit P</u>

 Q Search

 Home

 My Network

Jobs

Messaging

Notifications





**Michelle Mierzwa**
Partner, Wright Finlay & Zak,
LLP & Board Member of
United Trustees Assoc.

**Connect**

**Message**

👍😊 31

1 comment · 3 reposts

👍 Like        💬 Comment        🔁 Repost        ➤ Send

 **Michelle Mierzwa** · 2nd                    **+ Follow**    ···
Partner, Wright Finlay & Zak, LLP & Board Member of ...
6mo · 🌐

Really enjoyed the dialogue with Judge Lastreto during our panel on his In re Hager decision at the Northern California Bankruptcy Conference in Sacramento today. Thank you to Board Membwr Paul Boudier for the invitation!







# **Exhibit Q**

 Gmail

## Fwd: FW: 9462-6555 - Fax - Wilkerson Response
2 messages

---------- Forwarded message ---------
From: **Pryor, Chandra** <Chandra.Pryor@bonialpc.com>
Date: Mon, Apr 14, 2025 at 1:52 PM
Subject: FW: 9462-6555 - Fax - Wilkerson Response
To: Nicole Zorrilla <nicole@shepwoodlaw.com>
Cc: Rogers, Leigh <Leigh.Rogers@nationalbankruptcy.com>, Kahler, Jessica <Jessica.Kahler@nationalbankruptcy.com>

Nicole,

It is my client's position that as long as the TDUS is recorded within the appropriate period (60-day period if SB 1079 is triggered), the relation back doctrine now applies to all types of eligible bidders and this sale would be deemed final as of 9:14 am and the BK was filed at 9:36 am . The sale occurred prior to the bankruptcy filing therefore no violation of the automatic stay has occurred.

Respectfully,

Chandra D. Pryor*

Attorney | Bonial & Associates, P.C.

14841 Dallas Parkway, Suite 350 | Dallas, TX 75254

D: 972.643.6629 | M: 469.233.6572| F: 972.499.8777

Chandra.Pryor@BonialPC.Com

*licensed in California and Texas Federal Courts

Serving the states of California, Kansas, Missouri, Nebraska, Oklahoma & Texas






***Should escalation be required, please contact the following individual: Abbey Dreher at Abbey.Dreher@BonialPC.Com

This communication contains information that is intended only for the recipient named and may be privileged, confidential, subject to the attorney-client privilege, and/or exempt from disclosure under applicable law. If you are not the intended recipient or agent responsible for delivering this communication to the intended recipient, you are hereby notified that you have received this communication in error, and that any review, disclosure, dissemination, distribution, use, or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify us immediately by telephone at 1-800-766-7751 or 1-972-643-6600 and destroy the material in its entirety, whether in electronic or hard copy format.

This firm is a debt collector and any information we obtain from you will be used for that purpose.

You may opt out of receiving further email communications to this address by replying with the word "STOP" in the subject line.

---

**From:** 8x8 Support Team <noreply@8x8.com>
**Sent:** Friday, April 11, 2025 3:54 PM
**To:** FAX 972.643.6699 <9726436699@NBSDefaultServices.com>
**Subject:** Your internet fax number 19726436699 has a new message from 13055038807

Dear  DallasFax 9726436699

Your Internet Fax number 19726436699 has a new message.

Sender: 13055038807

Pages: 21

Faxes over 150 pages cannot be received as email attachments. If the fax is not attached, please click here: https://cloud8.8x8.com/fax?customerId=0012J00002alFcqQAE& subscriptionId=ynnCCPoMSwWkow_SIrytqQ&faxId=5839a69667f97c9519caae4f720454e5 to download the fax.

**Important**: Faxes are only stored online for 60 days. Be sure to download and save any faxes you want to keep.

Should you have any customer service or technical support questions, please contact us at 1-888-898-8733.

Sincerely,

Your 8x8 Support Team

---

**2 attachments**


**image002.jpg**
23K


**fax.pdf**
1229K

---

█████████████████████████████                    ███████████████████
████████████████████████████████████████████████████

██████████████████████

---------- Forwarded message ---------
From: **Pryor, Chandra** <Chandra.Pryor@bonialpc.com>
Date: Mon, Apr 14, 2025 at 2:25 PM
Subject: RE: FW: 9462-6555 - Fax - Wilkerson Response
To: Nicole Zorrilla <nicole@shepwoodlaw.com>
CC: Rogers, Leigh <Leigh.Rogers@nationalbankruptcy.com>, Kahler, Jessica <Jessica.Kahler@nationalbankruptcy.com>, Gina Morris <gina@shepwoodlaw.com>, Vincent Wood <vince@shepwoodlaw.com>, Jim Shepherd <jim@shepwoodlaw.com>

We received an affidavit of compliance with Civ. Code 2924m which indicates that the winning bidder is a prospective owner occupant as defined by Civ Code 2924m(a)(1).

Chandra D. Pryor*

Attorney | Bonial & Associates, P.C.

14841 Dallas Parkway, Suite 350 | Dallas, TX 75254

D: 972.643.6629 | M: 469.233.6572| F: 972.499.8777

Chandra.Pryor@BonialPC.Com

*licensed in California and Texas Federal Courts

Serving the states of California, Kansas, Missouri, Nebraska, Oklahoma & Texas







***Should escalation be required, please contact the following individual: Abbey Dreher at Abbey.Dreher@BonialPC.Com

This communication contains information that is intended only for the recipient named and may be privileged, confidential, subject to the attorney-client privilege, and/or exempt from disclosure under applicable law. If you are not the intended recipient or agent responsible for delivering this communication to the intended recipient, you are hereby notified that you have received this communication in error, and that any review, disclosure, dissemination, distribution, use, or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify us immediately by telephone at 1-800-766-7751 or 1-972-643-6600 and destroy the material in its entirety, whether in electronic or hard copy format.

This firm is a debt collector and any information we obtain from you will be used for that purpose.

You may opt out of receiving further email communications to this address by replying with the word "STOP" in the subject line.

---

**From:** Nicole Zorrilla <nicole@shepwoodlaw.com>
**Sent:** Monday, April 14, 2025 4:13 PM
**To:** Pryor, Chandra <Chandra.Pryor@BonialPC.com>
**Cc:** Rogers, Leigh <Leigh.Rogers@NationalBankruptcy.com>; Kahler, Jessica <Jessica.Kahler@NationalBankruptcy.com>; Gina Morris <gina@shepwoodlaw.com>; Vincent Wood <vince@shepwoodlaw.com>; Jim Shepherd <jim@shepwoodlaw.com>
**Subject:** Re: FW: 9462-6555 - Fax - Wilkerson Response

Chandra,

Who was the winning bidder? Were they a qualified bidder?

[Quoted text hidden]

---



**image001.jpg**
23K

# Exhibit R

1  McCalla Raymer Leibert Pierce, LLP
   Dane Exnowski, SBN 281996
2  301 E. Ocean Blvd, Suite 1720
   Long Beach, California 90802
3  Telephone/Fax: 562 661-5060/562 983-7593
   dane.exnowski@mccalla.com
4
   Attorneys for SMS
5  NewRez LLC, dba Shellpoint Mortgage Servicing

6

7                    **UNITED STATES BANKRUPTCY COURT**

8          **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

9    In Re                                    Case No.: 25-40564

10   Melissa Marie Wilkerson,                 Chapter 13

11                        Debtor.
                                              **SMS'S RESPONSE**
12                                            **TO DEBTOR'S REQUEST FOR**
                                              **INTERROGATORIES, SET ONE**
13

14   **PROPOUNDING PARTY:**        **DEBTOR**

15   **RESPONDING:**               **NEWREZ LLC, DBA SHELLPOINT MORTGAGE**
16                                 **SERVICING (or "SMS")**

17   **SET NO.:**                  **ONE**

18

19
     **TO: DEBTOR:**
20

21       **PLEASE TAKE NOTICE** that NewRez LLC, dba Shellpoint Mortgage Servicing

22   ("SMS") hereby responds to Debtor's Request for Interrogatories.

23                          **PRELIMINARY STATEMENTS**

24       SMS has not completed its investigation into the subject matter raised by these Discovery
25
     Requests. SMS's responses reflect only the current state of its knowledge. If the instant action
26
     proceeds, and discovery is propounded by SMS, SMS anticipates that further facts may be
27
28   discovered, and, without in any way obligating itself to do so SMS reserves the right to modify

     SMS'S RESPONSE TO DEBTOR'S REQUEST FOR INTERROGATORIES, SET ONE - 1

1  or supplement its responses to the Discovery Requests with such pertinent information and

2  documents as it may subsequently discover. Furthermore, the following responses and

3  documents are provided without prejudice to use at any later hearing or trial of this matter any

4

5  subsequently discovered information or document omitted from the response as a result of

6  mistake, error, oversight, or inadvertence. Accordingly, SMS further reserves its right to

7  subsequently produce additional facts and evidence to object on appropriate grounds to the

8  introduction of any evidence included in these Responses.

9      SMS has not provided responses to the Discovery Requests set forth below to the extent

10

11  that they seek information that is irrelevant to subject matter of this dispute and are not

12  reasonably calculated to lead to the discovery of admissible evidence. SMS objects to the

13  Discovery Requests to the extent they seek documents protected from discovery by the attorney-

14  client privilege, the work-product doctrine, or any applicable state, federal or constitutional

15  privileges. SMS further objects to the Discovery Requests to the extent they seek information,

16

17  the disclosure of which would violate the constitutional, statutory or common law privacy or

18  associational rights of SMS or any person or entity.

19                          **GENERAL OBJECTIONS**

20      SMS objects to the Discovery Requests on the following grounds and the following

21  Responses incorporate, and are to be read in light of, these General Objections:

22

23      1.   No response to an individual request is intended, nor shall any response be

24           construed, as a waiver by SMS of all or any part of any objection to any other

25           request.

26      2.   The Responses herein are accurate as of the date of this document. However,

27           discovery is an ongoing matter. SMS expressly reserves the right to supplement

28

SMS'S RESPONSE TO DEBTOR'S REQUEST FOR INTERROGATORIES, SET ONE - 2

1       these Responses.

2       3.     SMS objects to the Discovery Requests in their entirety to the extent that they

3
4           demand production of privileged documents, including documents protected by

5           the attorney-client privilege, documents containing attorney work product,

6           documents prepared in anticipation of litigation and any applicable

7           commonwealth, state, federal or constitutional privileges.

8       4.     SMS objects to the Discovery Requests in their entirety to the extent that they

9
10           call for the production of documents which contain or disclose confidential and/or

11           proprietary information of a non-public and commercially sensitive nature

12           relating to the financial matters and status of SMS.

13       5.     SMS objects to the Discovery Requests to the extent that they do not comply with

14           the requirements of the Federal Rules of Civil Procedure, are overly burdensome

15           or not relevant to any claim.

16
17 Without waiving any of the foregoing General Objections, each of which is incorporated into

18 each of the following specific objections and Responses, SMS objects and/or responds to the

19 Discovery Requests as follows:

20
21 **REQUEST FOR INTERROGATORIES**

22 **REQUEST FOR INTERROGATORY NO. 1:**

23       Identify the time and date that YOU first learned of this BANKRUPTCY filing and state

24 the manner in which YOU first received notice or learned of the BANKRUPTCY.

25       **RESPONSE:** Upon initial investigation, NBS received an email on April 11, 2025 with

26 the formal notice and demand letter issued to relevant parties wherein the Debtor expressly

27 represented that her petition was filed at 9:19 a.m. on April 1, 2025. Also, SMS's system records

28 show that SMS logged the bankruptcy on 5/30/2025 via a 5/28/2025 email from its foreclosure

trustee regarding the instant motion.

SMS'S RESPONSE TO DEBTOR'S REQUEST FOR INTERROGATORIES, SET ONE - 3

## REQUEST FOR INTERROGATORY NO. 2:

State all facts supporting YOUR contention that YOUR actions relating to the foreclosure of the SUBJECT PROPERTY did not violate the automatic stay.

**RESPONSE:** Please refer to OPPOSITION filed to the bankruptcy case filed concurrently herewith. Please also see response to Interrogatory No. 1, above. Subject to the foregoing, the foreclosure sale was held pre-petition (and otherwise without knowledge of the bankruptcy) and post-petition acts to perfect a pre-petition sale that would have priority as provided under 11 USC § 362(b)(3) and relevant case law, as in the case here, are not stay violations. In the alternative, Debtor is equitably estopped from asserting sale time of 9:06 am as she already represented a filing time of 9:19 am. Finally, in the alternative, to the extent there was a technical violation there are no damages, or there should be no award of damages, pursuant to applicable case law; as soon as SMS became aware of the alleged 9:06 am filing time, it cancelled the sale, with respect to which no trustee's deed was issued or recorded.

## REQUEST FOR INTERROGATORY NO. 3:

State all acts supporting YOUR contention that YOUR actions relating to the foreclosure of the SUBJECT PROPERTY were not willful violations of the automatic stay.

**RESPONSE:** Please see response to Interrogatory No. 1 and 2, above.

## REQUEST FOR INTERROGATORY NO. 4:

If YOU have policies and procedures for handling foreclosure in California related to bankruptcy filings and California Civil Codes §2924m and/or §2924h, identify all DOCUMENTS that evidence such polices and procedures.

**RESPONSE:** there is no evidence of any such polices and procedures to provide.

## REQUEST FOR INTERROGATORY NO. 5:

Describe all polices and procedures YOU have for dealing with a foreclosure when a bankruptcy case is filed after the auction starts but before the conclusion of the auction on the 15th and 45th day under §2924m.

**RESPONSE:** compliance with all applicable law and/or regulations.

SMS'S RESPONSE TO DEBTOR'S REQUEST FOR INTERROGATORIES, SET ONE - 4

**REQUEST FOR INTERROGATORY NO. 6:**

Identify the person(s) responsible for creating the policies and procedures for handling foreclosures in California related to bankruptcy filings and California Civil Code §2924m and/or §2924h.

**RESPONSE:** there are no persons responsible for creating the policies and procedures for handling foreclosures in California related to bankruptcy filings and California Civil Code §2924m and/or §2924h for SMS.

**REQUEST FOR INTERROGATORY NO. 7:**

Explain all actions taken by NBS to deem the sale final and/or accept the bid of Good Neighbor Homes, LLC in relation to the foreclosure of the SUBJECT PROPERTY.

**RESPONSE:** SMS objects to the form of question, as SMS has no personal knowledge of the details of all internal actions by NBS. Debtor should propound NBS as to the same.

**REQUEST FOR INTERROGATORY NO. 8:**

If YOU contend that any acts of NBS related to the allegations in the Motion were outside the scope of its agency authority, identify each such act.

**RESPONSE:** It is not known as this time if SMS contends that any acts of NBS related to the allegations in the Motion were outside the scope of its agency authority,

**REQUEST FOR INTERROGATORY NO. 9:**

Identify the current owner/beneficiary/investor of the SUBJECT LOAN.

**RESPONSE:** SMS is the holder of the note and beneficiary under the deed of trust.

**REQUEST FOR INTERROGATORY NO. 10:**

Identify the entity on whose behalf YOU service the SUBJECT LOAN.

**RESPONSE:** SMS.

DATED: 7/07/2025                    Respectfully Submitted,

                                   By: _____/s/ Dane Exnowski_____

SMS'S RESPONSE TO DEBTOR'S REQUEST FOR INTERROGATORIES, SET ONE - 5

1    McCalla Raymer Leibert Pierce, LLP
     Dane Exnowski, SBN 281996
2    301 E. Ocean Blvd, Suite 1720
     Long Beach, California 90802
3    Telephone/Fax: 562 661-5060/562 983-7593
     dane.exnowski@mccalla.com

4    I am authorized to make this verification for and on behalf of SMS, and I make this verification

5    for that reason. I am informed and believe, and on that basis allege, that the matters stated in the

6    foregoing document are true to the best of my knowledge at the time of signing this document.

7

8

9    I declare under the penalty of perjury under the laws of the United States that the foregoing is

10   true and correct.

11                                    By: *Lucas Bennett*

12                                    NAME: Lucas Bennett
                                      TITLE: Document Verification Specialist
13                                    DATE: 06/27/2025

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMS'S RESPONSE TO DEBTOR'S REQUEST FOR INTERROGATORIES, SET ONE - 6

# Exhibit S

## Wilkerson - Stay Violation

Current Totals: | 13.60 | $6,596.00

| Date | User | Description | Contract Rate | Time | Billing Amount |
|------|------|-------------|---------------|------|----------------|
| 04/01/25 | EVW | Research issues for letter to be sent to NBS Default Services | $485.00 | 1.00 | $485.00 |
| 04/04/25 | EVW | Research issues for letter to be sent to NBS Default Services | $485.00 | 0.30 | $145.50 |
| 04/05/25 | EVW | Research issues for letter to be sent to NBS Default Services | $485.00 | 0.50 | $242.50 |
| 04/10/25 | EVW | Research issues for letter to be sent to NBS Default Services | $485.00 | 0.20 | $97.00 |
| 04/11/25 | EVW | Draft Letter to be sent to NBS Default Services | $485.00 | 1.00 | $485.00 |
| 04/15/25 | EVW | Draft Motion for examination of NBS pursuant to Rule 2004 | $485.00 | 2.20 | $1,067.00 |
| 05/07/25 | EVW | Review Documents received from NBS pursuant to Rule 2004 | $485.00 | 1.30 | $630.50 |
| 05/19/25 | EVW | Call with Debtor to discuss facts of the case | $485.00 | 0.40 | $194.00 |
| 05/20/25 | EVW | Review Documents Produced by 2004 Examination | $485.00 | 0.50 | $242.50 |
| 05/28/25 | EVW | Telephone call with AJC re:  call with Aty Mierzwa | $485.00 | 0.50 | $242.50 |
| 05/29/25 | EVW | Review Draft of Discover Requests and provide feedback to AJC | $485.00 | 0.90 | $436.50 |
| 06/12/25 | EVW | Telephone call with AJC | $485.00 | 0.70 | $339.50 |
| 06/26/25 | EVW | Review Opposition Brief to Motion | $485.00 | 0.50 | $242.50 |
| 07/07/25 | EVW | Review Objection to Opposition to Motion | $485.00 | 0.60 | $291.00 |
| 08/01/25 | EVW | Prepare for and attend Hearing on Motion for Damages | $485.00 | 1.20 | $582.00 |
| 09/12/25 | EVW | Prepare for and attend Hearing on Evidenciary Matters | $485.00 | 1.30 | $630.50 |
| 10/08/25 | EVW | Draft Declaration | $485.00 | 0.50 | $242.50 |