Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorneys for Debtor Melissa Wilkerson

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| In the Matter of: | Bankruptcy Case: 25-40564 CN |
|---|---|
| Melissa Wilkerson<br>        Debtor_____ | Chapter 13<br><br>**Reply re Debtor's Motion for Summary Judgment on Debtor's Motion for Damages for Violation of the Automatic Stay**<br><br><u>Hearing REMOTE OR IN PERSON</u><br>Date: November 7, 2025<br>Time: 11:00 a.m.<br>Place: Courtroom 215<br>1300 Clay Street, Oakland CA 94612<br>The Honorable Charles Novack |

    Melissa Wilkerson hereby files this Reply brief regarding her *Motion for Summary Judgment* (Dkt 83) on her *Motion for Damages for Violation of the Automatic Stay* (Dkt 38) against NewRez LLC dba Shellpoint Mortgage Servicing, NBS Default Services, LLC, (jointly "Creditors" or "Respondents") for proceeding with a foreclosure sale in violation of the automatic stay. Shellpoint filed an opposition, docket 88. NBS filed a "Notice of Joinder" to Shellpoint's Opposition, docket 89.

## Shellpoint's Opposition

    Shellpoint does not dispute that the violation of the stay was willful. The Court may grant the MSJ as to liability as uncontested.

### 1. EQUITABLE ESTOPPEL DOES NOT APPLY

    Shellpoint argues Debtor should be equitably estopped from asserting damages for attorney's fees. Equitable estoppel does not apply to stay violations as it is

-1-

essentially a strict liability statute in the sense that any act taken in violation of the stay is void regardless of willfulness, and damages for a willful violation only require knowledge of the bankruptcy and a willful act.

The estoppel argument boils down to Shellpoint claiming a good faith belief they were not violating the stay based on a 9:19 a.m. filing time and arguments about §2924m. This not a defense: "No specific intent is necessary, and a creditor's good faith belief that the stay was not being violated is not relevant to the issue of willfulness." *Stanwyck v. Bogen (In re Stanwyck)*, 450 B.R. 181, 192 (Bankr. C.D. Cal. 2011).

The Ninth Circuit has ruled that a creditor is liable for a willful violation of the stay even where it relied on the advice of counsel and "creditors entertained a good faith belief" in a legal argument that they were not violating the stay because a state court judge entered an order lifting the stay. *In re Taylor*, 884 F.2d 478, 483 (9th Cir. 1989). The Ninth Circuit in *Taylor* affirmed that "the stay is a broad provision which requires a creditor to seek a *judicial* determination of its right to proceed." *Id*. Here, Respondents should have sought a determination from this Court as to whether the stay applied and their arguments under §2924m rather than proceed with the auction.

Shellpoint cites no case law where equitable estoppel was applied to a stay violation as a defense, nor that it was successful.

## 2. EQUITABLE ESTOPPEL CANNOT BE ESTABLISHED

Even if estoppel were to apply, the estoppel argument is meritless because estoppel is premised on intentionally deceptive conduct designed to induce reliance harmful to Shellpoint and helpful to Debtor which is absurd here because Debtor did not try to deceive Shellpoint into violating the stay, nor did it have that effect.

The second element of estoppel is that "He must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended." This element cannot be established here because the intent of Debtor's letter is that the sale be cancelled, which Shellpoint did not do. Shellpoint did the opposite of what Debtor asked and intended, which defeats estoppel.

-2-

Where there is no intent to deceive, as here, estoppel can only be established where a party "so act that the party asserting the estoppel has a right to believe it is so intended." Here, Shellpoint has no right to believe that Debtor intended Shellpoint to act on any information in the letter to continue the sale in violation of the stay because the letter expressly demands the cancellation of the ongoing sale which is the action Debtor wanted Shellpoint to take.

The fourth element of estoppel cannot be established because Shellpoint did not rely on Debtor's conduct to its injury because they clearly disputed the 9:06 am filing time in their opposition to the Motion for Sanctions, and they obviously would have disputed it then and still refused to cancel the sale on the same grounds. Shellpoint relied on its own frivolous legal arguments about §2924m trying to get away with violating the stay until Debtor put up a fight.

Shellpoint's claim that they decided to cancel the sale upon learning of the 9:06 a.m. filing time is unsupported by any evidence. It is an argument of counsel only and does not rise to the level of a genuine dispute of material fact. It is irrelevant as to the legal standards for a willful violation of the stay which is only knowledge of the bankruptcy and an intentional act. It is also preposterous to believe that Shellpoint would have cancelled the sale instead of fight disputed facts in the unusual case about the filing time because Shellpoint fought based on frivolous legal arguments under §2924m and §2924h where no legal argument of any kind is a defense to liability for willfully violating the stay.

The evidence shows conclusively that the sale was not cancelled on account of the 9:06 filing time, but as a litigation tactic to avoid paying Debtor's fees. **Exhibit L** to the MSJ includes emails produced by Shellpoint in response to Debtor's discovery requests for documents, and they demonstrate that Shellpoint and NBS only chose to cancel the foreclosure because of the threat of litigation, not because they found out about a 9:06 am filing time and suddenly decided to honor the automatic stay. On May 23, 2025, the day after this Motion was filed, attorney Chandra Pryor of Bonial &

Associates emailed many Shellpoint employees the following:

> "counsel for the borrower served a Subpoena for Production of Documents on NBS Default and asserted his intention to challenge the validity of the sale. […] No post-sate bids have been received, and the Trustee's Deed could be issued to the original third-party bidder now. However, ***there remains the threat of expensive and time-consuming litigation by the borrower***, and the third-party purchaser is willing to walk away from the sale in exchange for a return of bid funds to avoid the potential litigation regarding the validity of the sale in light of the close-filed BK. […] ***It seems that the borrower's counsel is pretty aggressive*** about the desire to invalidate the sale, ***so he will likely file a lawsuit or a motion*** in the bankruptcy court challenging the validity of the sale and naming Shellpoint, NBS and the third-party purchaser as parties. We have seen many examples of borrowers filing lawsuits challenging the validity of foreclosure sales related to the filing of bankruptcy during the SB 1079 post-auction period and/or within minutes of the live sate auction, and ***they have been causing substantial delay and expense***." (emphasis added)   **Exhibit L**.

This shows that the decision was not based on any desire to honor or abide by the automatic stay to follow the law, nor based on accepting the 9:06 filing time, but was because Debtor's counsel was intent on protecting her rights.  NBS and Shellpoint did not decide on May 23rd (the day of these emails) to cancel the sale, but only decided to cancel the sale a week later after Debtor refused their counsel's demand to withdraw the motion.

Five days later on May 28, 2025, NBS attorney Michelle Mierzwa emailed Shellpoint again in that email chain stating:

> "As indicated previously, it appears that ***the attorney for the borrower is serious about vigorously contesting the validity*** of

the sale. Our office just received the attached Motion filed in the bankruptcy court, asserting that the bankruptcy was actually filed at 9:06am prior to the sale completion at 9:14am, as she was waiting in line for the court to open. While it is possible to oppose this motion, due to the factual dispute regarding the time of filing, the substantial equity in the property and the legitimate nature of the first-time BK filing, *__we recommend a voluntary rescission of the sale so that we can negotiate for a dismissal of the attached motion and avoid incurring substantial attorneys' fees and costs to validate the sale__*." (emphasis added) **Exhibit L**.

This evidence establishes that they considered challenging the filing time and pursuing the litigation to validate the sale under their arguments regarding §2924m and §2924h and cancelled the sale out of fear of litigation costs and to use as negotiating leverage for dismissal of the motion. Thereafter on May 30, 2025, Shellpoint (NewRez) emailed their counsel that "The rescission strategy was approved by the Investor, please proceed" showing this advice was accepted. **Exhibit L**.

On April 21, 2025 and May 15, 2025, Shellpoint's servicing notes from its system of record show that it was aware of the Rule 2004 examination subpoena and Debtor's intention to challenge the sale, with notes stating "We are handling the subpoena and correspondence with the law firm representing the borrower and attempting to force us to rescind the sale" and Shellpoint marked this note as "Risk: Low." **Exhibit M**. However, the emails between Shellpoint and NBS and Bonial & Associates attached as **Exhibit L** show that by May 23, 2025, after the Motion for Sanctions was filed, that they marked all the emails with headings stating "Importance: High." This demonstrates Shellpoint and NBS only started to take things seriously because of the threat of litigation, not because of the 9:06 filing time.

### 3. SHELLPOINT'S OBJECTIONS TO ATTORNEY'S FEES.

Shellpoint argues that attorney's fees should not be awarded for drafting the

Motion for Sanctions because Debtor should have notified Shellpoint of the 9:06 filing time before filing the Motion and they would have cancelled the sale. There is no evidence to support this argument of counsel, and arguments alone cannot create a genuine dispute of material fact. This is irrelevant to the legal standard that attorney's fees are mandatory damages for willful violations of the stay. The argument assumes that their actions based on the 9:19 filing time and §2924m arguments were in good faith and therefore a defense to liability, which is incorrect as a matter of law. Shellpoint was obligated to stop the foreclosure regardless of the filing time.

The evidence shows Debtor went to extensive efforts to mitigate damages, sending letters and emails asking to cancel the sale, then only doing a Rule 2004 examination after they refused to cancel the sale, then only bringing the sanction motion after Shellpoint and NBS made it clear for five weeks that they would not stop the sale without litigation and a court order. There can be no genuine dispute of material fact that Debtor made all reasonable attempts to mitigate her damages. Debtor did not ask for fees or damages in the August 11 demand letter. Debtor worked for weeks to resolve the issue without litigation and without seeking fees, and only brought the Motion when left with no other choice. Shellpoint has never made any settlement offers nor offered to cover any fees or costs. [Supplemental Decl. of Andrew J. Christensen]. This forces Debtor to proceed to recover her damages. This action was brought for an order that the sale is void and to recover damages caused by the violation. Debtor is entitled to both as a matter of law and Shellpoint cannot avoid damages by rescinding the void sale after the motion was filed. Debtor is entitled to all fees to enforce the stay and litigate to recover damages.

Shellpoint argues "It is without dispute that the foreclosure sale was very promptly cancelled after the filing of the Original Motion[.]" This is patently false and exactly the opposite of what the evidence conclusively shows. Shellpoint does not dispute the declaration of undersigned Andrew J. Christensen that attorney Michelle Mierzwa representing NBS and Shellpoint called the undersigned on the phone on May

28, 2025, demanding the Motion be dismissed and that there was no stay violation and if the motion was dismissed NBS "might consider" cancelling the "completed foreclosure sale." Debtor's counsel asked Ms. Mierzwa if she was authorized to make a settlement offer and she said no. Debtor had no option but to continue forward with the Motion to cancel the sale and recover her damages. *America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1100 (9th Cir. 2015).

### 4. NBS JOINDER

Debtor objects to NBS's "Notice of Joinder" to Shellpoint's Opposition brief because joinder is not allowed in a contested matter because BR 9014 does not incorporate FRBP 7018 or FRCP 18 regarding joinder of claims. *In re Natera*, Nos. 17-14112-B-13, DCN: TAT-2, 2022 Bankr. LEXIS 3239, at *4-5 (Bankr. E.D. Cal. Nov. 16, 2022). The document should be struck or disregarded and MSJ treated as unopposed by NBS. In the alternative, the Court should consider only NBS's arguments in their brief as to NBS and not consider any of Shellpoint's arguments to apply to NBS.

NBS does not argue or submit evidence disputing liability for willfully violating the automatic stay, and the Court should grant the MSJ as to liability as uncontested.

NBS only argues for a reduction in damages, but does not submit evidence to create any dispute of material fact, nor cite the correct legal standard, nor identify any specific fees that are unreasonable or otherwise not compensable.

NBS's only argument reducing the damages is that they had a good faith belief that they were not violating the stay based on a 9:19 filing time and §2924m. As discussed above, good faith legal arguments that the stay is not being violated is not a defense to liability. Also, their legal arguments are frivolous based on the clear unambiguous language of §2924m, §2924h, and the *Heger* case, so there is no good faith belief.

NBS argues "Debtor and her counsel simply should not be rewarded for engaging in this unnecessary escalation of a matter that would have easily been resolved months ago without any contested matter commencing." There is no evidence

-7-

to support this argument. No declarations, no documents. NBS has never made a settlement offer, or ever offered to pay Debtor's fees. [Supp. Decl. Christensen]. This left Debtor with no choice but to pursue a verdict to recover her damages. The case cannot have been "resolved months ago" if there were no settlement offers. This is also not the correct legal standard for the mandatory award of all damages caused by the violation.

The legal standard for damages is that a debtor "shall recover actual damages" if the debtor is "injured by any willful violation of a stay[.]" §362(k)(1). This section also specifies that fees are damages: "shall recover actual damages, including costs and attorneys' fees[.]" There is no limit to the type of "actual damages" allowed under §362(k), only that a debtor can show evidence of the type and amount of damages and causation. For example, emotional distress damages are available upon proving a debtor suffered significant harm, clearly establishes the harm with evidence, and demonstrates with evidence a causal connection between the harm and violation of the stay. *Snowden v. Check into Cash of Wash., Inc.* 769 F.3d 651, 656-57 (9th Cir. 2014).

So too here, there is no genuine dispute of material fact that Respondents NBS and Shellpoint willfully violated the stay, and that it caused Debtor to incur damages in the form of attorney's fees and costs to stop the violation and recover damages. It is undisputed that Shellpoint and NBS did not cancel the sale when asked, and only cancelled it after the Motion was filed, and never made any settlement offers. All evidence establishes that all the fees and costs incurred here were directly caused by Creditors' violation of the stay. There is no evidence that anything else caused the fees to be incurred. There is no evidence to create any dispute of fact that Debtor could have avoided or mitigated fees because Respondents never offered to pay the damages, so it is not unreasonable for Debtor to proceed. There is no evidence that NBS would have cancelled the sale earlier upon seeing Debtor's declarations of a 9:06 a.m. filing time.

The fact that attorney's fees are damages under §362(k) is of critical importance in enforcing the stay because it incentivizes enforcement of the stay by ensuring

-8-

creditors pay for all harm caused and that they cannot avoid stay enforcement by claiming "no harm no foul" arguments because attorney's fees are a harm caused to enforce the stay. For example, most collection letters sent in violation of the stay cause no harm other than attorney's fees, so the stay would be useless and not honored by creditors if there was no penalty for collection letters except in the few cases where serious evidence of emotional distress could be established. Fees as damages is critical to stay enforcement to avoid the exact argument Respondents make here, that Debtor should not get fees for enforcing the stay after the violation was stopped. The Ninth Circuit rejected that argument in *In re Schwartz-Tallard*, ensuring that all fees incurred are awarded, including litigating damages, not just fees to stop the violation.

"The plain language of the statute requires that the injured party be awarded the entire amount of actual damages reasonably incurred as a result of a violation of the automatic stay." *Stainton*, 139 B.R. at 235. "'An award of attorney's fees is appropriate where an initial violation of the stay is followed by Debtor's [sic] having to resort to the courts to enforce his rights. *(*citations). Therefore, when a bankruptcy court determines that a creditor willfully violated the automatic stay, **_the bankruptcy court is required to award actual damages clearly traceable to and reasonably incurred as a result of the stay violation, including damages suffered by a debtor for "having to resort to the courts to enforce his rights_**." Thus, an individual debtor injured by a willful stay violation must be able to recover all damages arising from the willful stay violation, including any costs and attorney's fees incurred on appeal." (emphasis added) *Beard v. Walsh (In re Walsh)*, 219 B.R. 873, 879 (B.A.P. 9th Cir. 1998). Here, all fees and costs are reasonably incurred because Respondents refused to stop the sale until extensive fees were incurred and the motion filed, and there were no settlement offers by Respondents that would have allowed the litigation to end earlier to stop further fees from being incurred.

The reason attorney's fees and costs are damages and the reason they are mandatory and include all work to stop the violation and litigate recovery of damages

-9-

and appeals is to ensure debtors are held harmless for violations of the stay: "This expansive view of § 362(h) is consistent with the congressional policy to hold an individual debtor harmless from willful violations of the automatic stay." *Beard v. Walsh (In re Walsh)*, 219 B.R. 873, 879 (B.A.P. 9th Cir. 1998). If this Court reduces fees based on Respondent's arguments, Debtor will not be made whole and Creditors will be incentivized to abuse the stay and avoid consequence with frivolous arguments.

"Thus, Congress could not have expected § 362(k) to serve as an effective deterrent unless it authorized recovery of the attorney's fees incurred in prosecuting an action for damages." *America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1100 (9th Cir. 2015).

## **CONCLUSION**

The Court should grant summary judgment against NBS and Shellpoint as to liability for willfully violating the stay because it is undisputed. The Court should award the attorney's fees and costs requested because there is no genuine dispute of material fact that the fees were incurred, and caused by the willful violation, and reasonable because Respondents refused to stop until after the motion was filed and have not made any settlement offers and Debtor is entitled to all fees to stop the violation and litigate entitlement to damages under *Schwartz-Tallard*.

The Court may, in addition, award punitive damages in an amount it feels is appropriate based on the evidence of intentional and wide-spread violations.

In the alternative, the Court may grant the MSJ as to liability on the merits, award the fees and costs incurred to date, and allow discovery and trial to proceed on the issue of the appropriate amount of punitive damages if the Court would like more evidence on that issue before awarding punitive damages.

Date: October 28. 2025

                                         /s/ Andrew J. Christensen
                                         Andrew J. Christensen
                                         Attorney for Melissa Wilkerson

Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorneys for Debtor Melissa Wilkerson

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| In the Matter of: | Bankruptcy Case: 25-40564 CN |
|---|---|
| Melissa Wilkerson | Chapter 13 |
| Debtor | **Supplemental Declaration of Andrew J. Christensen in Support of Motion for Summary Judgment on Motion for Damages for Violation of the Automatic Stay** |

I, Andrew J. Christensen, am counsel for Melissa Wilkerson. The statements made herein are based upon my personal knowledge except to those matters which are herein alleged on information and belief, and as to those matters, I believe them to be true. If called as a witness in this matter, I could and would testify competently to each and all of the statements made herein.

1. Respondents NBS and Shellpoint have not made any settlement offers nor offered to pay any fees or damages in this matter.

I swear under the penalty of perjury that this is true and correct, and that this declaration was executed on the following date in Oakland California.

DATED: October 28, 2025

/s/ Andrew J. Christensen
Andrew J. Christensen
Counsel for Debtor

-1-