

The following constitutes the order of the Court.
Signed: January 8, 2026

_____
Charles Novack
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

In re:

MELISSA MARIE WILKERSON,

Debtor.

Case No.  25-40564 CN
Chapter 13

**ORDER DENYING DEBTOR'S MOTION FOR SUMMARY JUDGMENT**

On November 20, 2025, the court conducted a continued hearing on debtor Melissa Wilkerson's summary judgment motion for damages and attorney's fees under Bankruptcy Code § 362(k) (the "Motion"). All appearances were made on the record. Wilkerson contends that respondents willfully violated the automatic stay when they proceeded to solicit overbids under California Civil Code § 2924(m). Respondents NewRez LLC dba Shellpoint Mortgage Servicing ("Shellpoint") and NBS Default Services, LLC ("NBS") counter that Wilkerson is equitably estopped from seeking any damages[1]. Because questions of fact exist regarding the applicability of the equitable estoppel doctrine, the court shall conduct an evidentiary hearing to determine the merits of this argument.

The standard for reviewing a summary judgment motion under Federal Rule of Civil Procedure 56 (as incorporated into Federal Rule of Bankruptcy Procedure 7056) is well established. Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party "initially bears the burden of proving

---

[1] The court may collectively refer to Shellpoint and NBS as "NBS."

the absence of a genuine issue of material fact." *Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *See, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See, Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (internal citations omitted).

While this court is not granting summary judgment, it finds, under Rule 56(g), that the following material facts are not in dispute: Wilkerson filed her Chapter 13 bankruptcy on April 1, 2025, at 9:06 a.m.[2] When she filed her bankruptcy, Wilkerson (through a revocable trust) owned a single family residence located at 1933 Grass Mountain Court, Antioch, California (the "Grass Mountain Property"). The Grass Mountain Property is

---

[2] The parties initially disputed when, on April 1, 2025, Wilkerson filed her bankruptcy petition. Wilkerson filed her bankruptcy *pro se*, and her bankruptcy petition is time-stamped as having been filed at 9:36 a.m. Wilkerson contends, however, that she physically delivered the bankruptcy petition to the bankruptcy court clerk staff at its Oakland, California intake desk at 9:06 a.m., and that the time required to process her filing caused it to be time-stamped thirty minutes later. Wilkerson did not inform her bankruptcy attorneys of this until well after they began asserting that the trustee's sale at issue violated the automatic stay. For purposes of this motion, the parties agree, however, that Wilkerson filed her Chapter 13 at 9:06 a.m. *See*, Responses to Court's Status Conference Order at dkt ## 72, 74 and 75.

encumbered by a note and deed of trust held and serviced by Shellpoint.[3] By July 2024, Wilkerson was substantially behind on the note payments, and NBS – the trustee under the deed of trust - commenced foreclosure proceedings and eventually scheduled a trustee's sale for April 1, 2025. Wilkerson filed her Chapter 13 to stay the trustee's sale of her residence.

Notwithstanding Wilkerson's 9:06 a.m. filing, NBS proceeded with its trustee's sale and, at 9:14 a.m., "sold" the Grass Mountain Property to Good Neighbor Homes, LLC for $499,799.40. Shellpoint and NBS were unaware that Wilkerson had filed a bankruptcy only minutes earlier, and they first learned of her bankruptcy filing through an anonymous telephone call at 11:57 a.m. that day. The caller did not, however, inform NBS that Wilkerson had filed before 9:14 a.m., so NBS proceeded (notwithstanding the bankruptcy filing) to comply with the overbid process required under California's foreclosure law.[4] Because the Grass Mountain Property was a single-family residence and Good Neighbor Homes was not (as defined under Civil Code § 2924m(a)(1)) a prospective owner-occupant, NBS posted information on its website detailing the Good Neighbor Homes sale to allow prospective, eligible overbidders to submit an overbid or a notice of intent to overbid. Prospective overbidders have fifteen days to submit a bid or a notice of intent to bid. *See* Cal. Civil Code § 2924m(c)(2). "The purpose of this posting is to inform prospective eligible bidders of the sale and to provide them with an opportunity to bid or submit a notice of intent to bid." *In re Hager*, 651 B.R. 873, 882 (Bankr. E.D. Cal. 2023). On April 4, 2025, NBS timely received a qualifying notice of intent to bid from Carl Dexter. Dexter's notice created a forty-five-day window for him to submit an actual overbid and provide those funds to NBS. Had Dexter made an overbid within that forty-five-day period (which NBS calculated would run on May 16, 2025), the trustee's sale

---

[3] Wilkerson's parents owned the Grass Mountain Property when the note and deed of trust were executed, and they alone signed the aforementioned documents. Wilkerson inherited the property from them and did not refinance the property. The notice of default and notice of sale were therefore addressed to her deceased parents.

[4] *See* California Civil Code § 2924m, *et seq*.

process (in a perfect world with no bankruptcy considerations) would have concluded and NBS would had had until June 1, 2025 to record a trustee's sale deed in Dexter's favor that would have related back to the April 1st foreclosure sale.[5] Dexter, however, did not submit an overbid, NBS never issued a trustee's deed to Good Neighbor Homes (who, absent an overbid, was the high bidder), the sale to Good Neighbor Homes was eventually rescinded, and no one ever threatened to evict Wilkerson from the Grass Mountain Property. Instead, the following events transpired:

Wilkerson's bankruptcy counsel notified NBS of a purported stay violation when Vincent Wood (who substituted in as Wilkerson's Chapter 13 bankruptcy counsel on April 10, 2025) emailed NBS on April 11, 2025, and informed it that: a) Wilkerson had filed her bankruptcy on April 1, 2025, at *9:19* a.m.; and b) notwithstanding the timing of the bankruptcy filing, the automatic stay created by her Chapter 13 case still enjoined any attempt by NBS to complete the sale under Civil Code § 2924m. Wood's email referred NBS to *In re Hager*, 651 B.R. 873 (Bankr. E.D. Cal. 2023), a thoughtful decision by Hon. Rene Lastreto II who determined, under a prior version of Civil Code § 2924(m)(c), that the post-petition finalizing of a pre-petition foreclosure sale to a non-tenant bidder violated the automatic stay. Succinctly stated, Bankruptcy Judge Lastreto determined that § 2924m(c)'s overbid rules extended the trustee's sale process and left the sale vulnerable to an intervening bankruptcy filing when the sale could not relate back to the original (and pre-petition) trustee's sale date. Under the facts before him, Judge Lastreto held that the sale to a non-tenant bidder did not statutorily relate back to the trustee's sale date, and that it therefore violated the automatic stay under Bankruptcy Code § 362(a)(3). *In re Hager*, 651 B.R. at 887.[6]

---

[5] Or, if Dexter did not timely bid, the sale to Good Neighbor Homes would have been deemed final, and NBS would have recorded a trustee's deed in its favor.

[6] In 2023, the State of California amended Civil Code § 2924m to allow trustee's sales to all eligible overbidders to relate back to the original sale date.

- 4 -

NBS' initial response to Wood's April 11th letter email was premised upon its belief that Wilkerson filed her Chapter 13 bankruptcy *after* the hammer fell on April 1st. It asserted in an April 14th email to Wood that because the sale to Good Neighbor Homes occurred before Wilkerson filed her Chapter 13 bankruptcy case, a sale that adhered to Civil Code § 2924m overbid process would ultimately relate back to its original and pre-petition trustee's sale and would be unaffected by the automatic stay. Because NBS had received Dexter's notice of intent to bid, it intended to comply with § 2924m's timelines to determine the identity of the high bidder. (Wilkerson Exh. Q). NBS reiterated this position in a May 7, 2025 email to Wilkerson's bankruptcy counsel. (Wilkerson Exhibit E).

Over the next few weeks, NBS adopted a more pragmatic position to Wilkerson's demand that it terminate the sale process. After: a) receiving Wood's April 11th letter stating that any sale to Good Neighbors Homes or an overbidder violated the automatic stay (Wilkerson Exh.D); b) promptly thereafter being served with interrogatories and document requests from Wilkerson's attorneys inquiring into the reasons for continuing with the overbid process (Wilkerson Exh. I); c) weighing the costs of litigation and NBS counsel's less than positive results before other bankruptcy courts arguing that the automatic stay did not enjoin a trustee from completing the § 2924m overbid process when a bankruptcy was filed during the overbid process "window" (Wilkerson Exhs. J, L); and d) obtaining the consent of Good Neighbor Homes (Wilkerson Exhs J,.L,) NBS decided, even before it even received the Motion (and learned that Wilkerson was now contending that she filed her bankruptcy at 9:06 a.m.), to recommend to Shellpoint to cancel the sale and refund Good Neighbor Homes' funds (with interest). On May 30, 2025, Shellpoint agreed to cancel the sale and return the sales proceeds, and NBS relayed this information to Wilkerson's attorneys that same day. NBS requested that Wilkerson withdraw the Motion; Wilkerson offered to do so if NBS agreed to pay her estimated $25,000 in

attorney's fees.  NBS refused, and Wilkerson contends that she has now incurred more than $80,000 in compensable, attorney's fees under Bankruptcy Code § 362(k).[7]

Wilkerson's 9:06 a.m. bankruptcy filing operated as "a stay, applicable to all entities, of – . . . . (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [and] (4) any act to . . . enforce any lien against property of the estate [.]" 11 U.S.C. §§ 362(a)(3) and (4).  The Grass Mountain Property is property of her Chapter 13 estate, and the 9:14 a.m. sale to Good Neighbor Homes violated the automatic stay and is void as a matter of law.  *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569 (9th Cir. 1992).  It therefore follows that NBS' decision to solicit overbids under Civil Code § 2924(m) similarly violated the automatic stay.[8]  The "automatic stay requires an immediate freeze of the status quo," and NBS' solicitation of eligible overbidders under Civil Code § 2924m violated that directive.  *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214 (9th Cir. 2002); *see also, Fulton v. City of Chicago*, 592 U.S. 154, 141 S.Ct. 585, 208 L.Ed.2d 384 (2021) (the automatic stay prohibits affirmative acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed).

Wilkerson seeks to recover the attorney's fees that she has incurred in this contested matter, and has further requested that the court award punitive damages.  Bankruptcy Code § 362(k) provides in pertinent part that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).  Wilkerson has the burden of proving, by a preponderance of the evidence, that NBS willfully violated the stay.  She must demonstrate that: (1) NBS knew of the automatic stay; and (2) the actions that violated the stay were intentional.  There is no "intent"

---

[7] As stated *infra*, these facts are undisputed and deemed admitted in the to-be-scheduled evidentiary hearing.

[8] There is also no evidence that NBS ever withdrew the information regarding the Good Neighbor Homes sale that it posted under Civil Code section 2924m(c).

component to this test; a good faith belief that the stay is not being violated "is not relevant to whether the act was 'willful' or whether compensation must be awarded." *Morris v. Peralta (In re Peralta)*, 317 B.R. 381, 389 (9th Cir BAP 2004).

The only "willful" conduct herein is NBS' role in soliciting eligible overbidders. While the April 1st sale to Good Neighbor Homes violated the automatic stay, NBS was unaware of Wilkerson's 9:06 a.m. bankruptcy filing (and the resultant automatic stay) when the hammer fell. As stated above, NBS learned of Wilkerson's bankruptcy at 11:57 a.m. that day, and it knew of the bankruptcy when it posted information under Civil Code § 2924m.

Notwithstanding its apparently willful stay violation, NBS objects to the award of any damages and attorneys' fees under § 362(k). NBS contends that it would have promptly canceled the sale if Wilkerson had timely informed it of the 9:06 a.m. filing time, and that she is therefore equitably estopped from seeking any recovery under § 362(k). NBS first learned of the 9:06 a.m. filing time when it read the Motion on May 28, 2025. By this date, NBS had decided to cancel the trustee's sale and had so informed Wilkerson's bankruptcy attorneys. "Generally, four elements must be present in order to establish the defense of equitable estoppel: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the conduct to his injury." *Heritage Hotel Ltd. P'ship I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I)*, 160 B.R. 374, 378 (9th Cir. BAP 1993), *aff'd*, 59 F.3d 175 (9th Cir. 1995) (citations omitted).

The undisputed facts demonstrate that: a) Wilkerson knew that she filed her Chapter 13 at 9:06 a.m.; b) she, through Wood, informed NBS that she filed after 9:14 a.m., thereby instigating the argument regarding whether, as a matter of law, her bankruptcy stayed the overbid process; and c) NBS did not learn about the 9:06 a.m. filing until it read the Motion in late May. NBS, however, has not filed a declaration clearly stating what actions it would have taken had it promptly learned precisely when the Chapter 13 was filed. Rule 56(e)

- 7 -

provides in pertinent part that "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; . . . or (4) issue any other appropriate order."  Fed.R.Civ.P. 56(e).  The court believes that NBS should be given the opportunity to provide competent evidence regarding this element of the equitable estoppel doctrine.  Accordingly, the court will conduct a trial setting conference on **January 21, 2026** at **11:00 a.m.,** at which time the court will determine whether any additional discovery is necessary and when it should conduct a limited evidentiary hearing on this element of equitable estoppel.

**\*\*\*END OF ORDER\*\*\***

Case No. 25-40564 CN

**<u>COURT SERVICE LIST</u>**

Melissa Marie Wilkerson
1933 Grass Mountain Ct
Antioch, CA 94531

Other recipients are ECF participants.