Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Attorney for Debtor Melissa Wilkerson

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

In the matter of:

Melissa Wilkerson
         Debtor

Bankruptcy Case: 25-40564 CN
Chapter 13

**Debtor's Post Trial Brief**

Assigned for All Purposes to
Honorable Charles Novack
Dept. 215

Trial Date: March 2, 2026
Time:  10:00am PST
Place: Courtroom 215
1300 Clay Street, Oakland, CA 94612

1. **NBS DID NOT MEET ITS BURDEN**

NBS did not meet its burden to prove equitable estoppel because Ms. Kahler testified at trial that if she had received the notice of the 9:06 filing time before the Motion for Sanctions was filed she would have merely escalated the matter to her attorneys to review and decide whether to request authority from Shellpoint to cancel the sale or proceed.  That is not the same as cancelling the sale. Kahler testified that outside counsel could only ask the buyer GNH and the servicer Shellpoint for authorization to cancel the sale.  NBS did not have authority to unilaterally cancel the foreclosure, and NBS was not the decision-maker. There is no evidence presented that outside counsel, or Shellpoint, or the investor would have authorized cancelling the sale upon learning of the 9:06 filing time sooner based on constructive possession by the clerk.

Kahler testified that if she had learned of the 9:06 filing time earlier, *she would have only escalated* the matter to her outside counsel to decide what to do and to carry out the decision:

-1-

"Q. Okay. Was it the attorney's decision to request the sale cancellation or was it your decision?
A It was the attorney's at this point." [Transcript Page 85]

"Q. So what would NBS have done back, let's say on April 1st, if you'd received a call and said, hey, she filed at 9:06 based on her understanding, but the petition's timestamped at 9:19. Would NBS have canceled the sale or moved forward with it?
A. I would have escalated to an attorney to review due to the discrepancy in the time.
Q. Okay. What attorney?
A. Our internal attorney at NBS –
Q. Okay. So then what would you need –
A. -- to make the call." [Pages 97-98]

"Q. What would you need to cancel the sale? Once you send it to your attorney, what would you need before you would cancel the sale?
A. She would advise if we needed to cancel or we could proceed, or if it was after the sale time, if we would need to rescind." [Page 98].

"A. No. It would probably have been Chandra Pryor. She's our internal attorney that works with us." [Page 99].

"So once your lawyers -- once you've handed off this factual dispute of the 9:06 filing time, once you hand it off to the lawyer, I guess you're saying they would make the decision and tell you what to do, whether to stop the sale or fight. Is that right?
A. Yes." [Page 100].

The emails and Kahler's testimony show that the investor is the ultimate decision maker that can authorize rescission of the trustee sale when requested by Shellpoint, when recommended by NBS's outside counsel. There is no evidence that outside counsel nor Shellpoint, nor the investor would have done anything differently or cancelled the sale sooner if they had learned of the 9:06 filing time earlier. There is no evidence that NBS or any of its employees would have or could have unilaterally cancelled the sale at any time based on the 9:06 filing time.

Furthermore, the only evidence on the record about what outside counsel would have done regarding the 9:06 filing time is to fight it, which they did. **[Exhibit 15].**

A. <u>NBS Did Not Have Authority to Cancel the Foreclosure</u>

NBS's argument that they would have cancelled the sale is premised upon an unstated assumption that NBS had the unilateral authority to cancel the sale, which directly contradicts the actual testimony and email evidence which shows that NBS did not have the authority to cancel the sale, but only to ask GNH and Shellpoint for authority:

-2-

"isn't it true, I mean, that NBS is not authorized to cancel sale? In this case, it's not authorized to cancel the sale because you had to get the permission from Good Neighbor Homes and Shellpoint. Isn't that right?
A In this situation, because it was litigated and the BK filing time was after the sale time."[Page 41].

"Yeah, in this scenario. Right. I mean, isn't it true you're asking over and over authorization to complete the sale because you need Shellpoint to authorize it, right?
A Yes, because it's not a standard reason to pull it based on the BK filing after the sale time." [Page 37-38].

Kahler also testified that she did not know the protocol for Shellpoint to get authorization to rescind from the investor:

"isn't it true that the entity that decided, that authorized the rescission in this case was the investor, Shellpoint's investor. Isn't that right?
A Yes. The client, the servicer gave us the permission through the investor. I don't know if that's part of their protocol that they have to get permission from the investor. I'm not sure how that works." [P. 42].

Kahler had no personal knowledge about how or why her counsel would choose to request rescission, or how or why Shellpoint or the investor may choose to cancel. The email chain **Exhibit 15** established that NBS asked Shellpoint repeatedly for authorization to cancel, and shows that it was the investor that authorized cancellation, not Shellpoint or NBS. "All we need urgently at this point is for Shellpoint to confirm that NBS is authorized complete the rescission and return the funds." **[Exhibit 15, page 2].** Shellpoint then responded "The rescission strategy was approved by the Investor, please proceed." **[Exhibit 15, page 1].**

Kahler admitted that NBS notified Debtor of the cancellation 10 days after NBS first asked GNH to rescind because NBS had not yet been authorized to rescind:

"isn't it true that the reason for that 10-day delay is because NBS had not yet been authorized to cancel it by Good Neighbor Homes or Shellpoint. Is that right?
A Correct. We were waiting for Shellpoint to approve rescinding the sale."[P 31].

There is no evidence on the record to sustain a factual finding that NBS would have or could have cancelled the sale, because the record shows they could only have asked for authority to cancel. This is materially different than cancelling the sale. This Court cannot presume or infer what outside counsel, or Shellpoint, or the investor would have done earlier in a hypothetical situation.

This evidence establishes that NBS relied on its outside counsel's decisions and actions regarding the filing time, and that NBS relied on the decision of the investor to cancel the sale and

-3-

did not rely on any representation by Debtor regarding the filing time.

B. It is Not Credible that NBS Would Have Cancelled the Sale

It is not credible to believe NBS's argument that it would have cancelled the sale upon learning of the 9:06 filing time anytime before the Motion was filed on May 22, because we know what NBS actually did when it learned of the 9:06 time 5 days later on May 27, which is that NBS's counsel Michelle Mierzwa told Shellpoint that the 9:06 filing time could be disputed, and then NBS opposed the motion on that basis. Michelle Mierzwa emailed Shellpoint: "it is possible to oppose this motion due to the factual dispute regarding the time of filing" and then NBS in fact opposed the Motion on that basis for many months, including docket 51 **Exhibit 20**. Kahler testified that this email, **Exhibit 15**, dated May 28, 2025, 12:27 pm was the first and only time NBS communicated with Shellpoint about the 9:06 filing time. [Pages 86, 87]. Therefore, the only email or documents about the filing time of 9:06 are about opposing it.

Kahler testified that NBS would only unilaterally and immediately cancel the foreclosure sale *if it received, before the opening of the 9:14 auction*, an official notice of bankruptcy filing with a time stamp of 9:06:

> "Do you mean by that, Ms. Kahler, that if you would have seen a notice of bankruptcy filing with a stamped time of 9:06, that you would have canceled the sale?
> A Prior to the sale time, yes." [Page 97].

This counter-factual hypothetical is irrelevant because the 9:06 time is based on constructive possession by the clerk, not a time stamp. Kahler admitted that because the 9:06 time is not stamped on the bankruptcy notice that *NBS would have disputed it even if they learned of it on April 1*:

> "Well, isn't it true that if you would have learned of the 9:06 filing time earlier back in the time of the sale, say, April 1st, isn't it true that you would have fought -- NBS would have disputed the factual basis for the 9:06 filing time just like you did in reality fight it?
> A. If we would have known that it was a 9:06 sale prior to the sale." [Page 96].

Kahler's testimony establishes that NBS would have disputed the 9:06 filing time in this case regardless of when they learned about it because it was based on constructive possession, not a time stamp, which proves NBS did not rely on any representations of Debtor because they would not have done anything different if they learned earlier. NBS was intent on disputing the automatic

-4-

stay and moving forward with the sale regardless of the facts.

More importantly, there is no evidence that learning of the sale earlier would have stopped fees accruing or stopped the litigation to recover damages.

2. <u>**NBS FAILED TO MEET THEIR BURDEN BECAUSE THEY DID NOT PRESENT ADMISSIBLE EVIDENCE**</u>

NBS never moved to admit Kahler's declaration nor her exhibits into evidence. The stipulation of the parties was that "NBS's direct evidence will be presented by declaration, and shall be comprised of, and limited to, the declaration of Jessica Kahler, filed January 16, 2026, docket 104, and its attached exhibits[.]" [Dkt 109]. NBS was required to offer it into evidence, and would have to overcome evidentiary objections, including lack of personal knowledge, hearsay, the best evidence rule, among others, most of which are apparent from the fact that the declaration does not say NBS had authority to cancel, or that Kahler was the decision maker with that authority, and they quote documents without producing the documents in violation of the best evidence rule, 1002. The stipulation did not waive any of Debtor's evidentiary objections. A waiver of rights must be express waiver of known rights. This stipulation did not eliminate the need for NBS to prove the evidence was admissible, nor does the stipulation relieve this Court of the obligation to address and rule on its admissibility.

Even if the declaration and exhibits are considered by this Court to have been admitted into evidence, they should still be stricken based on the testimony of the witness that she did not have personal knowledge of most of the matters in her declaration. Debtor established a factual basis for the evidentiary objections and moved to strike certain portions of the declaration and certain exhibits. The Court denied the requests to strike. However, Debtor asked the Court to reconsider, and the Court stated it would take the matter under submission. [Page 61]. Therefore, Debtor renews here motion to strike. Attached here as **Exhibit 36** is copy of Kahler's declaration, Docket 104, where Debtor has highlighted all portions of the declaration that should be stricken based on the witnesses testimony at trial and a lack of substantiation. She had no knowledge of the exhibits, which were all created by third parties, she could not confirm the accuracy, nor explain the serious discrepancies between the different versions of the documents which had been secretly redacted and

-5-

materially altered, including **Exhibit A** Sale Date Downs, and **Exhibit B** the Sale Receipt, the only document establishing the 9:14 filing time. Debtor's **Exhibit 29** is the sale receipt produced by GNH, that is materially different. Debtor's **Exhibit 24** is the different version of the Sale Date Down. These should be stricken under FRE 901. These are particularly important because it was established that NBS's **Exhibit A** sale receipt is the sole and exclusive basis for its entire factual argument of estoppel, which is that the auction started at 9:14 am, and the sale receipt is plainly inaccurate and unreliable and appears to be forged or altered with multiple versions. There is no admissible evidence that the auction started at 9:14 am.

This Court has discretion to reconsider admissibility of evidence upon learning new facts bearing upon admissibility. In the case of *United States v. Escalante*, the prosecution admitted witness testimony about drug smuggling based on its representations to the court that the drugs were those at issue taken to Los Angeles, but then on cross examination, the witness admitted all the drugs were sent to San Francisco, and none of it was used as represented by the government. Therefore, defendant renewed his objection to the evidence, which the judge struck and admonished the jury to disregard the evidence, and the Ninght Circuit affirmed. *United States v. Escalante*, 637 F.2d 1197, 1202 (9th Cir. 1980).

The key phrase of NBS's argument in paragraph 13 of Kahler's declaration was that "Had NBS been aware, at any time prior to receiving the Motion for Damages for Violation of Stay, that the bankruptcy case was filed before the foreclosure sale occurred on April 1, 2025, NBS would have promptly cancelled the sale." However, all her testimony at trial directly contradicted this as set forth above, showing that she did not write the declaration, it is not the truth, and it cannot be the basis for a factual finding in favor of NBS against her actual testimony. FRE 602 requires a witness at trial to have personal knowledge: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FRE 602. Kahler had no personal knowledge of the statement in her purported declaration docket 104 that NBS would have cancelled the sale because she testified she would have merely escalated the matter to outside counsel to decide and handle and no knowledge that NBS had authority to unilaterally cancel, nor what Shellpoint or the investor would do.

Case: 25-40564    Doc# 123    Filed: 03/23/26    Entered: 03/23/26 23:57:37    Page 6 of 160

### 3. **<u>NBS HAS UNCLEAN HANDS</u>**

"The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." (citation). The party must have "acted fairly and without fraud or deceit as to the controversy in issue." (citation)" *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)

"The defense of unclean hands arises from "the equitable maxim that 'he who comes into equity must come with clean hands.'" […] In other words, unclean hands "means that in equity as in law the plaintiff's fault, like the defendant's, is relevant to the question of what if any remedy the plaintiff is entitled to." (citation). Thus, the unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." (citation)" *Intamin, Ltd. v. Magnetar Techs. Corp*, 623 F. Supp. 2d 1055, 1074 (C.D. Cal. 2009).

The Ninth Circuit bars equitable estoppel claims if the party asserting equitable estoppel has unclean hands. *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091 (9th Cir. 1985). Here, NBS has the burden to show that they have clean hands if they want equity from the Court, but NBS cannot show they have clean hands. NBS's counsel Chandra Pryor erroneously told Debtor's counsel on April 14, 2025, that the winning bidder was a Prospective Owner Occupant, 14 days after NBS had information that this was incorrect. This caused Debtor the time and expense of a Rule 2004 examination to get to the truth to prove the allegations were incorrect, which fees could have been avoided if NBS had accurately stated that GNH was the high bidder instead of concealing this material information.

NBS waited 25 days from the time they received the Rule 2004 subpoena to when they asked GNH to cancel the sale on the grounds that the subpoena showed Debtor was serious and aggressive about disputing the sale. NBS could have asked GNH 25 days sooner about the subpoena, which would have avoided the fees incurred in drafting or litigating the Motion. There is no apparent innocent excuse for this delay. Kahler said at trial she did not know why NBS waited 25 days. [Page 84]. **Exhibit 37** is a timeline showing other such examples of delay.

NBS waited 10 days from May 20 to May 30 to tell Debtor they were working to rescind the

sale. During that time on May 28, after GNH had agreed to rescind, but before Shellpoint had agreed, NBS counsel Mierzwa told Debtor's counsel they would not cancel. NBS chose not to tell Debtor that they had asked GNH to rescind on May 20, nor that they received approval a few days later, nor that they asked Shellpoint for approval on May 23. NBS has unclean hands for telling Debtor that they will not cancel the sale while they were working to cancel the sale. Keeping Debtor informed of their efforts to undo the sale would have prevented the motion from being filed.

It is unknown whether each of these examples is intentional misconduct, or whether they have some other innocent explanation, such as how Debtor was suffering from crippling clinically diagnosed depression and anxiety for several weeks in April and May and not responsive to her counsel or anyone else, including during the time between the May 7, 2025, production of documents from Creditors showing the 9:14 filing time, and May 19, 2025, when she was recovered sufficient to turn her phone back on and re-engage with people again and able to inform her counsel of facts and text messages and witnesses that allowed them to piece together the filing time. Debtor missed the first meeting of creditors on May 15, 2025, during that time.

The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." Here, even if NBS's conduct was not intentional bad faith, but only mistake or reasonably excusable, then it is certainly inequitable for NBS to be allowed to escape all Debtor's fees on account of one short delay of two weeks from the time NBS first presented evidence of the 9:14 filing time until Debtor was healthy enough to identify and communicate the filing time of 9:06. This is particularly true where the evidence from trial shows that NBS admits it would have disputed the 9:06 time regardless, and therefore the short delay had no bearing on NBS's actions and would not have changed the outcome.

NBS has unclean hands because NBS and Shellpoint have never made any settlement offers in this case, yet in their declaration in opposition to the Motion for sanctions NBS mentioned Debtor's first settlement offer in violation of FRE 408, and NBS continues to argue to this Court that Debtor is driving litigation forward and arguing that the Court should disallow all Debtor's fees as a consequence. NBS and Shellpoint have attempted to portray this as a fee churning gamesmanship by Debtor by mentioning one settlement offer by Debtor and by producing internal

-8-

emails purporting to show defense counsel recommending cancellation to avoid creditors' incurring fees in litigation. However, in reality NBS and Shellpoint and their counsel Wright, Finlay & Zak are seeking a ruling on a case of first impression. That is why they opposed the filing time in the original opposition briefs. This is why Creditors vigorously opposed cancelling the sale for nearly six weeks after Debtor asked several times, and vigorously opposed this matter in litigation for a year, and have never made any settlement offers, despite a claimed desire to avoid incurring fees.

Furthermore, Creditors seek an order validating their actions so they can go forward violating the stay with impunity and only backing down when faced with serious opposition. NBS and Shellpoint do this because it allows them to avoid cancelling hundreds of void sales a year and saving tens of millions of dollars by discouraging debtors from enforcing the stay, and it discourages attorneys across the state from fighting against foreclosures under §2924m in bankruptcy because most debtors' counsel cannot afford the cost to litigate stay violations for a year.

### 4. <u>EQUITABLE ESTOPPEL DOES NOT APPLY</u>

Equitable estoppel does not apply to stay violations, nor to the legal standard for determining the amount of damages or attorney's fees, NBS did not raise the defense, and it is not supported by the facts because there is no evidence of wrongdoing by Debtor nor intent to mislead. "The doctrine of equitable estoppel, often referred to as fraudulent concealment, is based on the principle that a party "should not be allowed to benefit from its own wrongdoing." *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011). There is no evidence that Debtor intentionally or wrongfully concealed the filing time, nor that it was intentional, nor to induce reliance into further violation of the stay. There was no reason for Debtor to expect NBS to intentionally violate the stay by arguing *Hager* is wrong when other creditors routinely cancel sales on account of *Hager*.

Equitable estoppel does not apply here because the filing time of 9:06 is irrelevant as a matter of law under §2924m and §2924h, and therefore does not matter that NBS now claims it would have cancelled the sale sooner if it had known.

For the Court to find that NBS relied on Debtor's representation of the filing time to their detriment would require the Court to find that NBS had legitimate defense based on their legal

-9-

argument that the filing time matters because *Hager* is wrong about §2924m. This is error because their §2924m argument is meritless as has been argued extensively, and *Hager* is correct. Second, even if the Court would be inclined to rule against *Hager*, it is plainly a highly debatable legal issue for which Creditors should have sought immediate relief from stay because in the Ninth Circuit a good faith belief that one is not violating the stay is not a defense as a matter of law. Therefore, NBS and Shellpoint would have been liable for damages to Debtor for intentional violation of the stay regardless of the filing time, or what they knew about it or when.

## 5. **LEGAL STANDARDS**

The estoppel argument is essentially that fees are only compensable up to a *hypothetical* point in time when defense counsel argues Creditors *would have* cancelled the sale. That argument is even more worse than the old *Sternberg* rule that fees were recoverable only to the time the stay violation was actually stopped. However, *Schwarts-Tallard* overruled *Sternberg*, holding that §362(k) provides for "an award of attorney's fees incurred in prosecuting an action for damages under the statute" and that "such fee awards mandatory rather than discretionary[.]" *America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1101 (9th Cir. 2015). It is undisputed that Creditors here vigorously litigated against liability and against all attorney's fees for a year. Creditors never made any offer to pay any fees whatsoever, therefore Debtor never had any reasonable alternative to resolve this litigation or limit damages. Awarding fees here is mandatory for stopping the violation and litigating the claim for damages.

## 6. **CONCLUSION**

The Court should find that equitable estoppel does not apply as a matter of law. The Court should find that NBS did not meet its burden of proof on estoppel. In the alternative the Court should find that NBS relied on its counsel to make decisions about cancellation and asserting novel legal arguments and did not rely on any representation of Debtor. The Court should find that NBS was not harmed by any reliance on the filing time because arguing against *Hager* and §2924m is meritless, and because even a good faith legal argument is not a defense to damages, and the only potential harm are the attorney's fees they are liable to pay Debtor, which fees were caused by NBS's actions in refusing to cancel the sale and failure to pay any fees or make any settlement

-10-

offers.    The Court should find NBS has unclean hands, having acted to drive up fees, and is not entitled to a reduction of fees on equitable grounds. The Court should award the attorney's fees and costs requested.

DATED:  March 23, 2026

/s/ Andrew J. Christensen
Andrew J. Christensen
Attorney for Melissa Wilkerson

# **Exhibit 36**

by telephone immediately at (949) 477-5052 and arrangements will be made for the return of this material. Thank You.

 

---

**From:** Olivia Reyes <oreyes@wedgewoodhomes.com>
**Sent:** Wednesday, May 21, 2025 10:44:09 AM
**To:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>
**Cc:** SaveIt <SaveIt@wrightlegal.net>
**Subject:** RE: 252-20242335 1933 Grass Mountain Court, Antioch, CA Bankruptcy Case No. 25-40564 CN

Hi Michelle,

Our in-house legal team reviewed the BK and agrees this could be headache.... No one has time for an additional headache these days. 😊 Will funds be returned via wire or check?

Good Neighbor Homes, LLC is requesting interest due to our funds being held in the amount of $4,888.35 (51 days x $95.85 per day). Can you please demand from the servicer?

Thank you

**OLIVIA REYES**
**T**. 310.640.3070 x 2110 | **F**. 424-218-0880



OREYES@WEDGEWOODHOMES.COM
WWW.WEDGEWOODHOMES.COM

---

**From:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>
**Sent:** Tuesday, May 20, 2025 5:52 PM
**To:** Olivia Reyes <oreyes@wedgewoodhomes.com>
**Cc:** SaveIt <SaveIt@wrightlegal.net>
**Subject:** 252-20242335 1933 Grass Mountain Court, Antioch, CA Bankruptcy Case No. 25-40564 CN

**[External Sender]**

---

Ms. Reyes,

As we discussed, the foreclosure sale of the above-mentioned property was conducted at 9:14 am PT on April 1, 2025, prior to the filing of the above-mentioned bankruptcy case at 9:36 am PT on April 1, 2025. You indicated that you became aware of the bankruptcy filing at some point. As a result of the delivery of a notice of intent to bid affidavit pursuant to Civil Code section 2924m(c)(2), the 45-day period for post-sale bids was triggered, so the identity of the high bidder was not known until recently. Since no other post-sale bidders submitted a bid, Good Neighbor Homes, LLC as the high bidder at the live sale auction was deemed the last and highest bidder pursuant to Civil Code section 2924m(c)(4). It is our understanding that the Trustee's Deed Upon Sale will need to be

recorded within 60 days of the live sale auction in order to benefit from the statutory "relation back" to 8:00 a.m. on the day of the live sale.

There is a concern that the borrower (Wilkerson) under the foreclosed loan intends to challenge the validity of the sale, as our client, NBS Default, was already served with, and provided preliminary responses to, a subpoena seeking information about the identity of the high bidder, post auction eligible bidders and the timing of the live auction.  As a result, it may be prudent for Good Neighbor Homes, LLC to file an ex parte motion for annulment/relief from stay regarding the recording of the Trustee's Deed, in addition to ensuring that the Trustee's Deed Upon Sale is recorded inside the statutory period.  Otherwise, there may be ongoing challenges to the validity of the sale.  If Good Neighbor Homes prefers not to become involved in potential litigation relating to the foreclosure, with the agreement of all parties NBS Default may be able to return the bid funds to allow the borrower's bankruptcy to play out in the ordinary course.  Please let us know how Good Neighbor Homes, LLC would like to proceed.

**Michelle A. Mierzwa, Esq.**
Partner, Compliance Division

4665 MacArthur Court, Suite 280
Newport Beach CA 92660
(949) 438-1265 Direct
(949) 608-9142 Fax
(949) 477-5050 Main Ext. 1042
**Wright, Finlay & Zak: Your Western Regional Counsel for California, Nevada, Arizona, Washington, Oregon, Utah, New Mexico, Montana, Hawaii, Idaho, and South Dakota**

PLEASE BE ADVISED THAT THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
**IF YOU ARE A CONSUMER AND WISH TO OPT OUT OF EMAIL COMMUNICATIONS REGARDING YOUR DEBT, PLEASE REPLY TO THIS EMAIL WITH "OPT OUT."**

Confidentiality Note: The information contained in this email is privileged and confidential and is intended only for the use of the individual or entity named If the reader of this email is not the intended recipient, you are hereby notified that any distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify the sender by telephone immediately at (949) 477-5052 and arrangements will be made for the return of this material. Thank You.

CONFIDENTIALITY NOTICE: This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, you may NOT use, disclose, copy or disseminate this information. Please contact the sender

# **Exhibit 37**

**Dane Exnowski**

| | |
|---|---|
| **From:** | Gerald Looby <Gerald.Looby@newrez.com> |
| **Sent:** | Friday, May 30, 2025 11:52 AM |
| **To:** | Dayna Hansen; Michelle A. Mierzwa; Tim Nowlin; Shirin Shahidi; Mhari Holtzclaw; PostSaleEscalations; Arnold L. Graff |
| **Cc:** | Kahler, Jessica; Barnes, Braden; Pryor, Chandra; SaveIt |
| **Subject:** | RE: APPROVED- 252-20242335 RE: Urgent - Deadline 5/31  //  BPC  9462-6555 Wilkerson 1031578955 |
| **Importance:** | High |

The rescission strategy was approved by the Investor, please proceed.

Thanks,

**Jerry Looby**
**Manager – Property Preservation**



**P 832-775-7684**
**gerald.looby@newrez.com**
**Newrez LLC**
**17000 Katy Freeway**
**Houston, TX 77094**



**From:** Dayna Hansen
**Sent:** Thursday, May 29, 2025 5:16 PM
**To:** Michelle A. Mierzwa ; Tim Nowlin ; Shirin Shahidi ; Mhari Holtzclaw ; PostSaleEscalations ; Arnold L. Graff ; Gerald Looby
**Cc:** Kahler, Jessica ; Barnes, Braden ; Pryor, Chandra ; SaveIt
**Subject:** RE: 252-20242335 RE: Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson 1031578955

Hello,

We are confirming with the investor how they want to proceed.

@Gerald Looby can you advise once you have a response?

1

**Thank you,**
**Dayna Hansen**
*Manager- Contested Foreclosure*



**Servicing**

P 864.248.6979
dayna.hansen@newrez.com





**From:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>
**Sent:** Wednesday, May 28, 2025 2:13 PM
**To:** Tim Nowlin <Tim.Nowlin@newrez.com>; Shirin Shahidi <shirin.shahidi@newrez.com>; Dayna Hansen <Dayna.Hansen@newrez.com>; Mhari Holtzclaw <Mhari.Holtzclaw@newrez.com>; PostSaleEscalations <PostSaleEscalations@newrez.com>; Arnold L. Graff <agraff@wrightlegal.net>
**Cc:** Kahler, Jessica <Jessica.Kahler@NationalBankruptcy.com>; Barnes, Braden <Braden.Barnes@BonialPC.com>; Pryor, Chandra <Chandra.Pryor@BonialPC.com>; SaveIt <SaveIt@wrightlegal.net>
**Subject:** [EXTERNAL] 252-20242335 RE: Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson 1031578955
**Importance:** High

External Email. Please use caution before clicking on links or opening attachments.

All,

As a follow-up to the below request, NBS Default still has the bid funds from the foreclosure sale and will be able to facilitate returning them to the third-party purchaser directly. All we need urgently at this point is for Shellpoint to confirm that NBS is authorized complete the rescission and return the funds. We will then need to negotiate with the borrower's counsel for withdrawal of the unnecessary Motion for Sanctions.

Case: 25-40564    Doc# 123    Filed: 03/23/26    Entered: 03/23/26 23:57:37    Page 17 of 160

**Michelle A. Mierzwa, Esq.**
Partner, Compliance Division

 **WRIGHT FINLAY & ZAK** LLP
ATTORNEYS AT LAW

4665 MacArthur Court, Suite 200
Newport Beach CA 92660
(949) 438-1265 Direct
(949) 608-9142 Fax
(949) 477-5050 Main Ext. 1042
**Wright, Finlay & Zak: Your Western**
**Regional Counsel for California, Nevada,**
**Arizona, Washington, Oregon, Utah, New**
**Mexico, Montana, Hawaii, Idaho, South**
**Dakota and Colorado**

 **LAW FIRM MEMBER**

PLEASE BE ADVISED THAT THIS FIRM IS
A DEBT COLLECTOR **(California DFPI**
**License No. 10087-99)** ATTEMPTING TO
COLLECT A DEBT. ANY INFORMATION
OBTAINED WILL BE USED FOR THAT
PURPOSE.
**IF YOU ARE A CONSUMER AND WISH**
**TO OPT OUT OF EMAIL**
**COMMUNICATIONS REGARDING YOUR**
**DEBT, PLEASE REPLY TO THIS EMAIL**
**WITH "OPT OUT."**

Confidentiality Note: The information contained
in this email is privileged and confidential and is
intended only for the use of the individual or
entity named If the reader of this email is not the
intended recipient, you are hereby notified that
any distribution or copy of this email is strictly
prohibited. If you have received this email in
error, please notify the sender by telephone
immediately at (949) 477-5052 and
arrangements will be made for the return of this
material. Thank You.

**From:** Michelle A. Mierzwa
**Sent:** Wednesday, May 28, 2025 12:27 PM

3

**To:** Tim Nowlin <Tim.Nowlin@newrez.com>; Shirin Shahidi <shirin.shahidi@newrez.com>; Dayna Hansen <Dayna.Hansen@newrez.com>; Mhari Holtzclaw <Mhari.Holtzclaw@newrez.com>; PostSaleEscalations <PostSaleEscalations@newrez.com>; Arnold L. Graff <agraff@wrightlegal.net>
**Cc:** Kahler, Jessica <Jessica.Kahler@NationalBankruptcy.com>; Barnes, Braden <Braden.Barnes@BonialPC.com>; Pryor, Chandra <Chandra.Pryor@BonialPC.com>; SaveIt <SaveIt@wrightlegal.net>
**Subject:** 252-20242335 RE: Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson 1031578955
**Importance:** High

All,

As indicated previously, it appears that the attorney for the borrower is serious about vigorously contesting the validity of the sale. Our office just received the attached Motion filed in the bankruptcy court, asserting that the bankruptcy was actually filed at 9:06am prior to the sale completion at 9:14am, as she was waiting in line for the court to open. While it is possible to oppose this motion, due to the factual dispute regarding the time of filing, the substantial equity in the property, and the legitimate nature of the first-time BK filing, we recommend a voluntary rescission of the sale so that we can negotiate for a dismissal of the attached motion and avoid incurring substantial attorneys' fees and costs to validate the sale. **Please confirm ASAP that Shellpoint will agree to rescind the sale.**

**Michelle A. Mierzwa, Esq.**
Partner, Compliance Division



4665 MacArthur Court, Suite 200
Newport Beach CA 92660
(949) 438-1265 Direct
(949) 608-9142 Fax
(949) 477-5050 Main Ext. 1042
**Wright, Finlay & Zak: Your Western**
**Regional Counsel for California, Nevada,**
**Arizona, Washington, Oregon, Utah, New**
**Mexico, Montana, Hawaii, Idaho, South**
**Dakota and Colorado**



PLEASE BE ADVISED THAT THIS FIRM IS
A DEBT COLLECTOR **(California DFPI**
**License No. 10087-99)** ATTEMPTING TO
COLLECT A DEBT. ANY INFORMATION
OBTAINED WILL BE USED FOR THAT
PURPOSE.
**IF YOU ARE A CONSUMER AND WISH**
**TO OPT OUT OF EMAIL**
**COMMUNICATIONS REGARDING YOUR**
**DEBT, PLEASE REPLY TO THIS EMAIL**
**WITH "OPT OUT."**

4

Confidentiality Note: The information contained in this email is privileged and confidential and is intended only for the use of the individual or entity named If the reader of this email is not the intended recipient, you are hereby notified that any distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify the sender by telephone immediately at (949) 477-5052 and arrangements will be made for the return of this material. Thank You.

**From:** Tim Nowlin <Tim.Nowlin@newrez.com>
**Sent:** Wednesday, May 28, 2025 11:47 AM
**To:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>; Shirin Shahidi <shirin.shahidi@newrez.com>; Dayna Hansen <Dayna.Hansen@newrez.com>; Mhari Holtzclaw <Mhari.Holtzclaw@newrez.com>; PostSaleEscalations <PostSaleEscalations@newrez.com>
**Cc:** Kahler, Jessica <Jessica.Kahler@NationalBankruptcy.com>; Barnes, Braden <Braden.Barnes@BonialPC.com>; Pryor, Chandra <Chandra.Pryor@BonialPC.com>
**Subject:** RE: Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson 1031578955

@PostSaleEscalations Can someone please review and confirm if the below is feasible?

*The borrower filed bankruptcy shortly after the Trustee's Sale was conducted, and counsel for the borrower served a Subpoena for Production of Documents on NBS Default and asserted his intention to challenge the validity of the sale. Since a Notice of Intent to Bid was received from an eligible post-sale bidder under Civil Code section 2924m, the sale could not be finalized until after the 45-day period expired. No post-sale bids have been received, and the Trustee's Deed could be issued to the original third-party bidder now. However, there remains the threat of expensive and time-consuming litigation by the borrower, and the third-party purchaser is willing to walk away from the sale in exchange for a return of bid funds to avoid the potential litigation regarding the validity of the sale in light of the close-filed BK.*

Thank you,

**Tim Nowlin**
**Contested Foreclosure Supervisor**



**P** (602) 661-4847
Tim.Nowlin@NewRez.com
shellpointmtg.com

**From:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>
**Sent:** Wednesday, May 28, 2025 2:42 AM
**To:** Shirin Shahidi <shirin.shahidi@newrez.com>; Dayna Hansen <Dayna.Hansen@newrez.com>; Tim Nowlin <Tim.Nowlin@newrez.com>; Mhari Holtzclaw <Mhari.Holtzclaw@newrez.com>
**Cc:** Kahler, Jessica <Jessica.Kahler@NationalBankruptcy.com>; Barnes, Braden <Braden.Barnes@BonialPC.com>; Pryor, Chandra <Chandra.Pryor@BonialPC.com>
**Subject:** [EXTERNAL] Re: Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson 1031578955
**Importance:** High

External Email. Please use caution before clicking on links or opening attachments.

All,

Please confirm ASAP if you will agree to rescind the sale and return the foreclosure bid funds.

**Michelle A. Mierzwa, Esq.**
Partner, Compliance Division


4665 MacArthur Court, Suite 200
Newport Beach CA 92660
(949) 438-1265 Direct
(949) 608-9142 Fax
(949) 477-5050 Main Ext. 1042
**Wright, Finlay & Zak: Your Western Regional Counsel for California, Nevada, Arizona, Washington, Oregon, Utah, New Mexico, Montana, Hawaii, Idaho, South Dakota and Colorado**



PLEASE BE ADVISED THAT THIS FIRM IS A DEBT COLLECTOR **(California DFPI License No. 10087-99)**ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
**IF YOU ARE A CONSUMER AND WISH TO OPT OUT OF EMAIL COMMUNICATIONS REGARDING YOUR DEBT, PLEASE REPLY TO THIS EMAIL WITH "OPT OUT."**

Confidentiality Note: The information contained in this email is privileged and

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 21 of 160

confidential and is intended only for the use of the individual or entity named If the reader of this email is not the intended recipient, you are hereby notified that any distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify the sender by telephone immediately at (949) 477-5052 and arrangements will be made for the return of this material. Thank You.

  LAW FIRM MEMBER

**From:** Shirin Shahidi <shirin.shahidi@newrez.com>
**Sent:** Friday, May 23, 2025 7:28:13 AM
**To:** Dayna Hansen <Dayna.Hansen@newrez.com>; Tim Nowlin <Tim.Nowlin@newrez.com>; Mhari Holtzclaw <Mhari.Holtzclaw@newrez.com>
**Cc:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>; Kahler, Jessica <Jessica.Kahler@NationalBankruptcy.com>; Barnes, Braden <Braden.Barnes@BonialPC.com>; Pryor, Chandra <Chandra.Pryor@BonialPC.com>
**Subject:** RE: Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson 1031578955

Hello,

Can you please assist with this request?

The borrower filed bankruptcy shortly after the Trustee's Sale was conducted, and counsel for the borrower served a Subpoena for Production of Documents on NBS Default and asserted his intention to challenge the validity of the sale. Since a Notice of Intent to Bid was received from an eligible post-sale bidder under Civil Code section 2924m, the sale could not be finalized until after the 45-day period expired. No post-sale bids have been received, and the Trustee's Deed could be issued to the original third-party bidder now. However, there remains the threat of expensive and time-consuming litigation by the borrower, and the third-party purchaser is willing to walk away from the sale in exchange for a return of bid funds to avoid the potential litigation regarding the validity of the sale in light of the close-filed BK.

The high bid at sale was $499,799.40, and the Zillow value of the property is $766,300, so there is plenty of equity for the borrower to refinance or for Shellpoint to recover the full balance of the loan in a subsequent foreclosure if the borrower doesn't pay through the BK. It seems that the borrower's counsel is pretty aggressive about the desire to invalidate the sale, so he will likely file a lawsuit or a motion in the bankruptcy court challenging the validity of the sale and naming Shellpoint, NBS and the third-party purchaser as parties. We have seen many examples of borrowers filing lawsuits challenging the validity of foreclosure sales related to the filing of bankruptcy during the SB 1079 post-auction period and/or within minutes of the live sale auction, and they have been causing substantial delay and expense. Please confirm that Shellpoint is willing to return the bid funds to the third-party purchaser and rescind the foreclosure sale. Time is of the essence so a decision can be made and the funds can be returned prior to the expiration of the 60-day relation back period on May 31, 2025. Counsel for NBS Default, Michelle Mierzwa, is copied here if you would like to schedule a call to discuss further before making a decision.

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 22 of 160

**Thank you**
**Shirin Shahidi**
**Contested Foreclosure Specialist II**





P: 864.248.6809 Ext 6809
Shirin.shahidi@newrez.com

**ALL IN 2023**

---

**From:** Heather David <Heather.David@newrez.com>
**Sent:** Friday, May 23, 2025 7:22 AM
**To:** Pryor, Chandra <Chandra.Pryor@BonialPC.com>; Tim Nowlin <Tim.Nowlin@newrez.com>; Shirin Shahidi <shirin.shahidi@newrez.com>; Mhari Holtzclaw <Mhari.Holtzclaw@newrez.com>
**Cc:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>; Kahler, Jessica <Jessica.Kahler@NationalBankruptcy.com>; Barnes, Braden <Braden.Barnes@BonialPC.com>
**Subject:** RE: Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson
**Importance:** High

@Shirin Shahidi & @Mhari Holtzclaw hi ladies – this file is assigned to Shirin.

Thanks!

---

**From:** Pryor, Chandra <Chandra.Pryor@BonialPC.com>
**Sent:** Friday, May 23, 2025 7:04 AM
**To:** Heather David <Heather.David@newrez.com>; Tim Nowlin <tim.nowlin@newrez.com>
**Cc:** Michelle A. Mierzwa <mmierzwa@wrightlegal.net>; Kahler, Jessica <Jessica.Kahler@NationalBankruptcy.com>; Barnes, Braden <Braden.Barnes@BonialPC.com>
**Subject:** [EXTERNAL] Urgent - Deadline 5/31 // BPC 9462-6555 Wilkerson
**Importance:** High

External Email. Please use caution before clicking on links or opening attachments.

Loan #1031578955

Hello Heather and Tim,

The borrower filed bankruptcy shortly after the Trustee's Sale was conducted, and counsel for the borrower served a Subpoena for Production of Documents on NBS Default and asserted his intention to challenge the validity of the sale. Since a Notice of Intent to Bid was received from an eligible post-sale bidder under Civil Code section 2924m, the sale could not be finalized until after the 45-day period expired. No post-sale bids have been received, and the Trustee's Deed could be issued to the original third-party bidder now. However, there remains the threat of expensive and time-consuming litigation by the borrower, and the third-party purchaser is willing to walk away from the sale in exchange for a return of bid funds to avoid the potential litigation regarding the validity of the sale in light of the close-filed BK.

8

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 23 of 160

The high bid at sale was $499,799.40, and the Zillow value of the property is $766,300, so there is plenty of equity for the borrower to refinance or for Shellpoint to recover the full balance of the loan in a subsequent foreclosure if the borrower doesn't pay through the BK. It seems that the borrower's counsel is pretty aggressive about the desire to invalidate the sale, so he will likely file a lawsuit or a motion in the bankruptcy court challenging the validity of the sale and naming Shellpoint, NBS and the third-party purchaser as parties. We have seen many examples of borrowers filing lawsuits challenging the validity of foreclosure sales related to the filing of bankruptcy during the SB 1079 post-auction period and/or within minutes of the live sale auction, and they have been causing substantial delay and expense. Please confirm that Shellpoint is willing to return the bid funds to the third-party purchaser and rescind the foreclosure sale. Time is of the essence so a decision can be made and the funds can be returned prior to the expiration of the 60-day relation back period on May 31, 2025. Counsel for NBS Default, Michelle Mierzwa, is copied here if you would like to schedule a call to discuss further before making a decision.

Chandra D. Pryor*
Attorney | Bonial & Associates, P.C.
14841 Dallas Parkway, Suite 350 | Dallas, TX 75254
D: 972.643.6629 | M: 469.233.6572| F: 972.499.8777
Chandra.Pryor@BonialPC.Com
*licensed in California and Texas Federal Courts
Serving the states of California, Kansas, Missouri, Nebraska, Oklahoma & Texas

 

***Should escalation be required, please contact the following individual: Abbey Dreher at Abbey.Dreher@BonialPC.Com

This communication contains information that is intended only for the recipient named and may be privileged, confidential, subject to the attorney-client privilege, and/or exempt from disclosure under applicable law. If you are not the intended recipient or agent responsible for delivering this communication to the intended recipient, you are hereby notified that you have received this communication in error, and that any review, disclosure, dissemination, distribution, use, or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify us immediately by telephone at 1-800-766-7751 or 1-972-643-6600 and destroy the material in its entirety, whether in electronic or hard copy format.

This firm is a debt collector and any information we obtain from you will be used for that purpose.

You may opt out of receiving further email communications to this address by replying with the word "STOP" in the subject line.

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 24 of 160

Newrez LLC is an Equal Housing Opportunity Lender, NMLS # 3013 (www.nmlsconsumeraccess.org). Loans will be made or arranged pursuant to our applicable license(s), which may be found at www.Newrez.com. This communication does not constitute a commitment to lend or the guarantee of a specified interest rate. All loan programs and availability of cash proceeds are subject to underwriting and property approval.

This email may contain privileged and confidential information. The information is intended only for the use of the sender's intended recipient(s).

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 25 of 160

# Exhibit 36

**WRIGHT, FINLAY & ZAK, LLP**
Arnold L. Graff, Esq. (SBN 269170)
Michelle A. Mierzwa, Esq. (SBN 196175)
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Telephone: (949) 477-5050
Fax: (949) 608-9142
Email: agraff@wrightlegal.net

Attorney for Respondent,
NBS DEFAULT SERVICES, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In re: | BK Case No. 25-40564 CN |
| MELISSA MARIE WILKERSON, | Chapter: 13 |
| Debtor. | **SUPPLEMENTAL DECLARATION OF JESSICA KAHLER IN SUPPORT OF NBS DEFAULT SERVICES, LLC'S OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY** |

**SUPPLEMENTAL DECLARATION OF JESSICA KAHLER IN SUPPORT OF NBS DEFAULT SERVICES, LLC'S OPPOSITION TO MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY**

I, Jessica Kahler, hereby declare as follows:

1. I am employed as Assistant Vice President with NBS Default Services, LLC ("Respondent") and am authorized to sign this declaration on behalf of Respondent with respect

1

Case: 25-40564   Doc# 1124   Filed: 03/20/26   Entered: 03/20/26 13:50:36   Page 27 of 160
SUPPLEMENTAL DECLARATION OF JESSICA KAHLER OF NBS DEFAULT

to the subject loan provided to Debtor, which is evidenced by the Note (defined below) and secured by the Deed of Trust (defined below).

2. In my capacity as Assistant Vice President of Foreclosure Operations, I have and continue to have access to business records in the custody and control of Respondent as they relate to the subject loan secured by the real property located at 1933 Grass Mountain Court, Antioch, CA 94531. These records of Respondent, which include data compilations, electronically imaged documents, and others, are made and kept in the ordinary course of business by persons who have the business duty to make and maintain such records. These records are made at or near the time of the occurrence of the event or the events of which they are recorded. It is the regular practice of Respondent's servicing business to make and/or maintain these records including the records of prior servicers, including the subject loan at issue in this matter. Respondent relies on the accuracy of those records in conducting its business as a loan holder and servicer.

3. I am over eighteen years of age. I have personally reviewed the records of Respondent as they relate to the documents and other statements set forth herein. Based upon my review of Respondent's business records, I have first-hand knowledge of them and their contents. If called upon to testify, I could and would competently testify to the following under oath.

4. On April 24, 2013, Lisa Wilkerson and Steven Wilkerson ("Borrowers"), borrowed $203,400 .00 from Wells Fargo Bank, N.A. ("Loan"). To secure the debt, Borrowers signed a Note and Deed of Trust in favor of Wells Fargo Bank, N.A. ("Wells Fargo") encumbering the real property located at 1933 Grass Mountain Court, Antioch, CA 94531 (APN: 055-350-011-7) (the "Property"). Title to the Property was transferred to Melissa Wilkerson, a single person, as her sole and separate property and then to Melissa Wilkerson, trustee of the Melissa Wilkerson Revocable Trust dated June 19, 2020. On February 3, 2023, Wells Fargo assigned its interest in the Deed of Trust to Specialized Loan Servicing, LLC ("SLS"). On July 30.2024, a Substitution

Case: 25-40164    Doc# 11    Filed: 03/21/25    Entered: 03/21/25 21:55:07    Page 28 of 160

of Trustee was recorded in the Official Records of Contra Costa County, appointing NBS as the substituted trustee under the Deed of Trust.

5. Payments under the Loan were in default, and on July 31, 2024, NBS, as foreclosure trustee, recorded a Notice of Default and Election to Sell Under Deed of Trust in the Contra Costa County Recorder's Office as Instrument No. 2021-0073796, indicating the Loan was due for the 10/1/22 payment and all subsequent payments, for a total delinquent amount of $39,897.78. When the default under the Loan was not cured, on February 18, 2025, NBS, as foreclosure trustee, recorded a Notice of Trustee's Sale that set the date for the foreclosure auction for April 1, 2025, in Pleasant Hill, California. Prior to the foreclosure auction a Sale Datedown was ordered by NBS and prepared by a title company, which included confirmation that as of 9:03 a.m. on April 1, 2025, bankruptcy PACER records indicated that no bankruptcy petition had been filed by the Borrowers or Melissa Wilkerson. A true and correct copy of the Sale Datedown is attached hereto as **Exhibit A** and incorporated herein as if set forth in full. Thereafter on April 1, 2025, the NBS conducted and completed a foreclosure sale through a local auction company at 9:14 a.m. where the Property sold to a third-party, Good Neighbor Homes, LLC. Good Neighbor Homes, LLC delivered its bid funds to the local auction company via wire, and the bid funds were accepted as the high bid at the foreclosure sale effective 9:14 a.m. on April 1, 2025. A true and correct copy of the Trustee Certificate of Sale/Receipt is attached hereto as **Exhibit B** and incorporated herein as if set forth in full.

6. Later the same morning as the foreclosure sale, Debtor filed a Voluntary Petition under Chapter 13 of the bankruptcy code. At 11:57 a.m. on April 1, 2025, NBS received a phone call from a male caller indicating that a Chapter 13 bankruptcy petition was filed as Case No.25-20564 in the Northern District of California. NBS retrieved a copy of the petition available on the court's PACER Docket, which bears a time stamp of 9:36:41 a.m., after completion of the

Case 25-40164    Doc# 111    Filed 08/26/25    Entered 08/26/25 06:53:37    Page 29 of 160
SUPPLEMENTAL DECLARATION OF JESSICA KAHLER OF NBS DEFAULT

foreclosure sale to Good Neighbor Homes, LLC. A true and correct copy of the Debtor's Entered Petition is attached hereto as **Exhibit C** and incorporated herein as if set forth in full.

7. On April 11, 2025, NBS received an email attaching a letter from Shepard & Wood, LLP, identifying E. Vincent Wood as the attorney for the Debtor and providing written notice that the Debtor's Bankruptcy was filed at 9:19 a.m. The letter enclosed a copy of a Notice of Bankruptcy Case filing stating "A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 13 of the United States Bankruptcy Code, entered on 04/01/2025 at 09:36 AM and filed on 04/01/2025" and the Notice indicated a filing time of 9:19 a.m. on April 1, 2025, after completion of the foreclosure sale to Good Neighbor Homes, LLC. On April 14, 2025, NBS responded to the April 11, 2025 letter to confirm to Debtor's counsel that the foreclosure sale was completed at 9:14 am on April 1, 2025, and there was no violation of the stay. A true and correct copy of the response sent by NBS is attached hereto as **Exhibit D** and incorporated herein as if set forth in full.

8. Since the Property contained a single family residence, NBS was required to wait for 15 days after the completion of the foreclosure sale before issuing the Trustee's Deed Upon Sale to see if any eligible bidders would deliver a notice of intent to bid pursuant to Civil Code section 2924m(c)(2). On April 4, 2025, NBS received a notice of intent to bid from Carl Dexter pursuant to Civil Code section m(c)(2), who provided an Affidavit pursuant to Civil Code section 2924m under penalty of perjury indicating that he qualified as an eligible bidder in the category of prospective owner occupant under Civil Code section 2924m(a)(1). A true and correct copy of the notice of intent to bid with Affidavit is attached hereto as **Exhibit E** and incorporated herein as if set forth in full. The notice under Civil Code sections 2924m(c)(2) [Notice of Intent] and 2924m(a)(1) [Prospective Owner Occupant Affidavit] triggered the 45-day waiting period for post-auction bids to be submitted to the trustee pursuant to Civil Code section 2924m(c)(4) so that NBS

SUPPLEMENTAL DECLARATION OF JESSICA KAHLER OF NBS DEFAULT

as trustee could confirm the identity of the high bidder to include in the Trustee's Deed Upon Sale. As a result, NBS took no action to issue the trustee's deed until the end of the 45-day period, which maintains the status quo to allow the required statutory period to play out. The end of the 45-day period was May 16, 2025.

9. On April 25, 2025, NBS received a Subpoena from Vincent Wood, the attorney for Debtor and retained Wright, Finlay & Zak. LLP as its counsel to assist with response to the subpoena. On May 5, 2025, Partner Michelle Mierzwa spoke with Mr. Wood regarding the timing of the foreclosure sale prior to the BK filing and the receipt of a notice of intent to bid from a prospective owner occupant under Civil Code § 2924m(c)(2), delaying the identity of the high bidder at the completed sale. On May 7, 2025, WFZ sent its initial document production to Mr. Wood with an explanatory email regarding the status of completed sale auction and the need to wait to the end of the 45-day period to determine the identity of the high bidder.

10. On May 19, 2025, NBS confirmed no other bid funds had been received and that the high bidder at auction, Good Neighbor Home, LLC, was still the high bidder. On May 23, 2025, NBS inquired with Shellpoint/Newrez about the potential for a voluntary cancellation of the foreclosure sale. A true and correct copy of the email exchange with Shellpoint NewRez is attached hereto as **Exhibit E** and incorporated herein as if set forth in full.

11. On of about May 27, 2025, NBS received a copy of a Motion for Damages for Violation of Stay mailed by new co-counsel for Debtor, Andrew J. Christensen. NBS was never previously advised by the Debtor or his counsel of any allegation that the bankruptcy petition was filed at any time prior to 9:19a.m. or 9:14 a.m. NBS immediately followed up with Shellpoint about the cancellation of the foreclosure sale based on this new information, and on May 30, 2025, Shellpoint confirmed approval for the cancellation and return of the bid funds. See Exhibit E.

/ / /

SUPPLEMENTAL DECLARATION OF JESSICA KAHLER OF NBS DEFAULT

Case: 25-40164   Doc# 1124   Filed: 03/26/26   Entered: 03/26/26 21:53:36   Page 31 of 160

12. NBS never prepared or issued a trustee's deed upon sale to finalize the foreclosure sale and returned the bid funds to the third-party purchaser. A true and correct copy of the fund return package is attached hereto as **Exhibit F** and incorporated herein as if set forth in full.

13. Had NBS been aware, at any time prior to receiving the Motion for Damages for Violation of Stay, that the bankruptcy case was filed before the foreclosure sale occurred on April 1, 2025, NBS would have promptly cancelled the sale. It is NBS's policy to cancel any foreclosure sale that occurs after a bankruptcy petition has been filed if said bankruptcy case filing produced an automatic stay as to the foreclosed real property

14. The section of NBS' California Nonjudicial Procedures Job Aid at page 24 entitled "Bankruptcy Notifications" provides: "If BK information received after sales results reported, verify the time that the BK was filed. If filed prior to time sale cried - PULL FROM SALE."

15. NBS described the existence of the policies and procedures regarding "Bankruptcy Notifications" in its response to Special Interrogatory No. 4 propounded by Debtor, but Debtor never previously requested copies of the "Bankruptcy Notifications" policies.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of January, 2026.

_____
Jessica Kahler, Declarant

Case: 25-40164   Doc# 113   Filed: 03/26/26   Entered: 03/26/26 20:56   Page 32 of 160

SUPPLEMENTAL DECLARATION OF JESSICA KAHLER OF NBS DEFAULT

# Exhibit 59

# TIMELINE

- 4/1/2025: Petition filed, Creditors had notice within an hour. **[Exhibit 1]. [Kahler Decl. Dkt 104]**

- 4/4  NBS received Notice of Intent to Bid **[Kahler Decl. ¶8 Dkt 104].**

- 4/11 Debtor's letter to NBS and Shellpoint requesting to stop the foreclosure. **[Exhibit 3].**

- 4/14 NBS Counsel emails Debtor's Counsel that no stay violation, §2924m defense based on 9:14 sale time, represents inaccurately Prospective Owner Occupant was the winning bidder **[Exhibit 4].**

    - 10 days after NBS received NOI

    - 14 days after knew there was no OO affidavit for winning bidder

- 4/15 NBS Counsel Michelle Mierzwa called Vincent Wood, refused to stop sale. **[Decl. Wood ¶6 dkt 38]**

- 4/15 Rule 2004 examination motion drafted and filed by Debtor, docket 21. **[Wood Decl. ¶11, dkt 38]**.

    - 1 day after NBS inaccurate representation about winning bidder as prospective owner occupant and same day refusal to stop sale

- 4/18 Rule 2004 motion refiled, docket 24.  Sought foreclosure documents, including NOI, OO affidavits

- 4/20 Order granting Rule 2004 examination, docket 30.   **[Exhibit 5].**

- 4/25 Subpoena with Order Granting Rule 2004 exam received by NBS. **[Kahler Decl. ¶9 Dkt 104].**

- 5/5 NBS Counsel Michelle Mierzwa called Vincent Wood, again stated §2924m defense. **[Kahler Decl. ¶9 Dkt 104]. [Exhibit 5].**

- 5/7 NBS produces documents pursuant to Rule 2004 subpoena by email, again states §2924m defense. **[Exhibit 6]. [Kahler Decl. ¶9 Dkt 104].**   First evidence of  purported 9:14 auction time.

    - 12 days after receiving subpoena.

- 5/8 NBS Counsel Mierzwa emailed Wood indicating the foreclosure was moving forward. **[Exhibit 7].**

- 5/15 Debtor's Counsel Andrew J. Christensen started drafting motion for sanctions. **[Docket 38-1, Exhibit G timesheets**]. **[Exhibit 31].**

    - 44 days after Creditors had notice of bankruptcy filing

    - 34 days after Debtor's first demand letter on April 11

    - 20 days after subpoena served on April 25.

- 5/16  45th day after foreclosure.

- 5/19: NBS deemed sale final, left voice mail from NBS to GNH, notice that high bidder, and about subpoena, and that borrower "may be seeking to contest the results of the foreclosure" and whether GNH wants to "reconsider" "to complete the sale in light of the potential bankruptcy invalidation issue" **[Exhibit 9 VM]. [Exhibit 11 email with VM transcription].**
  - 38 days after April 11 demand letter
  - 24 days after receiving subpoena
- 5/20: NBS Counsel Mierzwa emails GNH Olivia Reyes of "concern that the borrower […] intends to challenge the validity of the sale" and "that it may be prudent" for GNH to file motion to annul stay "Otherwise there may be ongoing challenges to the validity of the sale" and NBS suggests sale may be rescinded with agreement of all parties. **[Exhibit 14, 17]. [Exhibit 22 Mierzwa Decl. ¶7 Dkt 54].**
  - 39 days after April 11 demand letter.
  - 25 days after they received the subpoena,
- 5/20 Debtor's counsel first learned that Debtor filed petition at 9:06 am **[Christensen Decl. dkt 99, Wood Decl. dkt 98]**.
- 5/21  GNH agrees to cancel foreclosure by email to NBS because "could be headache"  **[Exhibit 14] [Exhibit 17]** and "borrower's attorney will most likely contest the sale" **[Exhibit 11]** and "possibility of an invalidation." **[Exhibit 13].**
  - 1 day before motion filed
- 5/22 Motion for Damages filed, Christensen first appearance in case. [**Docket 38**].
  - 41 days after first April 11 letter requesting cancellation.
  - 2 days after learning of the 5:06 filing time.
  - 6 days after the 45th day when sale could have been deemed final.
- 5/23 NBS first contacts Shellpoint requesting rescission. Grounds for rescission: subpoena, "threat of expensive and time consuming litigation by the borrower" and "borrower's counsel is pretty aggressive about the desire to invalidate the sale, so he will likely file a lawsuit or a motion" causing "substantial delay and expense"  **[Exhibit 15].**
  - 28 days after NBS received subpoena.

- 5/27 NBS claims Motion was received (Tuesday). **[Kahler Decl. ¶11 Dkt 104]. [Exhibit 22 Mierzwa Decl. ¶8 Dkt 54].**
- 5/28 GNH claims to have received notice of the Motion, and of the 9:06 am filing time. **[GNH Opp to Motion, dkt 47]**.
  - 7 days after GNH agreed to cancel foreclosure
- 5/28: 2:42 am. Mierzwa emails Shellpoint/Newrez "Please confirm ASAP if you will agree to rescind the sale[.]" **[Exhibit 15].**
- 5/28 12:27 pm, Mierzwa emails Shellpoint/NewRez: "it appears that the attorney for the borrower is serious about vigorously contesting" and "just received" the Motion, identifies 9:06 time, and states "it is possible to oppose this motion, due to the factual dispute regarding the time of filing". **[Exhibit 15].**
  - "we recommend a voluntary rescission so that we can negotiate for a dismissal of the attached motion and avoid incurring substantial attorney's fees and costs to validate the sale."
- 5/28  12:54 PM Call between Mierzwa and Christensen, Mierzwa "demanded that Debtor withdraw the Motion" **[Exhibit 23, NBS ROG Responses, page 7]** and Mierzwd stated NBS "might consider" cancelling foreclosure. This was the first indication that Creditors would consider anything other than completing the sale. [**Christensen Decl. Dkt 55**].
- 5/30 11:52 am Shellpoint/Newrez Gerald Looby emails Mierzwa that "rescission strategy was approved by the Investor[.]"  **[Exhibit 15].**
- 5/30 12:09 pm Mierzwa emails GNH that Shellpoint agreed to rescind, and need "to resolve his demands for damages" **[Exhibit 17].**
- 5/30 at 1:02 pm Mierzwa emails Wood, Christensen, that foreclosure rescinded, demands withdrawal of Motion.  **[Exhibit 16].**
  - 11 days after NBS first asked GNH to rescind the sale.
  - 49 days after the first April 11 letter.
  - 35 days after Subpoena received

- 7/3: NBS filed opposition to Motion, disputed 9:06 filing time, did not say it would have cancelled upon learning of 9:06 time earlier, but admits requested GNH to rescind "in light of the aggressive position of Mr. Wood." **[Exhibit 20 Dkt 51**]. **[Exhibit 21, 22].**
- 7/3 NBS Rog Responses: "aggressive behavior and threats" inquired GNH, voluntary, inquired Shellpoint about voluntary agreement to cancel. Demanded withdraw. **[Exhibit 23].**
- 7/7 Shellpoint opposes motion for sanctions. **[Exhibit 25 Dkt 56].**
- 9/9 NBS Status Statement changes position to not dispute 9:06 filing time. **[Exhibit 27 Dkt 74]**
  - 105 days after NBS received notice of 9:06 filing time.
- 10/1 All Creditors joint position on proposed undisputed facts, opposing liability, opposing all fees **[Exhibit 28 Dkt 80].**
- 10/24 NBS Opposition to MSJ, first argued NBS would have cancelled if learned of 9:06 filing time earlier. **[Exhibit 31 Dkt 89].**
  - 150 days after first learning of 9:06 filing time.
- 11/10 Mediation with Maher
- 12/8 NBS Surreply re MSJ, Fees should be limited
- 1/16/2026 First evidence submitted by NBS that it would have canceled the foreclosure if it learned of 9:06 filing time earlier. **[Kahler Decl. ¶13 Dkt 104].**
  - 280 days after first April 11 letter from Debtor requesting cancellation.
  - 235 days after NBS first claimed to have learned of the 9:06 filing time.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

Case No. 25-40564

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of:


    MELISA MARIE WILKERSON,


        Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


                United States Bankruptcy Court

                1300 Clay Street, Second Floor

                Oakland, CA 94612


                Monday, March 2, 2026

                9:40 a.m.




B E F O R E:

HON. CHARLES NOVACK

U.S. BANKRUPTCY JUDGE


ECRO: UNKNOWN

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 38 of
160

HEARING re Trial

Transcribed by:  Benjamin Graham, AAERT CET-3405

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

A P P E A R A N C E S :

THE LAW OFFICE OF ANDREW J. CHRISTENSEN, PC

Attorney for Debtor

2063 Mountain Boulevard, Suite 2

Oakland, CA 94611

BY:  ANDREW J. CHRISTENSEN, ESQ.

SHEPHERD & WOOD LLP

Attorney for Debtor

2950 Buskirk Avenue, Suite 300

Walnut Creek, CA 94597

BY:  E. VINCENT WOOD, ESQ.

WRIGHT FINLAY & ZAK, LLP

Attorneys for NBS Default Services

4665 MacArthur Court, Suite 200

Newport Beach, CA 92660

BY:  OLIVIER J. LABARRE, ESQ.

ARNOLD L. GRAFF, ESQ.

Case: 25-40564    Doc# 123    Filed: 03/23/26    Entered: 03/23/26 23:57:37    Page 40 of 160
212-267-6868                    www.veritext.com                    516-608-2400

I N D E X

| WITNESSES: | DIRECT: | CROSS: | REDIRECT: | RECROSS: |
|---|---|---|---|---|
| Jessica Kahler | | 16 | 111 | |

| EXHIBITS: | PAGE: |
|---|---|
| Debtor's Exhibit 3 | 66 |
| Debtor's Exhibit 14 | 33 |
| Debtor's Exhibit 20 | 91 |

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 41 of 160

Veritext Legal Solutions

212-267-6868   www.veritext.com   516-608-2400

P R O C E E D I N G S

CLERK:  All rise.  This is the United States Bankruptcy Court, Northern District of California, the Honorable Charles Novack presiding.

THE COURT:  Please be seated.  Give me one second.  Okay.  Let's call the matter.

CLERK:  Yes, Your Honor.  Your Honor, this is your 10 o'clock trial evidentiary hearing for Melisa Marie Wilkerson, Bankruptcy Case Number 25-40564.

THE COURT:  Good morning.  Appearances first in the court.

MR. CHRISTENSEN:  Good morning, Your Honor.  This is Andrew Christensen, representing debtor, and my co-counsel, Vincent Wood.

THE COURT:  And good morning, Mr. Christensen.  Do we -- is Mr. Wood appearing by Zoom?

MR. CHRISTENSEN:  Yes.

MR. WOOD:  I'm appearing by Zoom, Your Honor.  But Mr. Christensen will be running the trial today.

THE COURT:  I thought I was going to be running trial, but that's okay.  I need all the help I can get.

MR. WOOD:  Well, I mean, not --

THE COURT:  I jest, Mr. Wood.  I jest.  Okay.  Good morning to you.

MR. WOOD:  I understand.  I probably used the

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

wrong word, but --

THE COURT:  No, no, no.  Good morning to you both.
Okay.  For the respondents?

MR. LABARRE:  Good morning, Your Honor.  This is
Olivier Labarre, appearing on Zoom for NBS Default Services.
We also have Mr. Arnold Graff here.  He's a colleague of
mine.  I'll be handling the evidentiary hearing.  But he's
also joining us at the hearing today.

Also, Your Honor, I wanted to introduce my
witness, Ms. Jessica Kahler.  She is appearing by Zoom, and
she's also here with us online.

THE COURT:  Thank you.

Good morning, Ms. Kahler.  Okay.

MS. KAHLER:  Good morning.

THE COURT:  Let's remind ourselves where we are
and what the purpose of today's hearing is.  Melisa
Wilkerson files a Chapter 13 on April 1, 2025, and on that
day, a foreclosure -- a trustee sale occurs and spawns this
motion.  I have issued, and what this contested matter is,
is Ms. Wilkinson's motion under 362(k) for determination
that certain actions post-bankruptcy filing constitute
willful violations of automatic stay.  And I've had several
hearings on this, including a motion for summary judgment.
I have issued an order denying the debtor's motion for
summary judgment on January 8th of this year, and in it, I

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

made certain determinations that there were a whole host of undisputed facts.  I also made certain conclusions of law based upon those facts under Rule 56.

And so we don't need -- I just want to remind -- I want to remind everyone that I've made determinations that many of the pertinent facts here were undisputed and therefore established under Rule 56.

I also determined that there was a real argument here of equitable estoppel, and I found -- there are four elements of equitable estoppel.  Again, this is all in my January 8, 2026 order.  And the one that remains at issue, or one that I determined there were questions of fact is the last issue.  Again, let me go through those issues.

A, the party to be estopped must know the facts. Again, the party to be estopped is Ms. Wilkinson.  Two, the debtor must intend that in this case her conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended.  Three, the latter must be ignorant of the true facts, the latter being NBS and the foreclosing party and NBS, the foreclosing party, Shellpoint, whoever it is, must rely on the conduct, that being Ms. Wilkinson's conduct to, in this case, its injury.  It's really the -- it's the last element that is at issue today.  And the parties have agreed that Ms. Kahler -- is Kahler correct?  I'm pronouncing it correctly?

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

MS. KAHLER:  Yes, sir.

THE COURT:  That Ms. Kahler's supplemental declaration that was filed, I believe, January 16th, along with an errata that was filed, I think, few days ago, is -- and obviously the respondents have the burden of proof here, but the parties have agreed, have stipulated that the supplemental declaration of Ms. Kahler constitutes the direct testimony offered by the respondents.

And Mr. Labarre, so I get -- so your client is NBS Default Services LLC.  Is that correct?

MR. LABARRE:  Yes, Your Honor, that's correct.

THE COURT:  So that's what is at issue here is this last element of equitable estoppel.  And again, I have the direct testimony through the supplemental declaration, and I've read it.  That's there.  Mr. Christensen may cross-examine Ms. Kahler, and then NBS has the right to redirect, do a redirect examination of its own witness.  So that's where things stand.  Any questions?

Okay.  Mr. Christensen, please proceed.

MR. CHRISTENSEN:  Your Honor, so on the screen, all I can see is Mr. Labarre.  I can't see the witness.  Is there a way to add more --

THE COURT:  Yeah.  That's -- so --

MR. CHRISTENSEN:  -- to see everybody's screen along the top?

Veritext Legal Solutions
212-267-6868        www.veritext.com        516-608-2400

THE COURT: Ms. Kahler, we need -- you're not doing this just by telephone, are you? There's a --

MS. KAHLER: Yes, I'm on my cell phone.

THE COURT: Well, we need to be able to see you. Are you not in front of a computer monitor or something like that?

MS. KAHLER: Yes. Hold on. Let me try. My computer monitor doesn't have a camera. That's why I was joining from my cell phone. Let me see if I can try from my laptop.

THE COURT: Ms. Batista, is she appearing by Zoom or by some other method?

CLERK: By Zoom, Your Honor.

THE COURT: Right, and does she have the Zoom link or is this just --

CLERK: She has the Zoom link, Your Honor.

THE COURT: Right. Okay. Well, I'm going to go off the record, leave the bench, and the parties can -- Ms. Batista, call me when we have Ms. Kahler on video.

CLERK: Yes, Your Honor.

THE COURT: Okay. Thank you.

(Recess.)

THE COURT: -- to Ms. Kahler. She is now visible, clearly visible, via Zoom, to the court.

Ms. Kahler, I just want to remind you that -- and

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 46 of 160

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

Ms. Kahler is appearing by Zoom.

CLERK: Yes, Your Honor.

THE COURT: I want to remind you, Ms. Kahler, that appearing by Zoom is a privilege, not a right. And you need to comport yourself as if you were in my courtroom here in Oakland, and some of the ground rules would be that you can't have any notes in front of you. If Mr. Christensen or your own counsel want to present you with a document, that's they will do. They will ask you to look at a document, and that's the only piece of paper you can look at. Are you in a closed office room?

MS. KAHLER: Yes, sir.

THE COURT: But no one should be -- you should be alone in that closed office room, and are you?

MS. KAHLER: Yes.

THE COURT: Okay, and you shouldn't -- throughout your examination, you should not have any other device, phone, laptop, whatever, open so that any third person can listen or communicate or communicate with you. You understand that?

MS. KAHLER: Yes, sir.

THE COURT: Okay. Mr. Christensen?

MR. CHRISTENSEN: Your Honor, we have a problem with this. So she's on a phone, and she does -- she can't see the exhibits that we present, and they say she has a

separate computer there that she can pull up to navigate the exhibits, which is going to be a problem because she can't see what we are showing her on the exhibits. So when I'm at my screen, when we're showing -- we're going to be going through the emails and highlighting parts, important parts, not to read the entire chain.

THE COURT: Right.

MR. CHRISTENSEN: She's not able to see what we're highlighting.

THE COURT: Is that correct, Ms. Kahler?

MS. KAHLER: Correct.

THE COURT: Mr. Labarre, are you with us?

MR. LABARRE: Yes, Your Honor. I'm here.

THE COURT: Would you please explain to me why you think this arrangement is suitable for today's hearing? It's your witness.

MR. LABARRE: Yes, it is, Your Honor. So I -- we reviewed the remote trial proceeding order, and it's my understanding that it was okay --

THE COURT: Mr. Labarre?

MR. LABARRE: Yes?

THE COURT: How is she supposed to be looking at documents?

MR. LABARRE: She has all of the exhibits, Your Honor. She has them, and she has them on a computer screen

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

right there next to her -- the phone on which her video is on. So the idea is that if there's an exhibit, Mr. Christensen can reference it. She has the ability to pull it up right there on her screen, the full exhibit on a totally separate computer screen.

THE COURT: Okay. Ms. Labarre, is there anything else on your computer screen other than -- you understand that when you look at these documents on your computer screen, you're only supposed to be looking at the document and the portion of the document that counsel directs you to review. You understand that?

MR. LABARRE: Sure. Me?

THE COURT: Wait, wait. No, Ms. Kahler.

MR. LABARRE: Oh, okay.

MS. KAHLER: Yes, sir.

THE COURT: Okay. You're not supposed to be looking at -- so when you are looking at a document, you're not supposed to look at anything other than that document. You understand that?

MS. KAHLER: Yes, sir.

THE COURT: Okay. Mr. Christensen, proceed.

MR. CHRISTENSEN: Is there --

THE COURT: You're going to examine her now?

MR. CHRISTENSEN: Well, yeah. So before we --

THE COURT: So let me put her under oath.

Veritext Legal Solutions
212-267-6868                www.veritext.com                516-608-2400

MR. CHRISTENSEN: Yeah. Just before we do that, really quick, about admitting exhibits, we'd like to offer a list of exhibits into evidence. We emailed the other side about stipulating, and I understand the court's order expects the court -- the parties to stipulate to the admission of evidence.

THE COURT: If they can.

MR. CHRISTENSEN: I sent them an email about it, hadn't heard back. So I don?t know if they have a problem.

THE COURT: Well, I can't -- if they're not going to stipulate, I can't just order them into evidence unless I actually look at them and --

MR. CHRISTENSEN: Right. So I understand. So what I'd like to do is list -- state the list of exhibits that I would like to admit to save everybody time and see if they'll stipulate to admit them.

THE COURT: No. No, no. No.

MR. CHRISTENSEN: On the record.

THE COURT: No.

MR. CHRISTENSEN: No?

THE COURT: You should have done that before.

MR. CHRISTENSEN: I did.

THE COURT: I understand. They didn't respond. Let's go through the -- these documents, are you going to examine the witness on these documents?

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 50 of 160

MR. CHRISTENSEN: Yes, but to save everybody time, I was --

THE COURT: Okay. We're wasting -- let's do it. If you're going to examine the witness on these documents, you can then move those exhibits into evidence.

MR. CHRISTENSEN: Okay. That's fine.

THE COURT: Okay. Because otherwise, I haven't reviewed your documents because I don't review evidence before it comes -- I don't review proposed evidence until trial.

MR. CHRISTENSEN: No, I understand. I just was hoping we could stipulate on the record.

THE COURT: No, I appreciate it. I appreciate it.

MR. CHRISTENSEN: But I --

THE COURT: No, I appreciate the effort, Mr. Christensen.

MR. CHRISTENSEN: Okay.

THE COURT: Okay. Let's put Ms. Kahler under oath.

CLERK: Yes, Your Honor.

Ms. Kahler, do you solemnly swear or affirm that the testimony that you are about to give in the matter now pending before this court shall be the truth, the whole truth, and nothing but the truth?

MS. KAHLER: Yes.

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 51 of 160

CLERK:  Please state and spell your full name for the record.

MS. KAHLER:  Jessica Kahler.  J-E-S-S-I-C-A, K-A-H-L-E-R.

CLERK:  Thank you.

THE COURT:  And good morning, Ms. Kahler.  Thank you again for your appearance.

Mr. Christensen, I know on the bench, I have NBS's documents.  Did you provide a separate copy to the court or you just --

MR. CHRISTENSEN:  Yes.  We submitted all the exhibits electronically.

THE COURT:  Electronically.  Okay.  Then let me -- that's -- okay.  I just wanted to see.

MR. CHRISTENSEN:  But for each exhibit, I will be pulling it up on my screen so everyone can see, so we can go through it together.

THE COURT:  Okay.  Give me one second.  Well, I apologize now.  I'm having some issues.

Okay.  Proceed, Mr. Christensen.

MR. CHRISTENSEN:  Okay.  Can we get my screen -- my document on the screen to be up on the full screen so everyone can see the document?

CLERK:  Give me one second.  Did you plug your laptop?

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 52 of 160

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

MR. CHRISTENSEN: It is. It's plugged in. But I'm also screensharing through Zoom, so it should be on either --

CLERK: Okay.

MR. CHRISTENSEN: -- available to pull up big either way.

CROSS-EXAMINATION OF JESSICA KAHLER

BY MR. CHRISTENSEN:

Q   Okay. Okay. Ms. Kahler, are you able to see this document on the screen?

A   No, I can't see you or your document.

Q   Okay. Can you pull up your declaration? This file is Docket 104 in this case.

A   What exhibit number?

Q   It's not an exhibit number. It's a docket number. It's your declaration filed for your testimony.

THE COURT: I don't think she has access to the docket.

UNIDENTIFIED SPEAKER: She can see it.

THE COURT: Okay.

CLERK: Ms. Kahler?

THE COURT: Ms. Kahler, do you see it now?

THE WITNESS: Yes.

THE COURT: Okay. Go ahead.

BY MR. CHRISTENSEN:

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 53 of 160

Q     Okay.  So you can see this, this document.  Can you see what I'm highlighting?

A     Not really.  It's small.

Q     Okay.  Can you tell that this is the declaration that you submitted in this case, a supplemental declaration of Jessica Kahler in support of NBS Default Services?

A     Yes, sir.

Q     Okay.

A     Yes, sir.

Q     Okay.  So can you see me scrolling down here?

A     Yes.

Q     Okay, can you see this signature here?

A     Yes, sir.

Q     Is this your signature?

A     Yes.

Q     Did you read this declaration before you signed it?

A     Yes.

Q     Okay.  Okay.  I'm showing you on my screen Exhibit 1.  Well, I'm sorry.  Docket 112.  Do you -- can you see this what I'm highlighting?

A     Yes

Q     Okay.

A     Yep.

Q     So you remember that the declaration -- sorry, your original declaration at 104 had a different date down

attached to it, Exhibit A, and that a corrected version was submitted?

A    Yes.

Q    Okay.  So I'm showing you on the screen here what your counsel filed as Docket 112.  Can you tell me what this is?

A    That is the sale date down that we get prior to the sale.

Q    Okay.  So in your declaration, you said, you know, attached here as Exhibit A is a true and correct copy of the date down.  Is that correct?  Is that this document?

A    Can you zoom in on the date, please?  Right there, yes.

Q    Okay.  So scrolling down to this second page, so where did NBS get this document from?  Did they get this from Specialized Loan Servicing?

MR. LABARRE:  Your Honor, I'm going to raise a quick objection that this is outside the scope of the limited, you know, issue that we're here to take evidence on today.  So also relevance.

THE COURT:  Mr. Christensen, any response?

MR. CHRISTENSEN:  Yes.  This is their Exhibit A to support their case, and this is for examining the witness about these exhibits for admissibility purposes.

THE COURT:  Ms. Labarre, if this is an exhibit attached to Ms. Kahler's declaration, which is her direct testimony in this case, Mr. Christensen has the right to

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

examine on it.

MR. LABARRE: Understood, Your Honor.

THE COURT: Okay. So the objection is overruled. This is just his cross-examination.

Go ahead.

MR. LABARRE: Okay.

BY MR. CHRISTENSEN:

Q    Okay. Ms. Kahler, you can answer.

A    Could you repeat the question, please?

Q    Yeah. So this date down here has Specialized Loan Servicing on it. Do you see this, what I'm showing you on the screen?

A    Yes.

Q    So did NBS receive this from Specialized Loan Servicing?

A    No, it was from Title 365. So Specialized Loan Servicing was the prior servicer before Shellpoint.

Q    So why is this date down addressed to Specialized Loan Servicing?

A    I'm not sure.

Q    When did NBS receive this document?

A    I would have to look in my records, but I believe it was on April 1, the morning of sale.

Q    So did you get this through the foreclosure, the trustee at auction.com?

Veritext Legal Solutions
212-267-6868                www.veritext.com                516-608-2400

A    No, sir.

Q    Did you get this directly?  Did NBS receive this directly from Title 365?

A    Yes.

Q    Okay.  Has this document been altered?

A    No, not that I'm aware of.

Q    Okay.  So going back to -- I'm showing on the screen Docket 104.  This is your declaration with the attachments.  Okay.  So I'm scrolling down here to Exhibit B.  So can you see this Exhibit B to your declaration on the screen?

A    Yes, sir.

Q    So your declaration says that this is a true and correct copy of the trustee certificate of sale.  Is that right?

A    Yes.

Q    So when you say that the sale, the foreclosure auction happened at 9:14 a.m.  Is this where you got that time from is right here on this sale receipt?

A    They send us sale results via a spreadsheet, and then we also get it through the trustee certificate of sale.

Q    Okay.  So this time stamp, is this the basis for your -- NBS's understanding that the sale was at 9:14?

THE COURT:  Mr. Christensen, I've already found as a matter of law that there's no factual dispute that the hammer fell at 9:14 a.m.

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

MR. CHRISTENSEN:  I understand that, Your Honor. That's not what this is for.

THE COURT:  Okay.  I just want to remind you.

MR. CHRISTENSEN:  No, I understand.  No, I understand.

THE COURT:  Okay.

BY MR. CHRISTENSEN:

Q    Okay.  Okay.  So is it -- so, Ms. Kahler, is that where you get that time from?

A    Yes, sir.  That's the sale time.

Q    Okay.  Who created this sale receipt?  I think in your declaration you said it was a local auction company.  Is that auction.com?

A    Correct.

Q    Okay.  So did auction.com? create this sale receipt?

A    Yes.

Q    Okay.  So down here at the bottom it has these names: Michelle Lee and Miranda Terry.  Do you see that?

A    Yes, sir.

Q    Whose signature is this?

A    I'm not sure.  It looks like Michelle Lee's.

Q    Okay.  Does Michelle Lee work for auction.com?

A    I believe so.

Q    Okay.  What about Miranda Terry?

A    I'm not sure.

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

Q    So how did NBS receive this sale receipt?

A    They send it through a website called The Box.  They no longer use that system, but that's how it comes through for us to retrieve it.

Q    Okay.  So this doesn't appear to be signed by the buyer.  Is it supposed to be signed by the buyer?

A    I'm not sure.

Q    Okay.  What about Miranda Terry?  She didn't sign it either.  Is it supposed to be signed by her?

A    I'm not sure if it needs both or just one.

Q    All right.  Okay.  Can you see this?  So I'm showing you on my screen what we will mark as Exhibit 14.  Can you see this email chain on the screen?

A    Yes.  Am I able to also pull up on my desktop?

Q    Yes.

THE COURT:  Ms. Kahler, if you can see it sufficiently through Mr. Christensen, then let's leave it at that.

THE WITNESS:  Okay.  Yeah.  If you could just zoom in a little bit.

BY MR. CHRISTENSEN:

Q    Okay.  So this -- so do you see this email chain here between Olivia Reyes at Wedgewood Homes or Good Neighbor Homes?  Actually, let me ask you this.  Is it your understanding that Good Neighbor Homes and Wedgewood Homes

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

are the same group entities?

A    Yes.  Yes, sir.

Q    Okay.  So for purposes today, when I say Good Neighbor Homes, we all -- you would agree that we all understand that means also Wedgewood Homes.  Is that right?

A    Yes, sir.

Q    Okay.  So this says it's to -- actually, let's scroll down to the bottom where this chain starts.  Okay.  So do you see this email chain here starts with Michelle Mierzwa of Wright Legal on May 20, 2025 to Olivia Reyes of Wedgewood Good Neighbor Homes.  You see this?

A    Yes, sir.

Q    Is Michelle Mierzwa legal counsel for NBS?

A    Yes, sir.

Q    Okay.  Do you remember seeing this email in the exhibits to prepare for today?

A    Yes, sir.

Q    Okay.  So you remember here where -- you remember this email as NBS requesting Good Neighbor Homes to rescind the foreclosure sale.  Is that right?

MR. LABARRE:  I'm going to raise a quick objection.  Lack of foundation.

THE COURT:  I've already -- I want to remind everyone that I made findings.  I determined that there were undisputed facts, and I made a whole list of undisputed

212-267-6868
Veritext Legal Solutions
www.veritext.com
516-608-2400

facts.  So --

MR. CHRISTENSEN:  Your Honor, we're getting to it very quickly here.

THE COURT:  So what's the --

MR. CHRISTENSEN:  We're not -- it's not about the disputed facts.

THE COURT:  So what's the question again, Mr. Christensen?

MR. CHRISTENSEN:  Well, in her declaration, she mentioned that she requests the timeline that they requested Good Neighbor Homes rescind the sale.

THE COURT:  No, no.  What's the question --

MR. CHRISTENSEN:  Yeah.  Okay.

THE COURT:  -- to the witness?

BY MR. CHRISTENSEN:

Q    The question to the witnesses is, is this the email that is the basis for your statement in your declaration that on May 20th, you requested of Good Neighbor Homes to rescind the foreclosure sale.  Is that right?

A    Correct.

Q    So do you remember in this email where it was suggested by your counsel that Good Neighbor Homes file an ex parte motion or for annulment or relief from stay?

A    Yes.

Q    Okay.  You remember that the reason that NBS requested

212-267-6868          Veritext Legal Solutions          516-608-2400
www.veritext.com

that Good Neighbor Homes agree to rescind was because of the concern that Wilkerson intends to challenge the validity of the sale. Is that right?

MR. LABARRE: I'm going to raise another objection, Your Honor. Lack of foundation. There's no foundation that my client was involved with this email, that she drafted it, or was aware of it prior to receiving it as an exhibit.

THE COURT: The exhibit is in evidence. It's her direct testimony. Are you --

MR. LABARRE: Okay.

THE COURT: Right, Mr. Christensen?

MR. CHRISTENSEN: Yeah. Well, in her declaration, she listed these facts --

THE COURT: -- which is her direct testimony.

MR. CHRISTENSEN: Yes.

THE COURT: Okay.

MR. CHRISTENSEN: This email was not attached to her declaration, but it's --

THE COURT: Okay.

MR. CHRISTENSEN: There's a lot of facts in there that are --

MR. LABARRE: Right.

MR. CHRISTENSEN: -- based on these emails that we're going through today.

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

THE COURT: Okay.

MR. CHRISTENSEN: So if -- I mean, well, if they're going to object because she's not on an email -- on this email chain and can't admit it, then we're going to have to --

THE COURT: No. Wait a minute. So what's the question?

MR. CHRISTENSEN: The question is this shows why we're here today, to find out why they canceled the foreclosure sale.

THE COURT: That's not why we are here today, Mr. Christensen. I made -- I've already determined why, that there were undisputed facts as to why they canceled the sale. What we're here today is to determine the fourth factor of the equitable estoppel test, okay?

MR. CHRISTENSEN: Yes.

THE COURT: Right.

MR. CHRISTENSEN: Which is my understanding, Your Honor, is to show -- or their claim that they would have canceled the sale based on the 9:06 filing time, if they'd known about it earlier. That's my understanding of the fact, the disputed fact.

THE COURT: Right, and when is this email dated?

MR. CHRISTENSEN: May 20th.

THE COURT: And when did you file your motion?

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 63 of 160

MR. CHRISTENSEN: The 22nd.

THE COURT: Exactly. So, and I've already also determined that they, being the respondents, were unaware of the 9:06 filing date, or I'll put it in the positive. They learned about the 9:06 filing date as a result of reading your motion.

MR. CHRISTENSEN: Yes.

THE COURT: In fact, you weren't aware of it until --

MR. CHRISTENSEN: This same day. That's right.

THE COURT: Exactly.

MR. CHRISTENSEN: Yeah.

THE COURT: So what their thoughts were about how to handle this before they learned about the 9:06 filing date may not be particularly probative --

MR. CHRISTENSEN: It is, Your Honor.

THE COURT: -- of the fourth element.

MR. CHRISTENSEN: It's directly probative of what they claim they would have done because this is going to show what they did do and how that's completely the opposite of what they claim they would have done.

THE COURT: I don't think you understand my point, Mr. Christensen.

MR. CHRISTENSEN: I do.

THE COURT: You don't.

Veritext Legal Solutions
212-267-6868                                                www.veritext.com                                                516-608-2400

MR. CHRISTENSEN:  Okay.  Then maybe I don't.

THE COURT:  Yeah.  At least I don't think you do.

MR. CHRISTENSEN:  Well, Your Honor --

THE COURT:  So ask the question.  Okay.  Okay.  Let me -- ask the question again, Mr. Christensen.  Again, I've --

BY MR. CHRISTENSEN:

Q    Okay.  Okay.  Let me ask you this, Ms. Kahler.  Why did you ask Good Neighbor Homes to rescind the sale before asking Shellpoint?

A    Because the file was already in litigation.  I mean, starting to be in litigation.  And we just knew that it was going to be a drawn-out process and it would have been better for all parties just to rescind the sale.

Q    Okay.  So isn't it true that you asked Good Neighbor Homes to rescind the sale because you needed to get their approval to rescind it before you talked to Shellpoint.  Is that right?

MR. LABARRE:  Objection.  Lack of foundation.  Relevance.

THE COURT:  It's sustained.  It's just not prohibitive.

MR. CHRISTENSEN:  Okay.

THE COURT:  Mr. Christensen, we know --

MR. CHRISTENSEN:  Your Honor, this is directly --

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

this is directly relevant.

THE COURT: Mr. Christensen, we know what they did. But that's not the issue before us today. In fact, I made -- it's not in dispute as to what they did. The question is, what would they have done if they had known --

MR. CHRISTENSEN: Exactly.

THE COURT: -- that the sale was at 9:06 and when this email was sent and these determinations were made, they didn't know about the 9:06 filing date.

MR. CHRISTENSEN: Yes, Your Honor. I understand that.

THE COURT: So had you, or I guess to be more precise, Mr. Wood told them about the 9:06 filing date, what would they have done early on?

MR. CHRISTENSEN: Yes.

THE COURT: That's the question at issue today.

MR. CHRISTENSEN: Exactly. This goes directly to that point, Your Honor, directly.

THE COURT: The objection is sustained.

BY MR. CHRISTENSEN:

Q    Okay. Ms. Kahler, why did you not tell -- so isn't it true that Good Neighbor -- or sorry, that NBS did not tell debtor's counsel that they were seeking to rescind the sale until 10 days later, 10 days after this email on May 30th. Is that right?

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 66 of 160

MR. LABARRE:  Objection, leading, lack of foundation, relevance.

THE COURT:  He's allowed to lead.  It's his cross.

MR. LABARRE:  I understand, Your Honor.

THE COURT:  I'm not quite sure what the -- could you repeat the question again, Mr. Christensen?  I apologize.  I didn't catch all of it.

MR. CHRISTENSEN:  yeah.

BY MR. CHRISTENSEN:

Q    Okay.  Ms. Kahler, isn't it true that you -- that NBS first notified debtors on May 30th?

THE COURT:  You mean debtor?

MR. CHRISTENSEN:  The debtor.  Excuse me.

BY MR. CHRISTENSEN:

Q    The debtor, on May 30th, that the sale was being rescinded?  This is in your declaration.  You remember this?

A    Yes.

Q    Okay.  So isn't it true that the reason that you didn't notify debtors that you were attempting to rescind the sale as early as May 20th when you first asked Good Neighbor is because you hadn't had the -- you didn't yet have the authority from Good Neighbor Homes or Shellpoint to actually cancel the sale.  Is that right?

A    Could you please repeat the question?

Q    Right.  So based on your declaration and based on these

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

emails, we understand that there was a 10-day delay, right, between the time that you first asked Good Neighbor Homes to rescind the sale and the date that you told the debtor you rescinded the sale.  Is that right?

MR. LABARRE:  Objection, lack of foundation, argumentative.

THE COURT:  It's overruled.

THE WITNESS:  You mean 10 days later from the May 20th date?

MR. CHRISTENSEN:  Yes.

THE WITNESS:  So that's after we -- we didn't know at the time on May 20th that there was a potential earlier time that the BK was filed.

BY MR. CHRISTENSEN:

Q    Right, but that's not my question.  My question is about the 10-day delay.  Like, I understand there's a 10-day delay based on the emails and your declaration.  So I just want to understand, isn't it true that the reason for that 10-day delay is because NBS had not yet been authorized to cancel it by Good Neighbor Homes or Shellpoint.  Is that right?

A    Correct.  We were waiting for Shellpoint to approve rescinding the sale.

MR. CHRISTENSEN:  Okay.  Debtor offers Exhibit 14 into evidence.

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

THE COURT:  And Exhibit 14 is?  Hang on.

MR. CHRISTENSEN:  Oh, I'm sorry.  I didn't hear that.

THE COURT:  I'm sorry, please?

MR. CHRISTENSEN:  I'm sorry.  Did you say it's admitted?

THE COURT:  No.  No.

MR. CHRISTENSEN:  Oh.  We offer Exhibit 14 into evidence.

THE COURT:  Hang on.  I don't have -- email chain, and -- well, part of it's admitted.  I'm admitting Exhibit 14 with the proviso that I've sustained certain objections to certain questions that you've asked on Exhibit 14.

MR. CHRISTENSEN:  That's fine.  I understand.

THE COURT:  Okay.  So -- okay.  It's -- so Mr. Labarre?

MR. LABARRE:  Thank you, Your Honor.  I would object on foundation grounds.  There's been no testimony that Ms. Kahler prepared this email, drafted it.  This is an email from counsel to Good Neighbor Homes.  I would also object on the grounds of relevance.  As the court mentioned, you know, what was going on on May 20th is materially different from what was going on on May 27th or May 28th, which is the date that NBS received the motion for sanctions and had that first notification that the sale time or the

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

bankruptcy filing time --

THE COURT:  No, I understand.  I'm not saying it's --

MR. LABARRE:  Yeah.

THE COURT:  -- it's highly probative, but I'm admitting it.

MR. LABARRE:  Fair enough, Your Honor.  I just wanted to get my objections on the record.

THE COURT:  No.  I appreciate it.

(Debtor's Exhibit 14 entered into evidence.)

BY MR. CHRISTENSEN:

Q    Okay.  So one more question here about Exhibit 14.  Can you see here where Good Neighbor Homes responds, Olivia Reyes, to NBS's counsel, Michelle Mierzwa, says they agree to cancel the sale.  Right here it says, because they agree this could be a headache.  Do you remember this?

A    Yes.

Q    Okay.  Did Good Neighbor Homes ever give any other reason for their agreement to cancel the sale other than this?

A    Not that I'm aware of.

Q    Okay.  Okay.  I'm showing on the screen here what we will mark as Exhibit 15.  Have you've seen this email chain before?  I guess there's a lot of people on this chain, but I would generally characterize it as between NBS and

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

Shellpoint about canceling the sale. Do you remember seeing this?

A    Yes.

Q    In fact, you're a party. You're on this email chain, aren't you? Do you see here?

A    Yes, sir.

Q    Okay. So it's my understanding that from your declaration, and you talk about the timeline that you first asked Shellpoint to rescind the sale on May 23rd. Is that right?

A    Could you zoom in on that part, please? Yes.

Q    Okay. So in your declaration, when you say that NBS asked Shellpoint first to cancel the sale on May 23rd, that's based on this email. Is that correct?

A    Yes.

        MR. CHRISTENSEN: Okay. Debtor offers Exhibit 15 into evidence.

        THE COURT: Any objections?

        MR. LABARRE: Same objections. I would argue lack of foundation. Also relevance, beyond the scope of the issue at hand.

        THE COURT: Mr. Christensen, what's the probative value of -- again, if we're focusing on --

        MR. CHRISTENSEN: This is directly relevant --

        THE COURT: How?

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

MR. CHRISTENSEN: -- to the factual issue of the case, that they say they would have cancelled the sale.

THE COURT: Right.

MR. CHRISTENSEN: Yes. This directly goes to it. We're almost there.

THE COURT: Why? Why is it relevant? What probative value does it have?

MR. CHRISTENSEN: Because it says why they canceled the sale and who canceled it.

THE COURT: No, based upon the evidence that they had at the time.

MR. CHRISTENSEN: Oh, yes. That's right.

THE COURT: But the key question in this is they didn't have a critical piece of information, right?

MR. CHRISTENSEN: Yes, that's right. But --

THE COURT: Okay, and?

MR. CHRISTENSEN: Yes, their claims that they would have canceled the sale if they had known earlier. This exhibit -- we're almost there, a few more questions -- goes directly to that issue, directly to that underlying factual issue that we're here for today.

THE COURT: And what do you see the --

MR. CHRISTENSEN: That they would have canceled the sale.

THE COURT: If?

212-267-6868                    Veritext Legal Solutions                    516-608-2400
www.veritext.com

MR. CHRISTENSEN: If they would have known another fact, 9:06 filing time, earlier.

THE COURT: Right.

MR. CHRISTENSEN: Yes.

THE COURT: Okay. I'll -- well, why don't you -- I'll hold on to this decision until you close the circle.

MR. CHRISTENSEN: Well, admitting the exhibit and closing that circle in the testimony are two separate things.

THE COURT: Mr. Christensen, I understand. But she's testified. Why don't you close the circle?

MR. CHRISTENSEN: Okay.

BY MR. CHRISTENSEN:

Q   Okay. So right here on May 23rd, you said, "Please confirm Shellpoint is willing to return the bid funds." Do you see this on my screen?

A   Yes.

Q   Okay, and then do you remember, Ms. Kahler, that there's a series of emails in this chain going back and forth over a few days where NBS follows up a few times, right? So you see here on May 28th, about a week later, Michelle Mierzwa was sending this another email here to Shellpoint and again says, "Please confirm ASAP if you will agree to rescind the sale and return the foreclosed bid funds." You see that?

A    Yes, sir.

Q    Okay, and then again up here further in the chain, again you're on this chain.  Again, Michelle Mierzwa asks Shellpoint, says, "Please confirm ASAP that Shellpoint will agree to rescind the sale."  You remember that?

A    Yes.

Q    All right.  All right, and then you remember this part of the email chain here again, I believe here you're copied on this again from Michelle Mierzwa of NBS to Newrez or Shellpoint, right?  Well, is it your understanding that Newrez and Shellpoint are the same?

A    Yes, sir.

Q    All right.  So you see this is another follow-up email again saying all we need, meaning NBS, all we need urgently at this point is for Shellpoint to confirm that NBS is authorized to complete the rescission and return the funds.  Is that right?

A    Yes.

Q    So isn't it true that NBS needs the approval of Shellpoint to authorize them to rescind the sale and give the funds back, right?  Is that why you're asking for this?

A    Generally, not on -- are you asking just in this specific scenario?

Q    Yeah, in this scenario.  Right.  I mean, isn't it true you're asking over and over authorization to complete the

sale because you need Shellpoint to authorize it, right?

A    Yes, because it's not a standard reason to pull it based on the BK filing after the sale time.

Q    Right.  Okay.  So here at the top, on May 30th -- so remember, as part of your declaration, you stated that on May 30th, Shellpoint agreed to cancel the foreclosure sale of the rescission.  Is that right?

A    Yes, sir.

Q    So this email we're looking at here, from Gerald Luby at Newrez, which is to Michelle Mierzwa, but also copied to you.  Do you see this?

A    Yes, sir.

Q    So it says, "The rescission strategy was approved by the investor.  Please proceed."  You see that?

A    Yes.

Q    So is this the email that is the basis for your testimony and your declaration that Shellpoint agreed approve the rescission of the foreclosure?

A    Yes, sir.

          MR. CHRISTENSEN:  Okay.  Your Honor, again, we, debtors moved to admit Exhibit 15 into evidence.

          THE COURT:  And what exhibit is this?

          MR. CHRISTENSEN:  This is Exhibit 15.

          THE COURT:  Okay.  Okay.

          MR. CHRISTENSEN:  This email chain is the basis

Veritext Legal Solutions
212-267-6868                        www.veritext.com                        516-608-2400

for her testimony, and she's on it.

THE COURT: Mr. Labarre?

MR. LABARRE: I mean, I would just reiterate my prior objections, Your Honor. Same. So lack of foundation, relevance, being beyond the scope.

THE COURT: Why does it lack -- what more foundation do you think from Mr. Christensen is necessary here?

MR. LABARRE: Well, there's no evidence that Ms. Kahler had prepared these emails or was the one sent sending these emails, so.

THE COURT: No. But she's on this. She's on there. She received it.

MR. LABARRE: Correct, Your Honor.

THE COURT: Okay. Well, Mr. Christensen, I'm going to state again, I question the probative value of these emails based upon Ms. Kahler's testimony. But I'll admit it. But it's -- I'll admit it so you can argue whatever you want to argue. But its probative value is questionable as we sit here at this moment.

(Debtor's Exhibit 15 entered into evidence.)

BY MR. CHRISTENSEN:

Q   Okay. So, Ms. Kahler, can you see my screen here with your -- sorry, I'm scrolling up really fast. We're going to your declaration here. This is Docket 104, your direct

212-267-6868          Veritext Legal Solutions          516-608-2400
www.veritext.com

declaration.  Okay.  Do you see this?  Let's see.

A    Yes.  Could you zoom in just a little?

THE COURT:  Is that her declaration?

MR. CHRISTENSEN:  This is her declaration.  Docket 104.

THE COURT:  Right.  So already in evidence.

BY MR. CHRISTENSEN:

Q    Okay.  So here on Paragraph 13, do you see here where you said, had NBS been aware -- so in your declaration, Ms. Kahler, it says, "Had NBS been aware at any time prior to receiving the motion for damages for violation of the stay, that the bankruptcy case was filed before the foreclosure sale occurred on April 1, 2025, NBS would have promptly canceled the sale."  You see that?  Is that right?

A    Yes, sir.

Q    Well, Ms. Kahler, isn't it true that NBS does not have authority to promptly cancel the sale because you have to ask permission from the buyer and Shellpoint, as we just looked.  Isn't that correct?  Yes or no?

A    No, sir.  No.

Q    It's not correct?

A    You asked in that certain scenario, in that case, and that's why we asked them, because this file had went into litigation.

Q    Right.  Okay.  So --

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

A      So normally we wouldn't have -- if we would have gotten the BK notification prior to the sale time, with the BK filed time before the sale time, we don't have to ask their permission.

Q      Okay.  That's not what I'm asking.  What I'm asking is, isn't it true, I mean, that NBS is not authorized to cancel the sale?  In this case, it's not authorized to cancel the sale because you had to get the permission from Good Neighbor Homes and Shellpoint.  Isn't that right?

A      In this situation, because it was litigated and the BK filing time was after the sale time.

Q      Okay.  So okay, also isn't it true that the investor -- it's your understanding the investor is different than Shellpoint itself, right?  That Shellpoint is a servicer and that there is an investor different than Shellpoint?  Is that your understanding?

A      Yes, sir.

Q      Okay.  So isn't it true that based on those emails, it was the investor that decided to cancel the sale, not NBS.  Is that right?

A      The client, the servicer asked the investor.

Q      Right, but that's not what I'm asking.

A      We don't go to the investor.  We don?t go to the investor.  We go to the client, the servicer.

Q      Right, but remember --

212-267-6868          Veritext Legal Solutions          516-608-2400
www.veritext.com

A    So that was --

THE COURT:  Let her finish the answer, Mr. Christensen.

THE WITNESS:  Sorry.  I was just going to say that was their -- the servicer's decision to go to the investor. That had nothing to do with us.

BY MR. CHRISTENSEN:

Q    Okay.  But so going back here, looking at Exhibit 15, isn't it true that the entity that decided, that authorized the rescission in this case was the investor, Shellpoint's investor.  Isn't that right?

A    Yes.  The client, the servicer gave us the permission through the investor.  I don't know if that's part of their protocol that they have to get permission from the investor. I'm not sure how that works.

Q    Okay.

A    We just needed Shellpoint to say that we were approved in this situation.

Q    Right.

MR. CHRISTENSEN:  Okay.  Your Honor?

THE COURT:  Yes.

MR. CHRISTENSEN:  Based on the witness's testimony, we move to strike this highlighted portion of Section 13 of her declaration --

THE COURT:  It's overruled.

Veritext Legal Solutions
212-267-6868                www.veritext.com                516-608-2400

MR. CHRISTENSEN: -- for lack of foundation, loss of personal knowledge --

THE COURT: It's overruled.

MR. CHRISTENSEN: -- because she testified --

THE COURT: Overruled. Overruled. Overruled.

MR. CHRISTENSEN: May I please finish?

THE COURT: No. It's overruled.

MR. CHRISTENSEN: Okay. The witness admitted they don't have authority to cancel the sale. They needed approval.

THE COURT: Okay. Now --

MR. CHRISTENSEN: And that's not what their declaration says.

THE COURT: I don't strike testimony, Mr. Christensen. In fact, this declaration was stipulated to as her evidence. If you want to impeach it, and you've tried to do so, you can do so, and that's what this -- that's what your line of questions has tried to do. I'm not striking anything.

MR. CHRISTENSEN: Okay. Your Honor, their --

THE COURT: Mr. Christensen, so your request to strike Paragraph 13 is denied.

MR. CHRISTENSEN: Okay. Okay. So just to be clear --

THE COURT: Okay. I've made myself clear.

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 80 of 160

MR. CHRISTENSEN: Yes, I understand.

THE COURT: Your request to strike is denied.

MR. CHRISTENSEN: Okay. That's -- I understand.

THE COURT: If you want to try and impeach her, and that's what you've been trying to do, you have the right to do so. But I'm not striking her testimony.

MR. CHRISTENSEN: Okay. So I -- so for the record, we did not --

THE COURT: Okay. No, no, wait.

MR. CHRISTENSEN: Yes?

THE COURT: I've created my record. The record is everything -- you don't need -- you don't need to say for the record because we're on a record.

MR. CHRISTENSEN: No, you're right. But I'm entitled to make a record, Your Honor, and I need to make our point about this declaration.

THE COURT: You've stipulated to it being her direct testimony. So it comes in as her direct testimony. She's testified. This is her direct testimony. You are now in the middle of your cross-examination, and you've got the right to impeach her, and that's what you've been trying to do, and I appreciate your work here. What else?

MR. CHRISTENSEN: Okay. So our position is that her declaration and the testimony in it and the exhibits have not been stipulated to be admitted in this case. It's

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

stipulated that their direct is limited to that.

THE COURT: No, no, no. no. Mr. Christensen --

MR. CHRISTENSEN: Okay.

THE COURT: It's her direct testimony. It's come in.

MR. CHRISTENSEN: Correct.

THE COURT: Now you've got -- it's her direct testimony. It's not sub- -- it's her direct testimony. Now you're on cross, and you're trying to impeach it, and I understand. But direct testimony is direct testimony now, and you're crossing.

MR. CHRISTENSEN: Yes, I understand, Your Honor.

THE COURT: That's where we are.

MR. CHRISTENSEN: We're just -- fundamentally, what I'm getting at is there's two separate things. We understand the difference between impeachment or cross-examination and the admission of evidence.

THE COURT: Yes. Right.

MR. CHRISTENSEN: The reason that's important here, that distinction, because testimony submitted by declaration, this has not been stipulated this is admissible or that it's admitted. It's just they're limited to this as their direct. But testimony and declaration is -- and all testimony at trial, and all evidence is subject to personal knowledge and foundation, and there is no foundation for

this statement --

THE COURT:  Well, why don't you --

MR. CHRISTENSEN:  -- because there's no factual foundation.

THE COURT:  Why don't you cross-examine her on the foundation?  In fact, I think --

MR. CHRISTENSEN:  I did.

THE COURT:  I think there is foundation, Mr. Christensen, if you read Paragraph 14 of her declaration.

MR. CHRISTENSEN:  Well, we're going to get to that right now.

THE COURT:  Okay.  So your motion to strike is denied.

BY MR. CHRISTENSEN:

Q    Okay.  All right.  So, Ms. Kahler, can you see exhibit -- sorry, Paragraph 14 of your declaration, Docket 104, that I've highlighted here on the screen?

A    Could you zoom in some, please?

Q    Can you see that?

A    Yes, sir.

Q    Do you remember this -- okay.  So in these three paragraphs, so part of Paragraph 13, where you say, "It is NBS's policy to cancel any foreclosure sale that occurs after a bankruptcy petition has been filed if said bankruptcy case filing produced an automatic stay as to the

foreclosed real property." So is that statement, Ms. Kahler, based on these Paragraphs 14 and 15 here, about your policy and procedures that you quote?

A     What does -- could you Zoom in on 13, please? Yes. Pulled from sale if it's prior to the sale.

Q     Right. So your statement that NBS's policy to cancel a sale, that's based on this job aid, Page 24, bankruptcy notification, that you specify in Paragraphs 14 and 15 here. Is that right?

A     Yes.

          MR. CHRISTENSEN: Okay. Your Honor, debtor moves to strike the second half of this sentence of Paragraph 13 and all of Paragraphs 14 and 15 as hearsay, lack of foundation, lack of personal knowledge, and the best evidence Rule 1002 because the job aid document is not here, has not been presented or produced, and it's not permissible to admit into evidence quotations from documents when they have the ability to produce the original. I've got case citations if you'd like.

          THE COURT: Mr. Labarre?

          MR. LABARRE: Well, Your Honor, again, this is a stipulated declaration. The reason that things weren't produced is twofold. Number one, those policies and procedures were not asked for by opposing counsel. Number two, we have a stipulation on file admitting this entire

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

declaration and its contents as the direct testimony of my witness. There was no caveat or exception for matters stated herein. So yeah, I oppose that.

THE COURT: Mr. Christensen -- thank you, Mr. Labarre.

Mr. Christensen, I agree. Your objection's overruled. This is her direct testimony. If you didn't want it to be her direct testimony, you should have objected to it. You should have said, no, I'm not stipulating to this, but you did. So this is her direct testimony, which means it's her direct testimony, and it comes in.

MR. CHRISTENSEN: Okay.

THE COURT: Mr. Christensen, move forward, please.

MR. CHRISTENSEN: Okay. Your Honor --

THE COURT: Mr. Christensen, move forward, please.

MR. CHRISTENSEN: Okay. Okay. I will, Your Honor. I just need to make a record on this because this is a very critical distinction.

THE COURT: Mr. Christensen, you've made --

MR. CHRISTENSEN: No, I'm not trying to change your ruling, Your Honor.

THE COURT: Okay. Then --

MR. CHRISTENSEN: Okay.

THE COURT: -- move forward, please.

MR. CHRISTENSEN: Okay. We --

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 85 of 160

Veritext Legal Solutions
212-267-6868                                    www.veritext.com                                    516-608-2400

THE COURT: You disagree. I understand.

MR. CHRISTENSEN: No. We did not stipulate --

THE COURT: And you've --

MR. CHRISTENSEN: -- that this is admitted. We stipulated it would be limited to that.

THE COURT: Mr. Christensen, move forward, please.

MR. CHRISTENSEN: Okay.

THE COURT: Move forward, please.

MR. CHRISTENSEN: All right. Well --

THE COURT: Because, again --

MR. CHRISTENSEN: No, no. We didn't stipulate that everything they say in here is admissible or true.

THE COURT: But --

MR. CHRISTENSEN: We said it --

THE COURT: Okay.

MR. CHRISTENSEN: Yeah.

THE COURT: Okay. Look, Mr. Christensen, when someone says she's going to testify by declaration, that means the declaration comes in because it's her testimony. Now, because if you -- because -- and that's just the way it is. That's my understanding of when someone testifies by direct testimony. Now, if you think you've been prejudiced, you know, we can just -- but this is what -- this is what you stipulated to. If you wanted -- if you didn't want testimony to come in by direct, then, you know, they could

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

have put her on the stand and introduced evidence that would have been, I presume, the equivalent of this declaration. But that's not what the parties agreed to. So this testimony comes in.

MR. CHRISTENSEN: Okay. No, I understand that, Your Honor. I'm just making the point that even if they were here live --

THE COURT: No, no, no, no, no. We're done. We're done.

MR. CHRISTENSEN: Okay.

THE COURT: We're done.

MR. CHRISTENSEN: All right.

THE COURT: If I'm wrong, go to the district court. Go to BAP. But --

MR. CHRISTENSEN: That's fine, Your Honor.

THE COURT: That's my understanding when people stipulate to direct testimony. This means this is her direct testimony. You get to cross-examine. And if you want to say, well, where is it, well, what -- but that's -- you know, that's not what you've done.

MR. CHRISTENSEN: Okay.

THE COURT: You stipulated to her direct testimony, which means this is her direct testimony. You don't get -- you don't get -- and that's just --

MR. CHRISTENSEN: Okay. We stipulated, Your

Honor, that they were limited to their direct, limited to their declaration. It doesn't mean it's not -- we can't object on admissibility.

THE COURT: No, Mr. -- okay. Mr. Christensen. Mr. Christensen, here -- that's my understanding. Okay. Look --

MR. CHRISTENSEN: No, I understand. That?s fine. That's okay, Your Honor.

THE COURT: No, no. No, no. No, no --

MR. CHRISTENSEN: I understand. I've made the record. That's good enough.

THE COURT: -- because we're about to waste a lot of time. And if the parties want to throw this declaration out and just put her on the stand as a normal witness, and they introduce whatever they introduce and you cross, the parties can tell me now. But it's her direct testimony, which means it comes in as her direct testimony. If you wanted to reserve the right to object and things like that, the stipulation should have said so, but it didn't. And the way I read that is that means it comes in.

MR. CHRISTENSEN: Okay. Well, we didn't waive any of our evidentiary objections, Your Honor. We're making them for the record.

THE COURT: Nor did you preserve any. Otherwise why am I admitting the testimony?

Veritext Legal Solutions
212-267-6868                     www.veritext.com                     516-608-2400

MR. CHRISTENSEN: Her testimony in this dec has not been admitted yet.

THE COURT: It's her direct testimony. By definition, it's been admitted. It's her direct testimony.

MR. CHRISTENSEN: Well yes, but all direct testimony --

THE COURT: And you didn't reserve any right to object, which means this is a negotiated resolution of what she's -- of what her direct testimony is. That's my understanding.

MR. CHRISTENSEN: Okay.

THE COURT: That's my understanding. Because why else do this? I don't understand, but so --

MR. CHRISTENSEN: I can explain it.

THE COURT: So you get the right to cross, and you are. Move forward.

MR. CHRISTENSEN: Okay. That's fine.

BY MR. CHRISTENSEN:

Q    Okay. So okay, Ms. Kahler, can you see my screen?

A    Yes, sir.

Q    Can you see this document on the screen?

A    Yes, sir.

Q    This has been previously marked as Exhibit 29. You see this, trustee certificate of sale receipt?

A    Yes, sir.

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 89 of 160

Q    So do you see here this version of the receipt produced by Good Neighbor Homes in discovery in this case, do you see here that the sale time says 9:14:37 a.m. right here?

A    Yes, sir.

Q    Why is this different than the trustee sale receipt that you submitted as part of your declaration?

A    Which receipt are you referring to --

Q    Exhibit A --

A    -- that's different?

Q    Exhibit A to your declaration.  So go back to --

A    Do you have that document?

Q    Yes, or sorry, I'm sorry, I meant Exhibit b.  Sorry, I'm scrolling down.  I'm almost there.  This is Exhibit B to your declaration.  We looked at this before this.  What I'm showing on the screen is a trustee certificate of sale receipt that it was filed by your counsel and as the true and correct copy.  See here it says 9:14:00 a.m.?

A    Yes.

Q    Okay.  So why is the one -- why does the receipt that Good Neighbor Homes has have a different time stamp here?  Do you see this Exhibit 4, or Exhibit 29?

A    Yes, sir.  I'm not sure why they have a different version than what we received.

Q    Okay.  So down here at the bottom of Exhibit 29, the sale receipt, do you see here, it has Michelle Lee's name

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

only and it does not have Miranda Terry's name here?  You see that?

A     Yes, sir.

Q     So can you explain that, why this Exhibit 29, the trustee sale receipt that Good Neighbor has is different than the one you provided with your declaration?

A     No, sir.  I'm not sure why they have a different version.

Q     Okay.  Do you see this electronic signature here?

A     Yes, sir.

Q     Okay.  So let's compare that to the Exhibit B attached to your declaration, Exhibit 104.  You see that's the same electronic signature?

A     Yes, sir.

Q     Okay.  So how do you explain these two different receipts with different people's names and different timestamps?

A     I'm not sure.

Q     Okay.  Why aren't you sure?  This is your declaration and your exhibit, isn't it?

        THE COURT:  Okay.  Mr. Christensen, we're going to move forward.

        MR. LABARRE:  Objection.

        THE COURT:  Mr. Christensen, I've already established by my January 9th order that the sale to Good

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

Neighbors occurred at 9:14 a.m. on April 1.

MR. CHRISTENSEN:  Okay.

THE COURT:  So let's move forward.

MR. CHRISTENSEN:  Okay.  Your Honor, then in light of --

THE COURT:  Let's move forward.

MR. CHRISTENSEN:  I know.  Okay.  Your Honor, we request in light of this testimony, there's multiple versions of this that can't be substantiated, created by -- her testimony that was created by a different entity.

THE COURT:  Okay.  Mr. Christensen, stop.  Stop, stop, stop.

MR. CHRISTENSEN:  Okay.  Yes?

THE COURT:  Move forward.  A different point.

MR. CHRISTENSEN:  Your Honor, I understand.

THE COURT:  The sale occurred at 9:14 a.m.  Now that is an undisputed fact in this case.  So let's move forward.

MR. CHRISTENSEN:  Okay.  That's fine, Your Honor.  Just for the record, we're going to make our --

THE COURT:  Mr. Christensen, move --

MR. CHRISTENSEN:  Your Honor --

THE COURT:  Don?t.  No.  No, no, no, no, no.  No, no, no.

MR. CHRISTENSEN:  Okay.  So --

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 92 of 160

THE COURT:  Move --

MR. CHRISTENSEN:  Okay.

THE COURT:  -- forward.

MR. CHRISTENSEN:  All right.  So Your --

THE COURT:  Next question.

MR. CHRISTENSEN:  Your Honor, we move to strike it on lack of foundation, lack of personal knowledge.

THE COURT:  Mr. Christensen --

MR. CHRISTENSEN:  Fine.

THE COURT:  -- move forward.

MR. CHRISTENSEN:  Okay.  We need a ruling on our motion to strike, Your Honor.

THE COURT:  Mr. Christensen, move forward.

MR. CHRISTENSEN:  Okay.

THE COURT:  It's denied because the 9:14 sale time has already been established by this court in its January 9, 2026 order.

MR. CHRISTENSEN:  All right.

BY MR. CHRISTENSEN:

Q    Okay.  I'm showing on the screen what has been marked as Exhibit 24.  You see this date down of April 1, 2025, Ms. Kahler?

A    Yes, sir.  Yes, sir.

Q    All right.  So do you see this number down here in the bottom right-hand corner?  It says NBS 00133?

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 93 of 160

A     Yes, sir.

Q     Is it your understanding that this was produced by your attorneys in discovery this case?

A     Yes, sir.

Q     Okay.  I'm going to focus your attention here.  Right here.  See right here on this first page of the date down, it says order number, and it has -- it says DEF-612911.  You see this?

A     Yes, sir.

Q     Okay, and let's go back to your Docket 104, declaration, Exhibit A.  Okay.  You see on the screen here this is the date down that was attached to your exhibit -- or sorry, to your declaration filed with the court, 104, Exhibit A.  Do you see here how there is no order number or loan number on this document?

A     Yes, sir.  That one was attached in error because it's an older one from October as an oversight.

Q     Okay.  So this Exhibit A to your declaration, Docket 104, this is not the date down of April 1st.  Is that right?

A     Yes.

Q     Okay.  So let's go to this Docket 112.  Remember this notice of errata where they said here's the correct April 1st date down.  You see this?

A     Yes, sir.

Q     Okay.  So why doesn't this have an order number and a

212-267-6868          Veritext Legal Solutions          516-608-2400
www.veritext.com

loan number?  Isn't it true that those were taken out or redacted out of the document?

A    I'm not sure.

Q    You're not sure?

A    No.

Q    So you can't tell me why this was -- the one that filed with the court was secretly redacted without disclosure. But the version produced in discovery, see this one here on the screen in Exhibit 24, has order numbers and loan numbers.  You see that?  Can you explain why that's been changed?

MR. LABARRE:  Objection, Your Honor. Argumentative.

THE COURT:  Sustained.

MR. LABARRE:  Misstates the witness testimony.

THE COURT:  Sustained.

It's argumentative, Mr. Christensen.

BY MR. CHRISTENSEN:

Q    Okay.  Ms. Kahler, isn't it true that the version attached to your declaration had these loan numbers and order numbers removed?  Isn't that true?

A    Yes.

Q    Okay.  So it isn't also true that this Exhibit 24, produced in discovery, has those loan numbers and order numbers in it?  Is that right?

212-267-6868          Veritext Legal Solutions          516-608-2400
www.veritext.com

A    Yes, sir.

Q    Okay.  Do you have any explanation of why these documents don't match?

A    No, sir.

Q    Okay.  So how do you know this is a true and correct copy of the document if you don't know why this information is missing?

A    That has our order reference number on it.  I'm not sure what the copy is that's redacted or missing.  I'm not sure that it's redacted.  It looks like it's just missing.

Q    So what else from this exhibit has been redacted out without telling us?  Do you know?

A    I'm not sure.  I haven't redacted anything on those documents.

Q    Well, so how did they become redacted and attached to your declaration then?

A    I'm not sure.

        MR. CHRISTENSEN:  Okay.  Your Honor, we move to strike Exhibit 112 for --

        THE COURT:  It's overruled.

BY MR. CHRISTENSEN:

Q    All right.  Okay.  So, Ms. Kahler, was it -- based on these emails, the email chains that we showed you about Michelle Mierzwa asking Shellpoint and Good Neighbor Homes to cancel the sale, is she the one that decided to request

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 96 of 160

the Shellpoint and Good Neighbor Homes to cancel the sale or to rescind the sale?

MR. LABARRE: I'm going to object, Your Honor. It's vague, unintelligible. I didn't understand the question being asked.

THE COURT: Could you Repeat the question, Mr. Christensen?

MR. CHRISTENSEN: Yeah.

BY MR. CHRISTENSEN:

Q Ms. Kahler, isn't it -- my understanding from these emails, it looks like -- isn't it true that Michelle Mierzwa of NBS, she's the one that decided to request rescission of the sale? Is that right?

A She was the -- she's not -- I'm not sure if that was her decision or not.

MR. CHRISTENSEN: All right. Based on the testimony, Your Honor, we move to strike all parts of Jessica Kahler's declaration based on the 9:14 filing time or that NBS would have canceled the sale, or -- because there's no evidence to support that there was -- who the decisionmaker was or that there was any authority by NBS to cancel the sale.

THE COURT: It's overruled.

MR. CHRISTENSEN: All right. Under Rule 104, the court has authority to revisit admissibility of any exhibit

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 97 of 160

or testimony at any time.  So we would ask the court to revisit that.

THE COURT:  Anything else?

MR. CHRISTENSEN:  Not on that.

THE COURT:  Okay.  I'll take your request under submission.

MR. CHRISTENSEN:  Okay.  On that point, Your Honor, I have declarations of Jessica Kahler here, 104, highlighted with the portions to strike that I can provide to the court and email to opposing counsel for the court to take under submission.

THE COURT:  I think the record's clear as to what you want me to strike.

BY MR. CHRISTENSEN:

Q    Okay.  Okay.  All right.  Ms. Kahler, let's go over the -- I just want to go over the timeline in your declaration, from what I understand are undisputed facts, to touch on a few points here.

THE COURT:  Okay.  You don't need to go over the undisputed -- the facts that I've established in the January 9th decision, Mr. Christensen.

MR. CHRISTENSEN:  No, I understand that.  This is not those facts.

THE COURT:  Well, then they're -- okay.  Ask whatever question.  Proceed with your examination, Mr.

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 98 of 160

Christensen.

BY MR. CHRISTENSEN:

Q    Well, all right.  Ms. Kahler, isn't it true that the first time that -- the first communication between NBS and debtor's counsel was on April 14th?  Well, let me back up.  So, Ms. Kahler, NBS received debtor's letter of April 11th, asking them to stop the sale.  They received it that same day.  Is that right?

A    I believe so.  But I would have to look at the email when it came in.

Q    Okay.  Okay.  So in your declaration, I'm showing on the screen, Docket 104, Paragraph 7, it says April 11th, NBS received an email attaching the letter.  You see this?

A    Yes.

Q    Okay.  So all right, so I'm showing you on the screen here what's been marked as Exhibit 3.  Do you see this fax?

A    Yes.

Q    Do you see this letter?

A    Yes.

Q    You remember this letter?

A    Yes, sir.

Q    Okay.  So you remember this letter with these attachments.  This is the letter was referred to in your declaration.  Is that right?

A    Yes.

Veritext Legal Solutions
212-267-6868                           www.veritext.com                           516-608-2400

MR. CHRISTENSEN:  Okay.  All right.  Debtor offers Exhibit 3 into evidence.

THE COURT:  Is that part of her declaration, Mr. Christensen?

MR. CHRISTENSEN:  These exhibits we're going through now were not attached to her declaration.

THE COURT:  Okay.

MR. CHRISTENSEN:  But it's my understanding that they are the basis for the facts in her declaration.

THE COURT:  This is Exhibit 3?

MR. CHRISTENSEN:  Yes.

THE COURT:  I don't -- well, Exhibit 3 consists of what?

MR. CHRISTENSEN:  This is a fax.

THE COURT:  Is this Mr. Wood's April 11th email or a fax to --

MR. CHRISTENSEN:  Yes, this is the April 11th letter sent by email and fax.

THE COURT:  And it's outlined in my -- not outlined, but discussed in my January 9th decision?

MR. CHRISTENSEN:  Probably.  I don't recall.  But there's no dispute about this letter.  But we're going through the timeline since she said she didn't remember.

THE COURT:  I understand.  But why do we need to discuss this today when my January 9th order states that Mr.

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

Wood sent them an April 11th email, and I discussed in my April -- in my January 9th order the pertinent contents of Mr. Wood's letter?

MR. CHRISTENSEN:  Well, Your Honor, the witness didn't remember the facts in her declaration.

THE COURT:  But it doesn't matter.  I'm asking -- Mr. Christensen, I've asked a question.

MR. CHRISTENSEN:  Yes.

THE COURT:  The pertinent contents of Mr. Wood's letter has been discussed --

MR. CHRISTENSEN:  Yes.

THE COURT:  -- in my January 9th order.

MR. CHRISTENSEN:  That's right.  We're not -- we don't need the content of it, just the date.  That's all.

THE COURT:  I believe that date is also in my order.

MR. CHRISTENSEN:  Yes.  Your Honor, I'm just refreshing the witness's recollection of the timeline to ask -- to get to the pertinent questions.  But the opposing counsel has been asked (indiscernible) objection, lacks foundations.

THE COURT:  But you know, when you refresh recollection, you know, those documents don't necessarily come into -- first of all, don't necessarily come into evidence.

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 101 of 160

MR. CHRISTENSEN:  That's true.

THE COURT:  So, and you just moved it into evidence.

MR. CHRISTENSEN:  That's right.

THE COURT:  So why do I need to put this into evidence when my January 9th order states what it states?  Go forward.

MR. CHRISTENSEN:  Okay.  Your Honor, just briefly, there's a lot of facts in her declaration that are undisputed.

THE COURT:  Okay.  Okay.

MR. CHRISTENSEN:  But they're based on a few different things.

THE COURT:  Mr. Christensen, I'm not going to argue with you.

MR. CHRISTENSEN:  No, I understand.

THE COURT:  If you have questions, ask questions.  My order states -- my order states the undisputed material facts.

MR. CHRISTENSEN:  Okay.  Yes.

THE COURT:  Move forward.

MR. CHRISTENSEN:  Okay.  Well, Your Honor, I'm trying to lay the foundation so the witness can answer the questions.

THE COURT:  My order -- okay, the foundation is

Veritext Legal Solutions
212-267-6868                          www.veritext.com                          516-608-2400

all -- let the record reflect that I'm waving in my left hand my January 9th order.

MR. CHRISTENSEN:  Okay.

THE COURT:  Okay.  You've refreshed her recollection.  Is that correct?

MR. CHRISTENSEN:  Yes.  So we move --

THE COURT:  Okay.  Let's move forward.

MR. CHRISTENSEN:  We move for to be admitted Exhibit 3 because it's the basis of her testimony.

THE COURT:  To the extent that Exhibit 3 is consistent with my January 9, 2026 order, it's admitted.

(Debtor's Exhibit 3 entered into evidence.)

THE COURT:  But Mr. Christensen, I want to remind you that the scope of this hearing is limited.

MR. CHRISTENSEN:  Yes.

THE COURT:  You shouldn't be repeating what this court has already found to be undisputed in this January 9th letter.  Proceed.

In fact, we're going to take a 10-minute recess. She's been on the stand for about an hour and a half.  Okay. We're taking about a 10-minute recess.

MR. LABARRE:  Yeah.  Thank you, Your Honor.

(Recess.)

THE COURT:  Is Mr. Labarre with us?

CLERK:  Yes, Your Honor.

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 103 of 160

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

THE COURT:  Okay, and the witness?

CLERK:  Yes, Your Honor.

THE COURT:  Okay.  We're back on the record.

Mr. Christensen, continue please.

BY MR. CHRISTENSEN:

Q    Ms. Kahler, can you see my screen?  The documents on my
screen?  I need to share it, right?

THE COURT:  Pardon?

MR. CHRISTENSEN:  No, I just need to --

THE WITNESS:  I can see it, if you could just zoom
in.

BY MR. CHRISTENSEN:

Q    Okay.  All right.  I'm showing on the screen exhibit --
sorry, Docket 104, your declaration.  Okay.

A    I can see it.

MR. LABARRE:  I'm sorry to interrupt.  Is the
court with us?

THE COURT:  Yes.

MR. LABARRE:  Okay.  Sorry.  Apologize.  All
right.

THE COURT:  Okay.  So we're looking at her direct
testimony, her declaration.

BY MR. CHRISTENSEN:

Q    Okay.  So here in Paragraph 7, it says on April 11, NBS
received the email, that letter from Shepherd & Wood.  Is

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 104
of 160

that correct?

A    Yes, sir.

Q    Okay.  Then a little later on, you say on April 14th, NBS responded to the April 11, 2025 letter to confirm to debtor's counsel that the foreclosure sale was completed at 9:14 a.m. on April 1, 2025.  There was no violation of the stay.

A    Correct.

Q    Okay.  Do you remember this part of the declaration?

A    Yes, sir.

Q    Okay.  So it says a copy of this request is attached to Exhibit D, but there really -- that's not attached, is it?

A    The email correspondence?

Q    Yes.

A    I believe so.

Q    You believe it's attached?

        THE COURT:  Mr. Christensen, is it or is not attached to the stipulation?

        MR. CHRISTENSEN:  No.  It's not attached, Your Honor.  But I have it.

        THE COURT:  To the stipulation.  No need to, because it's -- again, I've addressed it in the January 9th order.  So unless you have a specific question -- again --

        MR. CHRISTENSEN:  I do.

        THE COURT:  Unless you have a specific question,

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

again, the January 9th order says what their -- explains Mr. Wood's April 11th email.  It explains their April 14th response to Mr. Wood's April 11th email.  So it's undisputed.  It's an undisputed material fact --

MR. CHRISTENSEN:  That's right.

THE COURT:  -- as to Mr. Wood's April 11th letter and their April 14th response.  Okay.  Go ahead.

MR. LABARRE:  And --

THE COURT:  No, Mr. Labarre.  Mr. Labarre, unless you've -- let's --

MR. LABARRE:  Okay.  Well, I -- okay.  Okay.

THE COURT:  So now I don't know if Exhibit D is attached to the stipulation -- to her direct, your supplemental declaration, which is her direct testimony.  I could go check.

MR. LABARRE:  It is, Your Honor.  This is Mr. Labarre.  It is.  That's the only comment I was going to make, Your Honor.

THE COURT:  Okay.  Thank you, Mr. Labarre.

Okay.  So if I check the docket, Mr. Christensen, and if you want me to do that, I will, I can see if Exhibit D is attached.

MR. LABARRE:  That was it right there.

THE COURT:  Okay.  So hang on one second.  Let me get there.

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

MR. CHRISTENSEN:  Oh, yes, it is.  It is here.

THE COURT:  Okay.

MR. CHRISTENSEN:  I was mistaken.  There was a different one that was not attached.

THE COURT:  Okay.

MR. CHRISTENSEN:  Sorry about that.

THE COURT:  So proceed.

BY MR. CHRISTENSEN:

Q    Okay.  So do you see this email chain here attached to your declaration, Ms. Kahler?

A    Yes, sir.  Could you zoom in just a little bit?

Q    Yeah.  Okay.  So you remember this email on April 14th that you were copied on?  You see this?

A    Yes.

Q    So when you originally responded to debtor's letter, do you remember when you said that when the borrower -- sorry, debtor's counsel said, who is the winning bidder and were they a qualified bidder?  And remember, you responded, "We received an affidavit of compliance with Civil Code 2924m which indicates that the winning bidder is a prospective owner/occupant as defined by Civil Code 2924m(A)(1)."  Do you see this?

A    Could you zoom in?  I don't believe that's me that is responding on that email.  It's Chandra Pryor.

Q    All right.  Do you remember this email that's attached

212-267-6868                 Veritext Legal Solutions                 516-608-2400
www.veritext.com

to your declaration?

A     Yes, I remember it.  But that's not me that responded.

Q     Right.  But you're copied on this email, right?

A     Yes.

Q     Isn't Chandra Pryor the attorney from Bonial & Associates, isn't that the attorney for NBS?

A     Correct.

Q     Okay.  Well, this statement that they have a prospective owner/occupant as the winning bidder, that's not true, is it?

A     The notice of intent?  Yes, we received one.

Q     No, that's not what I asked.  This says affidavit and compliance, which indicates the winning bidder is a prospective owner/occupant, right?  Here, the winner is Good Neighbor Homes, an investor.  It's not a prospective owner/occupant, is it?

A     I'm not sure.

Q     You're not sure?

A     I didn't write this email.

          THE COURT:  Mr. Christensen, I just want to -- Mr. Christensen, I just want to state again that I have found that the winning -- that there was no material disputed fact that the Good Neighbor Homes was not a prospective owner/occupant as defined by 2924m.

          MR. CHRISTENSEN:  Yes, I understand, Your Honor.

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

THE COURT: Okay. So -- okay. So if this is -- so, I just want to. So that's what the fact -- that's what I have determined to be an undisputed fact.

MR. CHRISTENSEN: Yes.

THE COURT: Now, what hay are you going to make of this, I don?t know. But let's --

MR. CHRISTENSEN: I will get there very soon.

THE COURT: Okay. Then let's get there.

BY MR. CHRISTENSEN:

Q    Okay. Ms. Kahler, isn't it NBS's position that you're telling this court that if you -- if debtors would have told you the 9:06 filing time earlier that you would have canceled the sale? Isn't that right?

A    Well, I'd still have to look at the bankruptcy. We look at the bankruptcy filing notice.

Q    Right, but isn't that --

A    Because that did not reflect a 9:06 time.

Q    Right, I understand. But isn't the reason that we're here today is that you are claiming, NBS is claiming through your testimony that if you would have been told the 9:06 filing time before --

A    Prior to the sale. Yes. We would have pulled the sale and canceled.

Q    Oh, I'm sorry. You're saying that if NBS would have known about the 9:06 filing time before the 9:14 filing

Veritext Legal Solutions
212-267-6868                           www.veritext.com                           516-608-2400

time, they would have cancelled the sale?  Is that what you're saying?

A     Correct.

Q     What about learning about the 9:06 filing time later?  Like a week later, let's say hypothetically?

A     It wasn't a week later.  So I'm not sure how we would have -- I'm not sure what you're asking.  If we would have found out after the sale time?

Q     Yeah.  So you're -- okay.  So I'm sorry.  Going back up to Paragraph 13 of your declaration on the screen here of Docket 104, it says, "Had NBS been aware that at any time prior to receiving the motion for damages for violation of the stay, that the bankruptcy case was filed," so -- oh, sorry.  I'm sorry.  Right here, right here it says NBS would have promptly canceled the sale.  Do you see this?

A     Yes.  If we would have known about it prior to the sell time.

Q     Yes.  Okay.  So I just want to make sure I understand what you're saying.  You're saying that if NBS had learned of the 9:06 filing time before the 9:14 auction point, then NBS would have promptly canceled the sale.  Is that right?  Is that what you're saying?

A     Correct.

Q     Okay.  So isn't it NBS's position then, based on your declaration here, that if you would have known earlier this

212-267-6868          Veritext Legal Solutions          516-608-2400
www.veritext.com

fact, that attorney fees could have been avoided.  Isn't that right?

A    Correct.

MR. LABARRE:  I'm going to object that that's -- that's fine.

BY MR. CHRISTENSEN:

Q    Okay.  So going back to this email, Exhibit D to your declaration, so again, so your attorney, Chandra Pryor and copies you, emails debtor's counsel Vincent Wood here, that this is 14 days, this is two weeks after the sale occurred, right, the opening part of the auction, and in here they said that the high bidder was a prospective owner/occupant. You see that?

A    Yes.

Q    Okay.  But that statement is not true, is it?

A    I did not write that email.

Q    Well, that's not the question.

A    I didn't write that statement.

Q    Okay.  I know.  But that's not the question.  The question is, is that a true statement or a false statement?

A    I'm not sure.

Q    Well, what do you mean you're not sure?  Didn't you say in your declaration that Good Neighbor Homes was the buyer, was the high bidder?

A    At the sale.  Yes.

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

Q    Yeah.  So then why is your counsel telling Vincent Wood this untrue fact that a prospective owner/occupant was the buyer two weeks later, why is that?

MR. LABARRE:  Objection, argumentative, misstates the witness testimony.

THE COURT:  It's sustained.  It's argumentative, Mr. Christensen, it's not probative.  The question's not probative.

MR. CHRISTENSEN:  Okay.  Your Honor --

THE COURT:  Mr. Christensen --

MR. CHRISTENSEN:  Okay.

THE COURT:  -- it's not probative.  And I want to remind you that I've already found, based upon undisputed material facts, that Good Neighbor Homes was not an owner/occupant.

MR. CHRISTENSEN:  Yes, Your Honor.

THE COURT:  I understand.  I mean, I --

MR. CHRISTENSEN:  Well --

THE COURT:  I understand.  You're saying that this is a mistaken statement by Chandra Pryor.  But Chandra Pryor is not here.

MR. CHRISTENSEN:  That's right.  Well, this email is attached, so we can either -- and it's part of her declaration.

THE COURT:  I understand.

212-267-6868          Veritext Legal Solutions          516-608-2400
www.veritext.com

MR. CHRISTENSEN:  Okay.

THE COURT:  And I think she's testified she doesn't know, right?

MR. CHRISTENSEN:  Yeah.

THE COURT:  Okay.  Just now.

MR. CHRISTENSEN:  Okay.  Well, just to be clear, Your Honor, the point of a lot of these questions goes to the issue, the main issue here is what they would have done different.  They say they would have done something different.

THE COURT:  Correct.

MR. CHRISTENSEN:  And this goes directly to the credibility of that statement and the truth of it because --

THE COURT:  I understand.

MR. CHRISTENSEN:  Okay.

THE COURT:  And the question and the answer are in.

MR. CHRISTENSEN:  Okay.  All right.

BY MR. CHRISTENSEN:

Q    So, Ms. Kahler, in your declaration, do you remember that you said that you -- well, let me just make sure I get this clear for the record.  So your understanding, Ms. Kahler, is that if a prospective owner/occupant is the high bidder, that the auction closes at the courthouse steps that same time?  Is that right?

Veritext Legal Solutions
212-267-6868                     www.veritext.com                     516-608-2400

A    Could you repeat the question, please?

Q    Isn't it your understanding that if there's a prospective owner/occupant affidavit by the winning bidder at the auction, that the auction is over and it doesn't stay open for the 15 or 45 days?  Is that your understanding?

A    Yes.

Q    Okay.  So by stating that in this email here that a prospective owner/occupant was the winning bidder, isn't it true that the hope here is that debtor will drop the violation of the stay because the sale's final under 2924m?  Is not the purpose of this statement?

A    I'm not sure.  I didn't make that statement.

Q    Okay.  But it's attached to your declaration, isn't it?

A    Yes.

Q    Okay.

A    But I didn't make that statement.

Q    Okay.  But isn't that -- wouldn't you agree with that, my characterization of it, is that's why -- that's the import of a prospective owner/occupant affidavit, right?  Isn't the import of that that the sale's over?

A    That's what it means.  But I didn't make that statement.  So I'm not sure if she said that in error or what she means by that statement.

Q    All right.  So you remember in your declaration you said you got a subpoena from our Rule 2004 exam.  You got

212-267-6868                Veritext Legal Solutions                516-608-2400
www.veritext.com

that on April 25th.  Do you remember this?

A     Could you show me, please?

THE COURT:  What exhibit are we looking at, Mr. --

MR. CHRISTENSEN:  This is Docket 104.

THE COURT:  Is it an exhibit?

MR. CHRISTENSEN:  No.  It's on the docket.

THE COURT:  Yeah, but --

MR. LABARRE:  It --

THE COURT:  If it's not an exhibit, why am I looking at it?  Or a proposed exhibit, why am I looking at it?

MR. CHRISTENSEN:  It's her -- it's her declaration.  Supplemental declarations.  They're direct testimony.

THE COURT:  Okay.  Okay.  Fine.  Okay.

BY MR. CHRISTENSEN:

Q     Okay.  So Paragraph 9, you say on April 25th, NBS received a subpoena from Vincent Wood.  You see this?

A     Yes.

Q     All right.  So you remember that's about 11 days after this email chain we were looking at, right?  And do you remember --

A     Yes.

Q     Okay.  You remember that that was about -- that that 2004 examination order was requested on April 15th.  Do you

212-267-6868          Veritext Legal Solutions          516-608-2400
www.veritext.com

remember that from the papers?

A    The date down?

Q    No.  Do you remember the subpoena that you're referring to?  Do you remember that that was a request by the debtor for some documents and discovery about the prospective owner/occupant affidavit and the foreclosure.  Do you remember?

A    No.  I mean, I don't have it all memorized.

Q    Well, in your declaration here, doesn't it -- don't you go through and talk about responding to that subpoena with documents on April, or May 7th?  Right here.  Do you see this?

A    Could you zoom in, please?  Could you zoom in just a little bit more?  I can't read what it says.

        THE COURT:  You can read it into the -- you can read it in the record, Mr. Christensen, if you want.  Slowly though.  Slowly.

BY MR. CHRISTENSEN:

Q    Okay.  So here, your declaration -- okay.  In Paragraph 9 of your declaration, Docket 104, it says, "On May 7, 2025, WFZ sent its initial document production to Mr. Wood with an explanatory email regarding the status of completed sale auction and the need to wait to the end of the 45-day period to determine the identity of the high bidder."

A    Yes.  Correct.

Q    Do you remember this statement?

A    Yes, because we received a notice of intent, so we extended it to 45 days.

Q    Right.  I mean, you remember responding to that subpoena on May 7th, right?

A    Me?

Q    Yes.

A    Or NBS?  I did.

Q    You're here to testify on behalf of NBS, so --

A    Yes.

Q    Okay.  So do you remember that the documents requested and then the ones were produced were about the winning bidder and the notice of intent and all of that?

A    Yes.  Yes.

Q    Okay.  You remember that that Rule 2004 examination motion was drafted and filed on April 15th?  Do you remember this?

A    What is it in reference to?

Q    Do you remember that fact, that it was -- that the debtor on April 15th drafted and filed that rule examination motion that later the court granted and then it was served as subpoena on you?  Do you remember those facts?

A    Yes.

Q    Okay.  Okay.  So I'm showing on the screen what we'll mark as Exhibit 5.  Do you remember this order granting the

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

ex parte application pursuant to Federal Rule of Bankruptcy Procedure 2004?

THE COURT: Which exhibit is this, Mr. Christensen?

MR. CHRISTENSEN: Five.

THE COURT: Okay. Exhibit 5. Why don't you lay some foundation, asking if she's seen it?

MR. CHRISTENSEN: Yes.

BY MR. CHRISTENSEN:

Q    Is this -- Ms. Kahler, is this the document that's attached to that subpoena you're referring to in your declaration?

A    Yes.

Q    Okay. So you remember it says here these documents to be produced. So we asked for the bid slips. Do you see this?

A    Yes.

Q    You know, all documents related to the foreclosure sale, you remember that?

A    Yes.

Q    And all notices of intent to bid under 2924m. Do you remember this?

A    Yes.

Q    And Number 5, all documents identifying the high bidders for the sale. Do you remember that?

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

A    Yes.

Q    Okay.  Number 7, all affidavits of eligible bidders related to the foreclosure.  Do you remember this?

A    Yes.

Q    Okay.  Remember it said all these affidavits, including affidavits of prospective owner/occupants?  Remember that?

A    Yes.

Q    Okay.  So if it's your position, Ms. Kahler, that debtor should have told you the 9:06 filing time earlier and you would have done something different and saved attorney fees, how is it that NBS at the same time is telling the borrower incorrectly in this email that a prospective owner/occupant was the winning bidder 14 days after NBS knew that was not true and that that was one day before debtor drafted and served or filed the examination to get that evidence to prove that those statements were false?  Don't you think that NBS could have avoided attorney fees in this case by telling true facts instead of saying there was a prospective owner/occupant?

          MR. LABARRE:  Objection, argumentative, compound. I'm not even sure what the question is.

          THE COURT:  It's sustained.

          It's argumentative, Mr. Christensen, not to mention compound.

BY MR. CHRISTENSEN:

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

Q    Ms. Kahler, do you think that those attorney fees for that examination could have been avoided if Ms. Pryor had not incorrectly stated a prospective owner/occupant was the winning bidder?

THE COURT:  You're talking about your attorney's fees?  Now I don't understand the this question, Mr. Christensen.  Whose fees are we talking about?

MR. CHRISTENSEN:  Both.

THE COURT:  Well, I think they're less concerned with -- well, what does that have to do with -- what does that have to do with the main question at issue?

MR. CHRISTENSEN:  Okay.  Your Honor, the main question at issue here is whose fault is it that all these fees have been incurred and when could that have stopped sooner?  That's the point of equitable estoppel, okay?  And the unclean hands.  You want equity, you've got to show you have clean hands.  And these guys are -- they don?t.

THE COURT:  Well, but you -- see, but you haven't raised unclean hands nowhere.  And I'm not going to let you do it now, and --

THE COURT:  Okay.  The --

MR. CHRISTENSEN:  The objection is sustained.

Proceed, Mr. Christensen.

MR. CHRISTENSEN:  Okay.  Your Honor --

THE COURT:  Mr. Christensen --

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

MR. CHRISTENSEN:  Okay.

THE COURT:  Objection sustained.

MR. CHRISTENSEN:  All right.

THE COURT:  Proceed.

BY MR. CHRISTENSEN:

Q    Ms. Kahler, when did NBS first tell debtor that the winning bidder was not a prospective owner/occupant but was a third party?

A    I'm not sure.  I would have to look through the notes.

Q    Why did -- so isn't it true, based on your memory from the emails we've looked at, that when NBS asked Good Neighbor Homes and Shellpoint both to rescind the sale because debtor's counsel was being, in your words, aggressive with this subpoena, right, why did you guys wait?  Why did NBS wait 25 days after receiving the subpoena to ask Good Neighbor Homes to cancel the sale based on the subpoena showing that counsel was aggressive?  Why'd you wait 25 days?

A    I'm not sure.  That would be the attorneys that were handling that piece.

Q    So was it up to you, Ms. Kahler, to decide when to inform the borrower, the debtor, of when the sale was going to be rescinded?

A    No, because we had already had legal counsel involved at that time.

212-267-6868     Veritext Legal Solutions     www.veritext.com     516-608-2400

Q    So why did NBS spend money on attorney fees fighting a subpoena -- responding to a subpoena, rather, for 25 days instead of telling us that you were going to ask Good Neighbor Homes to rescind the sale?

A    I'm not sure.

Q    Why did you not ask Shellpoint to authorize you to rescind the sale until May 23rd, a month after you receive the subpoena?

A    I'm not sure.  The attorneys were handling at this point.

Q    Well, don't those attorneys work for you?

A    Not (indiscernible) --

MR. LABARRE:  Objection, argumentative.

THE COURT:  It's sustained.

BY MR. CHRISTENSEN:

Q    Okay.  Was it the attorney's decision to request the sale cancellation or was it your decision?

A    It was the attorney's at this point.

Q    Okay.  I'm showing you on the screen here Exhibit 15, which we've looked at before.  Do you remember -- you were part of this email chain?  Do you remember this?  So I'm showing you the PDF Page 4 of Exhibit 15, which is an email from Michelle Mierzwa, your counsel, on May 28, 2025, 12:27 p.m. to Tim Nolan at Newrez and Shellpoint, among others, and was copied to you.  You do you see this?

Veritext Legal Solutions
212-267-6868                                    www.veritext.com                                    516-608-2400

A    Yes.

Q    Okay.  Now remember this is one of the follow-up -- the several follow-up emails that we looked at before where NBS is following up to ask Shellpoint to cancel the sale.  Do you remember that?

A    Yes.

Q    Okay.  So right here, do you remember this part where she says, "Our office just received the attached motion filed in the bankruptcy court asserting that the bankruptcy was actually filed at 9:06 a.m. prior to the sale completion at 9:14 a.m. as she was waiting in line for the court to open."  Do you remember this statement in this email?

A    Yes, I remember seeing that.

Q    Okay.  Was this -- okay.  You remember this next sentence says, "While it is possible to oppose this motion due to the factual dispute regarding the time of filing, the substantial equity in the property, and legitimate nature of the first-time bankruptcy filing, we recommend a voluntary rescission of the sale so that we can negotiate for dismissal of the attached motion to avoid incurring substantial attorney's fees and costs to validate the sale."  Do you remember this?

A    Yes.

Q    Okay.  Is this the first time that NBS informed Shellpoint of the 9:06 filing time?

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

A     Yes, I believe so.

Q     Okay.  Were there any other communications between NBS or its counsel and Shellpoint about the 9:06 filing time?

A     Not that I'm aware of.

Q     Okay.  So why does it say here -- so in this email, would you agree the characterization of this --

THE COURT:  I apologize.  This is Exhibit 5 or 15?

MR. CHRISTENSEN:  Fifteen.

THE COURT:  Fifteen.  Thank you.

MR. CHRISTENSEN:  Exhibit 15.

THE COURT:  Right.

BY MR. CHRISTENSEN:

Q     So Michelle Mierzwa of NBS says here it's possible to oppose the motion due to the factual dispute regarding the time of filing, right?  You remember this?

A     Yes.

Q     So that's NBS's position, right?

A     I didn't -- I'm not sure.  I didn't write that email.

Q     Right.  But you're NBS.  Isn't that your position?

A     Could you repeat the question?

Q     Well, it says here it's possible to oppose the motion due to the factual dispute regarding the time of filing, right?  Isn't that NBS's position?

A     I am not sure.  I think she's just making her aware of the possibilities.

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

Q    Okay.  Well, I'm showing you on the screen here Exhibit 20.  Do you recognize this document filed in the bankruptcy court as Docket 51, NBS Default Services' opposition to debtor's motion for damages for violation of the automatic stay.  Do you recognize this document?

A    Yes.

Q    Okay.

THE COURT:  And is this an exhibit or is it for impeachment process?

MR. CHRISTENSEN:  This is Exhibit 20.

THE COURT:  Thank you.

MR. CHRISTENSEN:  Debtors offer this into evidence.

THE COURT:  Any objection to Exhibit 20 coming in?  Mr. Labarre?

MR. LABARRE:  I'm sorry, Your Honor.  Can you hear me?

THE COURT:  Yes.

MR. LABARRE:  Okay.  Sorry about that.  I'd accidentally muted myself.  The only objection, Your Honor, would be that this is a -- it's NBS's opposition to the motion for damages.  It's not evidence.  It's not factual evidence.  It is legal argument and briefing of counsel.  It's also already part of the record as a pleading.  So I don't know that it's appropriate to introduce it as in

Veritext Legal Solutions
212-267-6868                          www.veritext.com                          516-608-2400

evidence. But I'll defer to the court on that.

THE COURT: Well, I'll take judicial notice, Mr. Christensen.

MR. CHRISTENSEN: It's self-authenticating, Your Honor. It's admissible as self-authenticating.

THE COURT: I understand. But what's it coming in for? Just because it's authenticated doesn't mean it --

MR. CHRISTENSEN: I know. You could admit it, and we'll talk about the contents of it. Admitting it doesn't mean the truth of it --

THE COURT: Thank you, Mr. Christensen, for the --

MR. CHRISTENSEN: I'm sorry. What's that?

THE COURT: Nothing. Okay. Look, Exhibit 20 is the document filed by NBS. I mean, I'm going to take judicial notice that it was filed, and it is what it says it is.

But why don't you ask some foundational questions, Mr. Christensen, so I can determine what probative evidence it has before I admit it? Because Mr. Labarre is saying, look, it's great, it's legal argument. But so rather than argue with me, why don't you ask some questions?

MR. CHRISTENSEN: No, I will, Your Honor. I am.

THE COURT: Okay. Mr. Christensen, then please do that.

MR. CHRISTENSEN: All right.

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

BY MR. CHRISTENSEN:

Q    Okay.  So looking here at Exhibit 20, Ms. Kahler, this is Page 8 of the document, the document's identified Page 8. This is also Page 8 of the PDF.  Do you remember this section here where it says the foreclosure sale was completed before the petition was filed?  Do you remember this?

A    Yes.

Q    Okay.  Okay.  Do you remember that NBS opposed our motion for sanctions for violating the stay by making this argument that the bankruptcy was not filed at 9:06, but rather was filed at 9:36 a.m.  Do you remember that?

          MR. LABARRE:  Objection, Your Honor, calls for legal conclusions.

          THE COURT:  It's overruled.

BY w

Q    I'm sorry.  Let me ask it slightly differently.  It's not clear.  So you're aware that they -- that NBS -- isn't it true that NBS opposed debtor's motion for sanctions for violating the automatic stay by taking the position factually that the petition stamp date that includes 9:36 a.m. on ECF Number 1 and the notice of bankruptcy filing at 9:19 a.m.  Isn't it true that that was NBS's factual position opposing the motion for sanctions?

A    Yes.

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 127 of 160

Q   Okay, and isn't it true that NBS argued here, I've highlighted on my screen, debtor provided no such evidence in this case to rebut the presumption that the petition she allegedly presented at 9:06 a.m. was an acceptable form for filing?  Do you remember, isn't it true that that is NBS's position in this case, correct?

A   Yes.  Correct.

Q   Okay.  So you remember, isn't it true that NBS has taken the position that based on the judicially noticeable records, the sale is completed five minutes before the record filing of the petition.  Isn't that true?

A   Yes.

Q   Okay.

        THE COURT:  Are you done with this document?

        MR. CHRISTENSEN:  Yeah.  We move to admit it.

        THE COURT:  Okay.  It's admitted.

        (Debtor's Exhibit 20 entered into evidence.)

BY MR. CHRISTENSEN:

Q   Okay.  I'm showing you on the screen what we've marked as Exhibit 27.  I'll represent to you this is the prehearing statement pursuant to court order setting a status conference in this case that was filed by -- on behalf of NBS.  This is Docket 74 in the case.  Do you recognize this document, Ms. Kahler?

A   Could you zoom in please?  Yes.

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

Q   Okay.  Okay.  Do you remember, is it your understanding, Ms. Kahler, that in this prehearing statement from September 9, 2025 --

THE COURT:  I apologize.  Remind me again, Mr. Christensen, the exhibit number.

MR. CHRISTENSEN:  Exhibit 27, Your Honor.

THE COURT:  Okay.

MR. CHRISTENSEN:  Debtor moves Exhibit 27 into evidence.  We're going to ask a couple of questions on it now --

MR. LABARRE:  Your Honor --

MR. CHRISTENSEN:  But we'll move it into evidence now.

THE COURT:  Yes, Mr. Labarre?

MR. LABARRE:  Well, I would raise -- I would raise the same objections again.  It's a prehearing statement prepared by counsel.  And so it's not proper evidence.  It's not factual evidence.  Also lack of foundation.

THE COURT:  Right.  Ms. Christensen, same response from me.  Why don?t you ask some questions, and then we can discuss admissibility.

BY MR. CHRISTENSEN:

Q   Okay.  All right.  Okay.  Ms. Kahler, do you remember right here, this part I've highlighted here?  So you remember these words, that NBS submitted to this court, it

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

says for the purposes of the motion, meaning the motion for sanctions for violating the stay, the parties agree that the bankruptcy petition was filed at 9:06 a.m.  Okay.  Do you remember this?

A     No.

Q     Well, isn't it true, Ms. Kahler, that that NBS opposed debtor's motion saying the sale was not at 9:06, but it wasn't until more than four months later that NBS then changes position and said that they don't dispute the filing time.  Isn't that true?

A     This was with legal counsel at this time.  So I wasn't as involved in the case.

Q     Right.  But I mean, you're telling the court here today that if you would have learned of the 9:06 filing time, you'd have canceled the sale, right?

A     Yes, if we would have known about it prior to the sell time.

Q     Okay.  But when you did learn about it, isn't it true that you said you were going to fight it, your counsel said they were going to fight it, and then you did fight it in this court.  Isn't that true?

          MR. LABARRE:  Objection, argumentative.

          THE COURT:  Overworld.

BY MR. CHRISTENSEN:

Q     You can answer.

Veritext Legal Solutions
212-267-6868                          www.veritext.com                          516-608-2400

A     Oh, I'm sorry.  Could you repeat the question?

Q     Well, so isn't it true that you're telling this court that if you would have learned in the 9:06 filing time earlier, that you would have canceled the sale earlier?  But how can that be?  Because isn't it true, Ms. Kahler, that when you told the clients, your client Shellpoint about the 9:06 filing time, you said it was the grounds to fight the motion and isn't it true that you then fought the motion on that grounds and then it wasn't it true that four months later was the first time you said, well, we'll agree to that filing time?  Isn't that true?

A     I'm not sure about once it got into litigation.

Q     Okay.  When was the first time NBS submitted evidence in this case that they would have canceled the sale if they had learned earlier the 9:06 filing time?  Do you know?

A     I don't recall.

Q     Okay.  I'm showing you on the screen exhibit -- so I'm sorry, your declaration, Docket 104.  We've looked at plenty of time.  Do you remember that this was filed as Docket 104 on January 16, 2026?

A     Yes.

Q     Do you have any reason to believe, Ms. Kahler, that this is not the first time that NBS -- well, let me show -- isn't it true that this is the first time NBS submitted evidence that they would have canceled the sale if they'd

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

have learned of the 9:06 filing time earlier?

A    I'm not sure.

Q    Okay.  Well, isn't it true that this is 280 days after the debtor's April 11th letter requesting cancellation of the sale?

A    I'm not sure.

Q    Okay.  So then isn't it true that this evidence, your declaration, the first time that NBS said they would have cancelled the sale, isn't it true that's 235 days after NBS first claimed had learned of the 9:06 filing time?  Isn't that right?

A    I'm not sure --

Q    Okay.

A    -- of the exact date.

Q    So, Ms. Kahler, how are we supposed to believe that NBS would have canceled the sale learning about that 9:06 filing time when you waited 235 days to say this?

A    Our procedure --

         MR. LABARRE:  Objection, argumentative.

         THE COURT:  Sustained.

BY MR. CHRISTENSEN:

Q    Ms. Kahler, are you aware of any point in time during this case over the last now almost 11 months, that NBS ever told debtor that they would have canceled the sale if they didn't know about the 9:06 filing time earlier?

212-267-6868   Veritext Legal Solutions   www.veritext.com   516-608-2400

A    I'm not sure.

Q    Well, I mean, if you're fighting that time in the court for months, how do we know that if we'd have told you the 9:06 filing time, if you'd have learned that earlier, how do we know that you wouldn't have fought it then too, fought the factual basis?

MR. LABARRE:  Objection, argumentative.

THE COURT:  Sustained.

BY MR. CHRISTENSEN:

Q    Well, then, Ms. Kahler, isn't it true that if you would have learned of the 9:06 filing time back in early April, that you would have fought that on the grounds of factual dispute also.  Isn't that true?

A    Would you repeat that?

Q    Well, isn't it true that if you would have learned of the 9:06 filing time earlier back in the time of the sale, say, April 1st, isn't it true that you would have fought -- NBS would have disputed the factual basis for the 9:06 filing time just like you did in reality fight it?

A    If we would have known that it was a 9:06 sale prior to the sale.

Q    Right.  So when you say you would have known 9:06, do you mean -- are you trying to say that if you would have known --

THE COURT:  Okay.  Okay.  Why don't you ask the

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

question rather than trying to put words -- ask her what she means.

BY MR. CHRISTENSEN:

Q    Do you mean by that, Ms. Kahler, that if you would have seen a notice of bankruptcy filing with a stamped time of 9:06, that you would have canceled the sale?

A    Prior to the sale time, yes.

Q    Okay.  What if you'd received a notice of bankruptcy filing with an electronic timestamp of 9:06 at any time after the auction from April 1st to present, would you have canceled the sale then?

A    I would have escalated it to an attorney for review since it was so close to the time of the sale, to confirm if we should pull it or proceed or rescind if it was after the sale.

Q    Right.  So you're aware in this case that the 9:06 filing time is based on the debtor's testimony, right, and that that's earlier than the stamp time of 9:19 a.m., right?

A    Yes.

Q    So what would NBS have done back, let's say on April 1st, if you'd received a call and said, hey, she filed at 9:06 based on her understanding, but the petition's timestamped at 9:19.  Would NBS have canceled the sale or moved forward with it?

A    I would have escalated to an attorney to review due to

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 134 of 160

the discrepancy in the time.

Q    Okay.  What attorney?

A    Our internal attorney at NBS --

Q    Okay.  So then what would you need --

A    -- to make the call.

Q    What would you need to cancel the sale?  Once you send it to your attorney, what would you need before you would cancel the sale?

A    She would advise if we needed to cancel or we could proceed, or if it was after the sale time, if we would need to rescind.

Q    Okay.  So okay.  So if I understand what you're saying, are you saying -- it sounds to me like you're referring to the statements of Michelle Mierzwa in those emails to Good Neighbor Homes and Shellpoint, right, about whether they should cancel or not?

A    No.  No.

Q    Okay.  So what are you referring to?  Because your attorney would say what?

A    Just my internal process is to escalate to our attorney out of caution if it's close to the sale time like that.  If we receive notification prior, then I'm going to ask her if we can proceed with sale or if we need to pull it.  And if we receive that notification afterwards and it's a time to that the BK was filed before the sale time, then I'm going

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

to ask her if we need to resend it.

Q   Okay.  When you say her, you mean Michelle Mierzwa?

A   No.  It would probably have been Chandra Pryor.  She's our internal attorney that works with us.

Q   Internal?  Is Bonial & Associates part of NBS?

A   Bonial is our attorneys that represent NBS.

Q   Right.  But that's an outside law firm, right?  That's not owned by NBS, is it?

A   I don't believe so.  I'm not sure how that works.

Q   Okay.  So just to be clear, so in this case, remember that the 9:06 filing time is based on the debtor's declarations, not on the timestamp on the bankruptcy docket, right?  You recognize this?

A   Yes, but we didn't have that at the time of sale or on the day of sale.  We just had the bankruptcy filing that had that 9:36 and 9:19 time.

Q   Right.  So after receiving the 9:06 filing time, because it's a factual dispute, you said you'd give it to your attorneys to review to decide what to do.  Is that right?  You mean Chandra Pryor?

A   If I would have received it that day when the sale happened.  And the time would have been -- if they would have told us it was 9:06.  But we didn't get any of that information, just the bankruptcy filing.

Q   Right.  Okay.  So would Chandra Pryor have sent that

212-267-6868                Veritext Legal Solutions   www.veritext.com                516-608-2400

same information to Michelle Mierzwa to review about the filing time, the facts?

A    I'm not sure what she would have done.

        MR. LABARRE:  Objection, maybe lack of foundation, but it's fine.

BY MR. CHRISTENSEN:

Q    You can answer.

        THE COURT:  She did.

BY MR. CHRISTENSEN:

Q    Okay.  So once your lawyers -- once you've handed off this factual dispute of the 9:06 filing time, once you hand it off to the lawyer, I guess you're saying they would make the decision and tell you what to do, whether to stop the sale or fight.  Is that right?

A    Yes.

Q    Okay.  Can you still see my -- the documents on my screen, Ms. Kahler, or no?

A    No, it's like a preview of -- oh, now I can.

Q    Oh, you can see the full screen now?

A    Now I can, yeah, with the document up.

Q    Okay.

        THE COURT:  Mr. Christensen, how much more examination do you think you have?

        MR. CHRISTENSEN:  Not a whole lot, Your Honor.  If we could take a five-minute recess, I can try and narrow it

212-267-6868                Veritext Legal Solutions                516-608-2400
www.veritext.com

down.

THE COURT:  Okay.  Then let's do that.  I appreciate that.  We'll take a five-minute recess.

(Recess.)

THE COURT:  Do we have counsel and the witness?

CLERK:  Yes, Your Honor.

THE COURT:  Okay.  Mr. Christensen, have you thought about how much more time you need?

MR. CHRISTENSEN:  Yeah, I think so.  Just a few more minutes.

THE COURT:  That's fine.  I appreciate it.  Okay.  We're back in record.  Go ahead.

MR. CHRISTENSEN:  Okay.  So let me just share my screen here.

THE COURT:  And we're looking once again at exhibit --

MR. CHRISTENSEN:  We're going to -- I'm sorry, let me jump.  Okay.  So we're looking at Docket 104, the declaration.

THE COURT:  Okay.  We're back to the direct testimony.

BY MR. CHRISTENSEN:

Q    So we're looking at, Ms. Kahler, here, Paragraph 11 of your declaration.

A    Yes.

Veritext Legal Solutions
212-267-6868                                   www.veritext.com                                   516-608-2400

Q    So if I understand your declaration right, you're saying that NBS first became aware of the 9:06 filing time on about May 27, 2025.  Is that right?

A    Correct.

Q    Then you go on to state in this highlighted section here, it says, "NBS immediately followed up with Shellpoint about the cancellation of the foreclosure sale based on this new information."  Ms. Kahler, are you referring -- in this statement, are you referring to the 9:06 filing time?

A    Yes.

Q    Okay.  So then your declaration goes on and on May 30, 2025 -- oh, sorry, before we go on.  Okay.  So when you immediately followed up, are you referring to -- it says attached Exhibit E.  But I think Exhibit E is the notice of intent and not the email chain.  Is that right?

THE COURT:  Mr. Christensen, why don't you --

MR. CHRISTENSEN:  Okay.  I can show her.  That's fine, if she doesn't remember.

THE COURT:  No, no, no, no, no.  What I'm saying, there are a lot of stops, starts and stops.  And if it confused me, it's going to confuse the witness.  So why don't you just ask one question at a time?

BY MR. CHRISTENSEN:

Q    Okay.  Ms. Kahler, Exhibit E here to your declaration, it's not the email.  This is the notice of intent to bid,

Veritext Legal Solutions
212-267-6868                www.veritext.com                516-608-2400

right?  It is not the email referred to in your declaration.
Is that correct?

A     Correct.  It looks like an oversight.

Q     Okay.  So okay, so I'm showing you back on the screen
what has been marked as Exhibit 15.  We've looked at this
before.  We've looked at this email before, right?  Michelle
Mierzwa, May 28, 2025, to Shellpoint.  So you remember this
where we -- this highlighted part here where it says the
bankruptcy is filed at 9:06 a.m.?

A     Yes.

Q     Okay.  Is this the email that you're referring to in
your declaration when you said immediately on learning the
9:06 time, you followed up with Shellpoint about it?  Is
that right?

A     Yes.

Q     Isn't it true that in this email chain and others that
Newrez -- I'm sorry, that NBS asked Shellpoint or suggested
canceling the sale because of right here, like this language
highlighted here on this --

          THE COURT:  Mr. Christensen, you need to ask --

          MR. CHRISTENSEN:  Okay.

          THE COURT:  I'm just going to ask you to stay a
little -- ask a more focused question --

          MR. CHRISTENSEN:  Sure.

          THE COURT:  -- because if I can't understand it --

212-267-6868                    Veritext Legal Solutions                    516-608-2400
                              www.veritext.com

MR. CHRISTENSEN: Okay.

THE COURT: -- it's going to make it difficult for her to answer.

BY MR. CHRISTENSEN:

Q    Okay. Ms. Kahler, do you see on the screen as Exhibit 15, this email in the chain?

A    Yes.

Q    Oh, sorry. Wrong way. Just a minute. Okay. So this is the email chain from Chandra Pryor on May 23, 2025, 7:04 a.m. to Heather David at Newrez. And they copy you and Michelle Mierzwa. Do you see this?

A    Yes.

Q    Okay. So you remember, you see here how Chandra Pryor says it seems that borrower's counsel is pretty aggressive about the desire to invalidate the sale. So he will likely file a lawsuit or a motion in the bankruptcy court challenging the validity of the sale and naming Shellpoint, NBS and the third-party purchaser as parties. Do you remember this part of the email?

A    Yes.

Q    So would you agree with this, that this is NBS's reason for requesting the rescission is based on borrower's aggressive pursuit of invalidating the sale?

A    I did not write that. That was Chandra. So I'm not sure what her information was based on.

Veritext Legal Solutions
212-267-6868                                    www.veritext.com                                    516-608-2400

THE COURT: Mr. Christensen, I believe I've addressed that in my January 9, 2026 order regarding the reasons why NBS recommended withdrawing sale.

BY MR. CHRISTENSEN:

Q    Okay.  So just to confirm, Ms. Kahler, this -- so, Ms. Kahler, are you aware that NBS, in their briefs in this case and in their discovery responses in this email, use this word aggressive as the reason -- you know, aggressive counsel is the reason for canceling a sale?  Do you remember that this is the representations made by NBS?

A    Yes, I remember seeing that.

Q    Okay.  So isn't it true that NBS never told Good Neighbor Homes or Shellpoint any other reason to cancel the sale except for because of aggressive counsel and potential litigation costs?  Isn't that true?

A    You have the email to Good Neighbor,

Q    Right.  But that's not my question.  My question is, isn't it true that that -- we know that that representation is made in discovery responses, emails, briefs filed with the court, right?  So the question is, isn't it true that that representation by NBS is the reason for canceling was never changed to anything else?  Isn't that right?

A    I'm not sure.

Q    I'm sorry.  Say that again.

A    I'm not sure.

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 142 of 160

THE COURT: Mr. Christensen, I've addressed this in my January 9th order.

MR. CHRISTENSEN: I understand. Okay --

THE COURT: Well, then if you understand, then those are undisputed findings of fact, which this trial is not going to -- it's not going to amend, alter, rescind, reverse, period.

BY MR. CHRISTENSEN:

Q Okay. So, Ms. Kahler, you're aware that NBS never filed a motion for relief from stay or to annul the stay in this case. Isn't that correct?

A I'm not sure. The attorneys would handle that.

Q Okay. So why was relief from stay never -- well, let me see if I understand that. So are you saying the reason that -- well, I guess do you know the reason why relief from stay was never filed in this case?

A No.

Q Is that something we'd have to ask your attorneys? Are they the ones that decide that?

A Yes.

Q Okay. So does NBS rely on their attorneys to decide to file relief from stay the same way that you rely on them about canceling the foreclosure?

A I'm not sure the relief of stay process.

Q Right. But I mean, you testified before that you rely

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

on your counsel to decide whether to cancel the sale.

A    Correct.

Q    So do you also rely on them to decide whether to file relief from stay or not in that same way?

MR. LABARRE:  Objection, asked and answered.

THE COURT:  Sustained.

BY MR. CHRISTENSEN:

Q    Well, what I'm asking is, does NBS rely on its counsel to decide whether to file relief from stay or not in this case?  Is that right?

THE COURT:  In this case?  I think she said she doesn't know.

MR. CHRISTENSEN:  She doesn't know if one was filed.

THE COURT:  Well --

MR. CHRISTENSEN:  This is about whether she -- they rely on --

THE COURT:  Okay.  The court takes judicial notice that one wasn't filed.  Right?

MR. CHRISTENSEN:  Yes, that's right.

THE COURT:  Okay.  So let's not play hide the ball here, Mr. Christensen.

MR. CHRISTENSEN:  I'm not.

THE COURT:  Then ask the question.

BY MR. CHRISTENSEN:

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 144 of 160

Q     Okay.  Does NBS rely on their counsel to make this decision to not file a relief from stay?  Is that right?

A     I'm not sure of the relief of stay process.  That's for bankruptcy.

Q     But I'm not asking the process.  I'm asking about the decision.

A     That would be part of the bankruptcy process, though.  I'm not familiar with that.

Q     Right.  I know you're -- not the process.  I'm just saying is outside counsel making that decision also?

MR. LABARRE:  Objection, asked and answered.

THE WITNESS:  I don?t know.

THE COURT:  She says she doesn't know --

MR. LABARRE:  She doesn't know, Your Honor.

THE COURT:  She doesn't know what the process is.  Now you're asking her what the process is.  So the objection --

MR. CHRISTENSEN:  No, I --

THE COURT:  The objection is sustained.

Move forward.

BY MR. CHRISTENSEN:

Q     Okay.  Ms. Kahler, you're aware that your counsel, Michelle Mierzwa, has given speeches and written articles about the Hager case in 2924m.  Is that right?

A     No.

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

MR. LABARRE: Objection, relevance, outside the scope of the proceedings.

THE COURT: What's the relevance, Mr. Christensen? What probative value is this going to lead to?

MR. CHRISTENSEN: Oh, we'll get to it right now. Next question.

THE COURT: Okay. Then why don't you ask the next question?

MR. CHRISTENSEN: Okay. So if you can make her answer that question?

THE COURT: What?

MR. CHRISTENSEN: Can she answer that question?

THE COURT: Why don't you answer the question, Ms. Kahler?

THE WITNESS: Could you repeat it? Repeat it, please?

THE COURT: If you know.

BY MR. CHRISTENSEN:

Q    Yeah. Are you aware that your counsel, Michelle Mierzwa, has given speeches about this legal case? You know, 2924m, the basis for the reason the NBS didn't stop the foreclosure deal. Did you know that she's given speeches about it with Judge Lastretto from the Hager case about that point of law, right? Are you aware of this?

A    No.

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

Q    Well, you've interacted with Michelle Mierzwa for Ms. Wilkerson's case, haven't you?

MR. LABARRE:  Objection, attorney-client privilege.

THE COURT:  Sustained.

MR. CHRISTENSEN:  I'm not asking about the content, just that you've interacted with her.  I mean, she's on all these email chains.

THE COURT:  It's overruled.

BY MR. CHRISTENSEN:

Q    You can answer, Ms. Kahler.

A    Yes.

Q    Okay.  So isn't it true that Michelle Mierzwa is leading the charge on this case to get a ruling on a case in first impression on 2924m?

MR. LABARRE:  Objection, calls for legal argument, legal conclusion, lack of foundation, calls for speculation.

THE COURT:  It's sustained.

MR. LABARRE:  Relevance.

THE COURT:  It's sustained.

MR. CHRISTENSEN:  Okay.  All right.  Your Honor, that's all the questions that we have for now.  We'll reserve our rights to ask further questions or follow-up if there's redirect, or sorry, if there is, yeah, redirect.

THE COURT:  Yeah.  Okay.  Counsel, any redirect?

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

MR. LABARRE: Excuse me. Yes, Your Honor.

THE COURT: Do you want five minutes or can we proceed? It's up to you.

MR. LABARRE: I think we can proceed, Your Honor. I think I'm comfortable proceeding. So if that's okay with the court, we can just go forward.

THE COURT: No. That's fine. Go ahead.

REDIRECT EXAMINATION OF JESSICA KAHLER

BY MR. LABARRE:

Q Okay. Ms. Kahler, just a few questions for you, and I'm going to start with a hypothetical. So let's say that on April 1, 2025, at 11:57 a.m., when you get that call from someone notifying NBS about the bankruptcy sale, the caller says, hey, we filed a bankruptcy at 9:06am. What would NBS have done at that point?

MR. CHRISTENSEN: Objection. That's outside the scope of the direct based on the stipulation of the parties. This is not addressing the points that we raised. This is new testimony supporting their direct case.

THE COURT: Mr. Labarre, could you just restate the hypothetical? I apologize. I was --

MR. LABARRE: Sure, and I'd like an opportunity to respond to points made by counsel.

BY MR. LABARRE:

Q But the hypothetical was on April 1, 2025, NBS, in that

212-267-6868          Veritext Legal Solutions          516-608-2400
                           www.veritext.com

phone call that Ms. Kahler testified to in her declaration, which is part of the direct, notifying NBS that a bankruptcy was filed, you know, had that caller said, hey, the bankruptcy was filed at 9:06 a.m., the question was, what would NBS have done?

MR. CHRISTENSEN: Same objection.

THE COURT: It's overruled.

BY MR. LABARRE:

Q   You can go ahead and answer, Ms. Kahler.

A   Oh, sorry. If we would have known prior to the sale, I would have ran a PACER search to confirm the time. And then since it's so close to time, just out of abundance of caution, I probably would have still escalated it to our internal attorney to confirm we could proceed. I'm sorry, that we would pull it if it was prior to the sale time.

Q   And when you say pull it, what does that mean?

A   Cancel the sale and have vendors cancel it, not proceed.

Q   So, a slightly different hypothetical. Let's say that on April 1, 2025, when the PACER docket was pulled, as you state in your declaration, let's say that the time of that petition reflected on the docket or on the petition itself was 9:06 a.m. What would NBS have done?

MR. CHRISTENSEN: Objection. Same objection. This is outside the scope. This is -- they're adding direct

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

testimony that is -- we stipulated that this would not be allowed.

THE COURT: It's overruled.

BY MR. LABARRE:

Q You can go ahead and answer, Ms. Kahler.

A I'm sorry. Can you repeat that one more time?

Q Sure. So it's another hypothetical question. So on April 1, 2025, in your declaration, you state that NBS pulled a copy of the docket and the petition and saw a filing time of 9:36 a.m. Is that correct?

A Yes.

Q Okay. So the hypothetical is, what if that petition and that docket had shown a filing time of 9:06 a.m.? What would NBS have done?

MR. CHRISTENSEN: Your Honor, same objection, but also irrelevant. It's counterfactual. It doesn't make any sense.

THE COURT: I understand. I understand. It's overruled.

THE WITNESS: Since this was after the sale was held, I would have escalated to our attorney to confirm that we could rescind the sale since it was filed prior to the sale time.

BY MR. LABARRE:

Q Okay, and does that testimony hold true had NBS learned

212-267-6868                 Veritext Legal Solutions                 516-608-2400
www.veritext.com

about the 9:06 filing time at any point prior to when the

motion for damages or sanctions was filed?

MR. CHRISTENSEN:  Objection.  That's leading.  It

misstates her prior testimony.  They're trying to change

what she said.

THE COURT:  It's overruled.

MR. CHRISTENSEN:  It's outside the direct of our -

- outside the scope of the direct that we stipulated to.

THE COURT:  It's overruled.

BY MR. LABARRE:

Q    You can go and answer, Ms. Kahler.

A    Could you repeat it one more time?

Q    Sure.  So the question was, does that testimony hold

true had NBS known at any point prior to the motion for

damages about the 9:06 bankruptcy filing time?

MR. CHRISTENSEN:  Same objection.

THE WITNESS:  Correct.  We would have escalated it

to confirm that we would be able to resend the sale if it

was filed prior to the sale time.

BY MR. LABARRE:

Q    And Ms. Kahler, do you have a copy of your declaration,

Docket Number 104 that you have access to?

A    I don't.  I just have the exhibits pulled up.

Q    Okay.  Well, my question was do you have access.  Can

you pull it up now?

Veritext Legal Solutions
212-267-6868                          www.veritext.com                          516-608-2400

A    The declaration?

THE COURT:  Mr. Labarre?  Mr. Labarre, the direct is her direct is her direct.  Why don't you ask a question?

MR. LABARRE:  Sure.  Okay.  Sorry.  I'm just scrolling down.

BY MR. LABARRE:

Q    In Paragraph 14 of your declaration, you reference NBS's California non-judicial procedures job aid at Page 24, entitled bankruptcy notifications.  My question is, can you explain to us what NBS's California non-judicial procedures job aid is?

MR. CHRISTENSEN:  Same objection.  That is outside the scope.  We specifically restricted their direct about that.

THE COURT:  It's overruled.

MR. CHRISTENSEN:  Those are the words they used.  That is outside the scope, Your Honor.

THE COURT:  It's overruled.

MR. CHRISTENSEN:  Your Honor, if I may --

THE COURT:  Mr. Christensen.  Mr. Christensen.  Overruled.

MR. CHRISTENSEN:  Okay.  We forewent discovery based on that stipulation, and he's asking things that we --

THE COURT:  Mr. Christensen.  Mr. Christensen, stop.

Veritext Legal Solutions
212-267-6868                www.veritext.com                516-608-2400

MR. CHRISTENSEN: -- gave up that opportunity to find out --

THE COURT: Stop, stop, stop. Stop.

MR. CHRISTENSEN: -- based on that stipulation. So by taking that away, that violates the due process, everything, every rule of evidence. It violates our stipulation. They --

THE COURT: So you stipulated to that statement, yet that was the very statement you wanted to strike, right?

MR. CHRISTENSEN: No, we didn't. No, that's not right.

THE COURT: Right? Mr. Christensen, right?

MR. CHRISTENSEN: No.

THE COURT: Right?

MR. CHRISTENSEN: No. We --

THE COURT: You want me to read the record to you?

MR. CHRISTENSEN: Yes. You can read the order approving our stipulation. It didn't say anything was admissible. None of it. It said they will be limited to their direct to those statements.

THE COURT: Okay. Okay. Okay.

MR. CHRISTENSEN: That's what -- it's a big difference.

THE COURT: Thank you, Mr. Christensen. Thank you.

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

Mr. Labarre, I'm sustaining this objection.

MR. LABARRE:  Well, Your Honor, could I be heard on that for just a moment?

THE COURT:  Sure.

MR. LABARRE:  Okay.  The basis for these questions is that Mr. Christensen --

THE COURT:  Yes.

MR. LABARRE:  -- is that Mr. Christensen asked specific questions about this paragraph, these statements, the quoted portion.  He asked specific questions about what happened on April 1st, what if NBS had known prior of the 9:06 sale time.  So --

THE COURT:  Mr. Labarre?  Mr. Labarre?

MR. LABARRE:  Yeah.

THE COURT:  Okay.  I'm going to stop you.

MR. LABARRE:  Yeah.

THE COURT:  What holds true for Mr. Christensen holds true for you.  This was her direct testimony.

MR. LABARRE:  Of course.

THE COURT:  This was her direct testimony.  And she stated that based upon NBS policy and pamphlet, this is what I would have done, period.

MR. LABARRE:  Sure.  Yes.

THE COURT:  Mr. Christensen moved to strike it.  I denied it.  He asked me questions regarding it.

212-267-6868

Veritext Legal Solutions
www.veritext.com

516-608-2400

MR. LABARRE: Right.

THE COURT: Fine. But I'm not going to let you testify -- I'm not -- I don't think it's appropriate for --

MR. LABARRE: Okay.

THE COURT: -- for her to now testify -- for her to supplement her direct testimony when it's not in -- when it's not directly responding to Mr. Christensen's cross-examination. So --

MR. LABARRE: Okay.

THE COURT: -- let's move forward.

MR. LABARRE: I agree with the court. But in my view, it's not --

THE COURT: I understand.

MR. LABARRE: -- supplementing. It's within the scope. So that's why. But anyway. Okay, fair enough.

BY MR. LABARRE:

Q    Ms. Kahler, in Paragraph 11, you state that on or about May 27, 2025, NBS received a copy of the motion for damages. Is that a true statement?

A    Yes. Correct.

Q    Was it on May 27, 2025, or was it after? Was it before? Because the statement says on or about.

A    I believe it was May 28, 2026 -- I mean, 2025. Sorry.

Q    Okay, and as of May 28, 2025, can you tell us what the status of the overbid procedures -- in other words, the

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

2924m procedure was at that point?

MR. CHRISTENSEN: Same objection, outside the scope of the direct.

THE COURT: I'm going to allow it. It's overruled.

THE WITNESS: I believe at this point, we had only received an NOI, and we did not receive any funds.

BY MR. LABARRE:

Q Was a 45-day window still open at that point in time, if you know?

A I can't recall.

THE COURT: I believe I -- Mr. Labarre, I believe that's addressed in my January 9, 2026 decision.

MR. LABARRE: Understand, Your Honor.

THE COURT: I believe the window closed.

MR. LABARRE: Closed.

THE COURT: No, closed on --

MR. LABARRE: I understand, Your Honor.

THE COURT: Closed on June 1.

MR. LABARRE: Yeah. I will -- I'll ask another question.

THE COURT: Okay. Thank you.

BY MR. LABARRE:

Q Ms. Kahler, can you explain to us why NBS did not immediately cancel the sale on May 28, 2025, when it was

Veritext Legal Solutions
212-267-6868 www.veritext.com 516-608-2400

aware of that 9:06 filing time, why did it wait until May 30th to cancel the sale?

MR. CHRISTENSEN:  Again, same objection, Your Honor.  Outside the scope of their direct.  Trying to supplement.

THE COURT:  It's not necessarily outside the scope of the direct.  It's in response to your cross-examination, Mr. Christensen.

MR. LABARRE:  Yes.

THE COURT:  They've got a right to address your cross.  There's some room there.  So go ahead.

THE WITNESS:  At this point, we had -- it's already in litigation.  We had other parties involved.  The client, our client, Newrez, and then the Good Neighbor.  And we just wanted to ensure that we were all on the same page.

MR. LABARRE:  Okay.  I don't have any further questions, Your Honor.

THE COURT:  Okay.  Any recross, Mr. Christensen?

MR. CHRISTENSEN:  No.

THE COURT:  Okay.  Okay.  Any further -- any further evidence, Mr. Labarre?

MR. LABARRE:  No further evidence, but I think it's probably appropriate for a little bit of argument.  I don't know if the court's interested in hearing that, but if the court would like to do that, then I'm prepared to do a

212-267-6868         Veritext Legal Solutions         516-608-2400
www.veritext.com

kind of mini closing or argument.

THE COURT: Well, why don?t we do this? Why don't you -- I'll give you your options here. You can either -- I'll give everyone 10 minutes to close, or if they want, they can submit a closing briefs of no more than ten pages.

MR. CHRISTENSEN: Your Honor, we think -- I think closing briefs would be fine.

THE COURT: Okay.

MR. CHRISTENSEN: We just need maybe two weeks. It takes usually about a week to get a transcript from this proceeding. So maybe about two weeks.

THE COURT: So why don't you file closing briefs by March 16th? It takes two weeks to get the transcript, Mr. Christensen?

MR. CHRISTENSEN: Usually it's about a week. I can advise the court if we need an extension, if it's taking longer to get the transcript.

THE COURT: That's fine. How about file your closing briefs by March 23rd, and they're going to be dueling briefs. No more than 10 pages, and I'll rule. Okay? Okay.

Mr. Labarre, thank you.

MR. LABARRE: Thank you, Your Honor.

THE COURT: And Mr. Christensen, thank you for your time.

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 158
212-267-6868                  of 160  www.veritext.com                          516-608-2400

MR. CHRISTENSEN:  Thank you.

THE COURT:  Ms. Kahler, thank you for your time.  I appreciate it.  And that concludes this evidentiary hearing, and the court's adjourned.

MR. LABARRE:  Thank you, Your Honor.

MS. KAHLER:  Thank you.

(Whereupon these proceedings were concluded at 1:50 p.m.)

Veritext Legal Solutions
212-267-6868                        www.veritext.com                        516-608-2400

C E R T I F I C A T I O N

I, Benjamin Graham, certified that the foregoing transcript is a true and accurate record of the proceedings.

Benjamin Graham, AAERT CET-3405

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date:  March 13, 2026

Case: 25-40564   Doc# 123   Filed: 03/23/26   Entered: 03/23/26 23:57:37   Page 160 of 160